Exhibit C

Liquidation Analysis

# GoHealth

## *Liquidation Disclosure Statement*

**Introduction**

1. GoHealth, Inc. and its affiliated debtors and debtors-in-possession (collectively, the "Debtors"), with the assistance of their restructuring, legal, and financial advisors, have prepared this hypothetical liquidation analysis (this "Liquidation Analysis") in connection with the Joint Chapter 11 Plan of Reorganization of the Debtors (as may be amended, supplemented, or modified from time to time, the "Plan") and the related disclosure statement (the "Disclosure Statement"). This Liquidation Analysis is provided solely to assist holders of claims and interests in evaluating whether the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code (the "Best Interests Test"). Under the Best Interests Test, each holder of an impaired claim or interest must either accept the Plan or receive or retain under the Plan property of a value, as of the effective date of the Plan, that is not less than the amount such holder would receive if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code on such date.

2. The purpose of this Liquidation Analysis is to estimate the cash proceeds that would be generated if the Debtors' Chapter 11 cases were converted to Chapter 7 cases as of an assumed conversion date, as well as the distribution that each class of claims and interests would receive in such a hypothetical liquidation. The analysis also compares such hypothetical liquidation recoveries to the estimated recoveries available under the Plan. This Liquidation Analysis is not intended to be, and should not be relied upon as, a valuation of the Debtors as a going concern or for any other purpose.

**Key Assumptions**

3. This Liquidation Analysis assumes that the Debtors' Chapter 11 cases are converted to Chapter 7 cases on or about July 17, 2026 (the "Conversion Date"), on which date a Chapter 7 trustee (the "Trustee") would be appointed. Upon conversion, the Debtors would cease operations or otherwise commence an orderly wind-down, and the Trustee would assume responsibility for administering the estates and liquidating the Debtors' assets over time.

4. The hypothetical liquidation is assumed to occur over a two-month period during which the Trustee would market and sell the Debtors' assets in an expedited process. During this period, the Trustee would be expected to retain professionals, including legal and financial advisors, to assist in maximizing recoveries and administering the estates.

5. Allowed Claims reflected in this Liquidation Analysis are based on the Debtors' books and records as of March 31, 2026, adjusted for estimated changes through the Conversion Date and assumptions regarding disputed or contingent claims. The Debtors do not represent that actual Allowed Claims will correspond to these estimates.

6. The determination of Liquidation Proceeds is inherently uncertain and involves significant judgment and assumptions. These include, among other things, assumptions regarding asset realization values in distressed markets, treatment of rejected contracts, employee-related claims including WARN Act claims, professional fees and trustee costs, and potential litigation outcomes, including avoidance actions. Actual results may differ materially from the estimates set forth herein. This Liquidation Analysis has not been audited or independently verified, does not include independent appraisals of assets, does not account for potential tax consequences of liquidation, and excludes certain contingent or unknown claims where appropriate. It is provided solely for purposes of satisfying section 1129(a)(7) of the Bankruptcy Code.

**Hypothetical Liquidation Process**

7.  In a Chapter 7 liquidation, a Trustee would be responsible for collecting and monetizing the Debtors' cash and other assets, marketing and selling remaining business assets, and other contractual recoveries. It is assumed the sale of the Existing Net Contract Asset will take one month (the "Sale Date") and the operations would be substantially wound down one month later. The Trustee would also be responsible for administering the estates, resolving claims and objections, and distributing proceeds in accordance with the priority scheme established under the Bankruptcy Code.

**Waterfall of Distributions**

8.  Any proceeds generated in a hypothetical liquidation would be distributed in accordance with the priority scheme set forth in section 726 of the Bankruptcy Code. The first distributions would be used to satisfy Chapter 7 administrative expenses, including trustee fees, professional fees, and wind-down costs. Thereafter, any remaining proceeds would be applied to prepetition secured debt claims. After satisfaction of secured claims, remaining proceeds would be distributed to priority claims, including tax claims, section 503(b)(9) claims, and employee-related priority claims. General unsecured claims, including trade claims, unsecured notes, and deficiency claims, would receive distributions only after all senior claims are paid in full. Equity interests would receive distributions only after all creditor claims are satisfied in full. No junior class of claims or interests would receive any distribution unless all senior classes are paid in full.

**Special Considerations in Liquidation**

9.  A Chapter 7 liquidation may give rise to additional claims and costs that would not otherwise arise in a reorganized scenario. These may include WARN Act claims, lease rejection damages, employee benefits claims, litigation-related claims, and potential avoidance actions such as preference or fraudulent transfer claims. Any such claims could materially reduce the recoveries available to creditors.

**Conclusion**

10. The Liquidation Analysis compares the estimated recoveries available to each class of claims and interests in a hypothetical Chapter 7 liquidation (the "Liquidation Distribution") against the estimated recoveries available under the Plan (the "Plan Distribution").  Based on the assumptions and methodologies described herein, the Debtors believe that recoveries under the plan are greater than or equal to the recoveries in a hypothetical Chapter 7 liquidation. Accordingly, the Debtors believe that the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code. This Liquidation Analysis is inherently uncertain and is provided solely for purposes of evaluating the Plan under the Bankruptcy Code. It should not be relied upon for any other purpose.

| Class | Claims / Equity Interest | Recovery % Under Plan | Recovery % Under Liquidation | Pass / Fail |
|---|---|---|---|---|
| Class 1 | Other Secured Claims | 100% | 0% | Pass |
| Class 2 | Other Priority Claims | 100% | 0% | Pass |
| Class 3 | Super-Priority Loan Claims[1] | 100% | 55% | Pass |
| Class 4 | First Lien Claims[1] | Greater than 0% to 19%[1] | 0% | Pass |
| Class 5 | General Unsecured Claims | 100% | 0% | Pass |
| Class 6 | GoHealth Holdings Interests[2] | Pro Rata Dist. Of $10M[2] | 0% | Pass |
| Class 7 | GoHealth, Inc. Preferred Stock | Reinstated | 0% | Pass |
| Class 8 | GoHealth, Inc Class A Common Stock[2] | Pro Rata Dist. Of $10M[2] | 0% | Pass |
| Class 9 | GoHealth, Inc. Class B Common Stock | 0% | 0% | Pass |
| Class 10 | Intercompany Claims[3] | 0%[3] | 0% | Pass |
| Class 11 | Intercompany Interests[3] | 0% to 100%[3] | 0% | Pass |

---

[1] Recovery Percentage Under Liquidation represents recovery under the Mid Scenario

[2] Based on cash available and cash sweeps during the Financial Projections period and an estimate of the cash to be received from the remaining Existing Net Contract Asset, the Class 3 claims are estimated to recover in full. Recoveries on the remaining Existing Net Contract Asset after the Class 3 claims are paid in full would go to paydown the Class 4 claims likely resulting in a recovery greater than 0% to 19%.

[3] Classes 6 and 8: Recovery under the Plan is Pro Rata Distribution of $10m; refer to Article 3 B. Treatment of Claims and Interest in the Joint Prepack Chapter 11 Plan.

[4] Classes 10 and 11 - Intercompany Claims and Intercompany Interests: Recovery under the Plan (see options in Section (b) Treatment, subsections (i-iv) which allow for the reinstatement, conversion, cancellation, or other treatment at option of the Debtors.

*($ in millions)*

| Distributable Value Summary | Notes | Est. Asset Value | Estimated Recovery - % | | | Estimated Recovery Values | | |
|---|---|---|---|---|---|---|---|---|
| | | | Low | Mid | High | Low | Mid | High |
| Cash And Cash Equivalents | [A] | $ 20 | 100% | 100% | 100% | $ 20 $ | 20 $ | 20 |
| Existing Net Contract Asset | [B] | 570 | 10% | 15% | 20% | 57 | 85 | 114 |
| Prepaid Expenses And Other Current Assets | [C] | 9 | 0% | 0% | 0% | - | - | - |
| Operating Lease ROU Asset | [D] | 9 | 0% | 0% | 0% | - | - | - |
| Property And Equipment, Net | [E] | 5 | 10% | 20% | 30% | 0 | 1 | 1 |
| Other Long-Term Assets | [F] | 1 | 0% | 0% | 0% | - | - | - |
| **Total Asset Value** | | **$ 614** | **13%** | **17%** | **22%** | **$ 78 $** | **107 $** | **136** |
| **Gross Distributable Value** | | | | | | **$ 78 $** | **107 $** | **136** |
| Wind-Down Costs | [G] | | | | | (7) | (7) | (7) |
| Chapter 7 Trustee Fees | [H] | | | | | (2) | (3) | (3) |
| Chapter 7 Professional Fees | [I] | | | | | (1) | (2) | (2) |
| **Total Chapter 7 Liquidation Costs** | | | | | | **$ (10) $** | **(11) $** | **(13)** |
| **Net Distributable Value** | | | | | | **$ 68 $** | **95 $** | **123** |

| Claims Recovery Summary | Notes | Estimated Claim | | | Recovery Estimate % | | | Estimated Recovery Values | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Low | Mid | High | Low | Mid | High | Low | Mid | High |
| **Net Distributable Value** | | | | | | | | **$ 68 $** | **95 $** | **123** |
| Super Priority Claim | [J] | 174 | 174 | 174 | 39% | 55% | 71% | 68 | 95 | 123 |
| First Lien Claim | [K] | 598 | 598 | 598 | 0% | 0% | 0% | - | - | - |
| **Total Secured Claims** | | **$ 772 $** | **772 $** | **772** | **9%** | **12%** | **16%** | **$ 68 $** | **95 $** | **123** |
| **Proceeds Available after Secured Claims** | | | | | | | | **$ - $** | **- $** | **-** |
| Admin & Priority Claims | [L] | 17 | 17 | 17 | 0% | 0% | 0% | - | - | - |
| **Proceeds Available after Admin & Priority Claims** | | | | | | | | **$ - $** | **- $** | **-** |
| General Unsecured Claims | [M] | 43 | 43 | 43 | 0% | 0% | 0% | - | - | - |
| Super Priority Deficiency Claim | [N] | 106 | 79 | 51 | 0% | 0% | 0% | - | - | - |
| First Lien Deficiency Claim | [O] | 598 | 598 | 598 | 0% | 0% | 0% | - | - | - |
| **Total Unsecured Claims** | | **$ 748 $** | **720 $** | **692** | **0%** | **0%** | **0%** | **$ - $** | **- $** | **-** |
| **Proceeds Available for Equity Holders** | | | | | | | | **$ - $** | **- $** | **-** |
| Preferred Equity | [P] | | | | 0% | 0% | 0% | - | - | - |
| Common Equity | [Q] | | | | 0% | 0% | 0% | - | - | - |
| **Total Equity** | | | | | | | | **$ - $** | **- $** | **-** |

**Liquidation Proceeds Notes**

A. Cash & Cash Equivalents
   i. The Debtors' estimated balance of unrestricted cash and cash equivalents as of the Conversion Date is approximately $5 million.
   ii. In the one month leading up to the Sale Date of the Existing Net Contract Asset, it is assumed that $15 million of net cash receipts are received.
   iii. Total cash available for creditors (cash as of the Conversion Date plus cash received prior to the Sale Date) is $20 million. All Debtors' projected cash and cash equivalents on hand are assumed to be 100% recoverable.

B. Existing Net Contract Asset
   i. The Debtors' estimated balance for Existing Net Contract Assets as of the projected Sale Date is approximately $570 million.
   ii. The Debtors' recognize revenue at the time of the sale of a policy for all estimated future collections associated with that policy. However, only a portion of that revenue is collected at inception, with the remaining balance collected over time as policies are renewed which can occur over 30+ years. The remaining amounts to be collected are recorded as Existing Contract Assets. Existing Net Contract Assets reflect the future amount expected to be collected net of any chargebacks, setoffs, and commissions payments owed to partners.
   iii. Existing Net Contract Assets are collected over a long duration which can occur over 30+ years, which would likely be factored into any third-party bid proposals (adjusted to reflect the present value of those cash flows based on their cost of capital). Also, the buyers would adjust value based upon their assumptions of performance (renewals), market assumptions, and industry outlook. There are also a limited number of eligible buyers.
   iv. In a liquidation scenario, the Trustee would seek to sell or otherwise monetize these assets on an accelerated basis (close after one month). Therefore, management estimated a recovery range of approximately 10% to 20% of Existing Net Contract Asset value.

C. Prepaid Expenses and Other Current Assets
   i. The Debtors' estimated balance for Prepaid Expenses and Other Current Assets as of the Conversion Date is approximately $9 million.
   ii. Prepaid assets generally represent advance payments for future goods and services and do not constitute assets that can be readily monetized by a Chapter 7 Trustee.
   iii. Other Current Assets primarily consist of miscellaneous balances that are not readily monetizable in a liquidation and, in any event, are de minimis in amount.
   iv. For the purposes of this Liquidation Analysis, the Debtors do not assume a recovery attributable to Prepaid Expenses and Other Current Assets.

D. Operating Lease ROU Assets
   i. The Debtors' estimated balance for Operating Lease ROU Assets as of the Conversion Date is approximately $9 million.
   ii. The operating lease right-of-use asset represents the lessee's accounting recognition of the right to use leased property over the remaining lease term, rather than a separable or transferable asset with standalone market value.
   iii. In a Chapter 7 liquidation, the Chapter 7 Trustee will likely reject the lease or otherwise cease to provide economic benefit to the estate, eliminating the future use component that underlies the ROU asset.
   iv. For the purposes of this Liquidation Analysis, the Debtors do not assume a recovery attributable to Operating Lease ROU Assets.

E.  Net Property and Equipment ("PP&E")
    i.   The Debtors' estimated balance for Net Property and Equipment as of the Conversion Date is approximately $5 million.
    ii.  PP&E assets primarily include the Debtors' leasehold improvements, furniture and fixtures, and office technology.
    iii. Recovery assumptions are based on estimates from Management. PP&E recovery is reflective of the technology-driven nature of the business, with limited recoverable value of IT equipment.  For the purposes of this Liquidation Analysis, the Debtors assume an aggregate recovery range of 10% to 30%.

F.  Other Long-Term Assets
    i.   The Debtors' estimated balance for Other Long-Term Assets as of the Conversion Date is approximately $1 million.
    ii.  Other Current Assets primarily consist of miscellaneous balances that are not readily monetizable in a liquidation and, in any event, are de minimis in amount.
    iii. For the purposes of this Liquidation Analysis, the Debtors do not assume a recovery attributable to Other Long-Term Assets.

**Chapter 7 Liquidation Costs**

G.  Wind-Down Costs
    i.   Wind-Down Costs consist primarily of general and administrative expenses necessary to effectuate an orderly wind-down of the Debtors' Estates in a Chapter 7 liquidation, including employee compensation and benefits, information technology costs, professional fees, facilities-related expenses, and other ongoing administrative and overhead costs during the wind-down period.
    ii.  During the wind-down period, the Chapter 7 Trustee would retain a limited group of employees and/or third-party service providers to assist with the liquidation process, including marketing and sale of assets, collection and reconciliation of commissions, claims administration, facilitation of distributions, and other activities necessary to administer and close the Estates.
    iii. The analysis assumes continuation of base compensation for retained employees, including salary, standard benefits, and employer payroll taxes, through the wind-down period. It further assumes an increase of 25% of compensation would be required to retain employees to support the wind-down process.
    iv.  The analysis assumes that all other incentive compensation programs, including annual bonuses, equity-based compensation, long-term incentive plans, and similar arrangements, are terminated as of the conversion date. While estimated severance obligations in connection with the ultimate termination of employees following completion of wind-down activities are included in the Admin & Priority Claims section below, no recovery is assumed on these claims.
    v.   The duration and structure of the wind-down process may vary in an actual Chapter 7 liquidation, which could materially impact the timing and amount of Wind-Down Costs. These potential variations have not been quantified in this analysis.

H.  Chapter 7 Trustee Fees
    i.   Chapter 7 Trustee fees are assumed to be incurred in accordance with Section 326(a) of the Bankruptcy Code and are estimated at 3% of gross liquidation proceeds available for distribution to creditors (excluding cash balances).

I.  Chapter 7 Professional Fees
    i.  Chapter 7 professional fees, including fees for legal counsel, financial advisors, tax advisors, and other professionals retained by the Trustee, are assumed to be approximately 2% of gross liquidation proceeds available for distribution to creditors (excluding cash balances).
    ii. Actual professional fees may vary significantly depending on the duration, complexity, and scope of the wind-down process and may be higher or lower than the amounts assumed in this analysis.

**Claims and Recoveries**

J.  Super Priority Claim
    i.  The Debtors' estimated balance for the Super Priority Claim as of the Conversion Date is approximately $174 million. The Super Priority Claim consists of principal plus estimated accrued and unpaid interest, the MOIC Premium, and any other fees, costs, or other amounts due and owing pursuant to the Super-Priority Credit Agreements.
    ii. Based on the assumptions herein, this Liquidation Analysis assumes 39% to 71% recovery on account of the Super Priority Claims.

K.  First Lien Claim
    i.  The Debtors' estimated balance for the First Lien Claim as of the Conversion Date is approximately $598 million. The First Lien consists of principal plus accrued and unpaid interest due and owing pursuant to the First Lien Credit Agreements.
    ii. Based on the assumptions herein, this Liquidation Analysis assumes no recovery on account of the First Lien Claims.

L.  Admin & Priority Claims
    i.  The Debtors' estimated balance for Admin & Priority Claims as of the Conversion Date is approximately $17 million. These claims primarily consist of post-petition incurred but not yet paid operating expenses and estimated employee agreement severance obligations.
    ii. Based on the assumptions herein, this Liquidation Analysis assumes no recovery on account of the Admin & Priority Claims.

M.  General Unsecured Claims
    i.  The Debtors' estimated balance for General Unsecured Claims as of the Conversion Date is approximately $43 million. These claims consist of pre-petition lease and other executory contract rejection damages.
    ii. Based on the assumptions herein, this Liquidation Analysis assumes no recovery on account of the General Unsecured Claims.

N.  Super Priority Deficiency Claim
    i.  The Debtors' estimated balance for Super Priority Deficiency Claim as of the Conversion Date ranges from $106 million in the Low Scenario and $51 million in the High Scenario.
    ii. Based on the assumptions herein, this Liquidation Analysis assumes no recovery on account of Super Priority Deficiency Claim.

O.  First Lien Deficiency Claim
    i.  The Debtors' estimated balance for First Lien Deficiency Claim as of the Conversion Date is $598 million in both the Low and High Scenarios.
    ii. Based on the assumptions herein, this Liquidation Analysis assumes no recovery on account of First Lien Deficiency Claim.

P. Preferred Equity Interest
    i. Based on the assumptions herein, this Liquidation Analysis assumes no recovery on account of Preferred Equity Interest.

Q. Common Equity Interest
    i. Based on the assumptions herein, this Liquidation Analysis assumes no recovery on account of Common Equity Interest.