**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| GOHEALTH, INC., *et al.*,[1] | ) | Case No. 26-10914 [●] |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**APPLICATION OF DEBTORS**
**FOR APPOINTMENT OF DONLIN, RECANO &**
**COMPANY, LLC AS CLAIMS AND NOTICING AGENT**
**PURSUANT TO 28 U.S.C. § 156(c), EFFECTIVE AS OF THE PETITION DATE**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state as follows in support of this application:[2]

**Relief Requested**

1.      The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Order"), appointing Donlin, Recano & Company, LLC ("DRC") as claims and noticing agent (the "Claims and Noticing Agent") in the Debtors' chapter 11 cases effective as of the Petition Date (as defined herein).  In support of this application, the Debtors submit the declaration of Lisa Terry (the "Terry Declaration"), attached hereto as **Exhibit B**.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are:  GoHealth, Inc. (3805); Blizzard Midco, LLC (3732); Connected Benefits, LLC (2162); e-TeleQuote Insurance, Inc. (2336); ETQ Holdings, LLC (8260); GoHealth Holdings, LLC (3653); GoHealth, LLC (5175); and Norvax, LLC (3063).  The location of the Debtors' service address for purposes of these chapter 11 cases is:  222 West Merchandise Mart Plaza, Suite 1750, Chicago, Illinois 60654.

[2]    A detailed description of the Debtors and their business, including the facts and circumstances supporting this application, is set forth in the *Declaration of Vijay Kotte, Chief Executive Officer of GoHealth, Inc., in Support of the Debtors' Chapter 11 Petitions, First Day Motions, and Access to Cash Collateral* (the "First Day Declaration").  Capitalized terms used but not defined in this application shall have the meanings ascribed to them in the First Day Declaration.

**Jurisdiction and Venue**

2.      The United States District Court for the District of Delaware has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the United States Bankruptcy Court for the District of Delaware (the "Court") under 28 U.S.C. § 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested herein are section 156(c) of title 28 of the United States Code, section 105(a) and sections 503 and 1107 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rule 2002(f) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Local Rules 2002-1(e) and 9013-1(m), and the Court's *Protocol for the Employment of Claims and Noticing Agents Under 28 U.S.C. § 156(c)*, instituted by the Office of the Clerk of the Court (the "Clerk") on February 1, 2012 (the "Claims Agent Protocol").

**Background**

5.      On June 7, 2026 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code.  Concurrent with the filing of this application, the Debtors filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no official committees have been appointed or designated.

**Basis for Relief**

6.       The Debtors request entry of an order appointing DRC as the Claims and Noticing Agent for the Debtors in their chapter 11 cases, including assuming full responsibility for the distribution of notices, and the maintenance, processing, and docketing of any proofs of claim filed in the Debtors' chapter 11 cases.  The Debtors' selection of DRC to act as the Claims and Noticing Agent satisfies the Claims Agent Protocol because the Debtors obtained and reviewed engagement proposals from at least two other court-approved claims and noticing agents to ensure selection through a competitive process.  Moreover, the Debtors submit, based on all engagement proposals obtained and reviewed, that DRC's rates are competitive and reasonable given DRC's quality of services and expertise.  The terms of DRC's retention are set forth in the Services Agreement (as defined herein); *provided* that the Debtors are seeking approval solely of the terms and provisions of the Services Agreement as set forth in this application and the proposed Order attached hereto.

7.       Local Rule 2002-1(e) provides that "[a] chapter 11 debtor with more than 200 parties identified in the list filed under Local Rule 1007-2(a) must file the motion [authorizing the retention of a claims and noticing agent] with its petition or within 7 days thereafter, unless the Court orders otherwise."  Del. Bankr. L.R. 2002-1(e).  In light of the number of anticipated claimants and the complexity of the Debtors' business, the Debtors submit that the appointment

of a claims and noticing agent is required by Local Rule 2002-1(e) and is otherwise in the best interests of the Debtors' estates and creditors.

8.      Bankruptcy Rule 2002(f) generally regulates what notices must be given to creditors and other parties in interest in bankruptcy cases.  Under Bankruptcy Rule 2002(f), the Court may direct that some person other than the Clerk give notice of the various matters described below.  Moreover, section 156(c) of title 28 of the United States Code, which governs the staffing and expenses of a bankruptcy court, authorizes the Court to use "facilities" or "services" other than the Clerk for administration of bankruptcy cases.  Specifically, the statute provides, in relevant part:

> Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States.  The utilization of such facilities or services shall be subject to such conditions and limitations as the pertinent circuit council may prescribe.

28 U.S.C. § 156(c).

9.      In addition, Local Rule 2002-1(e) provides:

> The Court may at the First Day Hearing authorize the retention of a claims and noticing agent—"claims agent"—under 28 U.S.C. § 156(c) on motion substantially confirming to Local Form 134.  A chapter 11 debtor with more than 200 parties identified in the list filed under Local Rule 1007-2(a) must file the motion with its petition or within 7 days thereafter, unless the Court orders otherwise.  The claims agent must comply with the Court's Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c) and perform the [claims and noticing services].

Del. Bankr. L.R. 2002-1(e).  Accordingly, Bankruptcy Rule 2002(f), Local Rule 2002-1(e), and section 156(c) of title 28 of the United States Code empower the Court to utilize outside agents

and facilities for notice and claims purposes, provided that the Debtors' estates bear the cost of such services.

10.     For all of the foregoing reasons, the Debtors believe that the appointment of DRC as the Claims and Noticing Agent in these chapter 11 cases is necessary and in the best interests of the Debtors, their estates and creditors, and all parties in interest.  Furthermore, the Debtors respectfully submit that the fees and expenses that would be incurred by DRC under the proposed engagement would be administrative in nature and, therefore, should not be subject to standard fee application procedures of professionals.

11.     By separate application, the Debtors will seek authorization to retain and employ DRC as the administrative agent in these chapter 11 cases pursuant to section 327(a) of the Bankruptcy Code, because the administration of the chapter 11 cases will also require DRC to perform duties outside the scope of 28 U.S.C. § 156(c).

### DRC's Qualifications

12.     DRC is a chapter 11 administrator comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases.  DRC's professionals have experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases, as well as experience in cases of this size and complexity.  *See, e.g., In re Hronis, Inc.*, No. 26-10978 (Bankr. E.D. Cal. Mar. 13, 2026); *In re Dynacq Healthcare, Inc.*, No. 25-90798 (ARP) (Bankr. S.D. Tex. Dec. 15, 2025); *In re Razzoo's, Inc.*, No. 25-90522 (ARP) (Bankr. S.D. Tex Oct. 1, 2025); *In re Rizo-Lopez Foods, Inc.*, No. 25-25004 (Bankr. E.D. Cal. Sept. 19, 2025); *In re The Roman Cath. Bishop of Fresno*, No. 25-12231 (Bankr. E.D. Cal. July 7, 2025); *In re Marin Software Inc.*, No. 25-11263 (LSS) (Bankr. D. Del. July 3, 2025); *In re Corvias Campus Living*

- *USG, LLC*, No. 25-11263 (LSS) (Bankr. D. Del. July 2, 2025); *In re TreeSap Farms, LLC,* No. 25-90017 (ARP) (Bankr. S.D. Tex. Feb. 25, 2025); *In re Onyx Owner, LLC*, No. 24-12816 (CTG) (Bankr. D. Del. Jan. 27, 2025); *In re Rainbow Prod. Servs., LLC,* No. 24-12564 (KBO) (Bankr. D. Del. Nov. 6, 2024); *In re Am. Tire Distribs., Inc., (n/k/a Oldco Tire Distributors, Inc.)*, No. 24-12391 (CTG) (Bankr. D. Del. Oct. 25, 2024); *In re The Roman Cath. Bishop of San Diego*, No. 24-02202 (Bankr. S.D. Cal. Aug. 8, 2024); *In re The Roman Cath. Bishop of Sacramento*, No. 24-21326 (Bankr. E.D. Cal. Apr. 4, 2024); *In re The Roman Cath. Bishop of Santa Rosa*, No. 23-10113 (Bankr. N.D. Cal. Mar. 17, 2023); *In re Trinitas Farming, LLC,* No. 24-50211 (Bankr. N.D. Cal. Mar. 15, 2024); *In re Nogin, Inc.,* No. 23-11945 (CTG) (Bankr. D. Del. Dec. 7, 2023); *In re Novvi, LLC*, No. 23-90906 (CML) (Bankr. S.D. Tex. Dec. 4, 2023); *In re Polaris Operating, LLC,* No. 23-32810 (CML) (Bankr. S.D. Tex. July 31, 2023); *In re Sherman/Grayson Hosp., LLC*, No. 23-10810 (JKS) (Bankr. D. Del. July 30, 2023); *In re Paradox Res., LLC,* No. 23-90558 (DRJ) (Bankr. S.D. Tex. May 23, 2023); *In re Tritek Int'l Inc.,* No. 23-10520 (TMH) (Bankr. D. Del. Apr. 28, 2023); *In re PLx Pharma Inc., (n/k/a PLx Pharma Winddown Corp.)*, No. 23-10456 (MFW) (Bankr. D. Del. Apr. 14, 2023); *In re SiO2 Med. Prods., Inc.*, No. 23-10366 (JTD) (Bankr. D. Del. Mar. 30, 2023); *In re The Roman Cath. Diocese of Albany, N.Y.*, No. 23-10244 (REL) (Bankr. N.D.N.Y. Apr. 3, 2023); *In re HyreCar, Inc.*, No. 23-10259 (JTD) (Bankr. D. Del. Feb. 28, 2023); *In re Lucira Health, Inc.*, No. 23-10242 (MFW) (Bankr. D. Del. Feb. 24, 2023).

13.     By appointing DRC as the Claims and Noticing Agent in these chapter 11 cases, the distribution of notices and the processing of claims, if any, will be expedited, and the Clerk will be relieved of the administrative burden of processing such claims.

**Services to be Provided**

14.     This application pertains only to the work to be performed by DRC under the Clerk's delegation of duties permitted by 28 U.S.C. § 156(c) and Local Rule 2002-1(e).  The services to be performed by DRC are set forth in the Standard Claims Administration and Noticing Agreement, dated as of May 13, 2026, attached as <u>Exhibit 1</u> to the Order (the "<u>Services Agreement</u>").  Any work to be performed by DRC outside of this scope is not covered by this application or by any order granting approval hereof.  Specifically, DRC will perform the following tasks, as necessary, in its role as Claims and Noticing Agent, as well as all quality control relating thereto (collectively, the "<u>Claims and Noticing Services</u>"), to the extent requested by the Debtor:

(a)     Prepare and serve required notices and documents in these chapter 11 cases in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Debtors and/or the Court, including (as applicable) (i) notice of the commencement of these chapter 11 cases and any initial meeting of creditors under Bankruptcy Code § 341(a), if held, (ii) notice of any claims bar date, (iii) notices of transfers of claims, (iv) notices of objections to claims and objections to transfers of claims, (v) notices of any hearing on approval of a disclosure statement and confirmation of the Plan, including under Bankruptcy Rule 3017(d), (vi) notice of the effective date of any confirmed plan, including the Plan, and (vii) all other notices, orders, pleadings, publications and other documents as the Debtors or Court may deem necessary or appropriate for an orderly administration of these chapter 11 cases;

(b)     Maintain an official copy of the schedules of assets and liabilities and statements of financial affairs (collectively, the "<u>Schedules</u>"), listing the Debtors' known creditors and the amounts owed thereto, if a waiver of the requirement to file the Schedules is not granted;

(c)     Maintain (i) a list of all potential creditors, equity holders, and other parties-in-interest and (ii) a "core" mailing list consisting of all parties described in Bankruptcy Rule 2002(i), (j), and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010; update and make said lists available upon request by a party-in-interest or the Clerk;

(d)     Furnish a notice to all potential creditors of the last date for filing proofs of claim and a form for filing a proof of claim, after such notice and form are

7

approved by the Court, and notify said potential creditors of the existence, amount, and classification of their respective claims as set forth in the Schedules, if filed, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

(e)     Maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

(f)     Maintain an electronic platform for purposes of filing proofs of claim;

(g)     For all notices, motions, orders, or other pleadings or documents served, prepare and file, or cause to be filed with the Clerk, an affidavit or certificate of service within seven business days of service which includes (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service, and (iv) the date served;

(h)     Process all proofs of claim received, including those received by the Clerk, check said processing for accuracy, and maintain the original proofs of claim in a secure area;

(i)     Maintain the official claims register for each Debtor (collectively, the "Claims Registers") on behalf of the Clerk; upon the Clerk's request, provide the Clerk with certified, duplicate unofficial Claims Registers; and specify in the Claims Registers the following information for each claim docketed:  (i) the claim number assigned; (ii) the date received; (iii) the name and address of the claimant and agent, if applicable, who filed the claim; (iv) the amount asserted; (v) the asserted classification(s) of the claim (e.g., secured, unsecured, priority, etc.); (vi) the applicable Debtor; and (vii) any disposition of the claim;

(j)     Provide public access to the Claims Registers, including complete proofs of claim with attachments, if any, without charge;

(k)     Implement necessary security measures to ensure the completeness and integrity of the Claims Registers and the safekeeping of the original proofs of claim;

(l)     Record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

(m)     Relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to the offices of DRC, not less than weekly;

(n)  Upon completion of the docketing process for all proofs of claim received to date for each case, turn over to the Clerk copies of the Claims Registers for the Clerk's review (upon the Clerk's request);

(o)  Monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on and/or changes to the Claims Registers and any service or mailing lists, including to identify and eliminate duplicative names and addresses from such lists;

(p)  Identify and correct any incomplete or incorrect addresses in any mailing or service lists (to the extent such information is available);

(q)  Assist in the dissemination of information to the public and respond to requests for administrative information regarding these chapter 11 cases as directed by the Debtors or the Court, including through the use of a case website and/or call center;

(r)  If these chapter 11 cases are converted to cases under chapter 7 of the Bankruptcy Code, contact the Clerk's office within three days of notice to DRC of entry of the order converting the cases;

(s)  Thirty days prior to the close of these chapter 11 cases, to the extent practicable, request that the Debtors submit to the Court a proposed order dismissing DRC as Claims and Noticing Agent and terminating its services in such capacity upon completion of its duties and responsibilities and upon the closing of these chapter 11 cases;

(t)  Within seven days of notice to DRC of entry of an order closing these chapter 11 cases, provide to the Court the final version of the Claims Registers as of the date immediately before the close of the chapter 11 cases; and

(u)  At the close of these chapter 11 cases, comply with all applicable laws and procedures for disposing and/or archiving of claims and related documents.

15.  The Claims Registers shall be open to the public for examination without charge during regular business hours and on a case-specific website maintained by DRC.

## Professional Compensation

16.  The Debtors respectfully request that the undisputed fees and expenses incurred by DRC in the performance of the above services be treated as administrative expenses of the Debtors' chapter 11 estates pursuant to section 503(b)(1)(A) of the Bankruptcy Code and be paid

9

in the ordinary course of business without further application to or order of the Court.  DRC agrees to maintain records of all services showing dates, categories of services, fees charged, and expenses incurred, and to serve monthly invoices on the Debtors, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), counsel for the Debtors, counsel for any official committee monitoring the expenses of the Debtors, and any party-in-interest who specifically requests service of the monthly invoices.  If any dispute arises relating to the Services Agreement or monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute; if resolution is not achieved, the parties may seek resolution of the matter from the Court.

17.    Prior to the Petition Date, the Debtors provided DRC an advance in the amount of $20,000.00. In addition, on May 15, 2026, DRC received $10,095.10 for pre-petition services rendered, and on June 3, 2026, DRC received $15,059.66 for pre-petition services rendered. DRC seeks to first apply the advance to all prepetition invoices, and thereafter, to have the advance replenished to the original advance amount, and thereafter, to hold the advance under the Services Agreement during these chapter 11 cases as security for the payment of fees and expenses incurred under the Services Agreement.

18.    Additionally, under the terms of the Services Agreement, the Debtors have agreed to indemnify, defend, and hold harmless DRC and its affiliates, officers, directors, agents, employees, consultants, and subcontractors (the "Indemnified Parties") under certain circumstances specified in the Services Agreement, except in circumstances resulting solely from DRC's gross negligence or willful misconduct or as otherwise provided in the Services Agreement or proposed Order.  The Debtors believe that such an indemnification obligation is customary, reasonable, and necessary to retain the services of a Claims and Noticing Agent in these chapter 11 cases.

10

**Disinterestedness**

19.    Although the Debtors do not propose to employ DRC under section 327 of the Bankruptcy Code pursuant to this application (such retention will be sought by separate application), DRC has nonetheless reviewed its electronic database to determine whether it has any relationships with the creditors and parties in interest provided by the Debtors, and, to the best of the Debtors' knowledge, information, and belief, and except as disclosed in the Terry Declaration, DRC has represented that it neither holds nor represents any interest materially adverse to the Debtors' estates in connection with any matter on which it would be employed. To the extent that DRC or its personnel have, or may have had, relationships with certain of the Debtors' creditors as described in the Terry Declaration, DRC has represented to the Debtors that those matters are unrelated to these chapter 11 cases.

20.    Moreover, in connection with its retention as Claims and Noticing Agent, DRC represents in the Terry Declaration, among other things, that:

(a)    DRC is not a creditor of the Debtors;

(b)    DRC will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in these chapter 11 cases;

(c)    By accepting employment in these chapter 11 cases, DRC waives any rights to receive compensation from the United States government in connection with these chapter 11 cases;

(d)    In its capacity as the Claims and Noticing Agent in these chapter 11 cases, DRC will not be an agent of the United States and will not act on behalf of the United States;

(e)    DRC will not employ any past or present employees of the Debtors in connection with its work as the Claims and Noticing Agent in these chapter 11 cases;

(f)    DRC is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged;

11

(g)    In its capacity as Claims and Noticing Agent in these chapter 11 cases, DRC will not intentionally misrepresent any fact to any person;

(h)    DRC shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

(i)    DRC will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

(j)    None of the services provided by DRC as Claims and Noticing Agent in these chapter 11 cases shall be at the expense of the Clerk's office.

21.    DRC will supplement its disclosure to the Court if any facts or circumstances are discovered that would require such additional disclosure.

**Compliance with Claims and Noticing Agent Protocol**

22.    The Debtors' selection of DRC to act as the Claims and Noticing Agent has satisfied the Claims Agent Protocol, in that the Debtors have obtained and reviewed engagement proposals from at least two other Court-approved claims and noticing agents to ensure selection through a competitive process. Moreover, the Debtors submit, based on all engagement proposals obtained and reviewed, that DRC's rates are competitive and reasonable given DRC's quality of services and expertise.

**Employment Effective as of The Petition Date Is Appropriate**

23.    In accordance with the Debtors' request, DRC has agreed to serve as Claims and Noticing Agent on and after the Petition Date with assurances that the Debtors would seek approval of its employment and retention to be effective as of the Petition Date, such that the Debtors can reimburse the Claims and Noticing Agent for its services performed on and after the Petition Date. The Debtors believe that no party in interest will be prejudiced by authorizing DRC's employment to be effective as of the Petition Date, as proposed in this application, because DRC has provided and continues to provide valuable services to the Debtors' estates

during the interim period between the Petition Date and the date of entry of the order approving this application.

24.    Accordingly, the Debtors respectfully request entry of the Order authorizing the Debtors to retain and employ DRC as Claims and Noticing Agent effective as of the Petition Date.

## Notice

25.    The Debtors will provide notice of this application to the following parties or their respective counsel, as applicable:  (a) the U.S. Trustee; (b) counsel to the Ad Hoc TL Group; (c) counsel to the Ad Hoc Revolver Group; (d) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (e) the state attorneys general for states in which the Debtors conduct business; (f) the United States Attorney for the District of Delaware, District of Massachusetts, and District of Columbia; (g) the Internal Revenue Service; and (h) any party that is entitled to notice pursuant to Bankruptcy Rule 2002.  As this application is seeking "first day" relief, within two business days of the hearing on this application, the Debtors will serve copies of this application and any order entered in respect to this application as required by Local Rule 9013-1(m).  In light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

26.    No prior request for the relief sought in this application has been made to this or any other court.

*Remainder of page intentionally left blank*

13

WHEREFORE, the Debtors request entry of the Order, substantially in the form attached

hereto as **Exhibit A**, (a) granting the relief requested herein and (b) granting such other relief as

the Court deems appropriate under the circumstances.

Dated:  June 7, 2026
Wilmington, Delaware

/s/  Laura Davis Jones
| | |
|---|---|
| **PACHULSKI STANG ZIEHL & JONES LLP** | **KIRKLAND & ELLIS LLP** |
| Laura Davis Jones (DE Bar No. 2436) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| James E. O'Neill (DE Bar No. 4042) | Anup Sathy, P.C. (*pro hac vice* pending) |
| Edward A. Corma (DE Bar No. 6718) | Alexandra F. Schwarzman, P.C. (*pro hac vice* pending) |
| 919 North Market Street, 17th Floor | David R. Gremling (*pro hac vice* pending) |
| Wilmington, Delaware 19807 | 333 West Wolf Point Plaza |
| Telephone:   (302) 652-4100 | Chicago, Illinois 60654 |
| Facsimile:   (302) 652-4400 | Telephone:   (312) 862-2000 |
| Email:   ljones@pszjlaw.com | Facsimile:   (312) 862-2200 |
|   joneill@pszjlaw.com | Email:   anup.sathy@kirkland.com |
|   ecorma@pszjlaw.com |   alexandra.schwarzman@kirkland.com |
|  |   dave.gremling@kirkland.com |

*Proposed Co-Counsel for the Debtors and Debtors in Possession*                    *Proposed Co-Counsel for the Debtors and Debtors in Possession*