**Exhibit A**

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GOHEALTH, INC., *et al.*,[1] | ) | Case No. 26-10914 [●] |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |
| | ) | **Re: Docket No. __** |
| | ) | |

**ORDER AUTHORIZING RETENTION AND APPOINTMENT OF
DONLIN, RECANO & COMPANY LLC AS CLAIMS AND NOTICING AGENT
PURSUANT TO 28 U.S.C. § 156(c), EFFECTIVE AS OF THE PETITION DATE**

Upon the application (the "Application")[2] of the above-captioned debtors and debtors in

possession (collectively, the "Debtors") for entry of an order (this "Order"), (a) authorizing the

Debtors to retain and appoint Donlin, Recano & Company, LLC ("DRC") as claims and noticing

agent ("Claims and Noticing Agent") pursuant to 28 U.S.C. § 156(c), section 105(a) of the

Bankruptcy Code, Bankruptcy Rule 2002(f), Local Rule 2002-1(e), and the *Protocol for the*

*Employment of Claims and Noticing Agents Under 28 U.S.C. § 156(c)*, instituted by the Office of

the Clerk of the Bankruptcy Court on February 1, 2012 (the "Claims Agent Protocol"), to, among

other things, (i) distribute required notices to parties in interest, (ii) receive, maintain, docket, and

otherwise administer any proofs of claim filed in the Debtors' chapter 11 cases, (iii) provide such

other claims and noticing services, and (b) granting related relief all as more fully set forth in the

Application; and upon the First Day Declaration and the Terry Declaration; and the United States

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are:    GoHealth, Inc. (3805); Blizzard Midco, LLC (3732); Connected Benefits, LLC (2162); e-TeleQuote Insurance, Inc. (2336); ETQ Holdings, LLC (8260); GoHealth Holdings, LLC (3653); GoHealth, LLC (5175); and Norvax, LLC (3063).  The location of the Debtors' service address for purposes of these chapter 11 cases is:  222 West Merchandise Mart Plaza, Suite 1750, Chicago, Illinois 60654.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Application.

District Court for the District of Delaware having jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to this Court under 28 U.S.C. § 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Application is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Application and opportunity for a hearing on the Application were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Application and the Terry Declaration and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Application is GRANTED solely as set forth in this Order.

2.      Any objections to the entry of this Order, to the extent not withdrawn or settled, are overruled.

3.      Pursuant to 28 U.S.C. § 156(c), section 105(a) of the Bankruptcy Code, Bankruptcy Rule 2002(f), and Local Rule 2002-1(e), the Debtors are authorized to retain DRC as Claims and Noticing Agent effective as of the Petition Date pursuant to the terms of the Services Agreement

attached hereto as **Exhibit 1**, as modified by this Order.  Notwithstanding any terms of the Services Agreement, the Application is approved solely as set forth in this Order.

4.      DRC is authorized and directed to perform Claims and Noticing Services and to receive, maintain, record, and otherwise administer the proofs of claim filed in these chapter 11 cases (if any), and to perform all related tasks, all as described in the Application.

5.      DRC shall serve as the custodian of court records and shall be designated as the authorized repository for all proofs of claim filed in these chapter 11 cases (if any) and is authorized and directed to maintain official claims registers for each of the Debtors, to provide public access to every proof of claim unless otherwise ordered by the Court, and to provide the Clerk with a certified duplicate thereof upon the request of the Clerk (if necessary).

6.      DRC is authorized and directed to provide an electronic interface for filing proofs of claim and to obtain a post office box or address for the receipt of proofs of claim (if necessary).

7.      DRC shall comply with all requests of the Clerk and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c).

8.      DRC is authorized to take such other action to comply with all duties set forth in the Application.

9.      DRC shall not be required to file fee applications.  Upon receipt of DRC's invoices, the Debtors are authorized to compensate and reimburse DRC for all undisputed amounts in the ordinary course in accordance with the terms of the Services Agreement.  The rates set forth on Schedule A to the Services Agreement apply to all DRC personnel (including full-time, part-time and temporary staff).  All amounts due to the DRC will be treated as § 503(b) administrative expenses.

10.     DRC shall maintain records of all services showing dates, categories of services, fees charged, and expenses incurred.  With respect to services provided prior to the effective date of a chapter 11 plan in these chapter 11 cases, DRC shall serve monthly invoices on the Debtors, the U.S. Trustee, counsel for the Debtors, counsel for any official committee monitoring the expenses of the Debtors, and any party-in-interest who specifically requests service of the monthly invoices.

11.     The parties shall meet and confer in an attempt to resolve any dispute which may arise relating to the Services Agreement or monthly invoices; *provided* that the parties may seek resolution of the matter from the Court if resolution is not achieved.

12.     Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, and subject to paragraphs 9–11 herein, the fees and expenses of DRC under this Order shall be an administrative expense of the Debtors' estates.

13.     DRC may apply its advance to all prepetition invoices, which advance shall be replenished to the original advance amount, and, thereafter, DRC may hold its advance under the Services Agreement during these chapter 11 cases as security for the payment of DRC's final invoice for services rendered and expenses incurred under the Services Agreement for performing the Claims and Noticing Services.  Upon completion of its engagement, DRC shall return any excess advanced amounts to the Debtors or the reorganized debtors, as applicable.

14.     The Debtors shall indemnify, defend, and hold harmless the Indemnified Parties under the terms of the Services Agreement, as modified pursuant to this Order.

15.     The Indemnified Parties shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Services Agreement for services other than the services provided

4

under the Services Agreement, unless such services and the indemnification, contribution, or reimbursement thereof are approved by the Court.

16.     Notwithstanding anything to the contrary in the Services Agreement, the Debtors shall have no obligation to indemnify the Indemnified Parties, or provide contribution or reimbursement to the Indemnified Parties, for any claim or expense that is either: (a) judicially determined (the determination having become final) to have arisen from the Indemnified Parties' gross negligence, willful misconduct, or fraud; (b) for a contractual dispute in which the Debtors allege the breach of the Indemnified Parties' contractual obligations if the Court determines that indemnification, contribution, or reimbursement would not be permissible pursuant to applicable law; or (c) settled prior to a judicial determination under (a) or (b), but determined by this Court, after notice and a hearing, to be a claim or expense for which the Indemnified Parties should not receive indemnity, contribution, or reimbursement under the terms of the Services Agreement as modified by this Order.

17.     If, before the earlier of (a) the entry of an order confirming a chapter 11 plan in these chapter 11 cases (that order having become a final order no longer subject to appeal), or (b) the entry of an order closing these chapter 11 cases, the Indemnified Parties believe that they are entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution, and/or reimbursement obligations under the Services Agreement (as modified by this Order), including without limitation the advancement of defense costs, the Indemnified Parties must file an application therefor in this Court, and the Debtors may not pay any such amounts to the Indemnified Parties before the entry of an order by this Court approving the payment. This paragraph is intended only to specify the period of time during which the Court shall have jurisdiction over any request for fees and expenses by the Indemnified Parties for

indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify the Indemnified Parties.  All parties in interest shall retain the right to object to any demand by the Indemnified Parties for indemnification, contribution, or reimbursement.

18.     Notwithstanding any terms of the Services Agreement to the contrary, DRC shall not be permitted to recover attorneys' fees in connection with its defense of any fee disputes arising in connection with the Services Agreement.

19.     In the event DRC is unable to provide the services set out in this Order, DRC will immediately notify the Clerk, the U.S. Trustee, and the Debtors' counsel and, upon approval of the Court, cause to have all original proofs of claim and other relevant information turned over to another claims and noticing agent with the advice and consent of the Clerk and the Debtors' counsel.

20.     The Debtors may submit a separate retention application, pursuant to 11 U.S.C. § 327 and/or any applicable law, for work that is to be performed by DRC but is not specifically authorized by this Order.

21.     Nothing in this Order authorizes the Debtors to accelerate any payments not otherwise due.

22.     Notwithstanding any provision in the Bankruptcy Rules to the contrary, this Order shall be immediately effective and enforceable upon its entry.

23.     Notice of the Application as provided therein shall be deemed good and sufficient notice of such Application and the Local Rules are satisfied by such notice.

24.     DRC shall not cease providing noticing and claims processing services during the chapter 11 cases for any reason, including nonpayment, without an order of the Court.

25.     In the event of any inconsistency between the Services Agreement, the Application and this Order, this Order shall govern.

26.     The Debtors and DRC are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Application.

27.     Notwithstanding any term in the Services Agreement to the contrary, this Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**Exhibit 1**

**Services Agreement**

# STANDARD CLAIMS ADMINISTRATION AND NOTICING AGREEMENT

## TERMS AND CONDITIONS

**Donlin, Recano & Company, LLC** (hereinafter called "DRC") agrees to provide **GoHealth, Inc.** including but not limited to any and all bankruptcy cases filed by any affiliate of **GoHealth, Inc.** (hereinafter called the "Client") and Client agrees to purchase Services, (as defined below) upon the terms and conditions and other provisions stated herein. Client agrees and understands that none of the services constitute legal advice.

**1. SERVICES**: In accordance with the charges, terms and conditions contained in this agreement and in the schedules(s) attached hereto (collectively, the "Agreement"), DRC agrees to provide the Client with consulting services regarding noticing and claims management and reconciliation, and any other services agreed upon by the parties or otherwise required by applicable law, government regulations, or court rules or orders. A more detailed description of the types of services offered by DRC, as well as the fees charged for such services, is annexed hereto as Schedule A.

**2. CHARGES**: All charges shall be based upon the time and materials incurred by DRC, billed at the DRC then prevailing standard rate as to all invoices to Client under this Agreement (including billed rates, expenses, and any other charges). The rates set forth on Schedule A apply to all DRC personnel (including full-time, part-time and temporary staff). DRC reserves its rights to adjust its standard rates in January of each year to reflect changes in the business and economic environment. In the event that rates are based other than on time and materials, and such other basis for rates is set forth herein, the Client agrees to pay, in addition to those rates, for all charges, incurred by DRC as a result of Client error or omission as determined by DRC. Such charges shall include but shall not be limited to re-runs and any additional clerical work, phone calls, travel expenses, or any other disbursements. When possible, DRC will notify Client in advance of any additional charges. Checks are accepted subject to collection and the date of collection shall be deemed the date of payment. Any check received from Client may be applied by DRC against any obligation owing by Client to DRC, and an acceptance by DRC of any partial payment shall not constitute a waiver of DRC's right to pursue the collection of any remaining balance. DRC requires advance deposits for all noticing, newspaper publishing or other significant expenditures as defined by DRC. In addition, Client shall reimburse DRC for all actual out-of-pocket expenses reasonably incurred by DRC. The out-of-pocket expenses may include, but are not limited to, postage, delivery services, travel, meals and other similar costs and expenses. In addition to all charges for services and materials hereunder, Client shall pay to DRC all taxes, however designated, levied or based that are applicable to this Agreement or are measured directly by payments made under this Agreement and are required to be collected by DRC or paid by DRC to taxing authorities. This provision, includes but is not limited to, sales, use and excise taxes, but does not include personal property taxes or taxes based on income. In the event the Client files for protection pursuant to chapter 11 of title 11 of the United States Code, the parties intend that DRC shall be employed pursuant to 28 U.S.C §156(c), and that all fees and expenses due under this agreement shall be paid as administrative expenses of the Client's chapter 11 estate(s). In the event the Client's

5/12/2026                                                                                       Page 1 of 9

bankruptcy case(s) is converted to a chapter 7 case(s), any unpaid fees and costs with respect to this Agreement shall be treated as a chapter 11 administrative expense claim.

**3. TRANSPORTATION OF DATA:** Data submitted by the Client to DRC for processing shall be transported at the Client's risk and expense to and from the DRC office. In the event the Client fails to deliver the input data to DRC at the time scheduled, the Client agrees that DRC may extend, as necessary, the time for the completion of processing of such data. Client further agrees that the time for the completion or processing of such data may be extended because of the following holidays in addition to any Bank holidays recognized in the city in which DRC is located: New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day and Christmas Day. In any event, DRC does not warrant or represent that shipment or availability dates will be met, but will use its best efforts to do so. If DRC is required to stay open to perform required tasks on such days, an additional mutually agreed upon cost may be required by DRC.

**4. EVERGREEN RETAINER AND INVOICES:** At the commencement of this engagement, the Client shall pay to DRC an advance payment retainer (the "Retainer") in the amount of $20,000. The Retainer shall be an "evergreen" retainer and shall be applied to the payment of the final invoice from DRC for this engagement. DRC may apply the Retainer to any other invoice in its absolute discretion, and upon notice thereof from DRC, the Client shall replenish the Retainer. Invoices for pre-petition services shall be paid in full, and may be satisfied, in the absolute discretion of DRC, out of the Retainer, which shall be replenished upon notice thereof to the Client. DRC, in its absolute discretion, may suspend or discontinue services after filing of a petition if pre-petition invoices are not paid in full, or if the Retainer is not replenished when request therefore is made. DRC may require the Client to increase the Retainer if the average amount of monthly invoices for three consecutive months is 10% greater than the amount of the Retainer. Client shall pay the charges set forth in Schedule A, attached hereto. DRC shall invoice the Client monthly for all services rendered during the preceding month. Charges for a partial month's service shall be prorated based on a thirty (30) day month. Terms are net 20 days following the date of billing. Failure to pay any fees, costs or other amounts to DRC shall be a breach of this Agreement (a "Failure to Pay"). Notwithstanding anything else contained in this Agreement, in the event of a Failure to Pay, DRC reserves the right to withhold reports and materials of the Client, in addition to all other remedies available to DRC. Upon a Failure to Pay, DRC may assess a late charge at a rate of one and one-half percent (1-1/2%) per month or the highest rate permitted by law, whichever is less, on all unpaid amounts until paid in full. DRC shall also have the right, at its option, to terminate this agreement for non payment of invoices after 30 days from the date unpaid invoices are rendered (a "Non-Payment Breach"). If the invoice amount is disputed, notice shall be given to DRC within ten (10) days of receipt of the invoice by the Client. The undisputed portion of the invoice will remain due and payable. Late charges shall not accrue on any amounts in dispute. Notwithstanding anything contained in this agreement to the contrary, a Failure to Pay shall under no circumstances be construed as an agreement by DRC to reduce or waive DRC's fees and expenses. The Client shall not agree or otherwise consent to a unilateral reduction or waiver of DRC fees and expenses without the explicit written consent of DRC and any such agreement or consent to such reduction or waiver by the Client without DRC's explicit written consent shall be deemed null and void and constitute a breach of this Agreement (a "Material Breach"). Notwithstanding anything contained in this agreement to the contrary, upon the

occurrence of a Material Breach, DRC shall have the right, at its option, to terminate this agreement upon five (5) business days notice to the Client.

5. **STORAGE**: Client shall assume the risks and DRC shall not be responsible for any damages, liability or expenses incurred in connection with any delay in delivery of or damage to cards, disks, magnetic tapes or any input data furnished by Client unless DRC has agreed in writing to assume such responsibility. Forms storage at DRC beyond a normal 90-day supply will be billed at standard warehousing rates established by DRC.

6. **E-MAIL COMMUNICATIONS**: DRC and the Client and its agents acknowledge that they may wish to communicate electronically with each other at a business e-mail address. However, the electronic transmission of information cannot be guaranteed to be secure or error free and such information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete or otherwise be adversely affected or unsafe to use. Accordingly, each party agrees to use commercially reasonable procedures to check for the then most commonly known viruses and to check the integrity of data before sending information to the other electronically, but each party recognizes that such procedures cannot be a guarantee that transmissions will be virus-free. It remains the responsibility of the party receiving an electronic communication from the other to carry out a virus check on any attachments before launching any documents, whether received on disk or otherwise.

7. **SUPPLIES**: All supplies shall be furnished at Client's expense.

8. **WARRANTY AND RELIANCE**: Client acknowledges and agrees that DRC will take direction from the Client's representatives, employees, agents and/or professionals (collectively, the "Client Parties") with respect to services being provided under this Agreement. Client and DRC agree that DRC may rely upon, and the Client agrees to be bound by, any requests, advice or information provided by the Client Parties to the same extent as if such requests, advice or information were provided by the Client. DRC shall have the right to rely on the accuracy of all data provided by the Client and the Client Parties to DRC. Client is responsible for the accuracy of all programs, data and other information it submits to DRC. The DRC warranty under this agreement shall be limited to the re-running at its expense, of any inaccurate reports provided that such inaccuracies were caused solely as a result of performance hereunder and provided further that DRC shall receive written notice of such inaccuracies within thirty (30) days of delivery of such report. If said notice is not made to DRC within the prescribed time limit Client is due and liable for all charges. Client agrees that the foregoing constitutes the exclusive remedy available to it.

9. **TERM**: This agreement shall be effective from the date upon which it is accepted by DRC as set forth herein and shall remain in force until terminated by either party upon thirty days' written notice to the other party or by DRC upon occurrence of a Non-Payment Breach or a Material Breach, as defined in paragraph 4 above. In the event that a chapter 7 trustee, chapter 11 trustee or chapter 11 liquidating

5/12/2026                                                                                           Page 3 of 9

trustee is appointed, this agreement will remain in effect until an order of the Bankruptcy Court is entered discharging DRC from service and responsibility under this Agreement. The payment obligation and the indemnity obligation set forth in sections 4 and 11 herein, respectively, shall survive termination of this Agreement. In the event this Agreement is terminated, DRC shall coordinate with the Client and, to the extent applicable, the Office of the Clerk of the Bankruptcy Court, for an orderly transfer of record keeping functions and shall provide all necessary staff, services and assistance required for such orderly transfer. Client agrees to pay for such services in accordance with DRC's then existing fees for such services. If termination of this Agreement occurs following entry of an order by the Bankruptcy Court approving DRC's retention under 28 U.S.C. § 156 (c), then the Client shall immediately seek entry of an order (in form and substance reasonably acceptable to DRC) that discharges DRC from service and responsibility under this Agreement and 28 U.S.C. § 156 (c).

**10. TERMS OF AGREEMENT**: The terms of this Agreement prevail over any and all terms contained in Client's purchase order or authorization and no waiver, discharge, or modification of the terms of this Agreement shall bind DRC unless in writing and signed by an authorized representative of DRC.

**11. LIMITATION OF LIABILITY**: Client agrees that the foregoing warranty is in lieu of all other warranties, express or implied, including but not limited to any implied warranty of merchantability, fitness or adequacy for any particular purpose or use, quality, productiveness or capacity. DRC shall be without liability to the Client with respect to anything done or omitted to be done, in accordance with the terms of this Agreement or instructions properly received pursuant hereto, if done in good faith and without negligence or willful or wanton misconduct. DRC's liability to Client or any person claiming through or under Client for any Losses (as defined below) of any kind, even if DRC has been advised of the possibility of such Losses, whether direct or indirect and unless due to gross negligence or willful misconduct of DRC, shall be limited to the total amount billed or billable to Client for the portion of the particular work which gave rise to the alleged loss. In no event shall DRC's liability to Client for any Losses (as defined below), whether direct or indirect, arising out of this Agreement exceed the total amount billed to Client and actually paid to DRC for the services contemplated under this Agreement. In no event shall DRC be liable for any indirect, special or consequential damages such as loss of anticipated profits or other economic loss in connection with or arising out of the services provided for in this Agreement, regardless of whether the claim is for breach of warranty, contract, tort (including negligence), strict liability or otherwise.

**12. INDEMNIFICATION**: The Client shall indemnify and hold DRC and its affiliates, officers, directors, agents, employees, consultants, and subcontractors (collectively, the "Indemnified Parties") harmless, to the fullest extent permitted by applicable law, from and against any and all losses, claims, damages, liabilities, costs, obligations, judgments, causes of action, charges (including, without limitation, costs of preparation and attorneys' fees) and expenses as incurred (collectively, "Losses"), arising out of or relating to (a) this Agreement or DRC's rendering of services pursuant hereto (including any erroneous instructions or information provided to DRC by the Client or the Client Parties for use in providing services under this Agreement), (b) any breach or alleged breach of this Agreement by Client, or (c) any negligence or willful or reckless actions or misconduct of Client or Client Parties with respect

5/12/2026                                                                                              Page 4 of 9

to this Agreement, other than Losses resulting solely from DRC's gross negligence or willful misconduct. Without limiting the generality of the foregoing, "Losses" includes any liabilities resulting from claims by third persons against any Indemnified Parties arising from this Agreement. The Client shall notify DRC in writing promptly of the institution, threat or assertion of any claim of which the Client is aware with respect to the services provided by DRC under this Agreement. Such indemnity shall remain in full force and effect regardless of any investigation made by or on behalf of DRC and shall survive the termination of this Agreement until the expiration of all applicable statutes of limitation with respect to DRC's liabilities.

**13. CONFIDENTIALITY**: Each of DRC and the Client, on behalf of themselves and their respective employees, agents, professionals and representatives, agrees to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the services provided under this Agreement; provided, however, that if either party is required to produce any such information by order of any governmental agency or other regulatory body, it shall provide the other party written notice of such requirement and not less than five (5) business days for such party to request a protective order pertaining to the release of such information, and to the extent such a request is made, no such information shall be released unless and until the request for such a protective order is heard and resolved.

**14. OWNERSHIP OF PROGRAMS**: Unless otherwise agreed in writing, all programs developed by DRC in connection with any services to be performed under this Agreement shall remain the sole property of DRC. All programs and/or systems documentation in the possession of DRC which DRC has agreed in writing to return to the Client, prepared for the Client by DRC, shall be returned to the Client upon demand providing all charges for such programming and/or systems documentation have been paid in full.

**15. SYSTEMS IMPROVEMENTS**: DRC's policy is to provide continuous improvements in the quality of service to its clients. DRC, therefore, reserves the right to make changes in operating procedures, operating systems, programming languages, application programs, time period of accessibility, equipment, and the DRC data center serving the Client, so long as any such changes do not materially interfere with ongoing services provided to the Client in connection with the Client's chapter 11 case.

**16. UNUSUAL MEASURES**: Where the Client requires measures that are unusual and beyond the normal business practice and hours of DRC such as, but not limited to, CPA Audit, Errors and Omissions Insurance, and/or Off-Premises Storage of Data, the cost of such measures, if provided by DRC, shall be charged to the Client. Said charges may be required in advance if DRC deems it appropriate.

**17. JURISDICTION:** In the event that Client commences a case under title 11 of the United States Code, this Agreement shall be subject to approval by the United States Bankruptcy Court for the district in which the Client commences its case (the "Bankruptcy Court") and such court shall retain jurisdiction over all matters regarding this Agreement.

**18. FORCE MAJEURE:** Whenever performance by DRC of any of its obligations hereunder is substantially prevented by reason of any act of God, strike, lock out or other industrial or transportational disturbance, fire, lack of materials, law, regulation or ordinance, war or war conditions, or by reasons of any other matter beyond DRC's reasonable control, then such performance shall be excused and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

**19. NOTICE:** Any notice or other communication required or permitted hereunder shall be in writing and shall be delivered personally, or sent by registered mail, postage prepaid, or overnight courier. Any such notice shall be deemed given when so delivered personally, or, if mailed, five days after the date of deposit in the United States mail, or, if sent by overnight courier, one business day after delivery to such courier, as follows: if to DRC, to: Donlin, Recano & Company, LLC, 200 Vesey Street, 24th Floor, New York, NY 10281, Attention: Roland Tomforde; if to the Client, to: Kirkland & Ellis LLP, 601 Lexington Avenue, New York, NY 10022, Attention: Noelle M. Howard, Esq.

**20. GOVERNING LAW:** This Agreement will be governed by and construed in accordance with the laws of the State of New York (without reference to its conflict of laws provisions).

**21. SEVERABILITY:** All clauses and covenants contained in this Agreement are severable and in the event any of them are held to be invalid by any court, such clause or covenant shall be valid and enforced to the maximum extent as to which it may be valid and enforceable, and this Agreement will be interpreted as if such invalid clauses or covenants were not contained herein.

**22. ASSIGNMENT:** This Agreement and the rights and obligations of DRC and the Client hereunder shall bind and inure to the benefit of any successors or assigns thereto. Neither DRC nor the Client shall assign this Agreement without the written consent of the other party.

**23. GENERAL:** The terms and conditions of this Agreement may be modified by DRC upon one (1) month's prior written notice to Client. Client will not employ any DRC employee within two (2) years from the termination of this Agreement. The term "this Agreement" as used herein includes any future written amendments, modifications, supplements or schedules duly executed by Client and DRC. This Agreement contains the entire agreement between the parties with respect to the subject matter hereof. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one in the same instrument. A facsimile copy, photocopy or imaged copy of this Agreement shall be considered an original copy. The Client shall file an application

with the Bankruptcy Court seeking approval of this Agreement (the "Application"), the form and substance of which shall be reasonably acceptable to DRC, and DRC shall make available a representative to provide a declaration in support of the Application. If an order is entered approving such Application (the "Order"), any discrepancies between this Agreement, the Application and the Order shall be controlled by the Application and Order.

Accepted and Approved:

**Donlin, Recano & Company, LLC**

By:          Roland Tomforde

Signature:   *Roland W. Tomforde*

Title:       Executive Vice President, Bankruptcy Solutions

Date:        5/13/2026


Accepted and Approved:


**GoHealth, Inc.**

By:          Vijay Kotte

Signature:   *[signature]*

Title:       Chief Executive Officer

Date:        May 12, 2026

This Agreement is subject to the terms and conditions set forth herein. Client acknowledges reading and understanding it and agrees to be bound by its terms and conditions and further agrees that it is the complete and exclusive statement of the Agreement between the parties, which supersedes all proposals oral or written and other prior communications between the parties relating to the subject matter of this Agreement.

## SCHEDULE A

| Professional Service | Hourly Rate |
|---|---|
| Senior Bankruptcy Consultant | $60 – $155 |
| Case Manager | $50 – $139 |
| Consultant | $50 – $135 |
| Technology / Programming Consultant | $30 – $70 |
| Clerical | $40 – $50 |

| Noticing Services | |
|---|---|
| Laser Printing / Photocopies | $0.09 per image |
| Personalization / Labels | Waived |
| Fax (Incoming) | Waived |
| Fax Noticing | At cost |
| Postage & Overnight Delivery | At cost |
| Publication Services | At cost |

| Solicitation, Balloting, Schedule / SOFA, Customized Programming | |
|---|---|
| Print & Mail Ballots / Plan Disbursements | Print/hourly fees above; Plan/DS media varies |
| Set-Up, Tabulation & Vote Verification | $86 – $159 per hour |
| Public Securities Solicitation | $86 – $159 per hour |
| Schedule / SOFA Preparation | $86 – $159 per hour |

| Claims Docketing & Management | |
|---|---|
| Website Core Construction | Waived |
| Web Hosting | Waived |
| Creditor Data Storage / Electronic Document Storage | $0.08 per record, monthly |
| Document Imaging | $0.10 per image |
| Electronic Claims Filing | No setup charge or per-claim charge |
| Electronic Docket, Data Transmission & Mail Operations | $0.08 per process |

| Miscellaneous | |
|---|---|
| Virtual Data Room Services | Quoted upon request |
| Escrow Agent Services | Competitive interest rates |
| Call Center Operators | $65 per hour |
| Strategic Communications | $550 per Hour |
| Contract Review | Quoted upon request |
| Out-of-Pocket Expenses (including any required travel) | At cost |
| Customized Programming | Quoted upon request |