**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GOHEALTH, INC., *et al.*,[1] | ) | Case No. 26-10914 [●] |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**MOTION OF DEBTORS FOR ENTRY OF INTERIM
AND FINAL ORDERS (I) AUTHORIZING LIMITED USE OF
CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION
LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS TO
PREPETITION SECURED PARTIES, (III) MODIFYING THE AUTOMATIC STAY,
(IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state as follows in support of this motion. [2]

**Preliminary Statement**

1. The Debtors commenced the above-captioned chapter 11 cases to complete a value-maximizing change of control transaction. To accomplish that, the Debtors require access to liquidity. Substantially all of the Debtors' available cash, including any proceeds generated from operations, constitutes collateral of the Debtors' prepetition secured lenders. Accordingly, the Debtors do not have sufficient unencumbered cash to satisfy their ordinary operating needs, let alone the costs of administering these chapter 11 cases. Immediate access to cash collateral is

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are: GoHealth, Inc. (3805); Blizzard Midco, LLC (3732); Connected Benefits, LLC (2162); e-TeleQuote Insurance, Inc. (2336); ETQ Holdings, LLC (8260); GoHealth Holdings, LLC (3653); GoHealth, LLC (5175); and Norvax, LLC (3063). The location of the Debtors' service address for purposes of these chapter 11 cases is: 222 West Merchandise Mart Plaza, Suite 1750, Chicago, Illinois 60654.

[2] A detailed description of the Debtors and their business, including the facts and circumstances supporting this motion, is set forth in the *Declaration of Vijay Kotte, Chief Executive Officer of GoHealth, Inc., in Support of the Debtors' Chapter 11 Petitions, First Day Motions, and Access to Cash Collateral* (the "First Day Declaration"). Capitalized terms used but not defined in this motion shall have the meanings ascribed to them in the First Day Declaration.

critical to fund these chapter 11 cases and continue ongoing business operations while the Debtors administer these prepackaged chapter 11 cases and seek to confirm and swiftly implement the transactions contemplated by the *Joint Prepackaged Chapter 11 Plan of GoHealth, Inc. and Its Debtor Affiliates* (as may be amended, restated, amended and restated, supplemented, or otherwise modified from time to time, and including all supplements and exhibits thereto, the "Plan").

2.    Given the Debtors' anticipated capital needs, the Debtors and their advisors engaged with the Prepetition Secured Parties (as defined below) in the lead up to these cases to negotiate the terms of consensual use of Cash Collateral (as defined in section 363(a) of the Bankruptcy Code) and ensure a smooth transition into chapter 11.  Specifically, the Debtors negotiated with the Prepetition Secured Parties to develop a budget, adequate protection package, and case timeline to induce the Prepetition Secured Parties to consent to the Debtors' use of their Cash Collateral.  The Debtors and the Prepetition Secured Parties agreed that consensual use of Cash Collateral was appropriate in light of the Debtors' circumstances and anticipated cadence of the chapter 11 cases.  The agreed terms regarding the consensual use of Cash Collateral are set forth in the proposed Interim Order.

3.    The terms and conditions for the Debtors' use of Cash Collateral, as reflected in the proposed Cash Collateral Orders (as defined herein), represent the best option available to the Debtors under the circumstances and constitute a reasonable compromise with the Prepetition Secured Parties, allowing the Debtors to fund necessary operations while completing the transactions contemplated under the Plan.  Without access to these funds, the Debtors, their creditors, and their estates would suffer irreparable harm because the Debtors would not be able to continue operating in the ordinary course, causing an abrupt and pronounced deterioration in the value of the Debtors' assets.  Such a result would jeopardize the proposed restructuring

transactions, which, as set forth in the preliminary voting report filed concurrently herewith, are supported by sufficient holders of claims and interests in each voting class to confirm the Plan. Thus, the Debtors' access to Cash Collateral is fundamental to preserve and maximize the value of their estates for the benefit of all stakeholders.

## Relief Requested

4.      The Debtors seek entry of an interim order, substantially in the form attached hereto as **Exhibit A**, and a final order (the "Interim Order" and the "Final Order," respectively, and together, the "Cash Collateral Orders"): (a) authorizing the Debtors to use Cash Collateral of the Prepetition Secured Parties; (b) granting adequate protection, solely to the extent provided in the Cash Collateral Orders, to the Prepetition Secured Parties; (c) modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms of the Cash Collateral Orders; and (d) granting related relief.  In addition, the Debtors request that the Court schedule a final hearing within approximately 21 days of the commencement of these chapter 11 cases to consider approval of this motion on a final basis.

## Jurisdiction and Venue

5.      The United States District Court for the District of Delaware has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the United States Bankruptcy Court for the District of Delaware (the "Court") under 28 U.S.C. § 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the

Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

6.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7.    The statutory bases for the relief requested herein are sections 105, 361, 362, 363, 503, 506, 507, and 552 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 2002, 4001, and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 2002-1, 4001-2, and 9013-1.

**Background**

8.    On June 7, 2026 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Concurrently with the filing of this motion, the Debtors filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no official committees have been appointed or designated.

**The Debtors Have an Immediate Need for Use of Cash Collateral**

9.    As set forth in the First Day Declaration, without access to Cash Collateral, the Debtors would not be able to satisfy employee compensation obligations, satisfy payables incurred in the ordinary course of business, or fund the administration of these chapter 11 cases. Such failures would cause immediate and irreparable harm to the value of the Debtors' estates to the detriment of all stakeholders.  Access to Cash Collateral will permit the Debtors to satisfy these critical expenses as and when due to maintain operations during the pendency of these chapter 11 cases and ultimately achieve the value-maximizing transactions contemplated by the Plan.

4

**Concise Statement of Material Terms of the Interim Order**

10.    The terms of the Debtors' access to Cash Collateral, as reflected in the Interim Order, were extensively negotiated with the Prepetition Secured Parties and are the most favorable terms that the Debtors were able to obtain under the circumstances.    Pursuant to Bankruptcy Rule 4001(b) and Local Rule 4001-2(a)(i), the below chart contains a summary of the material terms of the proposed use of Cash Collateral.[3]

| **Summary of Material Terms** | | **Order Location** |
|---|---|---|
| **Parties with an Interest in Cash Collateral** Bankruptcy Rule 4001(b)(1)(B) | All parties set forth below shall collectively be referred to as the "Prepetition Secured Parties": <br><br> • **Prepetition First Lien Agent**.  Blue Torch Finance, LLC, as the administrative agent and collateral agent. <br><br> • **Prepetition First Lien Lenders**.  The lenders party to the Prepetition First Lien Credit Agreement with respect to the Prepetition First Lien Loans and any other Prepetition First Lien Obligations. <br><br> • **Prepetition Super Priority Agent**.  Blue Torch Finance, LLC, as the administrative agent and collateral agent. <br><br> • **Prepetition Super Priority Lenders**.  The lenders party to the Prepetition Super Priority Credit Agreement with respect to the Prepetition Super Priority Loans and any other Prepetition Super Priority Obligations. | ¶ E |
| **Amount of Cash Collateral and Purposes for Use of Cash Collateral** Bankruptcy Rule 4001(b)(1)(B); Local Rule 4001-2(a)(i)(A) | To prevent immediate and irreparable harm to the Debtors' estates, the Debtors are authorized, subject to the terms and conditions of the Interim Order (including the Carve-Out) to use all Cash Collateral solely in accordance with the Interim Order and the Approved Budget and subject to Permitted Variances. | ¶ 2 |
| **Adequate Protection** Bankruptcy Rule 4001(b)(1)(B); Local Rules 4001-2(a)(i)(B); 4001-2(a)(i)(G), (K) | Super Priority Adequate Protection Liens.  The Prepetition Super Priority Agent, for the benefit of the Prepetition Super Priority Secured Parties, is granted additional and replacement valid, binding, enforceable, non-avoidable, effective and automatically perfected liens on, and security interests in (the "Super Priority Adequate Protection Liens") any and all tangible and intangible pre- and postpetition property of the Debtors, whether existing before, on, or arising after the Petition Date, together | ¶ 6 |

---

[3]    The summaries contained in this motion are qualified in their entirety by the provisions of the Interim Order. To the extent anything in this motion is inconsistent with the Interim Order, the terms of the Interim Order shall control.  Capitalized terms used but not defined in this chart have the meanings ascribed to them in the Interim Order.

5

| **Summary of Material Terms** | **Order Location** |
|---|---|
| with any proceeds thereof, excluding claims and causes of action under chapter five of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code ("Avoidance Actions"), but upon entry of the Final Order, including proceeds of Avoidance Actions (collectively, the "Adequate Protection Collateral"). The Super Priority Adequate Protection Liens on the Adequate Protection Collateral shall be senior to all other liens, except for the Permitted Prior Liens, and subject to the Carve-Out.<br><br>First Lien Adequate Protection Liens. The Prepetition First Lien Agent, for the benefit of the Prepetition First Lien Secured Parties, is granted, additional and replacement valid, binding, enforceable, non-avoidable, effective and automatically perfected liens on, and security interests in (the "First Lien Adequate Protection Liens" and, together with the Super Priority Adequate Protection Liens, the "Adequate Protection Liens"), the Adequate Protection Collateral. The First Lien Adequate Protection Liens are subject to the Carve-Out and junior to the Prior Permitted Liens and the Super Priority Adequate Protection Liens.<br><br>Super Priority Section 507(b) Claims. The Prepetition Super Priority Agent, for the benefit of the Prepetition Super Priority Secured Parties, is hereby granted allowed administrative expense claims against each Debtor with the priority set forth in Bankruptcy Code section 507(b) (the "Super Priority Adequate Protection Claims"); provided that the Super Priority Adequate Protection Claims shall be subject and subordinate to the Carve-Out. The Super Priority Adequate Protection Claims shall be payable from and have recourse to all Adequate Protection Collateral, including, subject only to entry of the Final Order, any proceeds or property recovered in connection with the pursuit of the Avoidance Actions.<br><br>First Lien Section 507(b) Claims. The Prepetition First Lien Agent, for the benefit of the Prepetition First Lien Secured Parties, is hereby granted an allowed administrative expense claim against each Debtor with the priority set forth in Bankruptcy Code section 507(b) (the "First Lien Adequate Protection Claims" and, together with the Super Priority Adequate Protection Claims, the "Adequate Protection Claims"); provided that, the First Lien Adequate Protection Claims shall be subject and subordinate to the Super Priority Adequate Protection Claims and the Carve-Out. The First Lien Adequate Protection Claims shall be payable from and have recourse to all Adequate Protection Collateral of the Debtors, including, subject only to entry of the Final Order, any proceeds or property recovered in connection with the pursuit of the Avoidance Actions. | |
| **Limitation of the Court's Power and/or Discretion** Local Rule 4001-2(a)(i)(C) | The Interim Order does not contain any provisions that specifically limit the Court's authority to enter future orders in the Debtors' chapter 11 cases except to the extent any such orders would be inconsistent with the rights granted under the Interim Order. | ¶ 12 |

| **Summary of Material Terms** | | **Order Location** |
|---|---|---|
| **Provisions that Provide for the Funding of Non-Debtor Affiliates** Local Rule 4001-2(a)(i)(D) | The Interim Order does not permit the Debtors to transfer any funds to any non-Debtor affiliate or subsidiary other than in accordance with an order of the Court granting the *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue to Operate the Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Continue to Perform Intercompany Transactions, (II) Granting Administrative Expense Status to Postpetition Intercompany Transactions, and (III) Granting Related Relief,* filed concurrently herewith. | N/A |
| **Budget** Bankruptcy Rule 4001(b)(1)(B); Local Rules 4001-2(a)(i)(E) and 4001-2(a)(iii) | The use of Cash Collateral is subject to a budget approved by the Required Lenders (as defined in the Plan).  The Initial Budget is attached to the Interim Order as Exhibit 1. | ¶¶ J(ii), 2, 3 |
| **Carve-Out** Bankruptcy Rule 4001(b)(1)(B); Local Rule 4001-2(a)(i)(F) | The Interim Order provides for a "Carve-Out" of certain statutory fees, allowed professional fees of the Debtors and any official committee of unsecured creditors appointed in these chapter 11 cases pursuant to section 328 or 1103 of the Bankruptcy Code, and a Post-Carve-Out Trigger Notice Cap, all as detailed therein. | ¶ 4 |
| **Postpetition Liens on Unencumbered Assets** Local Rule 4001-2(a)(i)(G) | Subject in all cases to the Carve-Out and the Permitted Prior Liens, Adequate Protection Collateral includes any and all tangible and intangible pre- and postpetition property of the Debtors, excluding Avoidance Actions, *provided* that Adequate Protection Collateral shall include proceeds of Avoidance Actions upon entry of the Final Order. | ¶¶ 4, 6 |
| **Milestones** Local Rule 4001-2(a)(i)(H) | The Interim Order requires the Debtors to comply with the following milestones, unless such milestones are extended or waived by the Required Lenders:<br><br>• no later than 11:59 p.m. (prevailing Eastern Time) on the date that is one (1) day after the Petition Date, the Debtors shall file the Plan and Disclosure Statement (as defined in the Plan);<br><br>• no later than 11:59 p.m. (prevailing Eastern Time) on the date that is three (3) business days after the Petition Date, subject to Court availability, the Court shall have entered the Interim Order;<br><br>• no later than 11:59 p.m. (prevailing Eastern Time) on the date that is forty (40) calendar days after the Petition Date, subject to Court availability, the Court shall have entered the Final Order;<br><br>• no later than 11:59 p.m. (prevailing Eastern Time) on the date that is fifty (50) calendar days after the Petition Date, subject to Court availability, the Court shall have entered an order confirming the Plan;<br><br>• no later than 11:59 p.m. (prevailing Eastern Time) on July 31, 2026, the Effective Date (as defined in the Plan) shall have occurred; provided, however, this milestone may be extended by sixty (60) calendar days at the option of the Required Lenders. | ¶10(15) |

| **Summary of Material Terms** | | **Order Location** |
|---|---|---|
| **Joint Liability**<br>Local Rule 4001-2(a)(i)(J) | With the exception of noting that certain of the Debtors are jointly and severally indebted and liable for the Prepetition Secured Obligations, the Interim Order does not contain any provision that governs the joint liability of the Debtors. | N/A |
| **Payment of Adequate Protection Fees Without Review**<br>Local Rule 4001-2(a)(i)(K) | The Interim Order provides for the payment of the reasonable and documented prepetition and postpetition fees and out-of-pocket expenses of (i) professionals retained by the Ad Hoc TL Group (as defined in the Plan) (the "Ad Hoc TL Group Professionals"), including but not limited to (A) Akin Gump Strauss Hauer & Feld LLP, as counsel, (B) FTI Consulting, Inc., as financial advisor, and (C) Young Conaway Stargatt & Taylor, LLP, as Delaware counsel and (ii) professionals retained by the Ad Hoc Revolver Group (as defined in the Plan), including, but not limited to, (A) Cahill Gordon & Reindel LLP, as counsel, (B) RPA Advisors, LLC, as financial advisor, and, (C) Morris, Nichols, Arsht & Tunnell LLP, as Delaware counsel (the "Ad Hoc Revolver Group Professionals" and, collectively with the Ad Hoc TL Group Professionals, the "Lender Professionals").<br><br>The Interim Order also provides that the Lender Professionals shall not be required to file motions or applications with respect to the fees and expenses incurred by the Lender Professionals (the "Lender Professionals Fees"); *provided*, *however*, that any time such professionals seek payment of fees and expenses from the Debtors, each professional shall provide summary copies of its fee and expense statements or invoices (which shall not be required to contain time entries but which shall include a general, brief description of the nature of the matters for which services were performed, which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine) to counsel to the Debtors, the U.S. Trustee, and counsel to any official committee of unsecured creditors; *provided* that at any time a Lender Professional seeks payment of Lender Professional Fees from the Debtors, the Debtors reserve their rights to request additional detail regarding the services rendered and expenses incurred by such Lender Professional. | ¶¶ 6, 13 |
| **Limitation on Estate Funds Related to the Challenge Period**<br>Local Rule 4001-2(a)(i)(L) | The limitation on use of estate funds related to the Challenge Period is $50,000. | ¶¶14-15 |
| **Termination Events**<br>Bankruptcy Rule 4001(b)(1)(B); Local Rule 4001-2(a)(i)(M) | "Termination Events" under the Interim Order include the following:<br><br>• The Debtors' failure to comply with any provision of the Interim Order and such failure to comply (if curable) shall not have been cured within five (5) business days following provision of notice of such failure from the Prepetition Agents;<br><br>• The Debtors shall have breached the Variance Covenant or Minimum Liquidity Covenant for any Testing Period with respect to an | ¶ 10 |

| **Summary of Material Terms** | **Order Location** |
|---|---|
| Approved Budget and provided notice thereof to the Prepetition Agents;<br><br>• The failure of the Debtors to make any payment due under the Interim Order within five (5) business days after such payment becomes due;<br><br>• The date of the Debtors' filing an application, motion, or other pleading seeking to amend, modify, reverse, revoke, stay, rescind, vacate, supplement, or extend the Interim Order without the prior written consent of the Required Lenders;<br><br>• The Interim Order ceases, for any reason, to be in full force and effect;<br><br>• The Court shall have entered an order amending, reversing, revoking, staying, rescinding, vacating, supplementing, extending, or otherwise modifying the Interim Order, without the consent of the Required Lenders, or allowing the use of Prepetition Collateral or Adequate Protection Collateral on any terms other than as set forth in the Interim Order, without the consent of the Required Lenders;<br><br>• The date of the Debtors' filing of any application, motion, or other pleading seeking approval of debtor in possession financing without the consent of the Required Lenders, or the entry of an order approving debtor in possession financing for the Debtors without the consent of the Required Lenders;<br><br>• The entry of any postpetition judgment against the Debtors in excess of $750,000;<br><br>• Except with respect to applications for the payment of fees of Professional Persons, the date an application, motion, or other pleading is filed by the Debtors for the approval of any superpriority claim or any lien that is *pari passu* with or senior to the Adequate Protection Claims, the Adequate Protection Liens, the Prepetition Liens, or the Prepetition Secured Obligations without the prior written consent of the Required Lenders;<br><br>• The date any of the Debtors or any affiliate of the Debtors files any pleading or commences any action against any Prepetition Secured Party challenging the validity or enforceability of any of the Prepetition Secured Obligations or any of the Prepetition Liens or seeking to avoid, disallow, subordinate, or recharacterize any claim, lien, or interest held by any of the Prepetition Secured Parties arising under or related to any of the Prepetition Secured Obligations;<br><br>• The date any court enters an order dismissing these chapter 11 cases, converting these chapter 11 cases to cases under chapter 7 of the Bankruptcy Code (each, a "Successor Case"), appointing a chapter 11 trustee in any of these chapter 11 cases, or an examiner with expanded powers relating to the operation of the Debtors or administration of any of these chapter 11 cases, or terminates the Debtors' exclusive periods under Bankruptcy Code section 1121, unless, in each case, consented to in writing by the Required Lenders; | |

9

| | **Summary of Material Terms** | **Order Location** |
|---|---|---|
| | • The Court has entered an order granting relief from the automatic stay in order to permit any party to proceed against any Prepetition Collateral or Adequate Protection Collateral with a fair market value in excess of $750,000; <br><br> • The Debtors take any action to, or publicly state that the Debtors will, not seek confirmation of the Plan, including revoking or withdrawing the Plan, without the Required Lenders' consent; <br><br> • One or more of the conditions precedent to the Effective Date (as defined in the Plan) of the Plan is or becomes impossible to satisfy at any time and Required Lenders have not waived such condition(s); and <br><br> • The Milestones are not met, unless extended or waived by the Required Lenders. | |
| **Remedies upon Termination Event** <br> Bankruptcy Rule 4001(b)(1)(B); Local Rules 4001-2(a)(i)(M) and 4001-2(a)(i)(S) | The Debtors shall provide notice to counsel to the Prepetition Agents, the Lender Professionals, counsel to any statutory committee appointed in these chapter 11 cases, and the U.S. Trustee immediately upon knowledge of the occurrence of any Termination Event. Upon the occurrence of a Termination Event, following the giving of no less than five (5) business days' (the "Notice Period") written notice, which may be given by email, to counsel to the Debtors, the U.S. Trustee, and counsel to any official committee of unsecured creditors, and assuming no waiver of the Termination Event by the Prepetition Agents (acting at the direction of the Required Lenders), (i) the authorization for the Debtors' use of Cash Collateral shall terminate, and (ii) the Prepetition Secured Parties may seek to exercise any rights and remedies available to them under the Prepetition Credit Documents, the Interim Order, or applicable law, subject to the Carve-Out (and the automatic stay shall be automatically terminated at the end of the Notice Period to allow them to do so, unless the Court orders otherwise); *provided* that, until expiration of the Notice Period, the Debtors may continue to use Cash Collateral to make payments in respect of expenses critical to keep the business of the Debtors operating in accordance with the Approved Budget; and *provided*, *further*, that the Debtors may continue to use Cash Collateral during or after expiration of the Notice Period solely to the extent necessary to fund the Carve-Out Reserve pursuant to paragraph 4 of the Interim Order. | ¶ 11 |
| **Validity, Perfection, and Amount of Obligations Securing Prepetition Liens, Binding Effect of Stipulations on Third Parties, and Challenge Period** <br> Bankruptcy Rule. 4001(b)(1)(B); Local Rule 4001-2(a)(i)(Q) | The Debtors' acknowledgments, stipulations, admissions, waivers, and releases contained in the Interim Order shall be binding upon the Debtors, their estates, and any successor or assigns thereto upon entry of the Interim Order. The acknowledgments, stipulations, admissions, waivers, and releases contained in the Interim Order shall also be binding upon all other parties in interest, including any Committee, or any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors (a "Trustee"), unless (i) such party, having obtained the requisite standing, has duly filed an adversary proceeding or contested matter (subject to the limitations contained in the Interim Order) challenging the validity, perfection, priority, extent, or enforceability of the Prepetition Liens or the Prepetition Secured Obligations, or otherwise asserting or prosecuting any other claims, counterclaims or causes of action, | ¶ 15 |

| **Summary of Material Terms** | **Order Location** |
|---|---|
| | objections, contests, or defenses (each, a "Challenge") against the Prepetition Secured Parties in connection with any matter related to the Prepetition Credit Documents, the Prepetition Collateral, the Prepetition Liens, or the Prepetition Secured Obligations by the date that is no later than 75 calendar days from the entry of the Interim Order; provided that subject to entry of a Final Order, such party shall have filed such Challenge no later than the earlier of (A) confirmation of a chapter 11 plan for the Debtors or (B) 75 calendar days from the entry of the Interim Order, subject to further written extension (which writing may be in the form of e-mail by counsel) by the Prepetition Agents (at the direction of the Required Lenders) (the "Challenge Period"); provided that in the event that, prior to the expiration of the Challenge Period, (x) any of these cases is converted to a Successor Case or (y) a chapter 11 trustee is appointed, then, in each such case, the Challenge Period shall be extended for a period of 45 calendar days solely with respect to any Trustee, commencing on the occurrence of either of the events described in the foregoing clauses (x) and (y); and (ii) an order is entered by a court of competent jurisdiction and becomes final and non-appealable in favor of the party asserting any Challenge sustaining any Challenge in such duly filed adversary proceeding or contested matters, subject to the terms of the Interim Order. | |
| **Waiver/Modification of Automatic Stay** Bankruptcy Rule 4001(b)(1)(B); Local Rule 4001-2(a)(i)(S) | The automatic stay shall be modified to the extent necessary to allow the Prepetition Secured Parties to provide any notices to the Debtors or take any other action as contemplated by and in accordance with the Interim Order. | ¶ 24 |
| **Provisions Limiting the Rights of Parties in Interest** Local Rule 4001-2(a)(i)(T) | The Interim Order does not contain any provisions that specifically limit what parties in interest may raise at any emergency hearing scheduled during the Notice Period. | ¶ 11 |
| **Section 506(c) and 552(b) Waiver** Local Rule 4001-2(a)(i)(V); 4001-2(a)(i)(W) | Subject to entry of the Final Order, waiving (a) the Debtors' right to surcharge the Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code and (b) any "equities of the case" exception under section 552(b) of the Bankruptcy Code. | ¶¶ 19–20 |
| **Marshaling Waiver** Local Rule 4001-2(a)(i)(X) | Subject to entry of the Final Order, waiving the equitable doctrine of "marshaling" and other similar doctrines with respect to the Adequate Protection Collateral, Adequate Protection Obligations, Prepetition Collateral, or the Prepetition Secured Obligations. | ¶ 20 |

11

**Explanation for Inclusion of Significant Provisions Pursuant to Local Rule 4001-2(a)(i)**

I.      **The Significant Provisions Are Appropriate and Justified Under the Circumstances of These Chapter 11 Cases.**

11.      Local Rule 4001-2(a)(i) requires that the Debtors explain the reason for including certain significant provisions described in Local Rules 4001-2(a)(i)(N)–(X) (collectively, the "Significant Provisions").[4]  The Debtors believe that each of the Significant Provisions, as well as the Carve-Out, is justified and necessary in the context and circumstances of these chapter 11 cases.

A.      **The Scope of the Carve Out Is Appropriate (Local Rule 4001-2(a)(i)(F)).[5]**

12.      The proposed Adequate Protection is subject to the Carve-Out, pursuant to which funds will be regularly reserved and funded into the Funded Reserve Account during the pendency of these chapter 11 cases to ensure the timely payment of Allowed Professional Fees.  The Funded Reserve Account is funded each week in an amount equal to the sum of (A) the greater of (1) the aggregate unpaid amount of all Estimated Fees and Expenses reflected in the Weekly Statements delivered on the immediately prior Wednesday to the Debtors and the Prepetition Agents, and (2) the aggregate amount of unpaid Allowed Professional Fees contemplated to be incurred in the Approved Budget during such week, *plus* (B) the Post-Carve-Out Trigger Notice Cap, *plus* (C) an amount equal to the amount of Allowed Professional Fees set forth in the Approved Budget for the two weeks occurring after the most recent Calculation Date.  The Funded Reserve Account will maintain a minimum balance of $500,000.

---

[4]     Local Rules 4001-2(a)(i)(N), (O), (P), and (R) are not applicable to the Interim Order.  In addition, Local Rules 4001-2(a)(i)(U)–(X) are only applicable upon entry of the Final Order.

[5]     Capitalized terms used but not defined in this section have the meanings ascribed to them in the Interim Order.

13.     Without the Carve-Out, the Debtors and other parties in interest may be deprived of certain rights and powers, including the right to select their own professionals, because the services for which professionals may be paid in these chapter 11 cases would be restricted. *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) (observing that courts insist on carve-outs for professionals representing parties in interest because "[a]bsent such protection, the collective rights and expectations of all parties-in-interest are sorely prejudiced"). Moreover, the Carve-Out serves to enhance the value of these estates because, in the absence of a carveout, "nobody will represent the debtor or the committee and the case will fall apart, further diminishing the overall value of the secured creditor's collateral[.]" *In re Molycorp, Inc.*, 562 B.R. 67, 76 n. 39 (Bankr. D. Del. 2017).  The Carve-Out does not directly or indirectly deprive the Debtors' estates or other parties in interest of possible rights and powers.  Additionally, the Carve-Out protects against administrative insolvency on account of process costs during the course of these chapter 11 cases by ensuring that assets remain for any payment owing to the Clerk of the Court or the U.S. Trustee pursuant to 28 U.S.C. § 1930 and payment of professional fees of the Debtors and any statutory committee.

**B.      The Findings of Validity, Perfection, or Amount of Prepetition Liens and Challenge Period Are Appropriate (Local Rule 4001-2(a)(i)(Q)).**

14.     Local Rule 4001-2(a)(i)(Q) requires explicit disclosure of provisions that bind the estate or other parties in interest with respect to the validity, perfection, or amount of a secured creditor's prepetition lien or the waiver of claims against a secured creditor without first giving parties in interest at least 75 days from the entry of the order to investigate such matters.

15.     Here, the Interim Order complies with this requirement by providing parties in interest, including any committee appointed in these chapter 11 cases, with requisite standing to file an adversary proceeding against the Prepetition Secured Parties in connection with any matter

related to the Prepetition Credit Documents, the Prepetition Collateral, the Prepetition Liens, or the Prepetition Secured Obligations by the date that is no later than 75 calendar days from the entry of this Interim Order; *provided* that subject to entry of a Final Order, such party shall have filed such Challenge no later than the earlier of (A) confirmation of a chapter 11 plan for the Debtors or (B) 75 calendar days from the entry of this Interim Order, subject to further written extension by the Prepetition Agents (at the direction of the Required Lenders).  In the event that the entry of an order confirming the Plan occurs fewer than 75 calendar days after entry of the Interim Order, waiver of Local Rule 4001-2(a)(i)(Q) is appropriate under the circumstances because the expedited timeline of these chapter 11 cases is necessary to maximize value for the benefit of all stakeholders,

      **C.**      **The Provisions Modifying the Automatic Stay, Providing for a Cash Collateral Remedies Notice Period, and Providing for a Default Notice Hearing Are Appropriate (Local Rules 4001-2(a)(i)(S), (T)).**

16.      Local Rules 4001-2(a)(i)(S) and (T) require explicit disclosure of provisions that modify the automatic stay upon a Termination Event to enforce remedies without a remedies notice period (the "Notice Period") and provisions that seek to limit what parties in interest may raise at an emergency hearing during the Notice Period.  The Interim Order provides for a standard five business-day remedies notice period for all Termination Events and does not limit what parties in interest may raise during an emergency hearing scheduled during the Notice Period.  Until the expiration of the Notice Period, the Debtors may continue to use Cash Collateral to pay for expenses critical to keep their business operating in accordance with the Approved Budget.

17.      In light of the foregoing, the Debtors submit that the Significant Provisions are appropriate under the facts and circumstances of these chapter 11 cases.  Accordingly, the Significant Provisions in the Interim Order should be approved.

14

**The Debtors' Prepetition Indebtedness and Need to Use Cash Collateral**

**I.    GoHealth's Prepetition Capital Structure.**

18.    As of the Petition Date, the Debtors have approximately $772 million in total funded debt obligations outstanding, including accrued and unpaid interest on the principal amount under each credit facility.  The following table depicts the Debtors' prepetition capital structure.

| Type | Maturity | Approximate Amount Outstanding |
|---|---|---|
| *Secured Debt* | | |
| Prepetition First Lien Loans | November 4, 2029 | $598 million |
| Prepetition Super Priority Loans | August 5, 2029 | $174 million[6] |
| *Total Funded Debt:* | | $772 million |
| *Equity Interests[7]* | | |
| GoHealth Holdings Interests | N/A | 29,302,494 shares |
| GoHealth, Inc. Preferred Stock | N/A | 50,000 shares |
| GoHealth, Inc. Class A Common Stock | N/A | 16,686,419 shares |
| GoHealth, Inc. Class B Common Stock | N/A | 12,616,075 shares |

**A.    Prepetition First Lien Credit Agreement.**

19.    The Debtors are party to that certain Credit Agreement, dated as of September 13, 2019 (as amended by that certain Amendment No. 1 to the Credit Agreement and Incremental Facility Amendment, dated as of March 20, 2020, as further amended by that certain Incremental Facility Agreement and Technical Amendment No. 2, dated as of May 7, 2020, as further amended by that certain Incremental Facility Amendment No. 3, dated as of June 11, 2020, as further amended by that certain Amendment No. 4 and Incremental Facility Agreement, dated as of May 7, 2021, as further amended by that certain Amendment No. 5 to Credit Agreement and Incremental Facility Agreement, dated as of June 11, 2021, as further amended by that certain Amendment No. 6 to Credit Agreement and Incremental Facility Agreement, dated as of

---

[6]    This amount is inclusive of the MOIC Premium (as defined in the Prepetition Super Priority Credit Agreement).

[7]    As of May 12, 2026.

November 10, 2021, as further amended by that certain Amendment No. 7 to Credit Agreement, dated as of March 14, 2022, as further amended by that certain Amendment No. 8 to Credit Agreement, dated as of August 12, 2022, as further amended by that certain Amendment No. 9 to Credit Agreement, dated as of November 9, 2022, as further amended by that certain Amendment No. 10 to Credit Agreement, dated as of March 15, 2023, as further amended by that certain Amendment No. 11 to the Credit Agreement, dated as of March 12, 2024, as further amended by that certain Amendment No. 12 to the Credit Agreement, dated as of October 15, 2024, as amended and restated by that certain Amendment and Restatement Agreement, dated as of November 4, 2024, as further amended by that certain Amendment No. 13 to the Credit Agreement, dated as of June 30, 2025, and as further amended by that certain Amendment No. 14 to the Credit Agreement, dated as of August 6, 2025 and as further amended, restated, amended and restated, supplemented or otherwise modified from time to time prior to the Petition Date, the "Prepetition First Lien Credit Agreement"), and together with all related security agreements, collateral agreements, pledge agreements, control agreements, guarantees and other documents, by and among Blizzard Midco, LLC, a Delaware limited liability company, as holdings, Norvax, LLC, a Delaware limited liability company, as borrower, Blue Torch Finance, LLC as the administrative agent and collateral agent party thereto (in such capacities, the "Prepetition First Lien Agent") and the lenders party thereto (the "Prepetition First Lien Lenders" and, together with the Prepetition First Lien Agent, the "Prepetition First Lien Secured Parties"), the Prepetition First Lien Lenders provided term loans (the "Prepetition Term Loans") and revolving loans (the "Prepetition Revolving Loans" and, together with the Prepetition Term Loans, the "Prepetition First Lien Loans").

20.     The Prepetition First Lien Term Loans bear interest at the rate of SOFR plus 7.50%, subject to the borrower's election to PIK a portion of the interest, in which case the interest rate is

Adjusted Term SOFR plus 8.00% (of which Adjusted Term SOFR plus 4.50% shall be cash and 3.50% PIK).  The First Lien Term Loans mature on November 4, 2029, and as of the Petition Date, the outstanding principal amount of the First Lien Term Loans is approximately $575.7 million.

**B.      Prepetition Super Priority Credit Agreement.**

21.     The Debtors are party to that certain Superpriority Senior Secured Credit Agreement, dated as of August 6, 2025 (as amended, restated, amended and restated, supplemented or otherwise modified from time to time prior to the Petition Date, the "Prepetition Super Priority Credit Agreement" and together with the Prepetition First Lien Credit Agreement, the "Prepetition Credit Agreements"), and together with all related security agreements, collateral agreements, pledge agreements, control agreements, guarantees and other documents, by and among Blizzard Midco, LLC, a Delaware limited liability company, as holdings, Norvax, LLC, a Delaware limited liability company, as borrower, Blue Torch Finance, LLC, as the administrative agent and collateral agent, (in such capacities, the "Prepetition Super Priority Agent" and, together with the Prepetition First Lien Agent, the "Prepetition Agents") and the lenders party thereto (the "Prepetition Super Priority Lenders" and, together with the Prepetition Super Priority Agent, the "Prepetition Super Priority Secured Parties" and, the Prepetition Super Priority Secured Parties together with the Prepetition First Lien Secured Parties, the "Prepetition Secured Parties"), the Prepetition Super Priority Lenders provided new money term loans (the "Prepetition New Money Term Loans") and rolled term loans (the "Prepetition Rolled Term Loans" and, together with the Prepetition New Money Term Loans, the "Prepetition Super Priority Loans").

22.     The Prepetition Super Priority Loans bear interest in cash at the rate of, at the Debtors' election, SOFR plus 5.50% or ABR plus 4.50% and mature on August 5, 2029. In addition, the Prepetition New Money Term Loans are subject to a 2.00x multiple-on-invested-capital (the "MOIC"), payable in cash upon partial or full repayment, prepayment, maturity, or

acceleration of the Prepetition Super Priority Loans. The MOIC steps down to 1.75x for repayments occurring between January 1, 2026 and April 1, 2027. As of the Petition Date, the outstanding principal amount of the Prepetition Super Priority Loans, excluding the MOIC, is approximately $117.4 million.

### C. Intercreditor Agreement.

23. The relationship between the Super Priority Credit Facility and the First Lien Credit Facility (collectively, the "Prepetition Term Loan Facilities") is governed by certain Superpriority Intercreditor Agreement, dated as of August 6, 2025, by and among Blizzard Midco, LLC, a Delaware limited liability company, as holdings, Norvax, LLC, a Delaware limited liability company, as borrower, the subsidiaries of the borrower party thereto, the Initial Senior Representative (as defined therein), and the Initial Junior Representative (as defined therein) (the "ICA"). The ICA provides that the Prepetition First Liens are junior to the Prepetition Super Priority Liens with respect to the Shared Collateral (as defined in the ICA).

### D. Equity Interests.

24. Debtor GoHealth, Inc. is a holding company that operates and conducts business through GoHealth Holdings, LLC in an organizational structure commonly referred to as an umbrella partnership-C-corporation ("Up-C") structure. Pursuant to such Up-C structure, GoHealth, Inc. holds a majority of the outstanding GoHealth Holdings Interests and is the sole managing member of GoHealth Holdings, while a minority of GoHealth Holdings Interests are held by other members of GoHealth Holdings. As is customary for a company organized in an Up-C structure, GoHealth, Inc.'s certificate of incorporation authorizes the board of directors to issue shares of preferred stock and two classes of common stock, GoHealth, Inc. Class A Common Stock, and GoHealth, Inc. Class B Common Stock (together, the "Common Stock").

18

25.    ***GoHealth Holdings Interests.***  Prior to the Company's IPO, GoHealth Holdings had approximately 295.6 million units issued and outstanding.  In connection with the IPO and the Up-C structure put into place, a portion of the GoHealth Holdings Interests were contributed to GoHealth Inc., while the rest remained outstanding.  As of May 12, 2026, approximately 29.3 million units of GoHealth Holdings Interests remain outstanding, approximately 16.7 million of which are held by GoHealth, Inc., and approximately 12.6 million of which are held by third parties.

26.    The holders of GoHealth Holdings Interests may, subject to certain exceptions, from time to time at each of their options require GoHealth Holdings to redeem all or a portion of their GoHealth Holdings Interests (along with an equal number of shares of Class B Common Stock (and such shares shall be immediately cancelled)) in exchange for, at GoHealth, Inc.'s election, newly-issued shares of Class A Common Stock on a one-for-one basis, or to the extent available, cash, in each case, in accordance with the terms of the GoHealth Holdings governing documents.  The GoHealth Holdings Interests are structurally senior to the GoHealth, Inc. Preferred Stock (as defined below).

27.    ***GoHealth, Inc. Preferred Stock***.  On September 23, 2022, GoHealth raised $50 million from certain investors through the issuance of 50,000 shares of Series A Convertible Perpetual Preferred Stock (the "GoHealth, Inc. Preferred Stock").  The Certificate of Designations, dated as of September 23, 2022 (the "COD"), that governs the GoHealth, Inc. Preferred Stock sets forth a variety of rights to which the GoHealth, Inc. Preferred Stock are entitled.  For example, dividends on each share of GoHealth, Inc. Preferred Stock accrue at an annual rate equal to 7.00%.

28.    The GoHealth, Inc. Preferred Stock are also convertible at the option of the holders thereof into GoHealth, Inc. Class A Common Stock in accordance with the COD.  Alternatively,

a holder of GoHealth, Inc. Preferred Stock may instead elect to receive upon conversion one share of Series A-1 Convertible Non-Voting Perpetual Preferred Stock (the "A-1 Preferred Stock") for every 1,000 shares of GoHealth, Inc. Class A Common Stock otherwise deliverable upon conversion and cash in lieu of any fractional shares of A-1 Preferred Stock. Holders of A-1 Preferred Stock are only entitled to dividends if GoHealth declares such dividends. As of the date hereof, no A-1 Preferred Stock are issued and outstanding.

29.     The GoHealth, Inc. Preferred Stock are senior to the Common Stock with respect to dividend rights and rights on the distribution of assets on any liquidation, dissolution, or winding up.

30.     *GoHealth, Inc. Common Stock.* As of May 12, 2026, approximately 16.7 million shares of GoHealth, Inc. Class A Common Stock are issued and outstanding, which includes an aggregate of 4,766,219 shares of GoHealth, Inc. Class A Common Stock issued to the holders of Prepetition First Lien Loans as consideration for their entry into the 14th Amendment. The GoHealth, Inc. Class A Common Stock trades on The Nasdaq Global Market under the ticker symbol "GOCO" and has both voting and economic rights.

31.     In connection with the IPO and the Up-C structure, GoHealth Inc. issued Class B Common Stock to holders of GoHealth Holdings Interests, at a one-to-one ratio, to reflect the voting rights of the GoHealth Holdings Interest holders and in accordance with GoHealth, Inc.'s and GoHealth Holdings' respective organizational documents. Class B Common Stock has voting rights but does not have economic rights.

## II.   The Debtors' Immediate Need to Use Cash Collateral[8]

32.     As set forth in the First Day Declaration, and as described herein, the Debtors need to use cash on hand and cash generated from operations to fund their business throughout these chapter 11 cases, pursue confirmation of the Plan, and avoid immediate and irreparable harm. *See* First Day Decl. ¶¶ 84–91.   As of the Petition Date, the Debtors estimate that they have approximately $17.7 million of available cash on hand, all of which is subject to the Prepetition Secured Parties' security interests and thus constitutes the Prepetition Secured Parties' Cash Collateral.   The Debtors have determined that access to Cash Collateral will be sufficient to continue ordinary course operations during their brief time in chapter 11 while simultaneously allowing the Debtors to implement the Plan, providing meaningful recovery to all stakeholders.

33.     The Debtors, with the assistance of their advisors, developed a six-week cash flow forecast (the "Initial Budget") for the use of Cash Collateral during the chapter 11 cases. The Debtors believe the Initial Budget establishes that the Debtors will have adequate liquidity during the interim period as required by Local Rule 4001-2(a)(iii).   The Initial Budget contains line items for cash flows anticipated to be received and disbursed during the time period for which the Initial Budget is prepared.   The Debtors believe that the Initial Budget includes all reasonable, necessary, and foreseeable expenses to be incurred in connection with the operation of their business for the period set forth in the Initial Budget.

---

[8]   The Bankruptcy Code defines "cash collateral" as follows:

> [C]ash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

11 U.S.C. § 363(a).

**Basis for Relief**

I.     **The Debtors' Request to Use Cash Collateral and Proposed Adequate Protection Is Appropriate.**

34.     Section 363 of the Bankruptcy Code governs the Debtors' use of property of their estates, including Cash Collateral.  Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor may use cash collateral as long as "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section."  11 U.S.C. § 363(c)(2).  The Prepetition Secured Parties consented to the Debtors' use of Cash Collateral in exchange for the proposed customary adequate protection package set forth in the Cash Collateral Orders.

35.     Section 363(e) of the Bankruptcy Code provides for adequate protection of interests in property when a debtor uses cash collateral.  Further, section 362(d)(1) of the Bankruptcy Code provides for adequate protection of interests in property due to the imposition of the automatic stay.  *See  In re Cont'l Airlines*, 91  F.3d 553, 556 (3d Cir. 1996) (en banc).  While section 361 of the Bankruptcy Code provides examples of forms of adequate protection, such as granting replacement liens and administrative claims, courts decide what constitutes sufficient adequate protection on a case-by-case basis.  *In re Swedeland Dev. Grp., Inc.*, 16 F.3d 552, 564 (3d Cir. 1994); *In re Satcon Tech. Corp.*, No. 12-12869, 2012 WL 6091160, at *6 (Bankr. D. Del. Dec. 7, 2012); *In re N.J. Affordable Homes Corp.*, No. 05-60442, 2006 WL 2128624, at *14 (Bankr. D.N.J. June 29, 2006); *In re Columbia Gas Sys., Inc.*, No. 91-803, 1992 WL 79323, at *2 (Bankr. D. Del. Feb. 18, 1992); *see also In re Dynaco Corp.*, 162 B.R. 389, 394 (Bankr. D.N.H. 1993) (citing 2 Collier on Bankruptcy ¶ 361.01 [1] at 361–66 (15th ed. 1993) (explaining that adequate protection can take many forms and "must be determined based upon equitable considerations arising from the particular facts of each proceeding")).

36. The concept of adequate protection is designed to shield a secured creditor from diminution in the value of its interest in collateral during the period of a debtor's use. *See In re Carbone Cos.*, 395 B.R. 631, 635 (Bankr. N.D. Ohio 2008) ("The test is whether the secured party's interest is protected from diminution or decrease as a result of the proposed use of cash collateral."); *see also In re Cont'l Airlines, Inc.*, 154 B.R. 176, 180–81 (Bankr. D. Del. 1993) (holding that adequate protection for use of collateral under section 363 of the Bankruptcy Code is limited to use-based decline in value). Whether the debtor's estate will benefit on the whole from its use of cash collateral is relevant to determining the sufficiency of adequate protection. *See In re 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992); *see also In re Salem Plaza Assocs.*, 135 B.R. 753, 758 (Bankr. S.D.N.Y. 1992) (holding that debtor's use of cash collateral to pay operating expenses, thereby "preserv[ing] the base that generates the income stream," provided adequate protection to the secured creditor).

## II.    The Proposed Adequate Protection for the Prepetition Secured Parties Is Sufficient.

37. One hundred percent of the Prepetition Secured Parties have consented to the Debtors' use of Cash Collateral which is sufficient to satisfy the requirements of section 363(c)(2) of the Bankruptcy Code. Nevertheless, as described above, and as set forth in the Cash Collateral Orders, the Debtors propose to provide the Prepetition Secured Parties with several forms of adequate protection (collectively, the "Adequate Protection").

38. Adequate Protection Liens. Each of the Prepetition First Lien Agent, for the benefit of the Prepetition First Lien Secured Parties, and the Prepetition Super Priority Agent, for the benefit of the Prepetition Super Priority Secured Parties, will be granted, pursuant to sections 361 and 363(e) of the Bankruptcy Code, valid, binding, enforceable, non-avoidable, and perfected replacement and additional postpetition security interests in, and liens on Adequate Protection

23

Collateral, which shall be subject and subordinate only to the Carve-Out and the lien priorities set forth in the Cash Collateral Orders.

39.     Adequate Protection 507(b) Claims.  Solely to the extent of any diminution in value, the Debtors will grant the Prepetition First Lien Agent, for the benefit of the Prepetition First Lien Secured Parties, and the Prepetition Super Priority Agent, for the benefit of the Prepetition Super Priority Secured Parties, allowed superpriority administrative claims pursuant to section 507(b) of the Bankruptcy Code, which superpriority administrative expense claims shall be senior to all other administrative expense claims of any kind but subject and subordinate to the Carve-Out.

40.     Adequate Protection Fees and Expenses.  The Debtors will pay the reasonable and documented fees and out-of-pocket expenses of the Prepetition Secured Parties.

41.     Other Adequate Protection.   The Debtors will provide additional adequate protection to the Prepetition Secured Parties in the form of, among other things, (a)  the provision of certain financial and other reporting, (b) the maintenance of collateral as required under the Prepetition Credit Documents, and (c) compliance with certain milestones applicable to the chapter 11 cases (unless extended or waived by the Required Lenders, as applicable).  The Cash Collateral Orders are without prejudice to, and do not constitute a waiver of, expressly or implicitly, the rights of the Prepetition Secured Parties to request additional or different forms of adequate protection at any time or the rights of the Debtors or any other party in interest to object thereto.

42.     The Debtors respectfully submit that the proposed Adequate Protection is sufficient to protect the Prepetition Secured Parties from any diminution in value caused by, among other reasons, the Debtors' use of the Prepetition Collateral, including the Cash Collateral, during the pendency of these chapter 11 cases.  Considering the foregoing, the Debtors submit that the proposed Adequate Protection to be provided for the benefit of the Prepetition Secured Parties is

appropriate. The Debtors' proposed Adequate Protection is not only necessary to protect the Prepetition Secured Parties against any diminution in value, but is also fair and appropriate under the circumstances of these chapter 11 cases to ensure the Debtors are able to continue using the Cash Collateral, subject to the terms and limitations set forth in the Interim Order, for the benefit of all parties in interest and their estates.

**III.    Failure to Obtain the Immediate Interim Use of Cash Collateral Would Cause Immediate and Irreparable Harm.**

43.     Bankruptcy Rule 4001(b) provides that a final hearing on a motion to use cash collateral pursuant to section 363 of the Bankruptcy Code may not be commenced earlier than 14 days after the service of such motion. Upon request, however, the Court is authorized to conduct a preliminary expedited hearing on this motion and authorize the Debtors' proposed use of cash collateral to the extent necessary to avoid immediate and irreparable harm to the Debtors' estates. *See* Fed. R. Bankr. P. 4001(b)(2); Local Rule 4001-2(b). Section 363(c)(3) of the Bankruptcy Code authorizes the court to conduct a preliminary hearing and to authorize the use of cash collateral "if there is a reasonable likelihood that the [debtor] will prevail at the final hearing under [section 363(e) of the Bankruptcy Code]." 11 U.S.C. § 363(c)(3).

44.     The Debtors have an immediate postpetition need to use Cash Collateral to administer these chapter 11 cases, fund ongoing business operations, and to maintain and preserve the value of their estates. The Debtors believe that substantially all of their available cash constitutes the Prepetition Secured Parties' Cash Collateral, as that term is used by section 363(c) of the Bankruptcy Code. The Debtors will therefore be unable to proceed with their proposed reorganization or otherwise fund these chapter 11 cases without access to Cash Collateral and will suffer immediate and irreparable harm to the detriment of all stakeholders. Conversely, immediate access to Cash Collateral will enable the Debtors to preserve estate value while they seek

confirmation and implementation of the Plan, which contemplates full or meaningful recovery for all stakeholders. In short, the Debtors' access to Cash Collateral is fundamental to the success of these chapter 11 cases.

45. The Debtors therefore seek immediate authority to use the Cash Collateral as set forth in this motion and in the Interim Order to prevent immediate and irreparable harm to their estates pending the Final Hearing pursuant to Bankruptcy Rule 4001(b) and Local Rule 4001-2(b). The Debtors respectfully submit that they have satisfied the requirements of Bankruptcy Rule 4001 and Local Rule 4001-2 to support an expedited preliminary hearing and immediate Cash Collateral availability on an interim basis.

**IV.    The Automatic Stay Should Be Modified on a Limited Basis.**

46. The relief requested herein contemplates modification of the automatic stay to the extent necessary to allow the Prepetition Secured Parties to provide any notices to the Debtors or take any other action as contemplated by and in accordance with the Cash Collateral Orders. The Cash Collateral Orders further provide that, upon the expiration of the applicable remedies notice period, the automatic stay will be automatically modified to permit the Prepetition Secured Parties to immediately retain and apply payments and otherwise enforce their respective rights and remedies under and in accordance with the Cash Collateral Orders, subject and subordinate to the Carve-Out.

**Reservation of Rights**

47. Notwithstanding anything to the contrary herein, nothing contained in this motion or any actions taken pursuant to any order granting the relief requested in this motion (including any payment made in accordance with any such order), is intended as or shall be construed or deemed to be: (a) an implication or admission as to the amount, validity, or priority of, or basis for any claim against the Debtors under the Bankruptcy Code or other applicable non-bankruptcy

26

law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this motion or any order granting the relief requested by this motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, lease, program, or policy pursuant to section 365 of the Bankruptcy Code (or otherwise affecting the Debtors' rights pursuant to section 365 of the Bankruptcy Code); (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of any claims, causes of action, or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law; or (h) a waiver of the obligation of any party in interest to file a proof of claim.

## Notice

48.    The Debtors will provide notice of this motion to the following parties or their respective counsel, as applicable: (a) the U.S. Trustee (b) counsel to the Ad Hoc TL Group; (c) counsel to the Ad Hoc Revolver Group; (d) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (e) the state attorneys general for states in which the Debtors conduct business; (f) the United States Attorney for the District of Delaware, District of Massachusetts, and District of Columbia; (g) the Internal Revenue Service; and (h) any party that is entitled to notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). As this motion is seeking "first day" relief, within two business days of the hearing on this motion, the Debtors will serve copies of this motion and any order entered in respect to this motion as required

by Local Rule 9013-1(m). In light of the nature of the relief requested, no other or further notice need be given.

### **No Prior Request**

49. No prior request for the relief sought in this motion has been made to this or any other court.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors request entry of the Interim Order, substantially in the form attached hereto as **Exhibit A**, (a) granting the relief requested herein and (b) granting such other relief as the Court deems appropriate under the circumstances.

Dated:  June 7, 2026
Wilmington, Delaware

/s/ Laura Davis Jones

| | |
|---|---|
| **PACHULSKI STANG ZIEHL & JONES LLP** | **KIRKLAND & ELLIS LLP** |
| Laura Davis Jones (DE Bar No. 2436) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| James E. O'Neill (DE Bar No. 4042) | Anup Sathy, P.C. (*pro hac vice* pending) |
| Edward A. Corma (DE Bar No. 6718) | Alexandra F. Schwarzman, P.C. (*pro hac vice* pending) |
| 919 North Market Street, 17th Floor | David R. Gremling (*pro hac vice* pending) |
| Wilmington, Delaware 19801 | 333 West Wolf Point Plaza |
| Telephone:    (302) 652-4100 | Chicago, Illinois 60654 |
| Facsimile:    (302) 652-4400 | Telephone:    (312) 862-2000 |
| Email:    ljones@pszjlaw.com | Facsimile:    (312) 862-2200 |
|          joneill@pszjlaw.com | Email:    anup.sathy@kirkland.com |
|          ecorma@pszjlaw.com |          alexandra.schwarzman@kirkland.com |
|          |          dave.gremling@kirkland.com |

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

*Proposed Co-Counsel for the Debtors and Debtors in Possession*