**Exhibit B**

**Proposed Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| GOHEALTH, INC., *et al.*,[1] | ) | Case No. 26-10914 [●] |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) | **Re:  Docket No.** _ |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS
TO (A) CONTINUE TO OPERATE THE CASH MANAGEMENT
SYSTEM, (B) HONOR CERTAIN PREPETITION OBLIGATIONS
RELATED THERETO, (C) MAINTAIN EXISTING BUSINESS FORMS,
AND (D) CONTINUE TO PERFORM INTERCOMPANY TRANSACTIONS,
(II) GRANTING ADMINISTRATIVE EXPENSE STATUS TO POSTPETITION
INTERCOMPANY TRANSACTIONS, AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of a final order (this "Final Order"): (a) authorizing the Debtors to (i) continue to operate their Cash Management System and maintain their existing Debtor Bank Accounts, (ii) honor certain prepetition and postpetition obligations related thereto, (iii) maintain existing Business Forms in the ordinary course of business, and (iv) continue to perform Intercompany Transactions consistent with prepetition practice; (b) granting administrative expense status to the Intercompany Transactions; and (c) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and the United States District Court for the District of Delaware having jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the Court under 28 U.S.C. § 157 and the *Amended*

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are:  GoHealth, Inc. (3805); Blizzard Midco, LLC (3732); Connected Benefits, LLC (2162); e-TeleQuote Insurance, Inc. (2336); ETQ Holdings, LLC (8260); GoHealth Holdings, LLC (3653); GoHealth, LLC (5175); and Norvax, LLC (3063).  The location of the Debtors' service address for purposes of these chapter 11 cases is:  222 West Merchandise Mart Plaza, Suite 1750, Chicago, Illinois 60654.

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

*Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that it may enter this Final Order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted on a final basis as set forth herein.

2.      Any objections to the entry of this Final Order, to the extent not withdrawn or settled, are overruled.

3.      The Debtors are authorized, but not directed, in all cases consistent with historical practice and in the ordinary course of business and subject to the terms of this Final Order and the Cash Collateral Orders (as defined below), to: (a) continue operating the Cash Management System, substantially as identified on **Exhibit 1** attached hereto and as described in the Motion; (b) honor their prepetition obligations related thereto; (c) use, in their present form, all correspondence and Business Forms, as well as checks and other documents related to the Debtor

2

Bank Accounts existing immediately before the Petition Date, without reference to the Debtors' status as debtors in possession; (d) continue to perform and record Intercompany Transactions in the ordinary course of business and treat postpetition Intercompany Balances in a manner consistent with this Court's grant of administrative expense status thereto; (e) continue the Credit Card Program and honor all obligations thereunder; (f) continue to use, with the same account numbers, the Debtor Bank Accounts in existence as of the Petition Date, including those accounts identified on **Exhibit 2** attached hereto without the need to comply with certain guidelines set forth in the U.S. Trustee Guidelines (to the extent applicable); (g) treat the Debtor Bank Accounts for all purposes as accounts of the Debtors as debtors in possession; (h) deposit funds in and withdraw funds from the Debtor Bank Accounts by all usual means, including checks, wire transfers, ACH transfers, and other debits; (i) subject to any notice requirements provided for herein, open new debtor in possession Debtor Bank Accounts; and (j) pay the Bank Fees, including any prepetition amounts and any Bank Fees incurred in the ordinary course in connection with the Debtor Bank Accounts, and to otherwise perform their obligations under the documents governing the Debtor Bank Accounts; *provided* that the Debtors shall consult with counsel to the Ad Hoc TL Group and counsel to the Ad Hoc Revolver Group prior to funding, drawing on, crediting, or debiting the Dormant Accounts from or after the Petition Date.

4.      The Cash Management Banks are authorized to continue to maintain, service, close, and administer the Debtor Bank Accounts as accounts of the Debtors as debtors in possession, without interruption and in the ordinary course of business and consistent with prepetition practice, and to receive, process, honor, and pay, to the extent of available funds, any and all checks, drafts, wires, electronic fund transfers, credit card payments, and ACH transfers or other items presented or issued, whether before or after the Petition Date, and drawn on the Debtor Bank Accounts, after

the Petition Date, by the holders or makers thereof, as the case may be, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order.

5.      The Cash Management Banks are authorized to debit the Debtor Bank Accounts in the ordinary course of business and consistent with the Cash Management System, without the need for further order of this Court for:  (a) all checks drawn on the Debtor Bank Accounts which are cashed at such Cash Management Bank's counters or exchanged for cashier's checks by the payees thereof prior to or after the Petition Date; (b) all checks, automated clearing house entries, and other items deposited in or credited to one of the Debtor Bank Accounts with such Cash Management Bank prior to or after the Petition Date that have been dishonored, reversed, or returned unpaid for any reason, including returned items that result from wire transfers, ACH transactions, or other electronic transfers of any kind, together with any fees and costs in connection therewith, to the same extent the Debtors were responsible for such items prior to the Petition Date; and (c) all undisputed prepetition and postpetition amounts outstanding as of the date hereof, if any, owed to the Cash Management Banks as service charges and/or fees for the maintenance of the Cash Management System, including any Bank Fees incurred in the ordinary course of business.

6.      In the course of providing cash management services to the Debtors, each of the Cash Management Banks is authorized without further order of this Court and in the ordinary course of business and consistent with prepetition practice, to deduct the applicable fees, including Bank Fees (whether arising prior to or after the Petition Date) from the applicable Debtor Bank Accounts, and further, to charge back to the appropriate accounts of the Debtors any amounts resulting from returned checks or other returned items, including returned items that result from

ACH transactions, wire transfers, or other electronic transfers of any kind, regardless of whether such items were deposited or transferred prepetition or postpetition and regardless of whether the returned items relate to prepetition or postpetition items or transfers. Any such fees arising after the Petition Date, including Bank Fees, that are charged by the Cash Management Banks in the ordinary course of business are entitled to administrative expense priority status pursuant to section 503(b) of the Bankruptcy Code.

7. Notwithstanding any other provision of this Final Order, any Cash Management Bank may rely upon the representations of the Debtors, without a duty of inquiry, with respect to whether any check, draft, wire, or other transfer drawn or issued by the Debtors prior to, on, or after the Petition Date should be honored pursuant to any order of this Court, and no bank that honors a prepetition or postpetition check or other item drawn on any account that is the subject of this Final Order (a) at the direction of the Debtors, (b) in a good-faith belief that this Court has authorized such prepetition check or item to be honored, or (c) as a result of a mistake made despite implementation of reasonably customary handling procedures, shall be deemed to be nor shall be liable to the Debtors or their estates or any other person or entity on account of such prepetition check or other item being honored postpetition, or otherwise deemed to be in violation of this Final Order.

8. Any banks, including the Cash Management Banks, are further authorized to honor the Debtors' directions with respect to the opening and closing of any Bank Account and accept and hold, or invest, the Debtors' funds in accordance with the Debtors' instructions.

9. Subject to the terms of this Final Order, any prepetition deposit, cash management, and treasury services agreements existing between the Debtors and the Cash Management Banks shall continue to govern the postpetition cash management relationship between the Debtors and

5

the applicable Cash Management Bank and, subject to applicable bankruptcy or other law, all of the provisions of such agreements, including the termination, fee provisions, rights, benefits, offset rights, and remedies afforded under such agreements, shall remain in full force and effect absent further order of the Court (including, for the avoidance of doubt, any rights of the Cash Management Bank to use funds from the Debtor Bank Accounts to remedy any overdraft of another Debtor Bank Account to the extent permitted under the applicable deposit agreement) unless the Debtors and such Cash Management Bank agree otherwise, and any other legal rights and remedies afforded to the Cash Management Bank under applicable law shall be preserved, subject to applicable bankruptcy law; *provided* that the Debtors shall consult with counsel to the Ad Hoc TL Group and counsel to the Ad Hoc Revolver Group prior to implementing any changes to the Cash Management System.

10. To the extent any of the Debtor Bank Accounts are not in compliance with section 345(b) of the Bankruptcy Code or any of the U.S. Trustee's requirements or guidelines, the Debtors shall have until a date that is 30 days from entry of this Final Order, without prejudice to seek an additional extension, to come into compliance with section 345(b) of the Bankruptcy Code and any of the U.S. Trustee's requirements or guidelines; *provided* that nothing herein shall prevent the Debtors or the U.S. Trustee from seeking further relief from the Court to the extent that an agreement cannot be reached.

11. Subject to the terms of this Final Order, the Debtors are authorized in the ordinary course of business, to open new accounts or close any existing Debtor Bank Accounts and enter into any ancillary agreements, including deposit account control agreements, related to the foregoing, as they may deem necessary and appropriate in consultation with counsel to the Ad Hoc TL Group and counsel to the Ad Hoc Revolver Group; *provided* that the Debtors shall give notice

6

to the U.S. Trustee within 15 days of opening or closing any Debtor Bank Account.  The relief granted in this Final Order is extended to any new bank account opened by the Debtors after the date hereof, which account shall be deemed a "Debtor Bank Account," and to the bank at which such account is opened, which bank shall be deemed a "Cash Management Bank"; *provided* that the Debtors shall open any such new Debtor Bank Accounts only at banks that have executed a uniform depository agreement with the U.S. Trustee, or at such banks that are willing to immediately execute such an agreement.

12.     All banks provided with notice of this Final Order maintaining any of the Debtor Bank Accounts shall not honor or pay any bank payments drawn on the listed Debtor Bank Accounts or otherwise issued before the Petition Date for which the Debtors specifically issue timely stop payment orders in accordance with the documents governing such Debtor Bank Accounts.

13.     Except as otherwise set forth herein, the Debtors, in consultation with counsel to the Ad Hoc TL Group and counsel to the Ad Hoc Revolver Group, and the Cash Management Banks may, without further order of this Court, agree and implement changes to the policies and procedures related to the Cash Management System in the ordinary course of business and consistent with prepetition practice.

14.     The Debtors are authorized, but not directed, to continue engaging in Intercompany Transactions in connection with the Cash Management System in the ordinary course of business and consistent with prepetition practice.  The Debtors shall maintain accurate and detailed records of all Intercompany Transactions and the payment of Intercompany Claims so that all transactions, including Intercompany Transactions and the payment of Intercompany Claims, may be readily traced, ascertained, distinguished, and recorded properly on applicable

intercompany accounts (if any) and distinguished between prepetition and postpetition transactions for the purposes of determining administrative expense status. All postpetition payments from a Debtor to another Debtor under any postpetition Intercompany Transactions authorized hereunder that result in an Intercompany Claim are hereby accorded administrative expense status under section 503(b) of the Bankruptcy Code.

15. In connection with the ongoing use of their Cash Management System, the Debtors shall continue to maintain records with respect to all transfers of cash, including but not limited to, intercompany transfers, so that all transactions may be readily ascertained, traced, recorded properly, and distinguished including those between prepetition and postpetition transactions. The Debtors shall make such records available in accordance with the Cash Collateral Orders and upon reasonable request by the U.S. Trustee, counsel to the Ad Hoc TL Group, and counsel to the Ad Hoc Revolver Group.

16. The Debtors are authorized, but not directed, to set off mutual postpetition obligations relating to Intercompany Balances through the Cash Management System in the ordinary course of business and consistent with prepetition practice. The Debtors shall continue to maintain accurate, current, and detailed records with respect to all transfers of cash so that all transactions, including Intercompany Transactions, may be readily ascertained, traced, and recorded properly on applicable intercompany accounts.

17. The Debtors are authorized, but not directed, to continue using the Credit Card Program in the ordinary course of business and consistent with prepetition practice, including by paying prepetition and postpetition obligations outstanding with respect thereto, subject to the limitations of this Final Order and any other applicable interim and/or final orders of this Court. Any existing agreements between or among the Debtors and any bank in respect of the Credit Card

Program shall continue to govern the postpetition relationship between the Debtors and such banks, and all the provisions of such agreements, including the termination and fee provisions, rights, benefits, offset or setoff rights and remedies afforded under such agreements, shall remain in full force and effect.  The Debtors and such bank may, without further order of this Court, agree to and implement changes related to the Credit Card Program in the ordinary course of business, pursuant to the terms of those existing agreements.

18.    Any requirement to establish separate bank accounts for cash collateral and/or tax payments is hereby waived.

19.    Nothing contained in the Motion or this Final Order shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of a Debtor that did not exist as of the Petition Date or (b) alter or impair any security interest or perfection thereof, in favor of any person or entity, that existed as of the Petition Date.

20.    Nothing contained herein shall permit the Cash Management Banks to terminate any cash management services without 30-days' prior written notice (or such other period as may be specified in any agreement between the Debtors and such Cash Management Bank, which period shall control and govern termination of such cash management services notwithstanding anything herein to the contrary) to the Debtors, counsel to the Ad Hoc TL Group, counsel to the Ad Hoc Revolver Group, and the U.S. Trustee.  Notwithstanding the foregoing or anything to the contrary in this Final Order, the Dormant Accounts may be closed by the Debtors without prior written notice or further consent of any party.

21.    Notwithstanding the Debtors' use of a consolidated cash management system, the Debtors shall calculate quarterly fees under 28 U.S.C. § 1930(a)(6) based on the disbursements of each Debtor, regardless of which entity makes those disbursements.

22.     The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order.

23.     Nothing contained in the Motion or this Final Order, and no action taken pursuant to the relief requested or granted (including any payment made in accordance with this Final Order), is intended as or shall be construed or deemed to be:  (a) an implication or admission as to the amount, validity, or priority of, or basis for any claim against the Debtors under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in the Motion or this Final Order; (e) a request or authorization to assume, adopt, or reject any agreement, contract, lease, program, or policy pursuant to section 365 of the Bankruptcy Code (or otherwise affecting the Debtors' rights under section 365 of the Bankruptcy Code); (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of any claims, causes of action, or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law; or (h) a waiver of the obligation of any party in interest to file a proof of claim.

24.     Notwithstanding anything to the contrary contained in the Motion or this Final Order, any payment made or to be made pursuant to the authority granted herein, and any

10

authorization contained herein, shall be subject to and in accordance with any interim and final orders, as applicable, entered by the Court approving the Debtors' use of cash collateral (such orders, the "Cash Collateral Orders") and any budget in connection with any use of cash collateral (subject to permitted variances). To the extent there is any inconsistency between the terms of the Cash Collateral Orders and any action taken under this Final Order, the terms of the Cash Collateral Orders shall control. Nothing in the Motion or this Final Order shall constitute a waiver or substitution of any consent right required under the Cash Collateral Orders.

25. The Debtors are authorized, but not directed, to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with the relief granted herein.

26. Notice of the Motion as provided therein shall be deemed good and sufficient notice of the Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

27. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

28. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

29. This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

## **Exhibit 1**

**Cash Management System Schematic**

**GoHealth, Inc.**
**Cash Schematic**



**<u>Exhibit 2</u>**

**Debtor Bank Accounts**

| No. | Country | Entity | Bank | Account Type | Account No. | Currency |
|---|---|---|---|---|---|---|
| 1 | United States | Norvax, LLC | Huntington Bank | Money Market Account | 4059 | USD |
| 2 | United States | Norvax, LLC | Huntington Bank | Main Operating Account | 8302 | USD |
| 3 | United States | Norvax, LLC | Huntington Bank | Payroll Account | 1769 | USD |
| 4 | United States | Norvax, LLC | Huntington Bank | Other Operating Account | 7881 | USD |
| 5 | United States | Norvax, LLC | Huntington Bank | Disbursement Account | 8905 | USD |
| 6 | United States | Norvax, LLC | BMO | Receivables Account | 3783 | USD |
| 7 | United States | GoHealth, LLC | Huntington Bank | Disbursement Account | 7309 | USD |
| 8 | United States | GoHealth, LLC | Huntington Bank | Other Operating Account | 8797 | USD |
| 9 | United States | GoHealth, LLC | Huntington Bank | Disbursement Account | 6747 | USD |
| 10 | United States | GoHealth, LLC | BMO | Receivables Account | 3979 | USD |
| 11 | United States | Connected Benefits, LLC | Huntington Bank | Receivables Account | 1156 | USD |
| 12 | United States | e-TeleQuote Insurance, Inc. | Valley Bank | Receivables Account | 2336 | USD |
| 13 | United States | e-TeleQuote Insurance, Inc. | Valley Bank | Money Market Account | 8842 | USD |
| 14 | United States | GoHealth Holdings, LLC | Huntington Bank | Other Operating Account | 3775 | USD |
| 15 | United States | GoHealth, Inc. | Huntington Bank | Other Operating Account | 8947 | USD |
| 16 | United States | Norvax, LLC | Citibank | Professional Fee Escrow | 2464 | USD |
| 17 | United States | Norvax, LLC | BMO | Dormant | 2338 | USD |
| 18 | United States | Norvax, LLC | Bank of America | Dormant | 1561 | USD |
| 19 | United States | Norvax, LLC | Bank of America | Dormant | 9211 | USD |