**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GOHEALTH, INC., *et al.*,[1] | ) | Case No. 26-10914 [●] |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**MOTION OF DEBTORS FOR ENTRY OF INTERIM AND**
**FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO**
**(A) MAINTAIN INSURANCE AND SATISFY PREPETITION**
**OBLIGATIONS RELATED THERETO, (B) RENEW, AMEND, MODIFY,**
**SUPPLEMENT, EXTEND, OR ENTER INTO NEW INSURANCE POLICIES, AND**
**(C) CONTINUE TO PAY BROKER FEES, AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state

as follows in support of this motion:[2]

**Relief Requested**

1.     The Debtors seek entry of interim and final orders, substantially in the forms

attached hereto as **Exhibit A** and **Exhibit B** (the "Interim Order" and the "Final Order,"

respectively): (a) authorizing the Debtors to (i) maintain coverage under the Insurance Policies

(as defined herein) and pay any related obligations in the ordinary course of business and

consistent with prepetition practices, (ii) renew, amend, modify, supplement, extend, or enter into

new Insurance Policies in the ordinary course of business and consistent with prepetition practices,

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are:   GoHealth, Inc. (3805); Blizzard Midco, LLC (3732); Connected Benefits, LLC (2162); e-TeleQuote Insurance, Inc. (2336); ETQ Holdings, LLC (8260); GoHealth Holdings, LLC (3653); GoHealth, LLC (5175); and Norvax, LLC (3063).  The location of the Debtors' service address for purposes of these chapter 11 cases is:  222 West Merchandise Mart Plaza, Suite 1750, Chicago, Illinois 60654.

[2]    A detailed description of the Debtors and their business, including the facts and circumstances supporting this motion, is set forth in the *Declaration of Vijay Kotte, Chief Executive Officer of GoHealth, Inc., in Support of the Debtors' Chapter 11 Petitions, First Day Motions, and Access to Cash Collateral* (the "First Day Declaration"). Capitalized terms used but not defined in this motion shall have the meanings ascribed to them in the First Day Declaration.

and (iii) continue to pay certain Broker Fees (as defined herein) in the ordinary course of business and consistent with prepetition practices; and (b) granting related relief.  In addition, the Debtors request that the Court (as defined herein) schedule a final hearing within approximately 21 days of the commencement of these chapter 11 cases to consider approval of this motion on a final basis.

## Jurisdiction and Venue

2.  The United States District Court for the District of Delaware has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the United States Bankruptcy Court for the District of Delaware (the "Court") under 28 U.S.C. § 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.  The statutory bases for the relief requested herein are sections 105(a), 363(b), 364(c), 1107(a), 1108, and 1112(b)(4)(C) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 2002, 6003, and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 2002-1 and 9013-1.

## Background

5.  On June 7, 2026 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their business and

2

managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Concurrently with the filing of this motion, the Debtors filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no official committees have been appointed or designated.

### The Insurance Policies and Related Payment Obligations

6.      In the ordinary course of business, the Debtors maintain 19 insurance policies that are administered by multiple third-party insurance carriers (each, an "Insurance Carrier" and collectively, the "Insurance Carriers").  These insurance policies provide coverage for both general and commercial business risks, including, but not limited to, coverage for the Debtors' directors' and officers' liability, commercial liability (automobile, property, and umbrella coverage), crime (loss discovered), general liability, fiduciary liability, employee benefits, employment practices, workers compensation, and cyber liability (each, an "Insurance Policy" and collectively, the "Insurance Policies").[3]  With limited exceptions, the Insurance Policies generally are one year in length and are renewed annually.  A schedule of the Insurance Policies and the current policy term end date is attached hereto as **Exhibit C**.[4]  The annual premiums for the Insurance Policies

---

[3]   Although the workers' compensation policies are included on **Exhibit C** attached hereto, the Debtors do not seek authority to maintain workers' compensation coverage and to pay prepetition amounts related thereto under this motion, but rather request such authority as part of the *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs, and (II) Granting Related Relief*, filed contemporaneously herewith.

[4]   The descriptions of the Insurance Policies set forth in this motion constitute summaries only.  The actual terms of the Insurance Policies and related agreements will govern in the event of any inconsistency with the descriptions in this motion.  Although **Exhibit C** is intended to be comprehensive, the Debtors may have inadvertently omitted Insurance Policies from **Exhibit C**.  The Debtors request authority, but not direction, to honor existing Insurance Policies and renew Insurance Policies, as applicable, regardless of whether the Debtors inadvertently failed to

(the "Insurance Premiums") were approximately $2.5 million in the aggregate for the past 12 months, not including applicable Deductibles or Self-Insured Retentions (each as defined herein). The Insurance Premiums are paid to the Brokers (as defined herein) as the amounts come due.

7. The Debtors' ability to maintain the Insurance Policies, to renew, amend, modify, supplement, and extend the Insurance Policies, and to enter into new Insurance Policies and incur corresponding Insurance Premiums in the ordinary course of business and consistent with prepetition practices is essential to preserving the value of the Debtors' business and estates, and continuing ordinary course business operations. In many instances, insurance coverage is required by statutes, rules, regulations, and contracts that govern the Debtors' commercial activities, including the Bankruptcy Code and the *Region 3 Operating Guidelines for Chapter 11 Cases* (the "U.S. Trustee Guidelines") published by the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), which require, among other things, that a debtor maintain insurance. *See* 11 U.S.C. § 1112(b)(4)(C); U.S. Trustee Guidelines, § 3. It is therefore critical for the Debtors to maintain appropriate insurance coverage at all times. Accordingly, the Debtors seek authority to maintain the Insurance Policies, to pay related prepetition obligations, to renew, amend, modify, supplement, extend, or enter into new Insurance Policies, in each case, in the ordinary course of business on a postpetition basis consistent with prepetition practices without further Court approval.

8. As of the Petition Date, the Debtors do not believe that there are any outstanding Insurance Premiums due under the Insurance Policies. Nevertheless, out of an abundance of

include a particular Insurance Policy on **Exhibit C**, and any such omitted Insurance Policy is hereby included in the defined term "Insurance Policies" as used herein and in the Interim Order and Final Order.

4

caution and to ensure uninterrupted coverage, the Debtors seek authority to pay any prepetition amounts due and owing on account of the Insurance Policies and to continue to honor their postpetition obligations as they come due in the ordinary course of business and consistent with prepetition practices, without further Court approval.

9.     In addition, from time to time, certain of the Insurance Policies may be subject to regular audits during their respective policy periods, which may result in an adjustment of Insurance Premiums owed on account thereof.  Accordingly, while there are no audits currently pending, the Debtors seek the authority to honor any amounts owed on account of any Insurance Policy audits in the ordinary course of business.

**I.     Deductibles and Self-Insured Retentions.**

10.     Under certain Insurance Policies, the Debtors are required to pay various deductibles[5] (the "Deductibles") or self-insured retentions[6] (the "Self-Insured Retentions"), depending upon the type of claim and Insurance Policy involved.  For instance, certain coverage parts of the Debtors' directors and officers Insurance Policies are subject to a self-insured retention of up to $1 million.  Generally, if a claim is made against an insured that is covered by one of the Insurance Policies that is subject to a Deductible, the applicable Insurance Carrier may administer the claims and make payments in connection therewith and then invoice the Debtors for any Deductible, or may issue claims payments to the Debtors minus any applicable Deductible.

11.      Under Insurance Policies with Self-Insured Retentions and for claims to which a Self-Insured Retention applies, the Debtors must make payments or incur loss in the first instance

---

[5]     When a policy is subject to a deductible, a compensable claim is typically assessed from dollar one, then the deductible is subtracted from the claim.

[6]     A self-insured retention is the required portion of the insured claim to be paid or incurred by the covered party before the insurance policy is obligated to respond and is typically a condition precedent to coverage for payment of the portion of a loss in excess of the self-insured retention.

up to the Self-Insured Retentions amount, after which the Insurance Carriers may be obligated to cover amounts in excess thereof. Typically, the occurrence of covered loss exceeding the Self-Insured Retentions amount is a condition to coverage being triggered. The Self-Insured Retentions typically range from approximately $100,000 to $1 million depending on the Insurance Policy.

12. As of the Petition Date, the Debtors do not believe that there are any accrued but unpaid obligations on account of the Deductibles or the Self-Insured Retentions, and no amounts are expected to come due within the first 21 days of the Petition Date. However, out of an abundance of caution, the Debtors seek authority, but not direction, to pay any prepetition amounts owed on account of any Deductibles or Self-Insured Retentions and to continue to honor all payment obligations on account of the Deductibles and the Self-Insured Retentions as they come due on a postpetition basis in the ordinary course of business consistent with prepetition practices.

**II.     The Debtors' Brokers.**

13. The Debtors obtain most of their Insurance Policies through HUB International and Willis Towers Watson (each individually, a "Broker", and collectively, the "Brokers"). The Brokers assist the Debtors with, among other things: (a) obtaining comprehensive insurance coverage for their operations in a cost-effective manner; (b) managing policy term and renewal data; and (c) providing ongoing support throughout the applicable policy periods for the Insurance Policies (such services, collectively, the "Broker Services"). In exchange for these services, the Debtors pay the Brokers' commissions (the "Broker Fees"), which are typically incorporated into the Insurance Premiums and paid at the same time. Thus, the Debtors believe they do not currently owe any Broker Fees on account of the Broker Services. Nevertheless, out of an abundance of caution and to ensure uninterrupted coverage under the Insurance Policies, the Debtors seek authority, but not direction, to pay any prepetition amounts owed to the Brokers and to continue

to honor their obligations to the Brokers as they come due on a postpetition basis in the ordinary course of business and consistent with prepetition practices.

### Basis for Relief

**I.**     **The Bankruptcy Code and U.S. Trustee Guidelines Require the Debtors to Maintain Insurance Coverage and Satisfy Their Insurance Obligations.**

14.     The Debtors' existing Insurance Policies provide a comprehensive range of protection of the Debtors' business, operations, and assets.   Section 1112(b)(4)(C) of the Bankruptcy Code provides that "failure to maintain appropriate insurance that poses a risk to the estate or to the public" is "cause" for mandatory conversion or dismissal of a chapter 11 case.  11 U.S.C. § 1112(b)(4)(C).  In addition, in many instances, the coverage of the Insurance Policies is required by various state and federal regulations, laws, certain credit agreements, and contracts that govern the Debtors' commercial activities.

15.     Further, the U.S. Trustee Guidelines require that a debtor in possession under chapter 11 of the Bankruptcy Code maintain certain types of insurance postpetition.  *See* U.S. Trustee Guidelines, § 3.   The U.S. Trustee Guidelines require, absent an order of the court otherwise, a debtor in possession under chapter 11 of the Bankruptcy Code to maintain (if applicable) casualty insurance, workers' compensation insurance, and general liability insurance along with any other insurance customary in such debtors' business.  *Id.*  The relief requested in this motion is necessary to ensure that the Debtors comply with their obligations under the Bankruptcy Code, applicable law, and the U.S. Trustee Guidelines.

**II.**     **Renewing, Amending, Modifying, Supplementing, Extending, or Entering Into New Insurance Policies, Paying Obligations Related to the Insurance Policies, and Maintaining the Insurance Policies in the Ordinary Course of Business Are Each Warranted.**

16.     The Debtors believe that they have authority to continue to pay their obligations in connection with the Insurance Policies, renew, amend, modify, supplement, extend, or enter into

new Insurance Policies, and maintain the Insurance Policies in the ordinary course of business and consistent with prepetition practices during these chapter 11 cases. *See* 11 U.S.C. § 363(c) ("[T]he trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing."). Nevertheless, the Debtors seek such relief out of an abundance of caution given the importance of the Insurance Policies to the protection of their estates.

17.     Courts have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate, including an operating business's going-concern value. *See, e.g.*, *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 468 (2017) (noting that courts "have approved . . . 'critical vendor' orders that allow payment of essential suppliers' prepetition invoices"); *In re Just for Feet, Inc.*, 242 B.R. 821, 825–26 (D. Del. 1999); *see also In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175–76 (Bankr. S.D.N.Y. 1989); *In re James A. Phillips, Inc.*, 29 B.R. 391, 398 (S.D.N.Y. 1983). Several legal theories rooted in sections 105(a), 363(b), and 1107(a) of the Bankruptcy Code support the payment of prepetition claims.

18.     Pursuant to section 363(b) of the Bankruptcy Code, payment of prepetition obligations may be authorized where a sound business purpose exists for doing so. *See Ionosphere Clubs*, 98 B.R. at 175 (noting that section 363(b) of the Bankruptcy Code provides "broad flexibility" to authorize a debtor to honor prepetition claims where supported by an appropriate business justification). Indeed, courts have recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the preplan satisfaction of a prepetition claim." *CoServ*, 273 B.R. at 497.

19.     In addition, courts may authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code, which codifies a bankruptcy court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  Under section 105(a) of the Bankruptcy Code, courts may authorize pre-plan payments of prepetition obligations when essential to the continued operation of a debtor's business.  *See Just for Feet*, 242 B.R. at 825–26.  Specifically, a court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity").  *See, e.g.*, *Ionosphere Clubs*, 98 B.R. at 176; *In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (stating that courts may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *see also In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 192 (Bankr. D. Del. 1994) (noting that, in the Third Circuit, debtors may pay prepetition claims that are essential to the continued operation of the business).  A bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept."  *Ionosphere Clubs*, 98 B.R. at 175–76 (citing *Miltenberger v. Logansport, C. & S.W. Ry. Co.*, 106 U.S. 286 (1882)).

20.     Moreover, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, debtors in possession are fiduciaries "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [their] creditors and (if the value justifies) equity owners."  *CoServ*, 273 B.R. at 497.  Implicit in the fiduciary duties of any debtor in possession is the obligation to "protect and preserve the estate, including an operating business's going-concern value."  *Id.*  Some courts have noted that there are instances in which a debtor can fulfill this fiduciary duty "only . . . by the pre-plan

satisfaction of a prepetition claim." *Id.* The court in *CoServ* specifically noted the pre-plan satisfaction of prepetition claims would be a valid exercise of the debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate . . ." *Id.*

21.    Failure to maintain the Insurance Policies could have a detrimental impact on the Debtors' business, operations, and the value of their estates. The non-payment of any Insurance Premiums, Deductibles, Self-Insured Retentions, Broker Fees, or related fees under the Insurance Policies could result in one or more of the Insurance Carriers terminating or declining to renew the Insurance Policies or refusing to enter into new Insurance Policies with the Debtors. Any interruption in coverage would expose the Debtors to a number of risks, including potential (a) direct liability for the payment of claims that otherwise would have been covered under the Insurance Policies, (b) material costs and other losses that otherwise would have been reimbursed, (c) inability to obtain similar insurance coverage on terms as equally favorable as the present coverage, (d) higher costs for reestablishing lapsed Insurance Policies or obtaining new insurance coverage, and (e) regulatory exposure in the event the Debtors are required to maintain certain insurance to continue their operations. If any of these situations arise, the Debtors and their advisors would be forced to immediately address these matters, thus expending limited time and critical resources.

22.    Here, the Debtors seek to continue, renew, amend, modify, supplement, and extend their existing Insurance Policies, and enter into new Insurance Policies as needed, in the ordinary course of business on a postpetition basis and consistent with prepetition practices. Related to that process, the Debtors believe that failure to timely honor any outstanding prepetition obligations on account of the Insurance Policies could negatively affect the Debtors' ability to enter into such amendments, supplements, extensions, or new policies and coverage. Continuation of the

Insurance Policies is essential to preserving the value of the Debtors' assets and minimizing exposure to risk during the pendency of these chapter 11 cases. Therefore, the Debtors should be authorized to pay any prepetition obligations related to the Insurance Policies and to renew, amend, modify, supplement, extend, or enter into new Insurance Policies in the ordinary course of business on a postpetition basis consistent with prepetition practices.

23.     Courts in this district have granted relief similar to the relief requested herein under sections 105(a) and 363(b) of the Bankruptcy Code. *See, e.g., In re Claire's Holdings, LLC*, No. 25-11454 (BLS) (Bankr. D. Del. Sept. 8, 2025) (authorizing the debtors to maintain their current insurance policies, pay related prepetition obligations, and renew, amend, supplement, extend, or purchase new insurance policies on a final basis)*; In re Marelli Automotive Lighting USA LLC*, No. 25-11034 (CTG) (Bankr. D. Del. July 22, 2025) (same); *In re At Home Grp. Inc.*, No. 25-11120 (JKS) (Bankr. D. Del. July 14, 2025) (same); *In re Liberated Brands LLC*, No. 25-10168 (JKS) (Bankr. D. Del. Feb. 28, 2025) (same); *In re JOANN Inc.*, No. 25-10068 (CTG) (Bankr. D. Del. Feb. 10, 2025) (same).[7]

### Processing of Checks and Electronic Fund Transfers Should Be Authorized

24.     The Debtors have sufficient funds to pay the amounts described in this motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations and anticipated access to cash collateral. In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to any authorized payment in respect of the relief requested herein. Accordingly, the Debtors do not believe that checks or wire transfer requests, other than those relating to authorized payments, will

---

[7]   Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request of the Debtors' proposed counsel.

be inadvertently honored. Therefore, the Debtors request authority to authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this motion.

### The Requirements of Bankruptcy Rule 6003(a) Are Satisfied

25.     Bankruptcy Rule 6003(a) empowers a court to grant certain relief within the first 21 days after the petition date only to the extent that relief is "needed to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003(a). For the reasons set forth above, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of the Debtors' operations. Failure to receive the requested relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture and cause immediate and irreparable harm. The requested relief is necessary for the Debtors to operate their business in the ordinary course, preserve the ongoing value of their operations, and maximize value of their estates for the benefit of all stakeholders. The Debtors have demonstrated that the requested relief is "needed to avoid immediate and irreparable harm," as contemplated by Bankruptcy Rule 6003(a), and request that the Court grant the requested relief.

### Reservation of Rights

26.     Notwithstanding anything to the contrary herein, nothing contained in this motion or any actions taken pursuant to any order granting the relief requested in this motion (including any payment made in accordance with any such order), is intended as or shall be construed or deemed to be:  (a) an implication or admission as to the amount, validity, or priority of, or basis for any claim against the Debtors under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or

12

otherwise of a type specified or defined in this motion or any order granting the relief requested by this motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, lease, program, or policy pursuant to section 365 of the Bankruptcy Code (or otherwise affecting the Debtors' rights pursuant to section 365 of the Bankruptcy Code); (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of any claims, causes of action, or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law; or (h) a waiver of the obligation of any party in interest to file a proof of claim.

### Waiver of Bankruptcy Rules 6004(a) and 6004(h)

27.     To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

### Notice

28.     The Debtors will provide notice of this motion to the following parties or their respective counsel, as applicable:  (a) U.S. Trustee; (b) counsel to the Ad Hoc TL Group; (c) counsel to the Ad Hoc Revolver Group; (d) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (e) the state attorneys general for states in which the Debtors conduct business; (f) the United States Attorney for the District of Delaware, District of Massachusetts, and District of Columbia;  (g) the Internal Revenue Service;  (h) the Insurance Carriers; (i) the Brokers; and (j) any party that is entitled to notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties").  As this motion is seeking "first day" relief, within two business days of the hearing on this motion, the Debtors will serve copies of this motion and

13

any order entered in respect to this motion as required by Local Rule 9013-1(m).  In light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

29.     No prior request for the relief sought in this motion has been made to this or any other court.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors request entry of the Interim Order and Final Order, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, (a) granting the relief requested herein and (b) granting such other relief as the Court deems appropriate under the circumstances.

Dated:  June 7, 2026
Wilmington, Delaware

*/s/ Laura Davis Jones*

| | |
|---|---|
| **PACHULSKI STANG ZIEHL & JONES LLP** | **KIRKLAND & ELLIS LLP** |
| Laura Davis Jones (DE Bar No. 2436) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| James E. O'Neill (DE Bar No. 4042) | Anup Sathy, P.C. (*pro hac vice* pending) |
| Edward A. Corma (DE Bar No. 6718) | Alexandra F. Schwarzman, P.C. (*pro hac vice* pending) |
| 919 North Market Street, 17th Floor | David R. Gremling (*pro hac vice* pending) |
| Wilmington, Delaware 19801 | 333 West Wolf Point Plaza |
| Telephone:    (302) 652-4100 | Chicago, Illinois 60654 |
| Facsimile:    (302) 652-4400 | Telephone:    (312) 862-2000 |
| Email:    ljones@pszjlaw.com | Facsimile:    (312) 862-2200 |
|         joneill@pszjlaw.com | Email:    anup.sathy@kirkland.com |
|         ecorma@pszjlaw.com |         alexandra.schwarzman@kirkland.com |
| |         dave.gremling@kirkland.com |

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

*Proposed Co-Counsel for the Debtors and Debtors in Possession*