**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| GOHEALTH, INC., *et al.*,[1] | ) | Case No. 26-10914 [●] |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) |  |

**MOTION OF DEBTORS FOR ENTRY OF INTERIM AND FINAL
ORDERS (I) AUTHORIZING THE PAYMENT OF CERTAIN PREPETITION
AND POSTPETITION TAXES AND FEES AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state

as follows in support of this motion:[2]

**Relief Requested**

1.       The Debtors seek entry of interim and final orders, substantially in the forms

attached hereto as **Exhibit A** and **Exhibit B** (the "Interim Order" and the "Final Order,"

respectively):  (a) authorizing the Debtors to negotiate, remit, and pay (or use tax credits to offset)

Taxes and Fees (as defined herein) in the ordinary course of business that are payable or become

payable during these chapter 11 cases, including any obligations subsequently determined upon

audit, assessment, or otherwise to be owed for periods prior to the Petition Date (as defined herein),

without regard to whether such obligations accrued or arose before, on, or after the Petition Date;

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are:  GoHealth, Inc. (3805); Blizzard Midco, LLC (3732); Connected Benefits, LLC (2162); e-TeleQuote Insurance, Inc. (2336); ETQ Holdings, LLC (8260); GoHealth Holdings, LLC (3653); GoHealth, LLC (5175); and Norvax, LLC (3063).  The location of the Debtors' service address for purposes of these chapter 11 cases is:  222 West Merchandise Mart Plaza, Suite 1750, Chicago, Illinois 60654.

[2]     A detailed description of the Debtors and their business, including the facts and circumstances supporting this motion, is set forth in the *Declaration of Vijay Kotte, Chief Executive Officer of GoHealth, Inc., in Support of the Debtors' Chapter 11 Petitions, First Day Motions, and Access to Cash Collateral* (the "First Day Declaration").  Capitalized terms used but not defined in this motion shall have the meanings ascribed to them in the First Day Declaration.

and (b) granting related relief.  In addition, the Debtors request that the Court (as defined herein) schedule a final hearing within approximately 21 days of the commencement of these chapter 11 cases to consider approval of this motion on a final basis.

**Jurisdiction and Venue**

2.     The United States District Court for the District of Delaware has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the United States Bankruptcy Court for the District of Delaware (the "Court") under 28 U.S.C. § 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.     The statutory bases for the relief requested herein are sections 105(a), 363(b), 507(a)(8), and 541 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 2002, 6003, and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 2002-1 and 9013-1.

**Background**

5.     On June 7, 2026 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Concurrently with the filing of this motion, the Debtors filed a motion

2

requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no official committees have been appointed or designated.

### The Taxes and Fees

6.      In the ordinary course of business, the Debtors collect, withhold, and incur taxes and fees related to, among other things:  (a) income taxes; (b) use taxes; (c) franchise taxes; (d) lease taxes; and (e) business and insurance licenses and other taxes and fees (collectively, the "Taxes and Fees").[3]  The Debtors pay or remit, as applicable, the Taxes and Fees to various governmental authorities (collectively, the "Taxing Authorities"), identified in the schedule attached hereto as **Exhibit C**.[4]  The Debtors generally remit and pay Taxes and Fees either through checks or electronic fund disbursements processed through their banks or other financial institutions.  From time to time, the Debtors may also receive tax credits from certain governmental units for overpayments or refunds with respect to Taxes and Fees.  The Debtors generally use these credits to offset against future Taxes and Fees or cause the amount of such credits to be refunded to the Debtors.

7.      The Debtors pay the Taxes and Fees to the Taxing Authorities on a periodic basis, remitting them monthly, quarterly, or annually, depending on the nature and incurrence of the

---

[3]    Other than with respect to any potential unknown Audits or Assessments (each as defined herein), by this motion, the Debtors do not seek the authority to collect and remit state and federal employee-related taxes and withholdings.  Such relief is instead requested in the *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Compensation and Benefits Programs, and (II) Granting Related Relief* (the "Wages Motion"), filed concurrently herewith.

[4]    Although **Exhibit C** is intended to be comprehensive, the Debtors may have inadvertently omitted Taxing Authorities from **Exhibit C**.  The Debtors request relief with respect to Taxes and Fees payable to all Taxing Authorities, regardless of whether such Taxing Authority is specifically identified on **Exhibit C** and reserve the right, in their sole discretion, to add or remove any Taxing Authority from **Exhibit C**.

category of Taxes and Fees, and as required by applicable law.  The Debtors seek authority to pay and remit all prepetition and postpetition obligations on account of Taxes and Fees, including where:  (a) Taxes and Fees accrue or are incurred postpetition; (b) Taxes and Fees accrued or were incurred prepetition but were not paid prepetition, or were paid in an amount less than what was actually owed; (c) Taxes and Fees paid prepetition by the Debtors were lost or otherwise not received in full by any of the Taxing Authorities; or (d) Taxes and Fees incurred prepetition may become due and payable after the commencement of these chapter 11 cases, including as a result of Audits (as defined herein).  In addition, for the avoidance of doubt, the Debtors seek authority, but not direction, to pay Taxes and Fees for so-called "straddle" periods (*i.e.*, periods that include the Petition Date).[5]

8.      Additionally, the Debtors may become subject to routine audit investigations on account of tax returns and/or tax obligations ("Audits") during these chapter 11 cases, including as a result of any voluntary disclosure agreements or similar procedural mechanisms (if applicable).  As of the Petition Date, no Audits are currently pending against the Debtors.  If an Audit were to be initiated following the Petition Date, it may result in additional prepetition Taxes and Fees being assessed against the Debtors (such additional Taxes and Fees, "Assessments").[6] Critically, in certain of the jurisdictions where the Debtors operate, the Debtors must be able to accept a proposed resolution of an Audit and make a payment with respect to such resolution in a timely manner.  Accordingly, the Debtors seek authority, but not direction, to pay or remit any

---

[5]     The Debtors reserve their rights with respect to the proper characterization of any "straddle" Taxes and Fees and to seek reimbursement of any portion of any payment made that ultimately is not entitled to administrative or priority treatment.

[6]     Nothing in this motion or any related order constitutes, or should be construed, as an admission of liability by the Debtors with respect to any Audit or Assessment.  The Debtors expressly reserve all rights with respect to any Audit and the right to contest any Assessments claimed to be due as a result of any Audit.

4

Assessments as and if they arise in the ordinary course of the Debtors' business, including as a result of any resolution of an Audit, and including any Assessment of the kinds of Taxes and Fees otherwise addressed in the Wages Motion.

9.      Finally, subject to the Final Order, the Debtors seek authority to undertake certain ordinary course activities related to tax planning, including:  (a) converting Debtor entities from one form to another (*e.g.*, converting an entity from a corporation to a limited liability company) via conversion, merger, or otherwise (the "Entity Conversions"); (b) making certain tax elections (including with respect to the tax classification of Debtor entities) (the "Entity Classification Elections"); (c) changing the position of Debtor entities within the Debtors' corporate structure (the "Entity Movements"); and (d) modifying or resolving intercompany claims and moving assets or liabilities among Debtor entities (the "Asset and Liability Movements" and, together with the Entity Conversions, Entity Classification Elections, and Entity Movements, the "Tax Planning Activities"), so long as, in each case, doing so will not alter the substantive rights of the Debtors' stakeholders in these chapter 11 cases.

10.     The Debtors estimate that approximately $224,000 in Taxes and Fees is outstanding as of the Petition Date, of which approximately $200,000 is currently payable or will become due and owing to the Taxing Authorities between entry of the Interim Order and the Final Order (the "Interim Period") in the ordinary course, as outlined below:

| Category | Description | Approximate Amount Accrued as of Petition Date | Approximate Amount Due During Interim Period |
|---|---|---|---|
| **Income Taxes** | Taxes imposed on the Debtors' income.  The amount of income taxes incurred is based on the jurisdictions in which the Debtors do business and generally payable on an annual basis. | $75,000 | $75,000 |

| Category | Description | Approximate Amount Accrued as of Petition Date | Approximate Amount Due During Interim Period |
|---|---|---|---|
| Use Taxes | Taxes on goods and services purchased without paying sales taxes, assessed based on the value of such goods and services, generally payable on an annual basis. | $1,000 | $0 |
| Franchise Taxes | Taxes imposed on the Debtors to operate their businesses pursuant to state laws, generally payable either on a quarterly or annual basis. | $115,000 | $115,000 |
| Lease Taxes | Taxes imposed on certain services utilized by the Debtors, generally payable on an annual basis. | $0 | $0 |
| Business and Insurance Licenses and Other Taxes and Fees | Fees related to compliance with state licensing and registration related to business licenses, permits, annual reporting fees, and regulatory fees to operate and remain in good standing with the applicable Taxing Authorities, generally payable on an annual basis. | $33,000 | $10,000 |
| Total | | $224,000 | $200,000 |

## I.    Income Taxes.

11.    In the ordinary course of business, the Debtors may incur and may be required to pay the relevant Taxing Authorities in certain jurisdictions where the Debtors operate various federal, state, and local income taxes, as applicable (collectively, the "Income Taxes").    The Debtors generally remit Income Taxes to the relevant Taxing Authorities in accordance with the statutory requirements of each applicable jurisdiction (*e.g.*, on an annual or quarterly basis).

12.    In 2025, the Debtors paid approximately $140,000 in Income Taxes to the applicable Taxing Authorities.    On a consolidated basis, the Debtors do not expect to owe federal Income Taxes for the 2025 tax year due to net operating losses.    However, Debtor e-TeleQuote Insurance, Inc. is expected to owe approximately $75,000 to the applicable Taxing Authorities on account of prepetition Income Taxes as of the Petition Date, all of which is currently payable or will become payable during the Interim Period and may be subject to additional interest or

penalties.  The Debtors request authority to satisfy any amounts owed on account of such Income Taxes that are or may be due and owing as of the Petition Date or may become due and owing in the ordinary course of business on a postpetition basis consistent with prepetition practices.[7]

**II.     Use Taxes.**

13.     The Debtors incur use taxes in connection with the purchase of goods and services when vendors do not include applicable use taxes on the invoices payable by the Debtors (collectively, the "Use Taxes").  Use Taxes are usually set by the relevant Taxing Authorities as a percentage of the retail prices of goods and services purchased.

14.     In 2025, the Debtors paid approximately $15,000 in the aggregate in Use Taxes to the applicable Taxing Authorities.  As of the Petition Date, the Debtors estimate that they owe a *de minimis* amount (less than $1,000) to the relevant Taxing Authorities on account of prepetition Use Taxes, none of which will become payable during the Interim Period.  Accordingly, the Debtors request authority to pay all amounts owed on account of such Use Taxes that are due and owing as of the Petition Date, including outstanding prepetition amounts, and to continue to pay Use Taxes in the ordinary course of business on a postpetition basis consistent with prepetition practices.

**III.    Franchise Taxes.**

15.     The Debtors are required to pay franchise taxes in the ordinary course to conduct their business pursuant to state and local laws (collectively, the "Franchise Taxes").  The Debtors generally remit Franchise Taxes directly to the applicable Taxing Authorities in accordance with the statutory requirements of each applicable jurisdiction.

---

[7]     The Debtors reserve the right to make deferred payments on account of the Income Taxes at the end of these chapter 11 cases pursuant to 11 U.S.C. § 1129(a)(9)(C).

16.    In 2025, the Debtors paid approximately $300,000 in Franchise Taxes to the applicable Taxing Authorities.  As of the Petition Date, the Debtors estimate that they owe approximately $115,000 to the relevant Taxing Authorities on account of prepetition Franchise Taxes, all of which is currently payable or will become payable during the Interim Period.  Accordingly, the Debtors request authority to pay all amounts owed on account of the Franchise Taxes that are due and owing as of the Petition Date, including outstanding prepetition amounts, and to continue to pay Franchise Taxes in the ordinary course of business on a postpetition basis consistent with prepetition practices.[8]

## IV.    Lease Taxes.

17.    The Debtors are required to pay certain lease taxes in certain jurisdictions.  In particular, the Debtors are required to pay the Chicago Personal Property Lease Transaction Tax to access a remote database, cloud platforms, or similar services (the "Lease Taxes").  While some of the Debtors' service providers include the applicable Lease Taxes in the invoices payable by the Debtors, other service providers do not, and the Debtors therefore are required to remit the Lease Taxes directly to the applicable Taxing Authorities for the latter.

18.    In 2025, the Debtors maintained a credit balance for the Chicago Personal Property Lease Transaction Tax, and therefore did not make payments for Lease Taxes.  As of the Petition Date, the Debtors do not believe that there are any outstanding payments to the applicable Taxing Authorities on account of the Lease Taxes.  Nevertheless, out of an abundance of caution, the Debtors request authority to satisfy any amounts owed on account of such Lease Taxes that are or may be due and owing as of the Petition Date or may become due and owing in the ordinary course

---

[8]    The Debtors reserve the right to make deferred payments on account of the Franchise Taxes at the end of these chapter 11 cases pursuant to 11 U.S.C. § 1129(a)(9)(C).

of business on a postpetition basis consistent with prepetition practices, including by using any tax credit to offset any outstanding amounts.

**V.      Business and Insurance Licenses and Other Taxes and Fees.**

19.      Federal, state, and local laws in the jurisdictions where the Debtors operate require the Debtors to obtain and pay for a wide range of business and insurance licenses, permits, annual reporting fees, and regulatory fees to operate and remain in good standing with the applicable Taxing Authorities, as well as certain other miscellaneous Taxes and Fees required to operate their business (the "Business and Insurance Licenses and Other Taxes and Fees").

20.      In 2025, the Debtors paid approximately $640,000 in Business and Insurance Licenses and Other Taxes and Fees to the applicable Taxing Authorities.  As of the Petition Date, the Debtors estimate that they owe approximately $33,000 to the relevant Taxing Authorities on account of prepetition Business and Insurance Licenses and Other Taxes and Fees, of which approximately $10,000 is currently payable or will become payable during the Interim Period. Accordingly, the Debtors request authority to pay all amounts owed on account of Business and Insurance Licenses and Other Taxes and Fees that are due and owing as of the Petition Date, including outstanding prepetition amounts, and to continue to pay Business and Insurance Licenses and Other Taxes and Fees in the ordinary course of business on a postpetition basis consistent with prepetition practices.

**VI.    Audits.**

21.      The Debtors currently are not subject to any ongoing Audits but may in the future be subject to Audits (or voluntary disclosures of unpaid tax amounts that give rise to an agreed Assessment), which could result in additional prepetition Taxes and Fees being assessed against the Debtors during the pendency of these chapter 11 cases.  While the Debtors do not believe any Assessments are owed as of the Petition Date, out of an abundance of caution, the Debtors request

9

authority to pay any outstanding Assessments and to pay or remit Assessments and other tax obligations on account of Audits as they arise in the ordinary course of the Debtors' business, including as a result of resolutions of issues addressed in any such Audits, on a postpetition basis.

### Basis for Relief

22.     The Debtors believe that any failure to pay the Taxes and Fees could materially disrupt the Debtors' business operations in several ways, including, but not limited to: (a) the Taxing Authorities may initiate Audits, which would unnecessarily divert the Debtors' attention from these chapter 11 cases; (b) the Taxing Authorities may attempt to suspend the Debtors' operations, file liens, seek to lift the automatic stay, and/or pursue other remedies that will harm the Debtors' estates; and (c) in certain instances, certain of the Debtors' directors and officers could be subject to claims of personal liability, which would likely distract those key employees from their duties related to these chapter 11 cases.

23.     In addition, the Debtors collect and hold certain outstanding tax liabilities in trust for the benefit of the applicable Taxing Authorities, and these funds may not constitute property of the Debtors' estates; as such, there is a strong legal basis for allowing the Debtors to remit these funds to the applicable Taxing Authorities on a postpetition basis.  Moreover, unpaid Taxes and Fees may result in penalties, the accrual of interest, or both, and nonpayment of the Taxes and Fees may also give rise to priority claims entitled to payment before general unsecured claims.

### I.      Certain of the Taxes and Fees May Not Be Property of the Debtors' Estates.

24.     As mentioned, many of the Taxes and Fees are collected or withheld by the Debtors on behalf of the applicable Taxing Authorities and are held in trust by the Debtors. *See, e.g.*, I.R.C. § 7501 (stating that certain taxes and fees are held in trust).  As such, these Taxes and Fees are not property of the Debtors' estates under section 541 of the Bankruptcy Code. *See, e.g.*, *Begier v. Internal Revenue Serv.*, 496 U.S. 53, 57–59 (1990) (holding that any prepetition payment

of trust fund taxes is not a transfer subject to avoidance because such funds are not the debtor's property); *In re First Pay, Inc.*, 773 F.3d 583, 590 (4th Cir. 2014) (same); *In re Shank*, 792 F.2d 829, 833 (9th Cir. 1986) (holding that sales tax required by state law to be collected by sellers from their customers is a "trust fund" tax and not released by bankruptcy discharge); *DeChiaro v. N.Y. State Tax Comm'n*, 760 F.2d 432, 434–36 (2d Cir. 1985) (same); *Rosenow v. Ill. Dept. of Revenue (In re Rosenow)*, 715 F.2d 277, 279–80 (7th Cir. 1983) (same). The Debtors, therefore, generally do not have an equitable interest in such funds, and should be permitted to pay those funds to the Taxing Authorities as they become due.[9]

## II.    Certain of the Taxes and Fees May Be Secured or Priority Claims Entitled to Special Treatment Under the Bankruptcy Code.

25.    Claims for certain of the Taxes and Fees are, or may be, priority claims entitled to payment before general unsecured claims. *See* 11 U.S.C. § 507(a)(8) (describing taxes entitled to priority treatment). Moreover, to the extent that such amounts are entitled to priority treatment under the Bankruptcy Code, the respective Taxing Authorities may attempt to assess fees, interest, and penalties if such amounts are not paid. *See* 11 U.S.C. § 507(a)(8)(G) (granting eighth priority status to "a penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss"). Claims entitled to priority status pursuant to section 507(a)(8) of the Bankruptcy Code must be paid in full under a confirmable plan pursuant to section 1129(a)(9)(C) of the Bankruptcy Code. Therefore, payment of certain of the Taxes and Fees at this time only affects the timing of the payment for the amounts at issue and will not unduly prejudice the rights and recoveries of junior creditors. Paying such Taxes and Fees will give Taxing Authorities no more than they otherwise would be entitled to under a chapter 11 plan and will save the Debtors

---

[9]    For the avoidance of doubt, the Debtors hereby request authority to pay the Taxes and Fees as provided herein, regardless of whether such Taxes and Fees constitute trust fund obligations.

the potential interest expense, legal expense, and penalties that might otherwise accrue on the Taxes and Fees during these chapter 11 cases. For the avoidance of doubt, the Debtors are not seeking to make any payments pursuant to this motion for tax periods that would be older than those entitled to priority treatment.

26. Some of the Taxes and Fees may be entitled to secured status with respect to property owned by the Debtors. As secured claims, these Taxes and Fees would be entitled to priority treatment if the Debtors sell the property to which Taxes and Fees relate when the Debtors confirm a chapter 11 plan. *See* 11 U.S.C. §§ 506(a), 1129(a)(9)(C), 1129(b)(2)(A) (requiring that any plan of reorganization "crammed down" over a class of secured creditors pay those creditors in full or allow those creditors to retain their liens). Moreover, such secured claims could accrue interest if not timely paid. Thus, paying such secured Taxes and Fees only affects the timing of the payments, may reduce the ultimate amount owed with respect to such Taxes and Fees, and does not prejudice the rights of other creditors of the Debtors.

**III.   Paying the Taxes and Fees and Undertaking the Tax Planning Activities as Provided Herein Is a Sound Exercise of the Debtors' Business Judgment.**

27. Courts have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate, including an operating business's going-concern value. *See, e.g., Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 468 (2017) (noting that courts "have approved . . . 'critical vendor' orders that allow payment of essential suppliers' prepetition invoices"); *In re Just for Feet, Inc.*, 242 B.R. 821, 825–26 (D. Del. 1999); *see also In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175–76 (Bankr. S.D.N.Y. 1989); *In re James A. Phillips, Inc.*, 29 B.R. 391, 398 (S.D.N.Y. 1983). Several legal theories rooted in sections 105(a), 363(b), 1107(a), and 1108 of the Bankruptcy Code support the payment of prepetition claims.

28. Section 363(b) of the Bankruptcy Code permits a bankruptcy court, after notice and a hearing, to authorize a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Under this section, a court may authorize a debtor to pay certain prepetition claims. *See Ionosphere Clubs*, 98 B.R. at 175 (affirming lower court order authorizing payment of prepetition wages pursuant to section 363(b) of the Bankruptcy Code); *see also In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (recognizing the doctrine of necessity and authorizing the debtor to pay prepetition claims if such payment was essential to the continued operation of the debtor); *In re Orion Refining Corp.*, 372 B.R. 688, 703 (Bankr. D. Del. 2007) (authorizing payment of prepetition claim of critical vendor pursuant to section 363(b) of the Bankruptcy Code). To do so under section 363(b) of the Bankruptcy Code, courts require only that the debtor "show that a sound business purpose" justifies the proposed use of property. *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999); *see also In re Phx. Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987); *Comm. Of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070–71 (2d Cir. 1983) (requiring the debtor to show a "good business reason" to approve a sale pursuant to section 363(b)). Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986); *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) ("Overcoming the presumptions of the business judgment rule on the merits is a near-Herculean task."). Thus, if a transaction satisfies the business judgment rule, it should be approved under section 363(b) of the Bankruptcy Code.

29.     In addition, courts may authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code, which codifies a bankruptcy court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  Under section 105(a) of the Bankruptcy Code, courts may authorize pre-plan payments of prepetition obligations when essential to the continued operation of a debtor's business.  *See Just for Feet*, 242 B.R. at 825–26.  Specifically, a court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity").  *See, e.g.*, *Ionosphere Clubs*, 98 B.R. at 176; *Lehigh*, 657 F.2d at 581 (stating that courts may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *see also In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (noting that, in the Third Circuit, debtors may pay prepetition claims that are essential to the continued operation of the business).  A bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept."  *Ionosphere Clubs*, 98 B.R. at 175–76 (citing *Miltenberger v. Logansport, C. & S.W. Ry. Co.*, 106 U.S. 286 (1882)).

30.     Moreover, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, debtors in possession are fiduciaries "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [their] creditors and (if the value justifies) equity owners."  *See In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).  Implicit in the fiduciary duties of any debtor in possession is the obligation to "protect and preserve the estate, including an operating business's going-concern value."  *Id.*  Some courts have noted that there are instances in which a debtor can

fulfill this fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." *Id.* The court in *CoServ* specifically noted the pre-plan satisfaction of prepetition claims would be a valid exercise of the debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate." *Id.*

31.     The Debtors' ability to timely pay the Taxes and Fees is critical to their continued and uninterrupted operations. If certain Taxes and Fees remain unpaid, the Taxing Authorities may seek to recover such amounts directly from the Debtors' directors, officers, or employees, thereby distracting these key personnel from the administration of the Debtors' chapter 11 cases. *See, e.g.*, *In re Am. Motor Club, Inc.*, 139 B.R. 578, 581–83 (Bankr. E.D.N.Y. 1992) (stating "[i]f the employer fails to pay over the trust fund taxes, the IRS may collect an equivalent amount directly from officers or employees of the employer who are responsible for collecting the tax" and finding director personally liable for unpaid taxes) (citing *United States v. Energy Res. Co.*, 495 U.S. 545, 547 (1990)). Any collection action on account of such claims, and any potential ensuing liability, would distract the Debtors and their personnel to the detriment of the Debtors' estates and all parties in interest. The dedicated and active participation of the Debtors' officers and employees is integral to the Debtors' continued operations and is essential to the orderly administration and, ultimately, the speed and success of these chapter 11 cases.

32.     Furthermore, failure to timely pay the Taxes and Fees may ultimately result in increased tax liability for the Debtors if interest and penalties accrue on the claims for Taxes and Fees. Such a result would be contrary to the best interests of the Debtors' estates and all stakeholders. Accordingly, the Court should grant the Debtors authority to pay the Taxes and Fees and undertake the Tax Planning Activities as provided herein.

33. Courts in this district routinely grant the relief requested herein. *See, e.g.*, *In re Claire's Holdings LLC*, No. 25-11454 (BLS) (Bankr. D. Del. September 8, 2025) (authorizing debtors to pay prepetition taxes and fees in the ordinary course of business and undertake tax planning activities on a final basis); *In re Marelli Auto. Lighting USA LLC*, No. 25-11034 (CTG) (Bankr. D. Del. July 23, 2025) (same); *In re At Home Grp. Inc.*, No. 25-11120 (JKS) (Bankr. D. Del. July 14, 2025) (same); *In re Liberated Brands LLC*, No. 25-10168 (JKS) (Bankr. D. Del. Feb. 28, 2025) (same); *In re JOANN Inc.*, No. 25-10068 (CTG) (Bankr. D. Del. Feb. 10, 2025) (same).[10]

### Processing of Checks and Electronic Fund Transfers Should Be Authorized

34. The Debtors have sufficient funds to pay the amounts described in this motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations and anticipated access to cash collateral. In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to any authorized payment in respect of the relief requested herein. Accordingly, the Debtors do not believe that checks or wire transfer requests, other than those relating to authorized payments, will be inadvertently honored. Therefore, the Debtors request authority to authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this motion.

### The Requirements of Bankruptcy Rule 6003(a) Are Satisfied

35. Bankruptcy Rule 6003(a) empowers a court to grant certain relief within the first 21 days after the petition date only to the extent that relief is "needed to avoid immediate and

---

[10] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

irreparable harm." Fed. R. Bankr. P. 6003(a).  For the reasons set forth above, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of the Debtors' operations.  Failure to receive the requested relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture and cause immediate and irreparable harm.  The requested relief is necessary for the Debtors to operate their business in the ordinary course, preserve the ongoing value of their operations, and maximize value of their estates for the benefit of all stakeholders.  The Debtors have demonstrated that the requested relief is "needed to avoid immediate and irreparable harm," as contemplated by Bankruptcy Rule 6003(a), and request that the Court grant the requested relief.

**Reservation of Rights**

36.    Notwithstanding anything to the contrary herein, nothing contained in this motion or any actions taken pursuant to any order granting the relief requested in this motion (including any payment made in accordance with any such order), is intended as or shall be construed or deemed to be:  (a) an implication or admission as to the amount, validity, or priority of, or basis for any claim against the Debtors under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this motion or any order granting the relief requested by this motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, lease, program, or policy pursuant to section 365 of the Bankruptcy Code (or otherwise affecting the Debtors' rights pursuant to section 365 of the Bankruptcy Code); (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of any claims, causes

17

of action, or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law; or (h) a waiver of the obligation of any party in interest to file a proof of claim.

**Waiver of Bankruptcy Rules 6004(a) and 6004(h)**

37.    To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

38.    To the extent that any aspect of the relief sought herein constitutes a use of property under section 363(b) of the Bankruptcy Code, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

**Notice**

39.    The Debtors will provide notice of this motion to the following parties or their respective counsel, as applicable:  (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the Ad Hoc TL Group; (c) counsel to the Ad Hoc Revolver Group; (d) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (e) the state attorneys general for states in which the Debtors conduct business; (f) the United States Attorney for the District of Delaware, District of Massachusetts, and District of Columbia; (g) the Internal Revenue Service; (h) the Taxing Authorities; and (i) any party that is entitled to notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties").  As this motion is seeking "first day" relief, within two business days of the hearing on this motion, the Debtors will serve copies of this motion and any order entered in respect to this motion as required by Local Rule 9013-1(m).  In light of the nature of the relief requested, no other or further notice need be given.

18

## **No Prior Request**

40.    No prior request for the relief sought in this motion has been made to this or any other court.


[*Remainder of page intentionally left blank*]

19

WHEREFORE, the Debtors request entry of the Interim Order and Final Order, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, (a) granting the relief requested herein and (b) granting such other relief as the Court deems appropriate under the circumstances.

Dated:  June 7, 2026
Wilmington, Delaware

/s/ Laura Davis Jones

| | |
|---|---|
| **PACHULSKI STANG ZIEHL & JONES LLP** | **KIRKLAND & ELLIS LLP** |
| Laura Davis Jones (DE Bar No. 2436) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| James E. O'Neill (DE Bar No. 4042) | Anup Sathy, P.C. (*pro hac vice* pending) |
| Edward A. Corma (DE Bar No. 6718) | Alexandra F. Schwarzman, P.C. (*pro hac vice* pending) |
| 919 North Market Street, 17th Floor | David R. Gremling (*pro hac vice* pending) |
| Wilmington, Delaware 19801 | 333 West Wolf Point Plaza |
| Telephone:   (302) 652-4100 | Chicago, Illinois 60654 |
| Facsimile:   (302) 652-4400 | Telephone:   (312) 862-2000 |
| Email:   ljones@pszjlaw.com | Facsimile:   (312) 862-2200 |
|   joneill@pszjlaw.com | Email:   anup.sathy@kirkland.com |
|   ecorma@pszjlaw.com |   alexandra.schwarzman@kirkland.com |
| |   dave.gremling@kirkland.com |

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

*Proposed Co-Counsel for the Debtors and Debtors in Possession*