## Exhibit 1

### Confirmation Hearing Notice

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GOHEALTH, INC., *et al.*,[1] | ) | Case No. 26-10914 (TMH) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**NOTICE OF (I) COMMENCEMENT OF PREPACKAGED CHAPTER 11
BANKRUPTCY CASES, (II) CONFIRMATION HEARING ON THE DISCLOSURE
STATEMENT, CONFIRMATION OF THE JOINT PREPACKAGED CHAPTER 11 PLAN,
AND RELATED MATTERS, AND (III) RELATED OBJECTION AND BRIEFING DEADLINES**

**NOTICE IS HEREBY GIVEN** as follows:

On June 7, 2026, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") with the United States Bankruptcy Court for the District of Delaware (the "Court"). Contemporaneously therewith, the Debtors filed the *Joint Prepackaged Plan of GoHealth, Inc. and Its Debtor Affiliates* [Docket No. 5] (as may be altered, amended, supplemented, or modified from time to time in accordance with its terms, and including all exhibits and supplements thereto, the "Plan") and the *Disclosure Statement Relating to the Joint Prepackaged Plan of GoHealth, Inc. and Its Debtor Affiliates* [Docket No. 6] (as may be altered, amended, supplemented, or modified from time to time in accordance with its terms, and including all exhibits and supplements thereto, the "Disclosure Statement").[2]

**YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, DISCHARGE, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MAY BE AFFECTED.**

Copies of the Plan, the Disclosure Statement, and the other documents filed in these chapter 11 cases are accessible, free of charge, on the Debtors' restructuring website maintained by Donlin, Recano & Company, LLC (the "Claims and Noticing Agent") at

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are: GoHealth, Inc. (3805); Blizzard Midco, LLC (3732); Connected Benefits, LLC (2162); e-TeleQuote Insurance, Inc. (2336); ETQ Holdings, LLC (8260); GoHealth Holdings, LLC (3653); GoHealth, LLC (5175); and Norvax, LLC (3063). The location of the Debtors' service address for purposes of these chapter 11 cases is: 222 West Merchandise Mart Plaza, Suite 1750, Chicago, Illinois 60654.

[2] A detailed description of the Debtors and their business, including the facts and circumstances supporting the motion, is set forth in the *Declaration of Vijay Kotte, Chief Executive Officer of GoHealth, Inc., in Support of the Chapter 11 Petitions, First Day Motions, and Access to Cash Collateral* (the "First Day Declaration"). Capitalized terms used but not defined in this motion shall have the meanings ascribed to them in the First Day Declaration or the Plan, as applicable.

https://www.bankruptcy.angeiongroup.com/gohealth.  Printed copies of the Plan, the Disclosure Statement, and the other documents filed in these chapter 11 cases may be obtained free of charge by calling the Claims and Noticing Agent at +1-877-583-1578 (Toll-free US / Canada) or +1-332-284-1398 (International).  In addition, such documents are available for inspection for a fee on the Court's website at www.deb.uscourts.gov and are on file with the Clerk of the Court, 824 North Market Street, 3rd Floor, Wilmington, Delaware 19801, where they are available for review between the hours of 8:00 a.m. to 4:00 p.m., prevailing Eastern Time.

**U.S./Canada Toll Free: +1-877-583-1578**
**International, Toll: +1-332-284-1398**

The Plan is a "prepackaged" plan of reorganization.  The Plan provides for, among other things, (i) issuance of $20 million of new money term loans upon exit from chapter 11 that will, among other things, fund the Equity Recovery Pool; (ii) roll-up of approximately $173.9 million of loans under the Super-Priority Credit Agreement into second-out term loans and the roll-up of approximately $588.3 million of loans under the First Lien Credit Agreement into third-out term loans; (iii) reinstatement or payment in full in cash of Allowed General Unsecured Claims; (iv) reinstatement of GoHealth, Inc. Preferred Stock; and (v) a $10 million cash recovery for holders of the Company's common interests, including holders of Allowed GoHealth Holdings Interests and Allowed GoHealth, Inc. Class A Common Stock.

### Hearing on Confirmation of the Plan and the Adequacy of the Disclosure Statement

The hearing to consider the adequacy of the Disclosure Statement, any objections thereto, confirmation of the Plan, any objections thereto, any objections to the proposed assumption of Executory Contracts and Unexpired Leases, and any other matter that may properly come before the Court related to approval of the Disclosure Statement and confirmation of the Plan (the "Confirmation Hearing") will be held before the Honorable Judge Thomas M. Horan, United States Bankruptcy Judge, in Courtroom 5 of the United States Bankruptcy Court, 824 North Market Street, 5th Floor, Wilmington, Delaware, 19801, on **July 16, 2026, at 1:00 p.m., prevailing Eastern Time**.  Please be advised that the Confirmation Hearing may be continued from time to time by the Court or the Debtors without further notice other than by such adjournment being announced in open court or by a notice of adjournment filed with the Court and served on other parties entitled to notice.

### Information Regarding the Plan and Disclosure Statement

**Voting Record Date**.  The voting record date was **May 12, 2026**, which was the date for determining which Holders of Claims in **Class 3, Class 4, Class 6, and Class 8** of the Plan are entitled to vote.

**Objections to the Plan and Disclosure Statement**.  The deadline for filing objections (each, an "Objection") to confirmation of the Plan or the adequacy of the Disclosure Statement, or the proposed assumption of Executory Contracts and Unexpired Leases, is **July 8, 2026, at 4:00 p.m., prevailing Eastern Time** (the "Objection Deadline").  Any such Objections must: (a) be in writing; (b) comply with the Federal Rules of Bankruptcy Procedure and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the

2

District of Delaware; (c) state the name and address of the objecting party and the amount and nature of the Claim or Interest owned by such entity; (d) state with particularity the legal and factual basis for such objection and, if practicable, a proposed modification to the Plan or Disclosure Statement that would resolve such objections; and (e) be filed with the Court with proof of service thereof and served upon the Notice Parties (as defined herein) so as to be actually received by the Objection Deadline.

Objections must be filed with the Court and served so as to be **actually received** no later than **July 8, 2026, at 4:00 p.m., prevailing Eastern Time**, by those parties who have filed a notice of appearance in the Debtors' chapter 11 cases and the following parties (the "Notice Parties"): (a) the Debtors, GoHealth, Inc., 222 West Merchandise Mart Plaza, Suite 1750, Chicago, Illinois 60654, Attn.: Bradley Burd, Chief Legal Officer and Corporate Secretary (bburd@gohealth.com); (b) Proposed Co-Counsel to the Debtors, (i) Kirkland & Ellis LLP, 333 West Wolf Point Plaza, Chicago, Illinois 60654, Attn.: Anup Sathy, P.C. (anup.sathy@kirkland.com), Alexandra F. Schwarzman, P.C. (alexandra.schwarzman@kirkland.com), and David R. Gremling (dave.gremling@kirkland.com), and (ii) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, Delaware 19801, Attn.: Laura Davis Jones (ljones@pszjlaw.com); James O'Neill (joneill@pszjlaw.com); and Edward A. Corma (ecorma@pszjlaw.com); (c) Co-Counsel to the Ad Hoc TL Group, (i) Akin Gump Strauss Hauer & Feld LLP, 2001 K Street, N.W., Washington, D.C. 20006, Attn.: Scott L. Alberino (salberino@akingump.com) and Benjamin L. Taylor (taylorb@akingump.com) and Akin Gump Strauss Hauer & Feld LLP, 2300 N. Field Street, Suite 1800, Dallas, Texas 75201, Attn.: Nicholas Houpt (nhoupt@akingump.com), and (ii) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attn: Michael R. Nestor (mnestor@ycst.com) and Robert Poppiti (rpoppiti@ycst.com); (d) Counsel to the Ad Hoc Revolver Group, (i) Cahill Gordon & Reindel LLP, 32 Old Slip, New York, New York 10005, Attn.: Joel Moss (jmoss@cahill.com) and Jordan Wishnew (jwishnew@cahill.com), and (ii) Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market St., 16th Floor, Wilmington, Delaware 19899, Attn: Derek C. Abbott (dabbott@morrisnichols.com); (e) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn.: Benjamin A. Hackman (benjamin.a.hackman@usdoj.gov); and (f) any statutory committee appointed in these chapter 11 cases.

Any brief in support of confirmation of the Plan and reply to any objections shall be filed by **July 13, 2026, at 4:00 p.m., prevailing Eastern Time**, or such other date as the Court may direct.

**UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, IT MAY NOT BE CONSIDERED BY THE COURT.**

**YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE RELEASE, EXCULPATION, DISCHARGE, AND INJUNCTION PROVISIONS, AS YOUR RIGHTS MAY BE AFFECTED.**

**Summary of Plan Treatment**

The following chart summarizes the treatment provided by the Plan to each Class of Claims against and Interests in the Debtors and indicates the voting status of each Class.

| Class | Claims and Interests | Treatment of Claim / Interest | Status | Voting Rights |
|---|---|---|---|---|
| Class 1 | Other Secured Claims | Except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, on the Effective Date, each Holder of an Allowed Other Secured Claim, in full and final satisfaction, settlement, release, and discharge of such Allowed Other Secured Claim, shall either:<br>(i)     receive payment in full in Cash;<br>(ii)    have its Allowed Other Secured Claim Reinstated; or<br>(iii)   receive such other treatment that renders its Allowed Other Secured Claim Unimpaired. | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 2 | Other Priority Claims | Except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment, on the Effective Date (or, if payment is not then due, in accordance with such Allowed Other Priority Claim's terms in the ordinary course of business), each Holder of an Allowed Other Priority Claim shall receive, in full and final satisfaction, settlement, release, and discharge of such Allowed Other Priority Claim, treatment consistent with section 1129(a) of the Bankruptcy Code. | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 3 | Super-Priority Loan Claims | Except to the extent that a Holder of an Allowed Super-Priority Loan Claim agrees to less favorable treatment of its Allowed Super-Priority Loan Claim, on the Effective Date, each Holder of an Allowed Super-Priority Loan Claim shall receive, in full and final satisfaction, settlement, release, and discharge of such Allowed Super-Priority Loan Claim, its Pro Rata share of the Senior Takeback Debt. | Impaired | Entitled to Vote |
| Class 4 | First Lien Claims | Except to the extent that a Holder of an Allowed First Lien Claim agrees to less favorable treatment of its Allowed First Lien Claim, on the Effective Date, each Holder of an Allowed First Lien Claim shall receive, in full and final satisfaction, settlement, release, and discharge of such Allowed First Lien Claim its Pro Rata share of:<br>(i)     the Junior Takeback Debt; and<br>(ii)    the New Common Interests,[3] subject to dilution, if any, on account of the Management Incentive Plan. | Impaired | Entitled to Vote |

---

[3]   Notwithstanding the foregoing, to the extent that a Holder of an Allowed First Lien Claim that is a member of the Ad Hoc Revolver Group advises the Debtors in writing no less than five (5) Business Days prior to the Effective Date that it declines receipt of its Pro Rata share of the New Common Interests, such declined New Common Interests shall be re-allocated pro rata among the members of the Ad Hoc Revolver Group that do not decline receipt of the New Common Interests.

| Class | Claims and Interests | Treatment of Claim / Interest | Status | Voting Rights |
|---|---|---|---|---|
| Class 5 | General Unsecured Claims | Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment, on the Effective Date (or, if payment is not then due, in accordance with such Allowed General Unsecured Claim's terms in the ordinary course of business), each Holder of an Allowed General Unsecured Claim shall, in full and final satisfaction, settlement, release, and discharge of such Allowed General Unsecured Claim, and at the option of the Debtors, with the consent of the Required Lenders, or the Reorganized Debtors: <br><br>(i) have its Allowed General Unsecured Claim Reinstated; or <br><br>(ii) receive payment in full in Cash on the date any payment is due in the ordinary course of business in accordance with the terms and conditions of the particular transaction giving rise to, or the agreement governing, such Allowed General Unsecured Claim. | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 6 | GoHealth Holdings Interests | Except to the extent that a Holder of an Allowed GoHealth Holdings Interest agrees to less favorable treatment, on the Effective Date, each Holder of an Allowed GoHealth Holdings Interest shall receive, in full and final satisfaction of such Interest, its Specified Pro Rata Share of the Equity Recovery Pool.[4] | Impaired | Entitled to Vote |
| Class 7 | GoHealth, Inc. Preferred Stock | Except to the extent that a Holder of Allowed GoHealth, Inc. Preferred Stock agrees to less favorable treatment, on the Effective Date, all Allowed GoHealth, Inc. Preferred Stock shall be Reinstated and converted to GoHealth Preferred Interests. | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 8 | GoHealth, Inc. Class A Common Stock | Except to the extent that a holder of Allowed GoHealth, Inc. Class A Common Stock agrees to less favorable treatment, on the Effective Date, each Holder of Allowed GoHealth, Inc. Class A Common Stock (except, for the avoidance of doubt, Holders of such Interests that are Debtors) shall receive, in full and final satisfaction of such Interest, its Specified Pro Rata Share of the Equity Recovery Pool.[5] | Impaired | Entitled to Vote |
| Class 9 | GoHealth, Inc. Class B Common Stock | On the Effective Date, all GoHealth, Inc. Class B Common Stock shall be cancelled, released, discharged, extinguished, and of no further force or effect, and Holders of such GoHealth, Inc. Class B Common Stock shall receive no distribution. | Impaired and Receiving No Distribution | Not Entitled to Vote (Deemed to Reject) |

---

[4] Pursuant to the Plan, each Holder of GoHealth, Inc. Class A Common Stock or GoHealth Holdings Interests that is also a lender under the First Lien Credit Agreement or Super-Priority Credit Agreement (and, to the extent applicable, such Holder's fund(s), account, branch, Affiliate(s), unit and/or business group(s) that have a beneficial interest in such Common Stock or Interest) shall each waive its right to recover its Specified Pro Rata Share of the Equity Recovery Pool.

[5] Pursuant to the Plan, each Holder of GoHealth, Inc. Class A Common Stock or GoHealth Holdings Interests that is also a lender under the First Lien Credit Agreement or Super-Priority Credit Agreement (and, to the extent applicable, such Holder's fund(s), account, branch, Affiliate(s), unit and/or business group(s) that have a beneficial interest in such Common Stock or Interest) shall each waive its right to recover its Specified Pro Rata Share of the Equity Recovery Pool.

| Class | Claims and Interests | Treatment of Claim / Interest | Status | Voting Rights |
|---|---|---|---|---|
| Class 10 | Intercompany Claims | On the Effective Date, each Allowed Intercompany Claim shall be, at the option of the Debtors, with the consent of the Required Lenders, or the Reorganized Debtors:<br><br>(i)　　Reinstated;<br><br>(ii)　　adjusted, converted to equity, set off, settled, distributed, or contributed;<br><br>(iii)　　discharged, cancelled, and released without any distribution on account of such Allowed Intercompany Claim; or<br><br>(iv)　　otherwise addressed at the option of the Debtors, with the consent of the Required Lenders, or the Reorganized Debtors. | Unimpaired / Impaired and Receiving No Distribution | Not Entitled to Vote (Presumed to Accept or Deemed to Reject) |
| Class 11 | Intercompany Interests | On the Effective Date, each Allowed Intercompany Interest shall, be, at the option of the Debtors, with the consent of the Required Lenders, or the Reorganized Debtors:<br><br>(i)　　Reinstated;<br><br>(ii)　　adjusted, converted to equity, set off, settled, distributed, or contributed;<br><br>(iii)　　discharged, cancelled, and released without any distribution on account of such Intercompany Interests; or<br><br>(iv)　　otherwise addressed at the option of the Debtors, with the consent of the Required Lenders, or the Reorganized Debtors. | Unimpaired / Impaired and Receiving No Distribution | Not Entitled to Vote (Presumed to Accept or Deemed to Reject) |

## Discharge, Injunctions, Exculpation, and Releases

Please be advised that the Plan contains certain release, exculpation, discharge, and injunction provisions as follows:

**Relevant Definitions:**

**Under the Plan, "Releasing Parties" means, collectively, and in each case in its capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the Agents; (d) all Holders of Claims in Class 3 and Class 4 who vote to accept the Plan; (e) all Holders of Interests in Class 6 and Class 8 who affirmatively opt in to the releases set forth in the Plan; (f) all Holders of Claims or Interests who are presumed to accept the Plan and affirmatively opt in to the releases set forth in the Plan; (g) all Holders of Claims or Interests who are deemed to reject the Plan and affirmatively opt in to the releases set forth in the Plan; (h) each current and former Affiliate of each Entity in clause (a) through clause (i);**

and (i) each Related Party of each Entity in clause (a) through clause (h) for which such Entity is legally entitled to bind such Related Party to the releases contained in the Plan.[6]

Under the Plan, "Released Parties" means, collectively, and in each case in its capacity as such:  (a) the Debtors; (b) the Reorganized Debtors; (c) the Agents; (d) the Releasing Parties; (e) each current and former Affiliate of each Entity in clause (a) through clause (f); and (f) each Related Party of each Entity in clause (a) through clause (e).

Under the Plan, "Exculpated Parties" means, collectively, and in each case solely in its capacity as such (and to the extent permitted by Law):  (a) each of the Debtors and (b) each of the Debtors' current and former (i) directors, limited liability company managers, officers, and (ii) attorneys, financial advisors, or other professionals or advisors that were retained with Bankruptcy Court approval during any portion of the Chapter 11 Cases.

Under the Plan, "Related Party" means, collectively, with respect to any Person or Entity, each of, and in each case in its capacity as such, such Person's or such Entity's current and former directors, managers, officers, observers, committee members, members of any Governing Body, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, Affiliates, shareholders, partners, limited partners, general partners, principals, members, equity sponsors, direct and indirect investors, direct and indirect equity participants, "controlling persons" (within the meaning of federal securities law), management companies, fund advisors or managers, employees, secondees, agents, trustees, advisory board members, financial advisors or managers, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), accountants, investment bankers, consultants, representatives, and other professionals and advisors and any such Person's or Entity's respective heirs, executors, estates, and nominees.

## RELEASES BY THE DEBTORS

Except as otherwise specifically provided in the Plan or the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions and services of the Released Parties in facilitating the implementation of the restructuring

---

[6] For the avoidance of doubt, unless expressly indicated on a Ballot voting to accept the Plan, the members of the Ad Hoc Revolver Group participating in the Plan are doing so only in their capacity as holders of Super-Priority Loan Claims and/or First Lien Claims as of the Petition Date, and any actions taken by a member of the Ad Hoc Revolver Group in connection with the Plan and the Restructuring Transactions as well as any releases provided in connection with the Plan are only with respect to such lender's interest in the Super-Priority Loan Claims or First Lien Claims that are now owned or subsequently acquired by such member of the Ad Hoc Revolver Group. In addition, the provisions of the Plan shall only apply to such trading desk(s), fund(s), account, branch, Affiliate(s), unit and/or business group(s) that have a beneficial interest in such Claim and shall not apply to any other trading desk(s), fund(s), account, branch, Affiliate(s), unit and/or business group(s) of the members of the Ad Hoc Revolver Group, which, so long as they are not acting at the direction of or for the benefit of such member of the Ad Hoc Revolver Group or such Ad Hoc Revolver Group member's investment in the Debtors, will not be considered "Releasing Parties" or "Released Parties" under the Plan.

contemplated by the Plan, the adequacy of which is hereby confirmed, as of the Effective Date, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by and on behalf of each and all of the Debtors, their Estates, and the Reorganized Debtors, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action, whether known or unknown, including any derivative claims asserted or assertable on behalf of the Debtors, their Estates, and the Reorganized Debtors, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or herein- after arising, whether in Law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, that such Holders or their Estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively), or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, or that any Holder of any Claim against or Interest in a Debtor or other Entity could have asserted on behalf of the Debtors based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operation thereof or otherwise), the purchase, sale, or rescission of any Security of the Debtors or the Reorganized Debtors, the Restructuring Transactions, the Chapter 11 Cases, the Debtors' in or out-of-court restructuring efforts, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements or interaction between or among any Debtor and any Released Party, the distribution of any Cash or other property of the Debtors to any Released Party, the assertion or enforcement of rights or remedies against the Debtors, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, intercompany transactions between or among the Debtors or between the Debtors and their non-Debtor Affiliates, the Cash Collateral Orders, the Confirmation Order, any other Definitive Document, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the Plan, the Plan Supplement, the Exit Facilities, the Exit Facility Documents, the New Equity Interests, any other Definitive Document, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) relating to any of the foregoing, created or entered into in connection with the Plan, the Disclosure Statement, the Cash Collateral Orders, the Plan Supplement, or any other Definitive Document, or any Restructuring Transaction, the solicitation of votes with respect to the Plan, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement under the Restructuring Transactions, or

8

upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

Notwithstanding anything to the contrary in the foregoing Debtor Release, the Debtor Release set forth above does not release (1) any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; (2) any Causes of Action specifically retained by the Debtors pursuant to a schedule of retained Causes of Action to be attached as an exhibit to the Plan Supplement; or (3) any Released Party from actual fraud, willful misconduct, or gross negligence, in each case, as determined by a Final Order.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (1) in exchange for the good and valuable consideration provided by each of the Released Parties, including, without limitation, the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing the Plan; (2) a good faith settlement and compromise of the Claims released by the Debtor Release; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.

## RELEASES BY THE RELEASING PARTIES

Except as otherwise specifically provided in the Plan or the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Effective Date, each Releasing Party is deemed to have, hereby conclusively, absolutely, unconditionally, irrevocably and forever released and discharged each Debtor, Reorganized Debtor, and Released Party from any and all Claims and Causes of Action, whether known or unknown, including any derivative claims asserted or assertable on behalf of the Debtors, the Reorganized Debtors, and their Estates (as applicable) whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in Law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common Law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, that such Holders or their Estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor, the Reorganized Debtors, or their Estates or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operation thereof or otherwise), the purchase, sale, or rescission

9

of any Security of the Debtors or the Reorganized Debtors, the Restructuring Transactions, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the distribution of any Cash or other property of the Debtors to any Released Party, the assertion or enforcement of rights or remedies against the Debtors, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Debtors' in or out-of-court restructuring efforts, intercompany transactions between or among the Debtors or between the Debtors and their non-Debtor Affiliates, the Cash Collateral Orders, the Confirmation Order, any other Definitive Document, the formulation, preparation, dissemination, negotiation, or filing of the Plan, the Disclosure Statement, the Plan Supplement, the Exit Facilities, the Exit Facility Documents, the New Equity Interests, any other Definitive Document, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) relating to any of the foregoing, created or entered into in connection with the Plan, the Disclosure Statement, the Cash Collateral Orders, or the Plan Supplement, any other Definitive Document, the solicitation of votes with respect to the Plan, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.

Notwithstanding anything to the contrary in the foregoing Third-Party Release, the Third-Party Release set forth above does not release (1) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan; (2) the rights of any Holder of Allowed Claims to receive distributions under the Plan; (3) any Causes of Action specifically retained by the Debtors pursuant to a schedule of retained Causes of Action to be attached as an exhibit to the Plan Supplement; or (4) any Claims against a Released Party arising from actual fraud, willful misconduct, or gross negligence, in each case, as determined by a Final Order.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (1) consensual; (2) essential to the Confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by each of the Released Parties, including, without limitation, the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing the Plan; (4) a good faith settlement and compromise of the Claims released by the Third-Party Release; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release, except as provided therein.

**EXCULPATION**

**Except as otherwise expressly provided in the Plan or the Confirmation Order, to the fullest extent permitted by applicable law and without affecting or limiting either the Debtor Release or the Third-Party Release, no Exculpated Party shall have or incur any liability for, and each Exculpated Party is exculpated from, any Claim or Cause of Action arising prior to the Effective Date in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or filing of the Plan, Disclosure Statement, the Plan Supplement, the Exit Facilities, the Exit Facility Documents, the New Equity Interests, the Cash Collateral Orders, any other Definitive Document, or any Restructuring Transaction, contract, instrument, release or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion) relating to any of the foregoing, created or entered into in connection with the Plan, the Disclosure Statement, the Cash Collateral Orders, the Plan Supplement, the negotiation and pursuit of the Definitive Documents, the Plan Supplement, the pursuit of Confirmation, the pursuit of Consummation, any preference, fraudulent transfer, or other avoidance claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable law, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for claims related to any act or omission that is determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.**

**The Exculpated Parties have acted in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation of votes to accept or reject the Plan and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions will not, be liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan, including the issuance of Securities thereunder.  In addition, notwithstanding the foregoing, the exculpation shall not release any obligation or liability of any Entity for any post-Effective Date obligation under the Plan or any document, instrument or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.**

**INJUNCTION**

**Except as otherwise specifically provided in the Plan or the Confirmation Order or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims, Interests or Causes of Action that have been released, discharged, settled, or are subject to exculpation under the Plan are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Exculpated Parties,**

11

or the Released Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Causes of Action, Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Causes of Action, Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Causes of Action, Claims or Interests; (4) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from such Entities or against the property of such Entities, in each case, on account of or in connection with or with respect to any such Causes of Action, Claims or Interests unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a claim or interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Causes of Action, Claims or Interests released, discharged, subject to exculpation, or settled pursuant to the Plan.

Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, managers, principals, and direct and indirect Affiliates, in their capacities as such, shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan. Each Holder of an Allowed Claim by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in the Plan.

No Person or Entity may commence or pursue a Claim or Cause of Action of any kind against the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action released, discharged, settled, or that is subject to Article VIII.C, Article VIII.D, and Article VIII.E of the Plan, without the Bankruptcy Court (1) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim of any kind, and (2) specifically authorizing such Person or Entity to bring such Claim or Cause of Action against any such Debtor, Reorganized Debtor, Exculpated Party, or Released Party.

[*Remainder of page intentionally left blank.*]

Dated: [●], 2026
Wilmington, Delaware

*/s/ DRAFT*

| **PACHULSKI STANG ZIEHL & JONES LLP** | **KIRKLAND & ELLIS LLP** |
|---|---|
| | **KIRKLAND & ELLIS INTERNATIONAL LLP** |

| **PACHULSKI STANG ZIEHL & JONES LLP** | **KIRKLAND & ELLIS LLP** |

Laura Davis Jones (DE Bar 2436)

James O'Neill (DE Bar 4042)

Edward A. Corma (DE Bar 6718)

919 North Market Street, 17th Floor

Wilmington, Delaware 19801

Telephone:     (302) 652-4100

Facsimile:     (302) 652-4400

Email:          ljones@pszjlaw.com

         joneill@pszjlaw.com

         ecorma@pszjlaw.com

**KIRKLAND & ELLIS INTERNATIONAL LLP**

Anup Sathy, P.C. (*pro hac vice* pending)

Alexandra F. Schwarzman, P.C. (*pro hac vice* pending)

David R. Gremling (*pro hac vice* pending)

333 West Wolf Point Plaza

Chicago, Illinois 60654

Telephone:     (312) 862-2000

Facsimile:     (312) 862-2200

Email:          anup.sathy@kirkland.com

         alexandra.schwarzman@kirkland.com

         dave.gremling@kirkland.com

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

*Proposed Co-Counsel for the Debtors and Debtors in Possession*