## Exhibit 1

## Motion

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GOHEALTH, INC., *et al.*,[1] | ) | Case No. 26-10914 [●] |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**MOTION OF DEBTORS FOR ENTRY OF INTERIM**
**AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS**
**TO (A) REDACT CERTAIN PERSONALLY IDENTIFIABLE**
**INFORMATION OF INDIVIDUALS AND (B) SERVE PARTIES**
**IN INTEREST BY EMAIL, (II) MODIFYING THE REQUIREMENT TO FILE**
**A LIST OF EQUITY SECURITY HOLDERS, (III) APPROVING THE FORM AND**
**MANNER OF SERVICE OF NOTICES, AND (IV) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state

as follows in support of this motion:[2]

**Relief Requested**

1.      The Debtors seek entry of interim and final orders, substantially in the forms

attached hereto as **Exhibit A** and **Exhibit B** (the "Interim Order" and the "Final Order,"

respectively):  (a) authorizing the Debtors to (i) redact certain personally identifiable information

of individuals from their consolidated list of creditors (the "Creditor Matrix"), the Debtors'

schedules of assets and liabilities and statements of financial affairs (if any) (the "Schedules and

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are:  GoHealth, Inc. (3805); Blizzard Midco, LLC (3732); Connected Benefits, LLC (2162); e-TeleQuote Insurance, Inc. (2336); ETQ Holdings, LLC (8260); GoHealth Holdings, LLC (3653); GoHealth, LLC (5175); and Norvax, LLC (3063).  The location of the Debtors' service address for purposes of these chapter 11 cases is:  222 West Merchandise Mart Plaza, Suite 1750, Chicago, Illinois 60654.

[2]    A detailed description of the Debtors and their business, including the facts and circumstances supporting this motion, is set forth in the *Declaration of Vijay Kotte, Chief Executive Officer of GoHealth, Inc., in Support of the Debtors' Chapter 11 Petitions, First Day Motions, and Access to Cash Collateral* (the "First Day Declaration"). Capitalized terms used but not defined in this motion shall have the meanings ascribed to them in the First Day Declaration.

Statements"), and other documents filed in these chapter 11 cases,[3] and (ii) serve parties in interest by email; (b) modifying the requirement to file a list of equity security holders of Debtor GoHealth, Inc.; (c) approving the form and manner of service of notices; and (d) granting related relief. In addition, the Debtors request that the Court schedule a final hearing within approximately 21 days of the commencement of these chapter 11 cases to consider approval of this motion on a final basis.

**Jurisdiction and Venue**

2.      The United States District Court for the District of Delaware has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the United States Bankruptcy Court for the District of Delaware (the "Court") under 28 U.S.C. § 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested herein are sections 105(a), 107(c), and 521 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"),

---

[3]   The Debtors also seek authority to redact individuals' home and email addresses from affidavits of service filed in these chapter 11 cases.

rules 1007, 2002, 9007, and 9036 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 1007-2, 2002-1, 9013-1(m), and 9018-1(d).

**Background**

5.      On June 7, 2026 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Concurrently with the filing of this motion, the Debtors filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no official committees have been appointed or designated.

**Basis for Relief**

**I.      Redaction of Certain Personally Identifiable Information of Individuals Is Warranted.**

6.      The Debtors respectfully submit that it is appropriate to authorize the Debtors to redact from any paper filed with the Court in these chapter 11 cases—including, but not limited to, the Creditor Matrix and the Schedules and Statements (if any)—all individuals' home and email addresses, because such information could be used to perpetrate identity theft or locate survivors of domestic violence, harassment, or stalking who have otherwise taken steps to conceal their whereabouts.[4]

---

[4]    The risk is not merely speculative.  In at least one chapter 11 case in this district, the abusive former partner of a debtor's employee used the publicly accessible creditor and employee information filed in the chapter 11 case to track the employee at her new address that had not been publicly available until then, forcing the employee to change addresses again.  The incident, which took place during the first Charming Charlie chapter 11 proceedings in 2017, is described in the "creditor matrix motion" filed in *In re Charming Charlie Holdings, Inc*., No. 19-11534 (CSS) (Bankr. D. Del. July 11, 2019) [Docket No. 4].

7.      Section 107(c)(1) of the Bankruptcy Code provides that the Court:

> [F]or cause, may protect an individual, with respect to the following types of information to the extent the court finds that disclosure of such information would create undue risk of identity theft or other unlawful injury to the individual or the individual's property:
>
> (A) Any means of identification . . . contained in a paper filed, or to be filed, in a case under [the Bankruptcy Code].
>
> (B) Other information contained in a paper described in subparagraph (A).

11 U.S.C. § 107(c)(1).

8.      If a debtor can show that disclosure of any "means of identification," or some "other information," creates "undue risk of identity theft" or "other unlawful injury," courts may intervene to curtail disclosure of that information. 11 U.S.C. § 107(c)(1)(A).  The Bankruptcy Code permits courts, in appropriate circumstances, to protect individuals from an undue risk of identity theft or other unlawful injury by limiting the public's access, placing papers under seal, or otherwise entering orders to prohibit the dissemination of sensitive information.  *See* 11 U.S.C. § 107(c)(1)*; see also In re ESML Holdings Inc.,* 135 F.4th 80, 88 (3d Cir. 2025) (holding that the sealing of documents in bankruptcy cases is governed by section 107 of the Bankruptcy Code, which "imposes a . . . distinct[] burden for a party to keep docketed records from the public eye", not by common law, and that section 107 of the Bankruptcy Code permits the sealing of information that is broader than under the common law).

9.      Critical to the Debtors, the Health Insurance Portability and Accountability Act of 1996 (as amended, "HIPAA"), governs the privacy and security of individually identifiable health information.  While the Debtors are not considered "covered entities" under HIPAA, they have entered into agreements with certain covered entities, such as health plan providers, which render

them Business Associates[5] under HIPAA.  *See* 45 C.F.R. § 160.103 (2026).  As Business Associates, the Debtors are contractually bound, and may also be directly responsible under HIPAA, to implement policies, procedures, and reasonable and appropriate security measures to protect any individually identifiable health information they may create, receive, maintain, or transmit on behalf of covered entities.

10.    In addition to granting the requested relief, courts in this district have also expounded on the importance of authorizing debtors to redact individual creditors' personally identifiable information.  In *In re FTX Trading Ltd.*, Civ. No. 23-682 (CFC), 2024 WL 4948827, (D. Del. Dec. 3, 2024), the District Court affirmed the Bankruptcy Court's ruling to permanently redact the names, home addresses, and email addresses of natural persons under section 107(c) of the Bankruptcy Code, finding that millions of customers and creditors who are natural persons "would, absent the relief granted by the Bankruptcy Court, have their identities revealed without their consent (and, in many cases, without their knowledge)." 2024 WL 4948827, at *11; *see also* Hr'g Tr. at 21:13–21, *In re Dex Media, Inc.*, No. 16-11200 (KG) (Bankr. D. Del. May 18, 2016) ("Well, I think, that in the present day, with the abuse of private information, that these addresses ought to be redacted, and so . . . I just think that individuals whose only position is to have been

---

[5]    "Business Associate" means , with respect to a covered entity, a person who: (i) on behalf of such covered entity or of an organized health care arrangement (as defined in 45 C.F.R. § 160.103 (2026)) in which the covered entity participates, but other than in the capacity of a member of the workforce of such covered entity or arrangement, creates, receives, maintains, or transmits protected health information for a function or activity regulated by Subchapter C of 45 C.F.R., including claims processing or administration, data analysis, processing or administration, utilization review, quality assurance, patient safety activities listed at 42 CFR §3.20 (2026), billing, benefit management, practice management, and repricing; or (ii) provides, other than in the capacity of a member of the workforce of such covered entity, legal, actuarial, accounting, consulting, data aggregation (as defined in 45 C.F.R. § 164.501 (2026)), management, administrative, accreditation, or financial services to or for such covered entity, or to or for an organized health care arrangement in which the covered entity participates, where the provision of the service involves the disclosure of protected health information from such covered entity or arrangement, or from another business associate of such covered entity or arrangement, to the person.

former employees, for example, ought not to have their home addresses listed publicly.  I think

that . . . creates a possibility of abuse . . . .").

11.     In *Art Van Furniture*, in overruling the objection of the United States Trustee for

the District of Delaware (the "U.S. Trustee") to the same redaction relief proposed here, the court

noted that the proposed redaction is not a "burden of proof" issue so "much as a common sense

issue."  Hr'g Tr. at 25:6–7, *In re Art Van Furniture, LLC*, No. 20-10553 (CSS) (Bankr. D. Del.

Mar. 10, 2020).  The court concluded that "at this point and given the risks associated with having

any kind of private information out on the internet, [redaction] has really become routine [and] I

think obvious relief."  *Id*. at 25:13–16.

12.     Similarly, in *In re Clover Techs. Grp.,* the court overruled the U.S. Trustee's

objection, noting that:

> To me it is common sense.  I don't need evidence that there is, at
> best, a risk of identity theft and worse a risk of personal injury from
> listing someone's name and address on the internet by way of the
> court's electronic case filing system and, of course, the claims
> agent's website . . .  The court can completely avoid contributing to
> the risk by redacting the addresses.  And while there is, of course,
> an important right of access we routinely redact sensitive and
> confidential information for corporate entities and redact
> individual's home addresses.

Hr'g Tr. at 24:21–25, 25:9–10, *In re Clover Techs. Grp., LLC,* No. 19-12680 (KBO) (Bankr. D.

Del. Jan. 22, 2020) [Docket No. 146] (authorizing the debtors to redact personal identification

information, including home address information, of all individuals on documents filed with the

court).  And, in *Forever 21*, in overruling the U.S. Trustee's objection, the court found that "[w]e

live in a new age in which the theft of personal identification is a real risk, as is injury to persons

who, for personal reasons, seek to have their addresses withheld."   Hr'g Tr. at 60:22–25,

*In re Forever 21, Inc.*, No. 19-12122 (KG) (Bankr. D. Del. Dec. 19, 2019); *see also*, *In re Claire's*

*Holdings LLC*, No. 25-11454 (BLS) (Bankr. D. Del. Sept. 8, 2025) (authorizing the debtors to redact the home and email addresses of natural persons from any filings with the court).

13.    Moreover, privacy and data protection regulations have been enacted in key jurisdictions where the Debtors operate and conduct business.  For example, in 2018, the state of California enacted the California Consumer Privacy Act of 2018 (the "CCPA"), which provides individuals domiciled in California the right to, among other things, request their collected personal information, including postal addresses, be deleted by entities subject to the regulation and opt out of the sale of personal information by such entities to third parties.  Violators risk injunctions and civil penalties of up to $2,500 for *each* violation and up to $7,500 for *each* *intentional* violation.  Cal. Civ. Code § 1798.155.  The CCPA applies to all for-profit entities doing business in California ("CCPA Entities") that collect and process consumers' personal data and satisfy one of the following criteria:  (a) annual gross revenue in excess of $25 million; (b) buys, shares, receives, or sells the personal information of more than 100,000 consumers, households, or devices for commercial purposes; or (c) receives 50% or more of their annual revenues from selling consumers' personal information.  Cal. Civ. Code § 1798.140(d)(1).  The Debtors likely qualify as CCPA Entities because the Debtors control and process California residents' personal data and the Debtors' annual net revenue for 2025 was over $361 million.[6]

---

[6]    Many other states have enacted similar privacy laws. *See also* Virginia Consumer Data Protection Act, Va. Code §§ 59.1-575-59.1-585 (effective as of Jan. 1, 2023); Connecticut Act Concerning Personal Data Privacy and Online Monitoring, Public Act § 22-15 (effective as of July 1, 2023); Colorado Privacy Act, Colo. Rec. Stat. § 6-1 (effective as of July 1, 2023); Utah Consumer Privacy Act, Utah Code § 13-61 (effective as of Dec. 31, 2023); Florida Digital Bill of Rights, Fla. Stat. § 501.701 (effective as of July 1, 2024); Texas Data Privacy and Security Act, Tex. Bus. & Com. Code Ann. § 541 (effective as of July 1, 2024); Oregon Consumer Privacy Act, Or. Rev. Stat. § 1.13 (effective as of July 1, 2024); Montana Consumer Data Privacy Act, Mont. Code Ann. § 35 (effective on Oct. 1, 2024); Delaware Personal Data Privacy Act, De. Code Ann. Tit. 6 § 12D.102 (effective as of Jan. 1, 2025); Iowa Data Privacy Law, Iowa Code § 715D.1 (effective as of Jan. 1, 2025); Nebraska Data Privacy Act, Neb. Rev. Stat. §§ 87-1101 to 87-1130 (effective on Jan. 1, 2025); New Hampshire Privacy Law, N.H. Rev. Stat. § 507-H:1 (effective as of Jan. 1, 2025); New Jersey Data Privacy Act, N.J. Rev. Stat. § 56:1 (effective as of Jan. 15, 2025); Tennessee Information Protection Act, Tenn. Code Ann. § 47-18 (effective on July 1, 2025); Minnesota

14.     Other key jurisdictions also have privacy and data protection regulations. The European General Data Protection Regulation (the "EU GDPR") and similar laws in other jurisdictions impose significant constraints on the processing (which includes the transferring or disclosing) of information relating to identified or identifiable individuals (which includes names and addresses of individuals and individual business contacts) ("Personal Data"). The EU GDPR applies to the processing of Personal Data in the context of an establishment of a controller or processor in the European Economic Area regardless of whether the processing takes place in the European Economic Area (and, in some circumstances, organizations established in other countries when processing Personal Data relating to individuals located in the European Economic Area).

15.     The EU GDPR requires a legal basis for all processing (including the disclosure) of Personal Data. The only possible legal basis that may apply for disclosing Personal Data in this instance would be the "legitimate interests" ground. *See* General Data Protection Regulation (EU) 2016/679, art. 6(1)(f). This ground, however, can be relied on as a legal basis only if the processing is necessary to achieve the relevant purpose, and if the same result can reasonably be achieved in a less intrusive way, the legitimate interest basis no longer applies. Nor can the legitimate interest assessment serve as a legal basis if the rights and freedoms of the relevant individuals override the legitimate interest in question. EU regulators take the position that if a person would not reasonably expect the processing, their interests are likely to override any legitimate

---

Consumer Data Privacy Act, Minn. Stat. Ann. § 325O (effective on July 31, 2025); Indiana Data Privacy Law, Ind. Code § 24-15 (effective on Jan. 1, 2026); Kentucky Consumer Data Protection Act, Ky. Rev. Stat. Ann. § 367.3611 (effective on Jan. 1, 2026); Rhode Island Data Transparency and Privacy Protection Act, R.I. Gen. Laws § 6-48.1-1 (effective on Jan. 1, 2026).

interests. *See id.*[7]  Moreover, the legal basis of "compliance with a legal obligation," Article 6(1)(c) EU GDPR, would not be applicable here, since it is restricted to legal obligations under EU law, and not foreign laws such as the Bankruptcy Code.

16.     In addition, processing (including disclosure) under the EU GDPR must comply with certain key principles, including the principle of data minimization, which requires that any processing must be necessary in relation to its purpose.  Disclosure of the unredacted names, home addresses, and email addresses (or other Personal Data) of individual creditors on the public docket is not necessary for the purpose of reviewing the claim amounts of individual creditors in connection with a plan of reorganization or administering the chapter 11 cases, and the proposed redaction would be a less intrusive way of achieving this purpose.  The right of individual creditors not to have their unredacted names, home addresses, and email addresses disclosed on the public docket would also override the legitimate interest of disclosing such information to facilitate these chapter 11 cases.  By redacting Personal Data on the public docket, the Debtors are complying with their obligations under the Bankruptcy Code, protecting individuals' interests and right to privacy, and abiding by one of the foundational principles of the EU GDPR by opting for the least intrusive way to reasonably achieve the desired purpose.  *See* General Data Protection Regulation (EU) 2016/679, art. 5(1)(c).[8]

17.     Violators of the EU GDPR risk severe penalties.  If an organization is found to have processed information in breach of the EU GDPR, the organization may be fined up to the higher

---

[7]     *See* Information Commissioner's Office, *Legitimate Interests*, https://ico.org.uk/for-organisations/uk-gdpr-guidance-and-resources/lawful-basis/a-guide-to-lawful-basis/lawful-basis-for-processing/legitimate-interests/ (last visited June 6, 2026).

[8]     Article 5(1)(c) EU GDPR ("Personal data shall be: . . . (c) adequate, relevant and limited to what is necessary in relation to the purposes for which they are processed ('data minimisation').").

of €20,000,000 or 4% of worldwide annual turnover—*i.e.*, total annual revenues—of the preceding financial year. *See* General Data Protection Regulation (EU) 2016/679, art. 83(5).[9] The EU GDPR may apply to the Debtors as certain of the Debtors may be directly or indirectly processing data relating to their creditors located in a member state of the European Economic Area.

18. For these reasons, the Debtors submit that cause exists to authorize the Debtors to redact from the Creditor Matrix, the Schedules and Statements (if any), and any other document filed with the Court in these chapter 11 cases, the home and email addresses of individuals, including the Debtors' current and former employees, independent contractors, individual equity holders, and other creditors because (a) such information can be used to perpetrate identity theft,[10] stalking, and phishing scams[11] and (b) disclosure risks exposing the Debtors to potential civil

---

[9] Indeed, on August 26, 2024, the Dutch Data Protection Authority fined Uber €290 million for transferring the personal data of European drivers to United States servers in violation of the EU GDPR; *see Dutch DPA Imposes a Fine of 290 Million Euro on Uber Because of Transfers of Drivers' Data to the US*, AUTORITEIT PERSOONSGEGEVENS [DUTCH DATA PROT. AUTH.] (Aug. 26, 2024), https://www.autoriteitpersoonsgegevens.nl/en/current/dutch-dpa-imposes-a-fine-of-290-million-euro-on-uber-because-of-transfers-of-drivers-data-to-the-us and on May 12, 2023, the Data Protection Commission of Ireland fined Facebook (Meta Ireland) €1.2 billion for improperly transferring data to the United States under the EU GDPR. *See In re Meta Platforms Ireland Ltd.*, Reference No. IN-20-8-1 (Ir. Data Prot. Comm'n May 12, 2023).

[10] *See In re Endo Int'l PLC*, No. 22-22549 (JLG), 2022 WL 16640880, at *10–12 (Bankr. S.D.N.Y. Nov. 2, 2022) (taking "judicial notice of the fact that identity theft is a world-wide problem," recognizing that the right of public access to judicial records "is not absolute," and authorizing the debtors to redact the names, home addresses, and email addresses of certain litigation claimants located in the US, EU, UK, and Australia from any paper filed with that court and/or otherwise made publicly available by the debtors and the claims and noticing agent thereof); *see also In re Genesis Glob. Holdco, LLC* 652 B.R. 618, 636–37 (Bankr. S.D.N.Y. 2023) (quoting *Endo* and finding that "[h]ome addresses fall within that category of information, as it is taken as a 'given' that they constitute personally identifiable information that is vital information to perpetrators of identity theft, stalking and intimate partner violence alike, and that publishing such information facilitates an identify [sic] thief's search for data and a stalker's or abuser's ability to find his or her target")

[11] In a chapter 11 case in the Southern District of New York, at least fifteen phishing scams have been uncovered. *See In re Celsius Network LLC*, No. 22-10964 (MG), Docket Nos. 1527, 1681, 1904, 1992, 2082, 2896, 3121, 3251, 3422, 3722, 3932, 4070, 4763, 7729, and 7886. These incidents targeted individuals whose names were publicized in the creditor matrix, including one in which scammers modified a court order and sent it to individuals whose names were disclosed, two where scammers posed as associates of debtors' counsel using fake email accounts purportedly from debtors' counsel and requested that individual creditors reply with their account and other personal information, and another where scammers posed as the debtor's claims agent and requested

liability and significant financial penalties, including under the CCPA, HIPAA, the EU GDPR, and other data and privacy laws and regulations.

19. The Debtors will, on a confidential basis, make the unredacted versions of the Creditor Matrix, the Schedules and Statements (if any), and any other applicable filings redacted pursuant to the Interim Order and the Final Order available upon request to the Court, the U.S. Trustee, counsel to any official committee appointed in these chapter 11 cases, any subsequently appointed trustee, and to Donlin, Recano & Company, LLC, the proposed claims and noticing agent (the "Claims and Noticing Agent"). The unredacted versions of the Creditor Matrix, the Schedules and Statements (if any), and any other applicable filings redacted pursuant to the Interim and Final Orders shall be filed under seal with the Court and shall not be made available to any other party without the consent of the Debtors or further order of this Court. Nothing requested herein is intended to preclude a party in interest's right to file a motion requesting that the Court unseal the information redacted by the Interim Order and the Final Order. The Debtors propose that the Claims and Noticing Agent undertake all service on any party whose identity and/or address is redacted pursuant to the Interim Order and the Final Order. In addition, the Debtors will distribute to current employees, as applicable, any notices that are received at the Debtors' corporate headquarters and are intended for a current employee.

## II. Authorization to Provide Service via Email Should Be Approved.

20. Although the Bankruptcy Rules generally require notices to be served on creditors at their addresses, they give significant latitude to bankruptcy courts for modifying the general rule. *See* Fed. R. Bankr. P. 2002(m), 9007. Bankruptcy courts have explicit authority to modify

---

the same information from individual creditors.

11

the manner in which notice is given. Fed. R. Bankr. P. 2002(m). In complex chapter 11 cases in this district, courts have permitted debtors to provide email service to creditors. *See, e.g.*, *In re Claire's Holdings LLC*, No. 25-11454 (BLS) (Bankr. D. Del. Sept. 8, 2025) (authorizing the debtors to serve all pleadings and papers via email, except when a party (i) filed or designated a mailing address under Bankruptcy Rules 2002(g)(l) or 5003(e), and (ii) requested hard copy U.S. first class mail service); *In re Marelli Auto. Lighting USA LLC*, No. 25-11034 (CTG) (Bankr. D. Del. July 16, 2025) (same); *In re At Home Grp. Inc.* No. 25-11120 (JKS) (Bankr. D. Del. July 11, 2025) (same); *In re Am. Tire Distribs., Inc.*, No. 24-12391 (CTG) (Bankr. D. Del. Nov. 18, 2024) (same); *In re Accuride Corp.*, No. 24-12289 (JKS) (Bankr. D. Del. Nov. 1, 2025) (same).

21.     Here, serving notices by traditional mail is cost-prohibitive given the size of the Debtors' Creditor Matrix and the total amount of cash collateral available to fund these chapter 11 cases. Serving notices by traditional mail would drain a material amount of the Debtors' available cash at a time when such funds could instead be used to fund the administration of the Debtors' chapter 11 cases.

22.     In addition, email service will help alleviate administrative burdens. Not only is email service likely the most efficient and cost-effective manner by which service of all interested parties can be completed, it is also the most likely to facilitate creditor responses. Further, in the ordinary course of their business, the Debtors communicate with their creditors primarily through electronic means. Thus, not only will providing the creditors with traditional forms of notice be unduly burdensome and expensive – resulting in the Debtors incurring thousands of dollars in service costs – but the creditors traditionally receive communications from the Debtors by email

and may not be expecting to receive important communications by traditional forms of mail, thereby increasing the need to provide notice to creditors electronically.

23.     Accordingly, the Debtors request authority to serve all pleadings and notices via email, on all parties listed on the Creditor Matrix, except when a party to be served both (a) has a mailing address in the Debtors' books, records, and files or has designated a mailing address under Bankruptcy Rules 2002(g)(l) or 5003(e) and (b) has requested hard copy U.S. first class mail service, in which case, such party shall be served by mail at such mailing address.  Implementation of the procedures requested herein is appropriate in these chapter 11 cases and well within the Court's authority under the Bankruptcy Rules and equitable powers under section 105(a) of the Bankruptcy Code.  The Debtors, together with the Claims and Noticing Agent, have established the case website located at http://www.bankruptcy.angeiongroup.com/gohealth, where, among other things, electronic copies of all pleadings filed in these chapter 11 cases shall be posted as soon as practicable, and may be viewed free of charge.

**III.     Service of Notices to Parties in Interest by the Claims and Noticing Agent Is Warranted.**

24.     Bankruptcy Rule 2002(a) provides, in relevant part, that "the clerk or the court's designee must give the debtor, the trustee, all creditors and indenture trustees at least 21 days' notice by mail of . . . the meeting of creditors under § 341 or § 1104(b) [of the Bankruptcy Code]." Fed. R. Bankr. P. 2002(a)(1).  Subsection (f) provides that notice of the order for relief shall be sent by mail to all creditors.  See Fed. R. Bankr. P. 2002(f).

25.     The Debtors request that the Claims and Noticing Agent undertake all mailings and email service, as applicable, directed by the Court or as required in section 342(a) of the Bankruptcy Code and Bankruptcy Rules 2002(a) and (f), including, when applicable, serving the

13

Publication Notice (as defined in the Disclosure Statement Scheduling Motion) on all parties listed on the Creditor Matrix.[12] This will not only avoid confusion among the parties in interest but will also prevent the Debtors' estates from incurring unnecessary costs associated with serving multiple notices to the parties listed on the Debtors' voluminous Creditor Matrix.

26. The Debtors believe that using the Claims and Noticing Agent to promptly provide notices to all applicable parties will maximize efficiency in administering these chapter 11 cases and will ease administrative burdens that would otherwise fall upon the Court and the U.S. Trustee. Additionally, the Claims and Noticing Agent will assist the Debtors in preparing creditor lists and serving initial notices, and, therefore, it is more efficient to authorize the Claims and Noticing Agent to mail or email, as applicable, all notices, including the Publication Notice. Accordingly, the Claims and Noticing Agent should undertake such mailings and email service, as applicable.

**IV.     Modification of the Requirements to File a List of Equity Security Holders and Provide Notice Directly to Equity Security Holders Is Warranted Under the Circumstances of These Chapter 11 Cases.**

27. The Bankruptcy Rules contain certain requirements with respect to a debtor's equity security holders. Bankruptcy Rule 1007(a)(3) requires a debtor to file, within 14 days after the petition date, a list of the debtor's equity security holders. *See* Fed. R. Bankr. P. 1007(a)(3). Bankruptcy Rule 2002(d) requires that equity security holders be provided notice of, among other things, the commencement of the bankruptcy case and the confirmation hearing.

---

[12]   The "Disclosure Statement Scheduling Motion" means the *Motion of Debtors for Entry of an Order (I) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing, (II) Approving Related Dates, Deadlines, Notices, and Procedures, (III) Approving the Solicitation Procedures and Related Dates, Deadlines, and Notices, (IV) Conditionally Waiving the Requirements that (A) the U.S. Trustee Convene a Meeting of Creditors and (B) the Debtors File Schedules of Assets and Liabilities, Statements of Financial Affairs, and Rule 2015.3 Financial Reports, and (V) Granting Related Relief*, filed concurrently herewith.

Bankruptcy courts have authority to modify or waive the requirements under both rules.  Fed. R. Bankr. P. 1007(a)(3) ("Unless the court orders otherwise, a Chapter 11 debtor must . . . file a list of the debtor's equity security holders . . . ."); Fed. R. Bankr. P. 2002(d) ("Unless the court orders otherwise, in a [c]hapter 11 case the clerk . . . must give notice as the court orders to the equity security holders . . . ."); *see also* 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."); Fed. R. Bankr. P. 9007(a) ("Unless these rules provide otherwise, when notice is to be given, the court must designate: (1) the deadline for giving it; (2) the entities to whom it must be given; and (3) the form and manner of giving it.").

28.      The requirements to file a list of, and to provide notice directly to, equity security holders should be modified as to Debtor GoHealth, Inc.'s Class A Common Stock. Debtor GoHealth, Inc.'s certificate of incorporation authorizes the board of directors to issue shares of preferred stock and two classes of common stock, Class A Common Stock and Class B Common Stock (collectively, the "Stock").  Class A Common Stock trades on The Nasdaq Global Market, under the ticker symbol "GOCO."  As of the Petition Date, approximately 16.7 million shares of Class A Common Stock are issued and outstanding.  Unlike registered holders of Class A Common Stock, holders of Class B Common Stock, and holders of preferred stock — whose identities and addresses can be ascertained from the Debtors' records — certain holdings of Class A Common Stock are held through intermediaries and cannot be readily traced to specific individual holders.  As a result, compiling a complete list of last known addresses for all equity security holders and providing notice to each such holder would impose significant expense and administrative burden on the Debtors' estates, with limited corresponding benefit to the estates or to other parties in interest.

15

29. Debtor GoHealth, Inc. has taken, or will take, several actions to inform its equity security holders of the commencement of these chapter 11 cases. On or about the date hereof, the Debtors will issue a press release and file Form 8-K with the U.S. Securities and Exchange Commission announcing the filing. Debtor GoHealth, Inc. also filed with its petition a list of persons and entities with significant holdings of its outstanding Stock. In addition, as soon as practicable following the date hereof, the Debtors intend to cause the notices required under Bankruptcy Rule 2002(d) to be served on registered holders of Debtor GoHealth, Inc.'s Stock and banks, brokers, intermediaries, other nominees, or their mailing agents (collectively, "Nominee Holders") that hold the Stock in "street name" for the beneficial holders (with instructions to serve down to the beneficial holders of such Stock, as applicable) by U.S. first class mail and email. Further, the Debtors intend to cause the notices required under Bankruptcy Rule 2002(d) to be published in full in *The New York Times* (national edition) or another nationally circulated newspaper as soon as practicable. Accordingly, the Debtors request that the requirements to file a list of and to provide notice directly to Debtor GoHealth, Inc.'s Class A Common Stock equity security holders (other than registered holders and Nominee Holders) be modified.

### Compliance with Local Rule 9018-1(d)(iv)

30. To the best of the knowledge, information, and belief of the undersigned proposed counsel to the Debtors, the documents that the Debtors are requesting to seal pursuant to the relief requested in this motion do not contain information subject to the confidentiality rights held or asserted by another party.

### Notice

31. The Debtors will provide notice of this motion to the following parties or their respective counsel, as applicable: (a) the U.S. Trustee; (b) counsel to the Ad Hoc TL Group;

(c) counsel to the Ad Hoc Revolver Group; (d) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (e) the state attorneys general for states in which the Debtors conduct business; (f) the United States Attorney for the District of Delaware, District of Massachusetts, and District of Columbia; (g) the Internal Revenue Service; and (h) any party that is entitled to notice pursuant to Bankruptcy Rule 2002.  As this motion is seeking "first day" relief, within two business days of the hearing on this motion, the Debtors will serve copies of this motion and any order entered in respect to this motion as required by Local Rule 9013-1(m).  In light of the nature of the relief requested, no other or further notice need be given.

## **No Prior Request**

32.     No prior request for the relief sought in this motion has been made to this or any other court.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors request entry of the Interim Order and Final Order, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, (a) granting the relief requested herein and (b) granting such other relief as the Court deems appropriate under the circumstances.

Dated:  June 7, 2026
Wilmington, Delaware

/s/  Laura Davis Jones

**PACHULSKI STANG ZIEHL & JONES LLP**
Laura Davis Jones (DE Bar No. 2436)
James E. O'Neill (DE Bar No. 4042)
Edward A. Corma (DE Bar No. 6718)
919 North Market Street, 17th Floor
Wilmington, Delaware 19801
Telephone:      (302) 652-4100
Facsimile:      (302) 652-4400
Email:          ljones@pszjlaw.com
                joneill@pszjlaw.com
                ecorma@pszjlaw.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Anup Sathy, P.C. (*pro hac vice* pending)
Alexandra F. Schwarzman, P.C. (*pro hac vice* pending)
David R. Gremling (*pro hac vice* pending)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:          anup.sathy@kirkland.com
                alexandra.schwarzman@kirkland.com
                dave.gremling@kirkland.com

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

**Exhibit A**

**Proposed Interim Order**

Case 2:16-10914-FTM-H   Doc 721-1   Filed 06/07/06   Page 20 of 32

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GOHEALTH, INC., *et al.*,[1] | ) | Case No. 26-10914 [●] |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | **Re:  Docket No.** _ |

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS
TO (A) REDACT CERTAIN PERSONALLY IDENTIFIABLE
INFORMATION OF INDIVIDUALS AND (B) SERVE PARTIES
IN INTEREST BY EMAIL, (II) MODIFYING THE REQUIREMENT TO FILE A
LIST OF EQUITY SECURITY HOLDERS, (III) APPROVING THE FORM AND
MANNER OF SERVICE OF NOTICES, AND (IV) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an interim order (this "Interim Order"),  (a) authorizing the Debtors to (i) redact certain personally identifiable information of individuals and (ii) serve parties in interest by email; (b) modifying the requirement to file a list of equity security holders of Debtor GoHealth, Inc.; (c) approving the form and manner of service of notices; and (d) granting related relief; all as more fully set forth in the Motion; and upon the First Day Declaration; and the United States District Court for the District of Delaware having jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the Court under 28 U.S.C. § 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are:  GoHealth, Inc. (3805); Blizzard Midco, LLC (3732); Connected Benefits, LLC (2162); e-TeleQuote Insurance, Inc. (2336); ETQ Holdings, LLC (8260); GoHealth Holdings, LLC (3653); GoHealth, LLC (5175); and Norvax, LLC (3063).  The location of the Debtors' service address for purposes of these chapter 11 cases is:  222 West Merchandise Mart Plaza, Suite 1750, Chicago, Illinois 60654.

[2]  Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that this Court may enter this order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted on an interim basis as set forth herein.

2.      Any objections to the entry of this Interim Order, to the extent not withdrawn or settled, are overruled.

3.      The final hearing (the "Final Hearing") on the Motion shall be held on _____, 2026, at__:___.m. (prevailing Eastern Time).  Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m. (prevailing Eastern Time) on _____, 2026 and shall be served on:  (a) the Debtors, GoHealth, Inc., 222 West Merchandise Mart Plaza, Suite 1750, Chicago, Illinois 60654, Attn. Bradley Burd, Chief Legal Officer and Corporate Secretary (bburd@gohealth.com); (b) proposed co-counsel to the Debtors, (i) Kirkland & Ellis LLP, 333 West        Wolf        Point        Plaza,        Chicago,        Illinois        60654, Attn. Anup Sathy, P.C. (anup.sathy@kirkland.com),    Alexandra    F.    Schwarzman,    P.C.

2

(alexandra.schwarzman@kirkland.com), and David R. Gremling (dave.gremling@kirkland.com), and (ii) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, Delaware 19801, Attn. Laura Davis Jones (ljones@pszjlaw.com), James E. O'Neill (joneill@pszjlaw.com), and Edward A. Corma (ecorma@pszjlaw.com); (c) counsel to the Ad Hoc TL Group, (i) Akin Gump Strauss Hauer & Feld LLP, Robert S. Strauss Tower, 2001 K. Street, N.W., Washington, D.C. 20006, Attn. Scott L. Alberino (salberino@akingump.com) and Benjamin L. Taylor (taylorb@akingump.com), (ii) Akin Gump Strauss Hauer & Feld LLP, 2300 N. Field Street, Suite 1800, Dallas, Texas 75201, Attn. Nicholas J. Houpt (nhoupt@akingump.com), and (iii) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attn. Michael R. Nestor (mnestor@ycst.com) and Robert Poppiti (rpoppiti@ycst.com); (d) counsel to the Ad Hoc Revolver Group, (i) Cahill Gordon & Reindel LLP, 32 Old Slip, New York, New York 10005, Attn. Joel Moss (jmoss@cahill.com) and Jordan Wishnew (jwishnew@cahill.com), and (ii) Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market St., 16th Floor, Wilmington, Delaware 19899, Attn. Derek C. Abbott (dabbott@morrisnichols.com); (e) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn. Benjamin A. Hackman (benjamin.a.hackman@usdoj.gov); and (f) any statutory committee appointed in these chapter 11 cases.

4. The Debtors are authorized, on an interim basis, pursuant to section 107(c)(1) of the Bankruptcy Code, to redact on the Creditor Matrix, the Schedules and Statements (if any), affidavits of service, and any other documents filed in these chapter 11 cases by the Debtors, the home and email addresses of individuals, including the Debtors' current and former employees, independent contractors, individual equity holders, and other individual creditors. For the

3

avoidance of doubt, and notwithstanding any other provision of this Interim Order to the contrary, the U.S. Trustee is authorized to include, without redaction, the name, address, email address, and/or phone number of any creditor serving on an official committee in these chapter 11 cases in any pleadings, including any notice of committee appointment, filed in the chapter 11 cases. Nothing in this Interim Order exempts any creditors or equity security holders from compliance with Bankruptcy Rule 2019. Nothing in this Interim Order prohibits any creditor or equity security holder from voluntarily identifying itself in connection with these chapter 11 cases or voluntarily disclosing any of its contact information. The Debtors shall provide, on a confidential basis and upon request, an unredacted version of the Creditor Matrix, the Schedules and Statements (if any), and any other filings redacted pursuant to this Interim Order to the Court, the U.S. Trustee, counsel to any official committee appointed in these chapter 11 cases, any subsequently appointed trustee, and the Claims and Noticing Agent. The unredacted versions of the Creditor Matrix, the Schedules and Statements (if any), and any other filings redacted pursuant to this Interim Order shall be filed under seal with the Court and shall not be made available to any other party without the consent of the Debtors or further order of this Court. The Debtors shall inform the U.S. Trustee promptly after denying any request for an unredacted document pursuant to this Interim Order.

5.      Nothing herein precludes a party in interest's right to file a motion requesting that the Court unseal the information redacted by this Interim Order.

6.      The Debtors shall file a redacted version of the Creditor Matrix, the Schedules and Statements (if any), or any other document filed with the Court, as well as post it on the Claims and Noticing Agent's website.

7.      Nothing in this Interim Order shall waive or otherwise limit the service of any document upon or the provision of any notice to any individual whose personally identifiable

information is sealed or redacted pursuant to this Interim Order. Service of all documents and notices upon individuals whose personally identifiable information is sealed or redacted pursuant to this Interim Order shall be made to their residential addresses (to the extent known to the Debtors) or email addresses (to the extent residential addresses are unknown) and confirmed in the corresponding certificate of service.

8.      To the extent a party in interest files a document on the docket in these chapter 11 cases that is required to be served on creditors whose information is under seal pursuant to this Interim Order, such party in interest should contact proposed counsel for the Debtors who shall work in good faith, with the assistance of the Claims and Noticing Agent, to effectuate the service on such party's behalf.

9.      The requirement that Debtor GoHealth, Inc. file a list of equity security holders pursuant to Bankruptcy Rule 1007(a)(3) is modified.

10.     Any requirement that Debtor GoHealth, Inc. provide notice directly to equity security holders under Bankruptcy Rule 2002(d) is modified as set forth herein. The Debtors shall file Form 8-K with the U.S. Securities and Exchange Commission within four business days following the Petition Date, notifying their investors and other parties of the commencement of these chapter 11 cases. The Debtors shall serve all notices in these chapter 11 cases required under Bankruptcy Rule 2002(d) on all known registered holders of GoHealth, Inc.'s Stock and Nominee Holders that hold the Stock in "street name" for the beneficial holders (with instructions to serve down to the beneficial holders of such Stock, as applicable) by U.S. first class mail and email. The Debtors will also as soon as practicable cause the notices required under Bankruptcy Rule 2002(d) to be published in full in *The New York Times* (national edition) or another nationally circulated newspaper in the Debtors' business judgment.

5

11. Subject to Paragraphs 7 and 10 of this Interim Order, the service requirements of Bankruptcy Rule 2002(g) are modified to permit and authorize the Debtors, through their Claims and Noticing Agent, to serve all pleadings and papers, including the Publication Notice, via email, on all parties listed on the Creditor Matrix, except when a party to be served both (a) has a mailing address in the Debtors' books, records, and files or has designated a mailing address under Bankruptcy Rules 2002(g)(l) or 5003(e) and (b) has requested hard copy U.S. first class mail service, in which case, such party shall be served by mail at such mailing address. This Interim Order does not authorize service by email of any complaint or other pleading filed in an adversary proceeding, unless the party to be served consents to email service of the applicable document(s). Nothing in this Interim Order prevents the Debtors from additionally serving any party by email in addition to the methods of service set forth in Bankruptcy Rule 9036.

12. Notice of the Motion as provided therein shall be deemed good and sufficient notice of the Motion, and the requirements of the Bankruptcy Rules and the Local Rules are satisfied by such notice.

13. Notwithstanding anything to the contrary in the Bankruptcy Code, Bankruptcy Rules, or Local Rules, the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

14. The Debtors and the Claims and Noticing Agent are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

15. This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

**Exhibit B**

**Proposed Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| GOHEALTH, INC., *et al.*,[1] | ) | Case No. 26-10914 [●] |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) | **Re: Docket No. _** |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS
TO (A) REDACT CERTAIN PERSONALLY IDENTIFIABLE
INFORMATION OF INDIVIDUALS AND (B) SERVE PARTIES
IN INTEREST BY EMAIL, (II) MODIFYING THE REQUIREMENT TO FILE A
LIST OF EQUITY SECURITY HOLDERS, (III) APPROVING THE FORM AND
MANNER OF SERVICE OF NOTICES, AND (IV) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of a final order (this "Final Order"), (a) authorizing the Debtors to (i) redact certain personally identifiable information of individuals and (ii) serve parties in interest by email; (b) modifying the requirement to file a list of equity security holders of Debtor GoHealth, Inc.; (c) approving the form and manner of service of notices; and (d) granting related relief; all as more fully set forth in the Motion; and upon the First Day Declaration; and the United States District Court for the District of Delaware having jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the Court under 28 U.S.C. § 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are: GoHealth, Inc. (3805); Blizzard Midco, LLC (3732); Connected Benefits, LLC (2162); e-TeleQuote Insurance, Inc. (2336); ETQ Holdings, LLC (8260); GoHealth Holdings, LLC (3653); GoHealth, LLC (5175); and Norvax, LLC (3063). The location of the Debtors' service address for purposes of these chapter 11 cases is: 222 West Merchandise Mart Plaza, Suite 1750, Chicago, Illinois 60654.

[2]  Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

28 U.S.C. § 157(b)(2); and this Court having found that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein, at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted on a final basis as set forth herein.

2.      Any objections to the entry of this Final Order, to the extent not withdrawn or settled, are overruled.

3.      The Debtors are authorized, on a final basis, pursuant to section 107(c)(1) of the Bankruptcy Code, to redact on the Creditor Matrix, the Schedules and Statements (if any), affidavits of service, and any other documents filed in these chapter 11 cases by the Debtors, the home and email addresses of individuals, including the Debtors' current and former employees, independent contractors, individual equity holders, and other individual creditors.  For the avoidance of doubt, and notwithstanding any other provision of this Final Order to the contrary, the U.S. Trustee is authorized to include, without redaction, the name, address, email address, and/or phone number of any creditor serving on an official committee in these chapter 11 cases in

any pleadings, including any notice of committee appointment, filed in the chapter 11 cases. Nothing in this Final Order exempts any creditors or equity security holders from compliance with Bankruptcy Rule 2019. Nothing in this Final Order prohibits any creditor, or equity security holder from voluntarily identifying itself in connection with these chapter 11 cases, or voluntarily disclosing any of its contact information. The Debtors shall provide, on a confidential basis and upon request, an unredacted version of the Creditor Matrix, the Schedules and Statements (if any), and any other filings redacted pursuant to this Final Order to the Court, the U.S. Trustee, counsel to any official committee appointed in these chapter 11 cases, any subsequently appointed trustee, and the Claims and Noticing Agent. The unredacted versions of the Creditor Matrix, the Schedules and Statements (if any), and any other filings redacted pursuant to this Final Order shall be filed under seal with the Court and shall not be made available to any other party without the consent of the Debtors or further order of this Court. The Debtors shall inform the U.S. Trustee promptly after denying any request for an unredacted document pursuant to this Final Order.

4. Nothing herein precludes a party in interest's right to file a motion requesting that the Court unseal the information redacted by this Final Order.

5. The Debtors shall file a redacted version of the Creditor Matrix, the Schedules and Statements (if any), or any other document filed with the Court, as well as post it on the Claims and Noticing Agent's website.

6. Nothing in this Final Order shall waive or otherwise limit the service of any document upon or the provision of any notice to any individual whose personally identifiable information is sealed or redacted pursuant to this Final Order. Service of all documents and notices upon individuals whose personally identifiable information is sealed or redacted pursuant to this Final Order shall be made to their residential addresses (to the extent known to the Debtors)

3

or email addresses (to the extent residential addresses are unknown) and confirmed in the corresponding certificate of service.

7.      To the extent a party in interest files a document on the docket in these chapter 11 cases that is required to be served on creditors whose information is under seal pursuant to this Final Order, such party in interest should contact counsel for the Debtors who shall work in good faith, with the assistance of the Claims and Noticing Agent, to effectuate the service on such party's behalf.

8.      The requirement that Debtor GoHealth, Inc. file a list of equity security holders pursuant to Bankruptcy Rule 1007(a)(3) is modified.

9.      Any requirement that Debtor GoHealth, Inc. provide notice directly to equity security holders under Bankruptcy Rule 2002(d) is modified as set forth herein.  The Debtors shall serve all notices in these chapter 11 cases required under Bankruptcy Rule 2002(d) on all known registered holders of GoHealth, Inc.'s Stock and Nominee Holders that hold the Stock in "street name" for the beneficial holders (with instructions to serve down to the beneficial holders of such Stock, as applicable) by U.S. first class mail and email.  The Debtors will also as soon as practicable cause the notices required under Bankruptcy Rule 2002(d) to be published in full in *The New York Times* (national edition) or another nationally circulated newspaper in the Debtors' business judgment.

10.     Subject to Paragraphs 6 and 9 of this Final Order, the service requirements of Bankruptcy Rule 2002(g) are modified to permit and authorize the Debtors, through their Claims and Noticing Agent, to serve all pleadings and papers, including the Publication Notice, via email, on all parties listed on the Creditor Matrix, except when a party to be served both (a) has a mailing address in the Debtors' books, records, and files or has designated a mailing address under

4

Bankruptcy Rules 2002(g)(l) or 5003(e) and (b) has requested hard copy U.S. first class mail service, in which case, such party shall be served by mail at such mailing address. This Final Order does not authorize service by email of any complaint or other pleading filed in an adversary proceeding, unless the party to be served consents to email service of the applicable document(s). Nothing in this Final Order prevents the Debtors from additionally serving any party by email in addition to the methods of service set forth in Bankruptcy Rule 9036.

11. Notice of the Motion as provided therein shall be deemed good and sufficient notice of the Motion, and the requirements of the Bankruptcy Rules and the Local Rules are satisfied by such notice.

12. Notwithstanding anything to the contrary in the Bankruptcy Code, Bankruptcy Rules, or Local Rules, the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

13. The Debtors and the Claims and Noticing Agent are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

14. This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.