# Exhibit 1

## Motion

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| GOHEALTH, INC., *et al.*,[1] | ) | Case No. 26-10914 [●] |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**MOTION OF DEBTORS**
**FOR ENTRY OF INTERIM AND**
**FINAL ORDERS (I) AUTHORIZING**
**THE DEBTORS TO (A) FULFILL AND HONOR**
**THEIR CARRIER PROGRAMS AND (B) CONTINUE,**
**RENEW, REPLACE, TERMINATE, AND IMPLEMENT THEIR**
**CARRIER PROGRAMS, AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state as follows in support of this motion:[2]

**Relief Requested**

1.       The Debtors seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (the "Interim Order" and the "Final Order," respectively):   (a) authorizing, but not directing, the Debtors to (i) fulfill and honor (through payment, credit, setoff, or otherwise) the Carrier Programs (as defined below) as they deem appropriate and (ii) continue, renew, replace, terminate, and implement the Carrier Programs and any other similar practices as they deem appropriate, without further application to the Court (as

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are:   GoHealth, Inc. (3805); Blizzard Midco, LLC (3732); Connected Benefits, LLC (2162); e-TeleQuote Insurance, Inc. (2336); ETQ Holdings, LLC (8260); GoHealth Holdings, LLC (3653); GoHealth, LLC (5175); and Norvax, LLC (3063).  The location of the Debtors' service address for purposes of these chapter 11 cases is:  222 West Merchandise Mart Plaza, Suite 1750, Chicago, Illinois 60654.

[2]    A detailed description of the Debtors and their business, including the facts and circumstances supporting this motion, is set forth in the *Declaration of Vijay Kotte, Chief Executive Officer of GoHealth, Inc., in Support of the Debtors' Chapter 11 Petitions, First Day Motions, and Access to Cash Collateral* (the "First Day Declaration"). Capitalized terms used but not defined in this motion shall have the meanings ascribed to them in the First Day Declaration.

defined below); and (b) granting related relief.  In addition, the Debtors request that the Court schedule a final hearing within approximately 21 days of the commencement of these chapter 11 cases to consider approval of this motion on a final basis.

### Jurisdiction and Venue

2. The United States District Court for the District of Delaware has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the United States Bankruptcy Court for the District of Delaware (the "Court") under 28 U.S.C. § 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory bases for the relief requested herein are sections 105(a), 362(d), 363(b), and 363(c) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 2002, 6003, and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 9013-1.

### Background

5. On June 7, 2026 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Concurrently with the filing of this motion, the Debtors filed a motion

requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no official committees have been appointed or designated.

### The Debtors' End Customers and Carrier Programs

6.      The Debtors (together with their non-Debtor affiliates, the "Company") are a leading health insurance marketplace and Medicare-focused digital health company, providing personalized guidance to Medicare-eligible consumers (the "End Customers").  Specifically, and particularly during the Annual Enrollment Period and the Open Enrollment Period, the Company assists consumers in comparing, selecting, and enrolling in or renewing a Medicare Advantage plan (each, an "MA Plan") or end-of-life plan (each, a "Final Expense Plan," and together with MA Plans, the "Health Plans") that is best-suited to their individual health and financial needs. The Company does so by serving as an e-broker to a small portfolio of the leading health insurance providers in the United States (collectively, the "Carriers"), of which approximately 10 represent over 95% of the Company's business.  After assisting an End Customer in identifying the Health Plan of their choice, the Company either completes the enrollment with the Carrier or transfers the End Customer to the Carrier to process the enrollment.

7.      The Company's relationship with each Carrier is governed by an agreement (each, a "Carrier Agreement").  The Company's ability to continue fulfilling its obligations under the Carrier Agreements (such obligations, collectively, the "Carrier Programs") during these chapter 11 cases is vitally important.  All of the Company's cash collections derive from commissions it receives from the Carriers on account of Health Plan submissions and renewals.  Any disruption

3

to the Carrier Programs could jeopardize the Company's business operations and result in significant value destruction for the Company and all stakeholders.

8. Accordingly, the Debtors respectfully request that the Court authorize the Debtors to continue to honor their obligations under the Carrier Programs on a postpetition basis in the ordinary course consistent with prepetition practices, including honoring any obligations thereunder as of the Petition Date without regard to when they arose.

## I. The Carrier Agreements.

9. As further described in the First Day Declaration, all of the Company's cash collections—under both the Agency Business and the Non-Agency Business (each as described below)—come from the Carriers. Under the "Agency Business," when an End Customer decides to enroll in a Health Plan through the Company, they are matched with an internal licensed agent (an "Internal Agent") who works with the End Customer to identify the right Health Plan for their specific needs. Once an End Customer has selected a Health Plan, the Internal Agent will assist them in enrolling in (or renewing) the Health Plan by electronically submitting the required forms to the applicable Carrier.

10. The Company also contracts with external agents as part of the Agency Business (such parties, the "Downline Partners"). Downline Partners rely on their own marketing efforts to place consumers into Health Plans, while having access to the Company's corporate infrastructure, technology, and resources. When the Company completes a Health Plan enrollment, through either an Internal Agent or a Downline Partner, the Company becomes the "Agent of Record," entitling the Company to a commission (the "Initial Agency Commission"). The Company also receives a commission when End Customers renew their existing Health Plan (such commission, the "Renewal Agency Commission," and together with the Initial Agency Commission, the "Agency Commissions"). Renewal Agency Commissions are paid monthly. As described in

4

the First Day Declaration, for Health Plans placed or renewed through a Downline Partner, the Company remits a contractually-agreed-upon portion of the Agency Commission to the Downline Partner.

11.     The Company also helps End Customers identify and enroll in the Health Plan that best meets their needs under the "Non-Agency Business." When the time comes for Health Plan enrollment for Non-Agency Business, however, the Internal Agents and the Downline Partners transfer the End Customers to the Carriers, who process and submit the enrollment directly, acting themselves as the "Agent of Record." Certain Carriers separately retain the Company through a business process outsourcing relationship (rather than the Company serving as the "Agent of Record") to complete enrollments on their behalf.

12.     Under the Non-Agency Business, the Company earns a commission (the "Non-Agency Commission" and together with the Agency Commission, the "Commissions") in the form of a one-time, upfront fee from the Carriers for each anticipated new enrollment in a Carrier's health insurance policy. As with the Agency Business, the Company remits an agreed portion of the Non-Agency Commissions to the Downline Partners. Unlike the Agency Business, the Company does not earn commissions for non-agency Health Plan renewals.

13.     In 2025, the Debtors collected net Commissions totaling approximately $405 million.

## II.    Carrier Commission Chargebacks

14.     Pursuant to the Carrier Agreements, the Carriers may recover some of the Initial Agency Commissions and Non-Agency Commissions if an End Customer terminates their policy earlier than anticipated or their enrollment otherwise changes after the Carrier made an initial payment on account of anticipated commissions earned.

5

15.    Under the Agency Business, the Initial Agency Commission represents all commissions due to the Company for the initial plan year of an End Customer's enrollment, and the Carrier Agreements permit the Carriers to recoup up to the entire Initial Agency Commission if an End Customer unenrolls from its MA Plan in the first plan year.  If an End Customer unenrolls from an MA Plan within 90 days of their initial enrollment, the End Customer is treated as if they never enrolled in the MA Plan by Medicare and/or Medicaid, potentially resulting in a chargeback for the entirety of the Initial Agency Commission.  If an End Customer instead unenrolls after 90 days, the Carriers can recoup a prorated amount of the Initial Agency Commission (such chargebacks, together, the "Agency Chargebacks").

16.    Under the Non-Agency Business, the Non-Agency Commissions are paid in advance based on an estimated number of new enrollments in a Carrier's Health Plans.  If the actual number of enrollments falls below the number for which the Company was paid a Non-Agency Commission, the Carriers are entitled to recoup the difference (the "Non-Agency Chargebacks" and together with the Agency Chargebacks, the "Chargebacks").

17.    When a Carrier determines that it is entitled to a Chargeback, it will set off such amounts against subsequent Initial Agency Commissions or Non-Agency Commissions paid to the Company.  Implementation of these Chargebacks, therefore, involves a non-cash adjustment to amounts payable to the Company, rather than an exchange of cash.

18.    The amount of Chargebacks that has accrued at any given time is difficult to estimate.  The Company cannot monitor the enrollment status of End Customers following their initial enrollment, nor does the Company receive a detailed accounting from the Carriers regarding all the Chargebacks set off from subsequent Commissions.  In the process of recognizing revenue,

6

however, the Company typically discounts Commissions by 10% due to the uncertainty of anticipated future cash flows including potential Chargebacks based on historical rates.

19. It is possible that certain Chargebacks incurred by the Company prior to the Petition Date have not been set off yet against Commissions due to the Company. There also may be Chargebacks that arise after the Petition Date that could be considered postpetition obligations or, if such Chargebacks resulted from a prepetition Health Plan enrollment, prepetition obligations. Similarly, there may be Commissions due to the Company and owing prior to the Petition Date, or some Commissions may be determined to be earned after the Petition Date. In any of the above circumstances, the Carrier would ordinarily seek to set off the Chargebacks against the Commissions to be paid to the Company.

20. Such setoff may, however, be prohibited by the automatic stay imposed by section 362(a) of the Bankruptcy Code. By this motion, the Debtors request that the Court modify the automatic stay solely to the extent necessary to permit the Carriers to set off Chargebacks against Commissions in the ordinary course of business and consistent with the prepetition course of dealing between the Company and such Carriers.

21. The Company's relationships with the Carriers are the Company's most valuable asset, and it is paramount that the Company maintains them. If the Carriers are prohibited from applying the Chargebacks in the ordinary course, or if the Company is otherwise unable to honor the Chargebacks on a postpetition basis in the ordinary course of business, the Company risks introducing tension into its Carrier relationships, confusion regarding how the Carriers should make Commission payments, and uncertainty about its cash collections, not only during these chapter 11 cases but also in the future. The Debtors request that the Court modify the automatic stay solely to the extent necessary to permit the Carriers to continue to set off the Chargebacks

against Commissions paid to the Company, whether arising before or after the Petition Date, in a manner consistent with past practices.

**Basis for Relief**

I.   **Continuing to Honor the Carrier Programs in the Ordinary Course Is Warranted Under Sections 105(a) and 363 of the Bankruptcy Code.**

22.   Section 363(c) of the Bankruptcy Code authorizes a debtor in possession to use property of the estate in the ordinary course of business without notice or a hearing. Consequently, the postpetition continuation, renewal, and replacement of obligations under the Carrier Programs in the ordinary course of business is likely permitted by section 363(c) of the Bankruptcy Code, without further application to this Court. Out of an abundance of caution, however, the Debtors request the relief described herein.

23.   Courts have recognized that it is appropriate to authorize the satisfaction of prepetition obligations where necessary to protect and preserve the estate, including an operating business's going-concern value. *See, e.g.*, *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 468 (2017) (noting that courts "have approved . . . 'critical vendor' orders that allow payment of essential suppliers' prepetition invoices"); *In re Just for Feet, Inc.*, 242 B.R. 821, 825–26 (D. Del. 1999); *see also In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175–76 (Bankr. S.D.N.Y. 1989); *In re James A. Phillips, Inc.*, 29 B.R. 391, 398 (S.D.N.Y. 1983). Several legal theories rooted in sections 105(a), 363(b), and 1107(a) of the Bankruptcy Code support the honoring of prepetition obligations often through the satisfaction of prepetition claims.

24.   Pursuant to section 363(b) of the Bankruptcy Code, honoring prepetition obligations may be authorized where a sound business purpose exists for doing so. *See Ionosphere Clubs*, 98 B.R. at 175 (noting that section 363(b) of the Bankruptcy Code provides

8

"broad flexibility" to authorize a debtor to honor prepetition claims where supported by an appropriate business justification). Indeed, courts have recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the preplan satisfaction of a prepetition claim." *CoServ*, 273 B.R. at 497.

25. In addition, courts may authorize satisfaction of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code, which codifies a bankruptcy court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Under section 105(a) of the Bankruptcy Code, courts may authorize pre-plan payments of prepetition obligations when essential to the continued operation of a debtor's business. *See Just for Feet*, 242 B.R. at 825–26. Specifically, a court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity"). *See, e.g.*, *Ionosphere Clubs*, 98 B.R. at 176; *In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (stating that courts may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *see also In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (noting that, in the Third Circuit, debtors may pay prepetition claims that are essential to the continued operation of the business). A bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *Ionosphere Clubs*, 98 B.R. at 175–76 (citing *Miltenberger v. Logansport, C. & S.W. Ry. Co.*, 106 U.S. 286 (1882)).

26. Moreover, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, debtors in possession are fiduciaries "holding the bankruptcy estate[s] and operating the business[es] for

9

the benefit of [their] creditors and (if the value justifies) equity owners." *CoServ*, 273 B.R. at 497. Implicit in the fiduciary duties of any debtor in possession is the obligation to "protect and preserve the estate, including an operating business's going-concern value." *Id.* Some courts have noted that there are instances in which a debtor can fulfill this fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." *Id.* The court in *CoServ* specifically noted the pre-plan satisfaction of prepetition claims would be a valid exercise of the debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate . . . " *Id.*

27.     Accordingly, the Court has authority to authorize the Debtors to continue the Carrier Programs and honor their obligations arising thereunder (including through allowing the Carriers to set off the Chargebacks against Commissions), pursuant to sections 105(a) and 363 of the Bankruptcy Code. Continuing to administer the Carrier Programs without interruption as requested herein is critical to preserving the value of the Debtors' assets by, most importantly, preserving key business relationships. This preservation of value is crucial to the success of these chapter 11 cases.

28.     Courts in this district have granted relief similar to that requested herein. *See, e.g.*, *In re At Home Group Inc.*, No. 25-11120 (JKS) (Bankr. D. Del. July 13, 2025) (authorizing the debtors to honor and continue certain customer programs in the ordinary course of business and to honor prepetition obligations related to the same); *In re Marelli Auto. Lighting USA LLC*, No. 25-11034 (CTG) (Bankr. D. Del. July 11, 2025) (same); *In re Liberated Brands LLC*, No. 25-10168 (JKS) (Bankr. D. Del. Apr. 17, 2025) (same); *In re JOANN Inc.*, No. 25-10068 (CTG) (Bankr. D.

Del. Feb. 7, 2025) (same); *In re Am. Tire Distribs., Inc.*, No. 24-12391 (CTG) (Bankr. D. Del. Nov. 19, 2024) (same).[3]

**II.     Continuing the Carrier Programs and Honoring Obligations Thereunder Is in the Best Interests of the Debtors' Business and Their Estates.**

29.     Continuing to administer the Carrier Programs without interruption during the pendency of these chapter 11 cases will preserve the Company's valuable relationships with the Carriers, who represent the Debtors' sole source of cash collections.  Maintaining good Carrier relationships, in turn, will allow the Company to continue serving its End Customers well.  By contrast, failure to honor the Carrier Programs would pose challenges to the Company's continued operations to the detriment of the End Customers and other stakeholders, in addition to amplifying the negative effect of uncertainty that may arise from these chapter 11 filings.  The Debtors believe that the relief requested herein is warranted and will maximize the value of their estates for the benefit of all stakeholders.

**III.    Cause Exists to Modify the Automatic Stay to Permit the Carriers to Continue to Set Off Chargebacks Against Commissions.**

30.     The Debtors' bankruptcy petitions operate as a stay against, among other things, "the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor."  11 U.S.C. § 362(a)(7).  Section 362(d) of the Bankruptcy Code, however, permits the Court, after notice and a hearing, to modify the automatic stay "for cause." 11 U.S.C. § 362(d).

31.     "Cause" can be a flexible standard, taking into account the particular facts and circumstances of the specific issue before the Court.  *See Baldino v. Wilson (In re Wilson)*, 116 F.3d 87, 90 (3d Cir. 1997) (noting that section 362(d)(1) "does not define 'cause,' leaving courts

---

[3]     Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request of the Debtors' proposed counsel.

11

to consider what constitutes cause based on the totality of the circumstances in each particular case.").

32.     Cause exists here to grant the Carriers limited relief from the automatic stay to set off Chargebacks against Commissions, consistent with, and solely to the extent permitted by, the terms of the applicable Carrier Agreements.  *First*, as mentioned, the Carriers are the source of all the Debtors' cash collections.  Any disruption to the standard past practices with the Carriers will introduce risk that Commission receipts are materially delayed, which would be more harmful to the Debtors and their estates than potentially being subject to a small amount in Chargebacks.  *Second*, if not permitted to be set off during these chapter 11 cases, the Chargebacks would be satisfied in full under the terms of the Debtors' prepackaged chapter 11 plan of reorganization (the "Chapter 11 Plan").  The Debtors believe there is no disadvantage to their stakeholders by honoring the Chargebacks in the ordinary course.  On the contrary, it is to the benefit of the Debtors and their estates—and thus their stakeholders—to continue to satisfy the Chargebacks with the Commission setoffs in the ordinary course.  *Third* and relatedly, all other chapter 11 unsecured claimants are expected to be paid in full or be reinstated under the Chapter 11 Plan, so no stakeholders will suffer any prejudice if the stay is modified for this purpose.  *Finally*, the Debtors believe the Chargebacks are an immaterial portion of the Commissions anticipated to be paid during these chapter 11 cases.

33.     Moreover, courts have found that establishing a right to setoff constitutes cause for modifying the automatic stay.  *See, e.g.*, *In re Nuclear Imaging Sys.*, 260 B.R. 724, 730 (Bankr. E.D. Pa. 2000) ("Courts have generally concluded that the existence of mutual obligations subject to set-off constitutes sufficient 'cause' to meet the creditor's initial evidentiary burden in seeking relief from the stay" (internal citations omitted)); *In re Orlinski*, 140 B.R. 600, 603 (Bankr. S.D.

Ga. 1991) (observing that "the automatic stay does not defeat the right of setoff; rather, setoff is merely stayed pending an 'orderly examination of the debtor's and creditor's rights. . . .' A creditor seeking to exercise a postpetition setoff must first move for relief from the automatic stay upon notice and a hearing" (internal citations omitted)).

34.     Accordingly, the Debtors submit that they have shown cause sufficient to warrant the authority to modify the automatic stay, solely to the extent necessary to allow the Carriers to set off the Chargebacks against Commissions consistent with the terms of the Carrier Agreements. The Debtors request that the relief sought herein be approved on the terms set forth in the proposed Interim Order and Final Order.

### The Requirements of Bankruptcy Rule 6003(a) Are Satisfied

35.     Bankruptcy Rule 6003(a) empowers a court to grant certain relief within the first 21 days after the petition date only to the extent that relief is "needed to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003(a). For the reasons set forth above, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of the Debtors' operations. Failure to receive the requested relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture and cause immediate and irreparable harm. The requested relief is necessary for the Debtors to operate their business in the ordinary course, preserve the ongoing value of their operations, and maximize value of their estates for the benefit of all stakeholders. The Debtors have demonstrated that the requested relief is "needed to avoid immediate and irreparable harm," as contemplated by Bankruptcy Rule 6003(a), and request that the Court grant the requested relief.

### Reservation of Rights

36.     Notwithstanding anything to the contrary herein, nothing contained in this motion or any actions taken pursuant to any order granting the relief requested in this motion (including

13

any payment made in accordance with any such order), is intended as or shall be construed or deemed to be:  (a) an implication or admission as to the amount, validity, or priority of, or basis for any claim against the Debtors under the Bankruptcy Code or other applicable non-bankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this motion or any order granting the relief requested by this motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, lease, program, or policy pursuant to section 365 of the Bankruptcy Code (or otherwise affecting the Debtors' rights pursuant to section 365 of the Bankruptcy Code); (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of any claims, causes of action, or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law; or (h) a waiver of the obligation of any party in interest to file a proof of claim.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

37.     To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

### Notice

38.     The Debtors will provide notice of this motion to the following parties or their respective counsel, as applicable:  (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the Ad Hoc TL Group; (c) counsel to the Ad Hoc Revolver Group; (d) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (e) the

14

state attorneys general for states in which the Debtors conduct business; (f) the United States Attorney for the District of Delaware, District of Massachusetts, and District of Columbia; (g) the Internal Revenue Service; (h) the Carriers; and (i) any party that is entitled to notice pursuant to Bankruptcy Rule 2002.  As this motion is seeking "first day" relief, within two business days of the hearing on this motion, the Debtors will serve copies of this motion and any order entered in respect to this motion as required by Local Rule 9013-1(m).  In light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

39.    No prior request for the relief sought in this motion has been made to this or any other court.

*[Remainder of page intentionally left blank]*

15

WHEREFORE, the Debtors request entry of the Interim Order and Final Order, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, (a) granting the relief requested herein and (b) granting such other relief as the Court deems appropriate under the circumstances.

Dated: June 7, 2026
Wilmington, Delaware

*/s/ Laura Davis Jones*

| | |
|---|---|
| **PACHULSKI STANG ZIEHL & JONES LLP** | **KIRKLAND & ELLIS LLP** |
| Laura Davis Jones (DE Bar No. 2436) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| James E. O'Neill (DE Bar No. 4042) | Anup Sathy, P.C. (*pro hac vice* pending) |
| Edward A. Corma (DE Bar No. 6718) | Alexandra F. Schwarzman, P.C. (*pro hac vice* pending) |
| 919 North Market Street, 17th Floor | David R. Gremling (*pro hac vice* pending) |
| Wilmington, Delaware 19801 | 333 West Wolf Point Plaza |
| Telephone:   (302) 652-4100 | Chicago, Illinois 60654 |
| Facsimile:   (302) 652-4400 | Telephone:   (312) 862-2000 |
| Email:   ljones@pszjlaw.com | Facsimile:   (312) 862-2200 |
|    joneill@pszjlaw.com | Email:   anup.sathy@kirkland.com |
|    ecorma@pszjlaw.com |    alexandra.schwarzman@kirkland.com |
| |    dave.gremling@kirkland.com |

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

**<u>Exhibit A</u>**

**Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| GOHEALTH, INC., *et al.*,[1] | ) | Case No. 26-10914 [●] |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) |  |
|  | ) | **Re: Docket No. __** |

**INTERIM
ORDER (I) AUTHORIZING
THE DEBTORS TO (A) FULFILL AND HONOR
THEIR CARRIER PROGRAMS AND (B) CONTINUE,
RENEW, REPLACE, TERMINATE, AND IMPLEMENT THEIR
CARRIER PROGRAMS, AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an interim order (this "Interim Order"), (a) authorizing the Debtors to (i) fulfill and honor (through payment, credit, setoff, or otherwise) the Carrier Programs as they deem appropriate and (ii) continue, renew, replace, terminate, and implement the Carrier Programs and any other similar practices as they deem appropriate, without further application to the Court, (b) scheduling a final hearing to consider approval of the Motion on a final basis, and (c) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and the United States District Court for the District of Delaware having jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the Court under 28 U.S.C. § 157 and the *Amended Standing Order of Reference* from the United States District

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are:   GoHealth, Inc. (3805); Blizzard Midco, LLC (3732); Connected Benefits, LLC (2162); e-TeleQuote Insurance, Inc. (2336); ETQ Holdings, LLC (8260); GoHealth Holdings, LLC (3653); GoHealth, LLC (5175); and Norvax, LLC (3063).  The location of the Debtors' service address for purposes of these chapter 11 cases is:  222 West Merchandise Mart Plaza, Suite 1750, Chicago, Illinois 60654.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that it may enter this order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein, at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Motion is granted on an interim basis as set forth herein.

2. Any objections to the entry of this Interim Order, to the extent not withdrawn or settled, are overruled.

3. The final hearing (the "Final Hearing") on the Motion shall be held on _____, 2026, at__:__ _.m., (prevailing Eastern Time). Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m. (prevailing Eastern Time) on _____, 2026 and shall be served on: (a) the Debtors, GoHealth, Inc., 222 West Merchandise Mart Plaza, Suite 1750, Chicago, Illinois 60654, Attn. Bradley Burd, Chief Legal Officer and Corporate Secretary (bburd@gohealth.com); (b) proposed co-counsel to the Debtors, (i) Kirkland & Ellis LLP, 333 West Wolf Point Plaza, Chicago, Illinois 60654,

Attn. Anup Sathy, P.C. (anup.sathy@kirkland.com), Alexandra F. Schwarzman, P.C. (alexandra.schwarzman@kirkland.com), and David R. Gremling (dave.gremling@kirkland.com), and (ii) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, Delaware 19801, Attn. Laura Davis Jones (ljones@pszjlaw.com), James E. O'Neill (joneill@pszjlaw.com), and Edward A. Corma (ecorma@pszjlaw.com); (c) counsel to the Ad Hoc TL Group, (i) Akin Gump Strauss Hauer & Feld LLP, Robert S. Strauss Tower, 2001 K. Street, N.W., Washington, D.C. 20006, Attn. Scott L. Alberino (salberino@akingump.com) and Benjamin L. Taylor (taylorb@akingump.com), (ii) Akin Gump Strauss Hauer & Feld LLP, 2300 N. Field Street, Suite 1800, Dallas, Texas 75201, Attn. Nicholas J. Houpt (nhoupt@akingump.com), and (iii) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attn: Michael R. Nestor (mnestor@ycst.com) and Robert Poppiti (rpoppiti@ycst.com); (d) counsel to the Ad Hoc Revolver Group, (i) Cahill Gordon & Reindel LLP, 32 Old Slip, New York, New York 10005, Attn. Joel Moss (jmoss@cahill.com) and Jordan Wishnew (jwishnew@cahill.com), and (ii) Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market St., 16th Floor, Wilmington, Delaware 19899, Attn.: Derek C. Abbott (dabbott@morrisnichols.com); (e) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn. Benjamin A. Hackman (benjamin.a.hackman@usdoj.gov); and (f) any statutory committee appointed in these chapter 11 cases.

4. The Debtors are authorized, but not directed, on an interim basis to continue to administer all Carrier Programs, including allowing the Carriers to continue to set off Chargebacks against Commissions, modify, or supplement such Carrier Programs in the ordinary course of business and consistent with past practice, and honor any obligations incurred pursuant thereto,

3

whether incurred prepetition or postpetition as they come due in the ordinary course of business and consistent with past practice without further application to or order of this Court; *provided, however*, that any modification, supplementation, or replacement of any Carrier Programs shall be subject to the consent of the Ad Hoc TL Group and the Ad Hoc Revolver Group.

5.     The automatic stay imposed by section 362 of the Bankruptcy Code is hereby modified, solely to the extent necessary, and for the sole purpose of allowing the Carriers to continue to set off Chargebacks against Commissions regardless of when they arose.

6.     Nothing contained in the Motion or this Interim Order, and no action taken pursuant to the relief requested or granted (including any payment made in accordance with this Interim Order), is intended as or shall be construed or deemed to be:  (a) an implication or admission as to the amount, validity, or priority of, or basis for any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in the Motion or this Interim Order; (e) a request or authorization to assume, adopt, or reject any agreement, contract, lease, program, or policy pursuant to section 365 of the Bankruptcy Code (or otherwise affecting the Debtors' rights under section 365 of the Bankruptcy Code); (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of any claims, causes of action, or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law; or (h) a waiver of the obligation of any party in interest to file a proof of claim.

7.      Notwithstanding anything to the contrary contained in the Motion or this Interim Order, any payment made or to be made pursuant to the authority granted herein, and any authorization contained herein, shall be subject to and in accordance with any interim and final orders, as applicable, entered by the Court approving the Debtors' use of cash collateral (such orders, the "Cash Collateral Orders") and any budget in connection with any use of cash collateral (subject to permitted variances).  To the extent there is any inconsistency between the terms of the Cash Collateral Orders and any action taken under this Interim Order, the terms of the Cash Collateral Orders shall control.  Nothing in the Motion or this Interim Order shall constitute a waiver or substitution of any consent right required under the Cash Collateral Orders.

8.      Nothing in this Interim Order authorizes the Debtors to accelerate any payments not otherwise due prior to the date of the Final Hearing.

9.      The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003.

10.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of the Motion, and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

11.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

12.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

13.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

**Exhibit B**

**Proposed Final Order**

Case 26-10914-TMH Doc 805-2 Filed 06/07/26 Page 24 of 28

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GOHEALTH, INC., *et al.*,[1] | ) | Case No. 26-10914 [●] |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |
| | ) | **Re: Docket No. _** |

**FINAL
ORDER (I) AUTHORIZING
THE DEBTORS TO (A) FULFILL AND HONOR
THEIR CARRIER PROGRAMS AND (B) CONTINUE,
RENEW, REPLACE, TERMINATE, AND IMPLEMENT THEIR
CARRIER PROGRAMS, AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of a final order (this "Final Order"), (a) authorizing the Debtors to (i) fulfill and honor (through payment, credit, setoff, or otherwise) the Carrier Programs as they deem appropriate and (ii) continue, renew, replace, terminate, and implement the Carrier Programs and any other similar practices as they deem appropriate, without further application to the Court, and (b) granting related relief; all as more fully set forth in the Motion, and upon the First Day Declaration; and the United States District Court for the District of Delaware having jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the Court under 28 U.S.C. § 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that it may

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are:  GoHealth, Inc. (3805); Blizzard Midco, LLC (3732); Connected Benefits, LLC (2162); e-TeleQuote Insurance, Inc. (2336); ETQ Holdings, LLC (8260); GoHealth Holdings, LLC (3653); GoHealth, LLC (5175); and Norvax, LLC (3063).  The location of the Debtors' service address for purposes of these chapter 11 cases is:  222 West Merchandise Mart Plaza, Suite 1750, Chicago, Illinois 60654.

[2]  Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

enter a final order consistent with Article III of the United States Constitution; and this Court having found that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein, at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Motion is granted on a final basis as set forth herein.

2. Any objections to the entry of this Final Order, to the extent not withdrawn or settled, are overruled.

3. The Debtors are authorized, but not directed, on a final basis to continue to administer all Carrier Programs, including allowing the Carriers to continue to set off Chargebacks against Commissions, modify, or supplement such Carrier Programs in the ordinary course of business and consistent with past practice, and honor any obligations incurred pursuant thereto, whether incurred prepetition or postpetition as they come due in the ordinary course of business and consistent with past practice without further application to or order of this Court; *provided*, *however*, that any modification, supplementation, or replacement of any Carrier Programs shall be subject to the consent of the Ad Hoc TL Group and the Ad Hoc Revolver Group.

2

4.       The automatic stay imposed by section 362 of the Bankruptcy Code is hereby modified, solely to the extent necessary, and for the sole purpose of allowing the Carriers to continue to set off Chargebacks against Commissions regardless of when they arose.

5.       Nothing contained in the Motion or this Final Order, and no action taken pursuant to the relief requested or granted (including any payment made in accordance with this Final Order), is intended as or shall be construed or deemed to be:  (a) an implication or admission as to the amount, validity, or priority of, or basis for any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in the Motion or this Final Order; (e) a request or authorization to assume, adopt, or reject any agreement, contract, lease, program, or policy pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of any claims, causes of action, or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law; or (h) a waiver of the obligation of any party in interest to file a proof of claim.

6.       Notwithstanding anything to the contrary contained in the Motion or this Final Order, any payment made or to be made pursuant to the authority granted herein, and any authorization contained herein, shall be subject to and in accordance with any interim and final orders, as applicable, entered by the Court approving the Debtors' use of cash collateral (such orders, the "Cash Collateral Orders") and any budget in connection with any use of cash collateral (subject to permitted variances).  To the extent there is any inconsistency between the terms of the

3

Cash Collateral Orders and any action taken under this Final Order, the terms of the Cash Collateral Orders shall control. Nothing in the Motion or this Final Order shall constitute a waiver or substitution of any consent right required under the Cash Collateral Orders.

7. Notice of the Motion as provided therein shall be deemed good and sufficient notice of the Motion, and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

8. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

9. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

10. This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.