# Exhibit 1

## Motion

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GOHEALTH, INC., *et al.*,[1] | ) | Case No. 26-10914 [●] |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**MOTION OF DEBTORS FOR ENTRY OF INTERIM
AND FINAL ORDERS (I) AUTHORIZING LIMITED USE OF
CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION
LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS TO
PREPETITION SECURED PARTIES, (III) MODIFYING THE AUTOMATIC STAY,
(IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state

as follows in support of this motion. [2]

**Preliminary Statement**

1.      The Debtors commenced the above-captioned chapter 11 cases to complete a

value-maximizing change of control transaction.  To accomplish that, the Debtors require access

to liquidity.  Substantially all of the Debtors' available cash, including any proceeds generated

from operations, constitutes collateral of the Debtors' prepetition secured lenders.  Accordingly,

the Debtors do not have sufficient unencumbered cash to satisfy their ordinary operating needs, let

alone the costs of administering these chapter 11 cases.  Immediate access to cash collateral is

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are:  GoHealth, Inc. (3805); Blizzard Midco, LLC (3732); Connected Benefits, LLC (2162); e-TeleQuote Insurance, Inc. (2336); ETQ Holdings, LLC (8260); GoHealth Holdings, LLC (3653); GoHealth, LLC (5175); and Norvax, LLC (3063).  The location of the Debtors' service address for purposes of these chapter 11 cases is:  222 West Merchandise Mart Plaza, Suite 1750, Chicago, Illinois 60654.

[2]     A detailed description of the Debtors and their business, including the facts and circumstances supporting this motion, is set forth in the *Declaration of Vijay Kotte, Chief Executive Officer of GoHealth, Inc., in Support of the Debtors' Chapter 11 Petitions, First Day Motions, and Access to Cash Collateral* (the "First Day Declaration").  Capitalized terms used but not defined in this motion shall have the meanings ascribed to them in the First Day Declaration.

critical to fund these chapter 11 cases and continue ongoing business operations while the Debtors administer these prepackaged chapter 11 cases and seek to confirm and swiftly implement the transactions contemplated by the *Joint Prepackaged Chapter 11 Plan of GoHealth, Inc. and Its Debtor Affiliates* (as may be amended, restated, amended and restated, supplemented, or otherwise modified from time to time, and including all supplements and exhibits thereto, the "Plan").

2.      Given the Debtors' anticipated capital needs, the Debtors and their advisors engaged with the Prepetition Secured Parties (as defined below) in the lead up to these cases to negotiate the terms of consensual use of Cash Collateral (as defined in section 363(a) of the Bankruptcy Code) and ensure a smooth transition into chapter 11.  Specifically, the Debtors negotiated with the Prepetition Secured Parties to develop a budget, adequate protection package, and case timeline to induce the Prepetition Secured Parties to consent to the Debtors' use of their Cash Collateral.  The Debtors and the Prepetition Secured Parties agreed that consensual use of Cash Collateral was appropriate in light of the Debtors' circumstances and anticipated cadence of the chapter 11 cases.  The agreed terms regarding the consensual use of Cash Collateral are set forth in the proposed Interim Order.

3.      The terms and conditions for the Debtors' use of Cash Collateral, as reflected in the proposed Cash Collateral Orders (as defined herein), represent the best option available to the Debtors under the circumstances and constitute a reasonable compromise with the Prepetition Secured Parties, allowing the Debtors to fund necessary operations while completing the transactions contemplated under the Plan.  Without access to these funds, the Debtors, their creditors, and their estates would suffer irreparable harm because the Debtors would not be able to continue operating in the ordinary course, causing an abrupt and pronounced deterioration in the value of the Debtors' assets.  Such a result would jeopardize the proposed restructuring

transactions, which, as set forth in the preliminary voting report filed concurrently herewith, are supported by sufficient holders of claims and interests in each voting class to confirm the Plan. Thus, the Debtors' access to Cash Collateral is fundamental to preserve and maximize the value of their estates for the benefit of all stakeholders.

## Relief Requested

4.      The Debtors seek entry of an interim order, substantially in the form attached hereto as **Exhibit A**, and a final order (the "Interim Order" and the "Final Order," respectively, and together, the "Cash Collateral Orders"): (a) authorizing the Debtors to use Cash Collateral of the Prepetition Secured Parties; (b) granting adequate protection, solely to the extent provided in the Cash Collateral Orders, to the Prepetition Secured Parties; (c) modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms of the Cash Collateral Orders; and (d) granting related relief.  In addition, the Debtors request that the Court schedule a final hearing within approximately 21 days of the commencement of these chapter 11 cases to consider approval of this motion on a final basis.

## Jurisdiction and Venue

5.      The United States District Court for the District of Delaware has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, which was referred to the United States Bankruptcy Court for the District of Delaware (the "Court") under 28 U.S.C. § 157 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the

3

Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

6.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7.     The statutory bases for the relief requested herein are sections 105, 361, 362, 363, 503, 506, 507, and 552 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 2002, 4001, and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 2002-1, 4001-2, and 9013-1.

## Background

8.     On June 7, 2026 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Concurrently with the filing of this motion, the Debtors filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no official committees have been appointed or designated.

## The Debtors Have an Immediate Need for Use of Cash Collateral

9.     As set forth in the First Day Declaration, without access to Cash Collateral, the Debtors would not be able to satisfy employee compensation obligations, satisfy payables incurred in the ordinary course of business, or fund the administration of these chapter 11 cases. Such failures would cause immediate and irreparable harm to the value of the Debtors' estates to the detriment of all stakeholders.  Access to Cash Collateral will permit the Debtors to satisfy these critical expenses as and when due to maintain operations during the pendency of these chapter 11 cases and ultimately achieve the value-maximizing transactions contemplated by the Plan.

4

## Concise Statement of Material Terms of the Interim Order

10.     The terms of the Debtors' access to Cash Collateral, as reflected in the Interim Order, were extensively negotiated with the Prepetition Secured Parties and are the most favorable terms that the Debtors were able to obtain under the circumstances.     Pursuant to Bankruptcy Rule 4001(b) and Local Rule 4001-2(a)(i), the below chart contains a summary of the material terms of the proposed use of Cash Collateral.[3]

| Summary of Material Terms | | Order Location |
|---|---|---|
| **Parties with an Interest in Cash Collateral** Bankruptcy Rule 4001(b)(1)(B) | All parties set forth below shall collectively be referred to as the "<u>Prepetition Secured Parties</u>": <br><br> • **Prepetition First Lien Agent**.  Blue Torch Finance, LLC, as the administrative agent and collateral agent. <br><br> • **Prepetition First Lien Lenders**.  The lenders party to the Prepetition First Lien Credit Agreement with respect to the Prepetition First Lien Loans and any other Prepetition First Lien Obligations. <br><br> • **Prepetition Super Priority Agent**.  Blue Torch Finance, LLC, as the administrative agent and collateral agent. <br><br> • **Prepetition Super Priority Lenders**.  The lenders party to the Prepetition Super Priority Credit Agreement with respect to the Prepetition Super Priority Loans and any other Prepetition Super Priority Obligations. | ¶ E |
| **Amount of Cash Collateral and Purposes for Use of Cash Collateral** Bankruptcy Rule 4001(b)(1)(B); Local Rule 4001-2(a)(i)(A) | To prevent immediate and irreparable harm to the Debtors' estates, the Debtors are authorized, subject to the terms and conditions of the Interim Order (including the Carve-Out) to use all Cash Collateral solely in accordance with the Interim Order and the Approved Budget and subject to Permitted Variances. | ¶ 2 |
| **Adequate Protection** Bankruptcy Rule 4001(b)(1)(B); Local Rules 4001-2(a)(i)(B); 4001-2(a)(i)(G), (K) | <u>Super Priority Adequate Protection Liens</u>. The Prepetition Super Priority Agent, for the benefit of the Prepetition Super Priority Secured Parties, is granted additional and replacement valid, binding, enforceable, non-avoidable, effective and automatically perfected liens on, and security interests in (the "<u>Super Priority Adequate Protection Liens</u>") any and all tangible and intangible pre- and postpetition property of the Debtors, whether existing before, on, or arising after the Petition Date, together | ¶ 6 |

---

[3]     The summaries contained in this motion are qualified in their entirety by the provisions of the Interim Order. To the extent anything in this motion is inconsistent with the Interim Order, the terms of the Interim Order shall control.  Capitalized terms used but not defined in this chart have the meanings ascribed to them in the Interim Order.

5

| Summary of Material Terms | Order Location |
|---|---|
| with any proceeds thereof, excluding claims and causes of action under chapter five of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code ("Avoidance Actions"), but upon entry of the Final Order, including proceeds of Avoidance Actions (collectively, the "Adequate Protection Collateral").  The Super Priority Adequate Protection Liens on the Adequate Protection Collateral shall be senior to all other liens, except for the Permitted Prior Liens, and subject to the Carve-Out.<br><br>First Lien Adequate Protection Liens.  The Prepetition First Lien Agent, for the benefit of the Prepetition First Lien Secured Parties, is granted, additional and replacement valid, binding, enforceable, non-avoidable, effective and automatically perfected liens on, and security interests in (the "First Lien Adequate Protection Liens" and, together with the Super Priority Adequate Protection Liens, the "Adequate Protection Liens"), the Adequate Protection Collateral.  The First Lien Adequate Protection Liens are subject to the Carve-Out and junior to the Prior Permitted Liens and the Super Priority Adequate Protection Liens.<br><br>Super Priority Section 507(b) Claims.  The Prepetition Super Priority Agent, for the benefit of the Prepetition Super Priority Secured Parties, is hereby granted allowed administrative expense claims against each Debtor with the priority set forth in Bankruptcy Code section 507(b) (the "Super Priority Adequate Protection Claims"); provided that the Super Priority Adequate Protection Claims shall be subject and subordinate to the Carve-Out.  The Super Priority Adequate Protection Claims shall be payable from and have recourse to all Adequate Protection Collateral, including, subject only to entry of the Final Order, any proceeds or property recovered in connection with the pursuit of the Avoidance Actions.<br><br>First Lien Section 507(b) Claims.  The Prepetition First Lien Agent, for the benefit of the Prepetition First Lien Secured Parties, is hereby granted an allowed administrative expense claim against each Debtor with the priority set forth in Bankruptcy Code section 507(b) (the "First Lien Adequate Protection Claims" and, together with the Super Priority Adequate Protection Claims, the "Adequate Protection Claims"); provided that, the First Lien Adequate Protection Claims shall be subject and subordinate to the Super Priority Adequate Protection Claims and the Carve-Out.  The First Lien Adequate Protection Claims shall be payable from and have recourse to all Adequate Protection Collateral of the Debtors, including, subject only to entry of the Final Order, any proceeds or property recovered in connection with the pursuit of the Avoidance Actions. | |
| **Limitation of the Court's Power and/or Discretion** Local Rule 4001-2(a)(i)(C) | The Interim Order does not contain any provisions that specifically limit the Court's authority to enter future orders in the Debtors' chapter 11 cases except to the extent any such orders would be inconsistent with the rights granted under the Interim Order.  ¶ 12 |

| Summary of Material Terms | | Order Location |
|---|---|---|
| **Provisions that Provide for the Funding of Non-Debtor Affiliates** Local Rule 4001-2(a)(i)(D) | The Interim Order does not permit the Debtors to transfer any funds to any non-Debtor affiliate or subsidiary other than in accordance with an order of the Court granting the *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue to Operate the Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Continue to Perform Intercompany Transactions, (II) Granting Administrative Expense Status to Postpetition Intercompany Transactions, and (III) Granting Related Relief,* filed concurrently herewith. | N/A |
| **Budget** Bankruptcy Rule 4001(b)(1)(B); Local Rules 4001-2(a)(i)(E) and 4001-2(a)(iii) | The use of Cash Collateral is subject to a budget approved by the Required Lenders (as defined in the Plan). The Initial Budget is attached to the Interim Order as <u>Exhibit 1</u>. | ¶¶ J(ii), 2, 3 |
| **Carve-Out** Bankruptcy Rule 4001(b)(1)(B); Local Rule 4001-2(a)(i)(F) | The Interim Order provides for a "Carve-Out" of certain statutory fees, allowed professional fees of the Debtors and any official committee of unsecured creditors appointed in these chapter 11 cases pursuant to section 328 or 1103 of the Bankruptcy Code, and a Post-Carve-Out Trigger Notice Cap, all as detailed therein. | ¶ 4 |
| **Postpetition Liens on Unencumbered Assets** Local Rule 4001-2(a)(i)(G) | Subject in all cases to the Carve-Out and the Permitted Prior Liens, Adequate Protection Collateral includes any and all tangible and intangible pre- and postpetition property of the Debtors, excluding Avoidance Actions, *provided* that Adequate Protection Collateral shall include proceeds of Avoidance Actions upon entry of the Final Order. | ¶¶ 4, 6 |
| **Milestones** Local Rule 4001-2(a)(i)(H) | The Interim Order requires the Debtors to comply with the following milestones, unless such milestones are extended or waived by the Required Lenders:<br><br>• no later than 11:59 p.m. (prevailing Eastern Time) on the date that is one (1) day after the Petition Date, the Debtors shall file the Plan and Disclosure Statement (as defined in the Plan);<br><br>• no later than 11:59 p.m. (prevailing Eastern Time) on the date that is three (3) business days after the Petition Date, subject to Court availability, the Court shall have entered the Interim Order;<br><br>• no later than 11:59 p.m. (prevailing Eastern Time) on the date that is forty (40) calendar days after the Petition Date, subject to Court availability, the Court shall have entered the Final Order;<br><br>• no later than 11:59 p.m. (prevailing Eastern Time) on the date that is fifty (50) calendar days after the Petition Date, subject to Court availability, the Court shall have entered an order confirming the Plan;<br><br>• no later than 11:59 p.m. (prevailing Eastern Time) on July 31, 2026, the Effective Date (as defined in the Plan) shall have occurred; provided, however, this milestone may be extended by sixty (60) calendar days at the option of the Required Lenders. | ¶10(15) |

| Summary of Material Terms | | Order Location |
|---|---|---|
| **Joint Liability** Local Rule 4001-2(a)(i)(J) | With the exception of noting that certain of the Debtors are jointly and severally indebted and liable for the Prepetition Secured Obligations, the Interim Order does not contain any provision that governs the joint liability of the Debtors. | N/A |
| **Payment of Adequate Protection Fees Without Review** Local Rule 4001-2(a)(i)(K) | The Interim Order provides for the payment of the reasonable and documented prepetition and postpetition fees and out-of-pocket expenses of (i) professionals retained by the Ad Hoc TL Group (as defined in the Plan) (the "Ad Hoc TL Group Professionals"), including but not limited to (A) Akin Gump Strauss Hauer & Feld LLP, as counsel, (B) FTI Consulting, Inc., as financial advisor, and (C) Young Conaway Stargatt & Taylor, LLP, as Delaware counsel and (ii) professionals retained by the Ad Hoc Revolver Group (as defined in the Plan), including, but not limited to, (A) Cahill Gordon & Reindel LLP, as counsel, (B) RPA Advisors, LLC, as financial advisor, and, (C) Morris, Nichols, Arsht & Tunnell LLP, as Delaware counsel (the "Ad Hoc Revolver Group Professionals" and, collectively with the Ad Hoc TL Group Professionals, the "Lender Professionals").<br><br>The Interim Order also provides that the Lender Professionals shall not be required to file motions or applications with respect to the fees and expenses incurred by the Lender Professionals (the "Lender Professionals Fees"); *provided*, *however*, that any time such professionals seek payment of fees and expenses from the Debtors, each professional shall provide summary copies of its fee and expense statements or invoices (which shall not be required to contain time entries but which shall include a general, brief description of the nature of the matters for which services were performed, which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine) to counsel to the Debtors, the U.S. Trustee, and counsel to any official committee of unsecured creditors; *provided* that at any time a Lender Professional seeks payment of Lender Professional Fees from the Debtors, the Debtors reserve their rights to request additional detail regarding the services rendered and expenses incurred by such Lender Professional. | ¶¶ 6, 13 |
| **Limitation on Estate Funds Related to the Challenge Period** Local Rule 4001-2(a)(i)(L) | The limitation on use of estate funds related to the Challenge Period is $50,000. | ¶¶14-15 |
| **Termination Events** Bankruptcy Rule 4001(b)(1)(B); Local Rule 4001-2(a)(i)(M) | "Termination Events" under the Interim Order include the following:<br><br>• The Debtors' failure to comply with any provision of the Interim Order and such failure to comply (if curable) shall not have been cured within five (5) business days following provision of notice of such failure from the Prepetition Agents;<br><br>• The Debtors shall have breached the Variance Covenant or Minimum Liquidity Covenant for any Testing Period with respect to an | ¶ 10 |

| **Summary of Material Terms** | **Order Location** |
|---|---|
| Approved Budget and provided notice thereof to the Prepetition Agents; <br><br>• The failure of the Debtors to make any payment due under the Interim Order within five (5) business days after such payment becomes due; <br><br>• The date of the Debtors' filing an application, motion, or other pleading seeking to amend, modify, reverse, revoke, stay, rescind, vacate, supplement, or extend the Interim Order without the prior written consent of the Required Lenders; <br><br>• The Interim Order ceases, for any reason, to be in full force and effect; <br><br>• The Court shall have entered an order amending, reversing, revoking, staying, rescinding, vacating, supplementing, extending, or otherwise modifying the Interim Order, without the consent of the Required Lenders, or allowing the use of Prepetition Collateral or Adequate Protection Collateral on any terms other than as set forth in the Interim Order, without the consent of the Required Lenders; <br><br>• The date of the Debtors' filing of any application, motion, or other pleading seeking approval of debtor in possession financing without the consent of the Required Lenders, or the entry of an order approving debtor in possession financing for the Debtors without the consent of the Required Lenders; <br><br>• The entry of any postpetition judgment against the Debtors in excess of $750,000; <br><br>• Except with respect to applications for the payment of fees of Professional Persons, the date an application, motion, or other pleading is filed by the Debtors for the approval of any superpriority claim or any lien that is *pari passu* with or senior to the Adequate Protection Claims, the Adequate Protection Liens, the Prepetition Liens, or the Prepetition Secured Obligations without the prior written consent of the Required Lenders; <br><br>• The date any of the Debtors or any affiliate of the Debtors files any pleading or commences any action against any Prepetition Secured Party challenging the validity or enforceability of any of the Prepetition Secured Obligations or any of the Prepetition Liens or seeking to avoid, disallow, subordinate, or recharacterize any claim, lien, or interest held by any of the Prepetition Secured Parties arising under or related to any of the Prepetition Secured Obligations; <br><br>• The date any court enters an order dismissing these chapter 11 cases, converting these chapter 11 cases to cases under chapter 7 of the Bankruptcy Code (each, a "Successor Case"), appointing a chapter 11 trustee in any of these chapter 11 cases, or an examiner with expanded powers relating to the operation of the Debtors or administration of any of these chapter 11 cases, or terminates the Debtors' exclusive periods under Bankruptcy Code section 1121, unless, in each case, consented to in writing by the Required Lenders; | |

| Summary of Material Terms | Order Location |
|---|---|
| <ul><li>The Court has entered an order granting relief from the automatic stay in order to permit any party to proceed against any Prepetition Collateral or Adequate Protection Collateral with a fair market value in excess of $750,000;</li><li>The Debtors take any action to, or publicly state that the Debtors will, not seek confirmation of the Plan, including revoking or withdrawing the Plan, without the Required Lenders' consent;</li><li>One or more of the conditions precedent to the Effective Date (as defined in the Plan) of the Plan is or becomes impossible to satisfy at any time and Required Lenders have not waived such condition(s); and</li><li>The Milestones are not met, unless extended or waived by the Required Lenders.</li></ul> | |
| **Remedies upon Termination Event** Bankruptcy Rule 4001(b)(1)(B); Local Rules 4001-2(a)(i)(M) and 4001-2(a)(i)(S) | The Debtors shall provide notice to counsel to the Prepetition Agents, the Lender Professionals, counsel to any statutory committee appointed in these chapter 11 cases, and the U.S. Trustee immediately upon knowledge of the occurrence of any Termination Event. Upon the occurrence of a Termination Event, following the giving of no less than five (5) business days' (the "Notice Period") written notice, which may be given by email, to counsel to the Debtors, the U.S. Trustee, and counsel to any official committee of unsecured creditors, and assuming no waiver of the Termination Event by the Prepetition Agents (acting at the direction of the Required Lenders), (i) the authorization for the Debtors' use of Cash Collateral shall terminate, and (ii) the Prepetition Secured Parties may seek to exercise any rights and remedies available to them under the Prepetition Credit Documents, the Interim Order, or applicable law, subject to the Carve-Out (and the automatic stay shall be automatically terminated at the end of the Notice Period to allow them to do so, unless the Court orders otherwise); *provided* that, until expiration of the Notice Period, the Debtors may continue to use Cash Collateral to make payments in respect of expenses critical to keep the business of the Debtors operating in accordance with the Approved Budget; and *provided, further*, that the Debtors may continue to use Cash Collateral during or after expiration of the Notice Period solely to the extent necessary to fund the Carve-Out Reserve pursuant to paragraph 4 of the Interim Order. | ¶ 11 |
| **Validity, Perfection, and Amount of Obligations Securing Prepetition Liens, Binding Effect of Stipulations on Third Parties, and Challenge Period** Bankruptcy Rule. 4001(b)(1)(B); Local Rule 4001-2(a)(i)(Q) | The Debtors' acknowledgments, stipulations, admissions, waivers, and releases contained in the Interim Order shall be binding upon the Debtors, their estates, and any successor or assigns thereto upon entry of the Interim Order. The acknowledgments, stipulations, admissions, waivers, and releases contained in the Interim Order shall also be binding upon all other parties in interest, including any Committee, or any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors (a "Trustee"), unless (i) such party, having obtained the requisite standing, has duly filed an adversary proceeding or contested matter (subject to the limitations contained in the Interim Order) challenging the validity, perfection, priority, extent, or enforceability of the Prepetition Liens or the Prepetition Secured Obligations, or otherwise asserting or prosecuting any other claims, counterclaims or causes of action, | ¶ 15 |

| Summary of Material Terms | | Order Location |
|---|---|---|
| | objections, contests, or defenses (each, a "Challenge") against the Prepetition Secured Parties in connection with any matter related to the Prepetition Credit Documents, the Prepetition Collateral, the Prepetition Liens, or the Prepetition Secured Obligations by the date that is no later than 75 calendar days from the entry of the Interim Order; provided that subject to entry of a Final Order, such party shall have filed such Challenge no later than the earlier of (A) confirmation of a chapter 11 plan for the Debtors or (B) 75 calendar days from the entry of the Interim Order, subject to further written extension (which writing may be in the form of e-mail by counsel) by the Prepetition Agents (at the direction of the Required Lenders) (the "Challenge Period"); provided that in the event that, prior to the expiration of the Challenge Period, (x) any of these cases is converted to a Successor Case or (y) a chapter 11 trustee is appointed, then, in each such case, the Challenge Period shall be extended for a period of 45 calendar days solely with respect to any Trustee, commencing on the occurrence of either of the events described in the foregoing clauses (x) and (y); and (ii) an order is entered by a court of competent jurisdiction and becomes final and non-appealable in favor of the party asserting any Challenge sustaining any Challenge in such duly filed adversary proceeding or contested matters, subject to the terms of the Interim Order. | |
| **Waiver/Modification of Automatic Stay** Bankruptcy Rule 4001(b)(1)(B); Local Rule 4001-2(a)(i)(S) | The automatic stay shall be modified to the extent necessary to allow the Prepetition Secured Parties to provide any notices to the Debtors or take any other action as contemplated by and in accordance with the Interim Order. | ¶ 24 |
| **Provisions Limiting the Rights of Parties in Interest** Local Rule 4001-2(a)(i)(T) | The Interim Order does not contain any provisions that specifically limit what parties in interest may raise at any emergency hearing scheduled during the Notice Period. | ¶ 11 |
| **Section 506(c) and 552(b) Waiver** Local Rule 4001-2(a)(i)(V); 4001-2(a)(i)(W) | Subject to entry of the Final Order, waiving (a) the Debtors' right to surcharge the Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code and (b) any "equities of the case" exception under section 552(b) of the Bankruptcy Code. | ¶¶ 19–20 |
| **Marshaling Waiver** Local Rule 4001-2(a)(i)(X) | Subject to entry of the Final Order, waiving the equitable doctrine of "marshaling" and other similar doctrines with respect to the Adequate Protection Collateral, Adequate Protection Obligations, Prepetition Collateral, or the Prepetition Secured Obligations. | ¶ 20 |

**Explanation for Inclusion of Significant Provisions Pursuant to Local Rule 4001-2(a)(i)**

**I.      The Significant Provisions Are Appropriate and Justified Under the Circumstances of These Chapter 11 Cases.**

11.      Local Rule 4001-2(a)(i) requires that the Debtors explain the reason for including certain significant provisions described in Local Rules 4001-2(a)(i)(N)–(X) (collectively, the "Significant Provisions").[4]  The Debtors believe that each of the Significant Provisions, as well as the Carve-Out, is justified and necessary in the context and circumstances of these chapter 11 cases.

**A.      The Scope of the Carve Out Is Appropriate (Local Rule 4001-2(a)(i)(F)).[5]**

12.      The proposed Adequate Protection is subject to the Carve-Out, pursuant to which funds will be regularly reserved and funded into the Funded Reserve Account during the pendency of these chapter 11 cases to ensure the timely payment of Allowed Professional Fees.  The Funded Reserve Account is funded each week in an amount equal to the sum of (A) the greater of (1) the aggregate unpaid amount of all Estimated Fees and Expenses reflected in the Weekly Statements delivered on the immediately prior Wednesday to the Debtors and the Prepetition Agents, and (2) the aggregate amount of unpaid Allowed Professional Fees contemplated to be incurred in the Approved Budget during such week, *plus* (B) the Post-Carve-Out Trigger Notice Cap, *plus* (C) an amount equal to the amount of Allowed Professional Fees set forth in the Approved Budget for the two weeks occurring after the most recent Calculation Date.  The Funded Reserve Account will maintain a minimum balance of $500,000.

---

[4]      Local Rules 4001-2(a)(i)(N), (O), (P), and (R) are not applicable to the Interim Order.  In addition, Local Rules 4001-2(a)(i)(U)–(X) are only applicable upon entry of the Final Order.

[5]      Capitalized terms used but not defined in this section have the meanings ascribed to them in the Interim Order.

13.     Without the Carve-Out, the Debtors and other parties in interest may be deprived of certain rights and powers, including the right to select their own professionals, because the services for which professionals may be paid in these chapter 11 cases would be restricted. *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) (observing that courts insist on carve-outs for professionals representing parties in interest because "[a]bsent such protection, the collective rights and expectations of all parties-in-interest are sorely prejudiced"). Moreover, the Carve-Out serves to enhance the value of these estates because, in the absence of a carveout, "nobody will represent the debtor or the committee and the case will fall apart, further diminishing the overall value of the secured creditor's collateral[.]" *In re Molycorp, Inc.*, 562 B.R. 67, 76 n. 39 (Bankr. D. Del. 2017).  The Carve-Out does not directly or indirectly deprive the Debtors' estates or other parties in interest of possible rights and powers.  Additionally, the Carve-Out protects against administrative insolvency on account of process costs during the course of these chapter 11 cases by ensuring that assets remain for any payment owing to the Clerk of the Court or the U.S. Trustee pursuant to 28 U.S.C. § 1930 and payment of professional fees of the Debtors and any statutory committee.

**B.     The Findings of Validity, Perfection, or Amount of Prepetition Liens and Challenge Period Are Appropriate (Local Rule 4001-2(a)(i)(Q)).**

14.     Local Rule 4001-2(a)(i)(Q) requires explicit disclosure of provisions that bind the estate or other parties in interest with respect to the validity, perfection, or amount of a secured creditor's prepetition lien or the waiver of claims against a secured creditor without first giving parties in interest at least 75 days from the entry of the order to investigate such matters.

15.     Here, the Interim Order complies with this requirement by providing parties in interest, including any committee appointed in these chapter 11 cases, with requisite standing to file an adversary proceeding against the Prepetition Secured Parties in connection with any matter

related to the Prepetition Credit Documents, the Prepetition Collateral, the Prepetition Liens, or the Prepetition Secured Obligations by the date that is no later than 75 calendar days from the entry of this Interim Order; *provided* that subject to entry of a Final Order, such party shall have filed such Challenge no later than the earlier of (A) confirmation of a chapter 11 plan for the Debtors or (B) 75 calendar days from the entry of this Interim Order, subject to further written extension by the Prepetition Agents (at the direction of the Required Lenders). In the event that the entry of an order confirming the Plan occurs fewer than 75 calendar days after entry of the Interim Order, waiver of Local Rule 4001-2(a)(i)(Q) is appropriate under the circumstances because the expedited timeline of these chapter 11 cases is necessary to maximize value for the benefit of all stakeholders,

C. **The Provisions Modifying the Automatic Stay, Providing for a Cash Collateral Remedies Notice Period, and Providing for a Default Notice Hearing Are Appropriate (Local Rules 4001-2(a)(i)(S), (T)).**

16. Local Rules 4001-2(a)(i)(S) and (T) require explicit disclosure of provisions that modify the automatic stay upon a Termination Event to enforce remedies without a remedies notice period (the "Notice Period") and provisions that seek to limit what parties in interest may raise at an emergency hearing during the Notice Period. The Interim Order provides for a standard five business-day remedies notice period for all Termination Events and does not limit what parties in interest may raise during an emergency hearing scheduled during the Notice Period. Until the expiration of the Notice Period, the Debtors may continue to use Cash Collateral to pay for expenses critical to keep their business operating in accordance with the Approved Budget.

17. In light of the foregoing, the Debtors submit that the Significant Provisions are appropriate under the facts and circumstances of these chapter 11 cases. Accordingly, the Significant Provisions in the Interim Order should be approved.

14

**The Debtors' Prepetition Indebtedness and Need to Use Cash Collateral**

**I.  GoHealth's Prepetition Capital Structure.**

18.  As of the Petition Date, the Debtors have approximately $772 million in total funded debt obligations outstanding, including accrued and unpaid interest on the principal amount under each credit facility.  The following table depicts the Debtors' prepetition capital structure.

| Type | Maturity | Approximate Amount Outstanding |
|---|---|---|
| *Secured Debt* | | |
| Prepetition First Lien Loans | November 4, 2029 | $598 million |
| Prepetition Super Priority Loans | August 5, 2029 | $174 million[6] |
| *Total Funded Debt:* | | $772 million |
| *Equity Interests[7]* | | |
| GoHealth Holdings Interests | N/A | 29,302,494 shares |
| GoHealth, Inc. Preferred Stock | N/A | 50,000 shares |
| GoHealth, Inc. Class A Common Stock | N/A | 16,686,419 shares |
| GoHealth, Inc. Class B Common Stock | N/A | 12,616,075 shares |

**A.  Prepetition First Lien Credit Agreement.**

19.  The Debtors are party to that certain Credit Agreement, dated as of September 13, 2019 (as amended by that certain Amendment No. 1 to the Credit Agreement and Incremental Facility Amendment, dated as of March 20, 2020, as further amended by that certain Incremental Facility Agreement and Technical Amendment No. 2, dated as of May 7, 2020, as further amended by that certain Incremental Facility Amendment No. 3, dated as of June 11, 2020, as further amended by that certain Amendment No. 4 and Incremental Facility Agreement, dated as of May 7, 2021, as further amended by that certain Amendment No. 5 to Credit Agreement and Incremental Facility Agreement, dated as of June 11, 2021, as further amended by that certain Amendment No. 6 to Credit Agreement and Incremental Facility Agreement, dated as of

---

[6]  This amount is inclusive of the MOIC Premium (as defined in the Prepetition Super Priority Credit Agreement).

[7]  As of May 12, 2026.

November 10, 2021, as further amended by that certain Amendment No. 7 to Credit Agreement, dated as of March 14, 2022, as further amended by that certain Amendment No. 8 to Credit Agreement, dated as of August 12, 2022, as further amended by that certain Amendment No. 9 to Credit Agreement, dated as of November 9, 2022, as further amended by that certain Amendment No. 10 to Credit Agreement, dated as of March 15, 2023, as further amended by that certain Amendment No. 11 to the Credit Agreement, dated as of March 12, 2024, as further amended by that certain Amendment No. 12 to the Credit Agreement, dated as of October 15, 2024, as amended and restated by that certain Amendment and Restatement Agreement, dated as of November 4, 2024, as further amended by that certain Amendment No. 13 to the Credit Agreement, dated as of June 30, 2025, and as further amended by that certain Amendment No. 14 to the Credit Agreement, dated as of August 6, 2025 and as further amended, restated, amended and restated, supplemented or otherwise modified from time to time prior to the Petition Date, the "Prepetition First Lien Credit Agreement"), and together with all related security agreements, collateral agreements, pledge agreements, control agreements, guarantees and other documents, by and among Blizzard Midco, LLC, a Delaware limited liability company, as holdings, Norvax, LLC, a Delaware limited liability company, as borrower, Blue Torch Finance, LLC as the administrative agent and collateral agent party thereto (in such capacities, the "Prepetition First Lien Agent") and the lenders party thereto (the "Prepetition First Lien Lenders" and, together with the Prepetition First Lien Agent, the "Prepetition First Lien Secured Parties"), the Prepetition First Lien Lenders provided term loans (the "Prepetition Term Loans") and revolving loans (the "Prepetition Revolving Loans" and, together with the Prepetition Term Loans, the "Prepetition First Lien Loans").

20. The Prepetition First Lien Term Loans bear interest at the rate of SOFR plus 7.50%, subject to the borrower's election to PIK a portion of the interest, in which case the interest rate is

16

Adjusted Term SOFR plus 8.00% (of which Adjusted Term SOFR plus 4.50% shall be cash and 3.50% PIK). The First Lien Term Loans mature on November 4, 2029, and as of the Petition Date, the outstanding principal amount of the First Lien Term Loans is approximately $575.7 million.

### B. Prepetition Super Priority Credit Agreement.

21.     The Debtors are party to that certain Superpriority Senior Secured Credit Agreement, dated as of August 6, 2025 (as amended, restated, amended and restated, supplemented or otherwise modified from time to time prior to the Petition Date, the "Prepetition Super Priority Credit Agreement" and together with the Prepetition First Lien Credit Agreement, the "Prepetition Credit Agreements"), and together with all related security agreements, collateral agreements, pledge agreements, control agreements, guarantees and other documents, by and among Blizzard Midco, LLC, a Delaware limited liability company, as holdings, Norvax, LLC, a Delaware limited liability company, as borrower, Blue Torch Finance, LLC, as the administrative agent and collateral agent, (in such capacities, the "Prepetition Super Priority Agent" and, together with the Prepetition First Lien Agent, the "Prepetition Agents") and the lenders party thereto (the "Prepetition Super Priority Lenders" and, together with the Prepetition Super Priority Agent, the "Prepetition Super Priority Secured Parties" and, the Prepetition Super Priority Secured Parties together with the Prepetition First Lien Secured Parties, the "Prepetition Secured Parties"), the Prepetition Super Priority Lenders provided new money term loans (the "Prepetition New Money Term Loans") and rolled term loans (the "Prepetition Rolled Term Loans" and, together with the Prepetition New Money Term Loans, the "Prepetition Super Priority Loans").

22.     The Prepetition Super Priority Loans bear interest in cash at the rate of, at the Debtors' election, SOFR plus 5.50% or ABR plus 4.50% and mature on August 5, 2029. In addition, the Prepetition New Money Term Loans are subject to a 2.00x multiple-on-invested-capital (the "MOIC"), payable in cash upon partial or full repayment, prepayment, maturity, or

17

acceleration of the Prepetition Super Priority Loans. The MOIC steps down to 1.75x for repayments occurring between January 1, 2026 and April 1, 2027. As of the Petition Date, the outstanding principal amount of the Prepetition Super Priority Loans, excluding the MOIC, is approximately $117.4 million.

### C. Intercreditor Agreement.

23. The relationship between the Super Priority Credit Facility and the First Lien Credit Facility (collectively, the "Prepetition Term Loan Facilities") is governed by certain Superpriority Intercreditor Agreement, dated as of August 6, 2025, by and among Blizzard Midco, LLC, a Delaware limited liability company, as holdings, Norvax, LLC, a Delaware limited liability company, as borrower, the subsidiaries of the borrower party thereto, the Initial Senior Representative (as defined therein), and the Initial Junior Representative (as defined therein) (the "ICA"). The ICA provides that the Prepetition First Liens are junior to the Prepetition Super Priority Liens with respect to the Shared Collateral (as defined in the ICA).

### D. Equity Interests.

24. Debtor GoHealth, Inc. is a holding company that operates and conducts business through GoHealth Holdings, LLC in an organizational structure commonly referred to as an umbrella partnership-C-corporation ("Up-C") structure. Pursuant to such Up-C structure, GoHealth, Inc. holds a majority of the outstanding GoHealth Holdings Interests and is the sole managing member of GoHealth Holdings, while a minority of GoHealth Holdings Interests are held by other members of GoHealth Holdings. As is customary for a company organized in an Up-C structure, GoHealth, Inc.'s certificate of incorporation authorizes the board of directors to issue shares of preferred stock and two classes of common stock, GoHealth, Inc. Class A Common Stock, and GoHealth, Inc. Class B Common Stock (together, the "Common Stock").

18

25. *GoHealth Holdings Interests.* Prior to the Company's IPO, GoHealth Holdings had approximately 295.6 million units issued and outstanding. In connection with the IPO and the Up-C structure put into place, a portion of the GoHealth Holdings Interests were contributed to GoHealth Inc., while the rest remained outstanding. As of May 12, 2026, approximately 29.3 million units of GoHealth Holdings Interests remain outstanding, approximately 16.7 million of which are held by GoHealth, Inc., and approximately 12.6 million of which are held by third parties.

26. The holders of GoHealth Holdings Interests may, subject to certain exceptions, from time to time at each of their options require GoHealth Holdings to redeem all or a portion of their GoHealth Holdings Interests (along with an equal number of shares of Class B Common Stock (and such shares shall be immediately cancelled)) in exchange for, at GoHealth, Inc.'s election, newly-issued shares of Class A Common Stock on a one-for-one basis, or to the extent available, cash, in each case, in accordance with the terms of the GoHealth Holdings governing documents. The GoHealth Holdings Interests are structurally senior to the GoHealth, Inc. Preferred Stock (as defined below).

27. *GoHealth, Inc. Preferred Stock*. On September 23, 2022, GoHealth raised $50 million from certain investors through the issuance of 50,000 shares of Series A Convertible Perpetual Preferred Stock (the "GoHealth, Inc. Preferred Stock"). The Certificate of Designations, dated as of September 23, 2022 (the "COD"), that governs the GoHealth, Inc. Preferred Stock sets forth a variety of rights to which the GoHealth, Inc. Preferred Stock are entitled. For example, dividends on each share of GoHealth, Inc. Preferred Stock accrue at an annual rate equal to 7.00%.

28. The GoHealth, Inc. Preferred Stock are also convertible at the option of the holders thereof into GoHealth, Inc. Class A Common Stock in accordance with the COD. Alternatively,

19

a holder of GoHealth, Inc. Preferred Stock may instead elect to receive upon conversion one share of Series A-1 Convertible Non-Voting Perpetual Preferred Stock (the "A-1 Preferred Stock") for every 1,000 shares of GoHealth, Inc. Class A Common Stock otherwise deliverable upon conversion and cash in lieu of any fractional shares of A-1 Preferred Stock. Holders of A-1 Preferred Stock are only entitled to dividends if GoHealth declares such dividends. As of the date hereof, no A-1 Preferred Stock are issued and outstanding.

29. The GoHealth, Inc. Preferred Stock are senior to the Common Stock with respect to dividend rights and rights on the distribution of assets on any liquidation, dissolution, or winding up.

30. *GoHealth, Inc. Common Stock.* As of May 12, 2026, approximately 16.7 million shares of GoHealth, Inc. Class A Common Stock are issued and outstanding, which includes an aggregate of 4,766,219 shares of GoHealth, Inc. Class A Common Stock issued to the holders of Prepetition First Lien Loans as consideration for their entry into the 14th Amendment. The GoHealth, Inc. Class A Common Stock trades on The Nasdaq Global Market under the ticker symbol "GOCO" and has both voting and economic rights.

31. In connection with the IPO and the Up-C structure, GoHealth Inc. issued Class B Common Stock to holders of GoHealth Holdings Interests, at a one-to-one ratio, to reflect the voting rights of the GoHealth Holdings Interest holders and in accordance with GoHealth, Inc.'s and GoHealth Holdings' respective organizational documents. Class B Common Stock has voting rights but does not have economic rights.

## II.     The Debtors' Immediate Need to Use Cash Collateral[8]

32.     As set forth in the First Day Declaration, and as described herein, the Debtors need to use cash on hand and cash generated from operations to fund their business throughout these chapter 11 cases, pursue confirmation of the Plan, and avoid immediate and irreparable harm.  *See* First Day Decl. ¶¶ 84–91.  As of the Petition Date, the Debtors estimate that they have approximately $17.7 million of available cash on hand, all of which is subject to the Prepetition Secured Parties' security interests and thus constitutes the Prepetition Secured Parties' Cash Collateral.  The Debtors have determined that access to Cash Collateral will be sufficient to continue ordinary course operations during their brief time in chapter 11 while simultaneously allowing the Debtors to implement the Plan, providing meaningful recovery to all stakeholders.

33.     The Debtors, with the assistance of their advisors, developed a six-week cash flow forecast (the "Initial Budget") for the use of Cash Collateral during the chapter 11 cases. The Debtors believe the Initial Budget establishes that the Debtors will have adequate liquidity during the interim period as required by Local Rule 4001-2(a)(iii).  The Initial Budget contains line items for cash flows anticipated to be received and disbursed during the time period for which the Initial Budget is prepared.  The Debtors believe that the Initial Budget includes all reasonable, necessary, and foreseeable expenses to be incurred in connection with the operation of their business for the period set forth in the Initial Budget.

---

[8]     The Bankruptcy Code defines "cash collateral" as follows:

> [C]ash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

11 U.S.C. § 363(a).

21

**I.      The Debtors' Request to Use Cash Collateral and Proposed Adequate Protection Is Appropriate.**

34.      Section 363 of the Bankruptcy Code governs the Debtors' use of property of their estates, including Cash Collateral.  Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor may use cash collateral as long as "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section."  11 U.S.C. § 363(c)(2).  The Prepetition Secured Parties consented to the Debtors' use of Cash Collateral in exchange for the proposed customary adequate protection package set forth in the Cash Collateral Orders.

35.      Section 363(e) of the Bankruptcy Code provides for adequate protection of interests in property when a debtor uses cash collateral.  Further, section 362(d)(1) of the Bankruptcy Code provides for adequate protection of interests in property due to the imposition of the automatic stay.  *See  In re Cont'l  Airlines*, 91  F.3d 553,  556  (3d  Cir.  1996)  (en  banc).  While section 361 of the Bankruptcy Code provides examples of forms of adequate protection, such as granting replacement liens and administrative claims, courts decide what constitutes sufficient adequate protection on a case-by-case basis.  *In re Swedeland Dev. Grp., Inc.*, 16 F.3d 552, 564 (3d Cir. 1994); *In re Satcon Tech. Corp.*, No. 12-12869, 2012 WL 6091160, at *6 (Bankr. D. Del. Dec. 7, 2012); *In re N.J. Affordable Homes Corp.*, No. 05-60442, 2006 WL 2128624, at *14 (Bankr. D.N.J. June 29, 2006); *In re Columbia Gas Sys., Inc.*, No. 91-803, 1992 WL 79323, at  *2  (Bankr.  D.  Del.  Feb.  18,  1992);  *see  also  In re Dynaco  Corp.*,  162 B.R. 389, 394 (Bankr. D.N.H. 1993) (citing 2 Collier on Bankruptcy ¶ 361.01 [1] at 361–66 (15th ed. 1993) (explaining that adequate protection can take many forms and "must be determined based upon equitable considerations arising from the particular facts of each proceeding")).

36.     The concept of adequate protection is designed to shield a secured creditor from diminution in the value of its interest in collateral during the period of a debtor's use. *See In re Carbone Cos.*, 395 B.R. 631, 635 (Bankr. N.D. Ohio 2008) ("The test is whether the secured party's interest is protected from diminution or decrease as a result of the proposed use of cash collateral."); *see also In re Cont'l Airlines, Inc.*, 154 B.R. 176, 180–81 (Bankr. D. Del. 1993) (holding that adequate protection for use of collateral under section 363 of the Bankruptcy Code is limited to use-based decline in value).  Whether the debtor's estate will benefit on the whole from its use of cash collateral is relevant to determining the sufficiency of adequate protection. *See In re 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992); *see also In re Salem Plaza Assocs.*, 135 B.R. 753, 758 (Bankr. S.D.N.Y. 1992) (holding that debtor's use of cash collateral to pay operating expenses, thereby "preserv[ing] the base that generates the income stream," provided adequate protection to the secured creditor).

## II.     The Proposed Adequate Protection for the Prepetition Secured Parties Is Sufficient.

37.     One hundred percent of the Prepetition Secured Parties have consented to the Debtors' use of Cash Collateral which is sufficient to satisfy the requirements of section 363(c)(2) of the Bankruptcy Code.  Nevertheless, as described above, and as set forth in the Cash Collateral Orders, the Debtors propose to provide the Prepetition Secured Parties with several forms of adequate protection (collectively, the "Adequate Protection").

38.     Adequate Protection Liens.  Each of the Prepetition First Lien Agent, for the benefit of the Prepetition First Lien Secured Parties, and the Prepetition Super Priority Agent, for the benefit of the Prepetition Super Priority Secured Parties, will be granted, pursuant to sections 361 and 363(e) of the Bankruptcy Code, valid, binding, enforceable, non-avoidable, and perfected replacement and additional postpetition security interests in, and liens on Adequate Protection

23

Collateral, which shall be subject and subordinate only to the Carve-Out and the lien priorities set forth in the Cash Collateral Orders.

39.     Adequate Protection 507(b) Claims.  Solely to the extent of any diminution in value, the Debtors will grant the Prepetition First Lien Agent, for the benefit of the Prepetition First Lien Secured Parties, and the Prepetition Super Priority Agent, for the benefit of the Prepetition Super Priority Secured Parties, allowed superpriority administrative claims pursuant to section 507(b) of the Bankruptcy Code, which superpriority administrative expense claims shall be senior to all other administrative expense claims of any kind but subject and subordinate to the Carve-Out.

40.     Adequate Protection Fees and Expenses.  The Debtors will pay the reasonable and documented fees and out-of-pocket expenses of the Prepetition Secured Parties.

41.     Other Adequate Protection.   The Debtors will provide additional adequate protection to the Prepetition Secured Parties in the form of, among other things, (a)  the provision of certain financial and other reporting, (b) the maintenance of collateral as required under the Prepetition Credit Documents, and (c) compliance with certain milestones applicable to the chapter 11 cases (unless extended or waived by the Required Lenders, as applicable).  The Cash Collateral Orders are without prejudice to, and do not constitute a waiver of, expressly or implicitly, the rights of the Prepetition Secured Parties to request additional or different forms of adequate protection at any time or the rights of the Debtors or any other party in interest to object thereto.

42.     The Debtors respectfully submit that the proposed Adequate Protection is sufficient to protect the Prepetition Secured Parties from any diminution in value caused by, among other reasons, the Debtors' use of the Prepetition Collateral, including the Cash Collateral, during the pendency of these chapter 11 cases.  Considering the foregoing, the Debtors submit that the proposed Adequate Protection to be provided for the benefit of the Prepetition Secured Parties is

appropriate. The Debtors' proposed Adequate Protection is not only necessary to protect the Prepetition Secured Parties against any diminution in value, but is also fair and appropriate under the circumstances of these chapter 11 cases to ensure the Debtors are able to continue using the Cash Collateral, subject to the terms and limitations set forth in the Interim Order, for the benefit of all parties in interest and their estates.

**III.    Failure to Obtain the Immediate Interim Use of Cash Collateral Would Cause Immediate and Irreparable Harm.**

43.    Bankruptcy Rule 4001(b) provides that a final hearing on a motion to use cash collateral pursuant to section 363 of the Bankruptcy Code may not be commenced earlier than 14 days after the service of such motion. Upon request, however, the Court is authorized to conduct a preliminary expedited hearing on this motion and authorize the Debtors' proposed use of cash collateral to the extent necessary to avoid immediate and irreparable harm to the Debtors' estates. *See* Fed. R. Bankr. P. 4001(b)(2); Local Rule 4001-2(b). Section 363(c)(3) of the Bankruptcy Code authorizes the court to conduct a preliminary hearing and to authorize the use of cash collateral "if there is a reasonable likelihood that the [debtor] will prevail at the final hearing under [section 363(e) of the Bankruptcy Code]." 11 U.S.C. § 363(c)(3).

44.    The Debtors have an immediate postpetition need to use Cash Collateral to administer these chapter 11 cases, fund ongoing business operations, and to maintain and preserve the value of their estates. The Debtors believe that substantially all of their available cash constitutes the Prepetition Secured Parties' Cash Collateral, as that term is used by section 363(c) of the Bankruptcy Code. The Debtors will therefore be unable to proceed with their proposed reorganization or otherwise fund these chapter 11 cases without access to Cash Collateral and will suffer immediate and irreparable harm to the detriment of all stakeholders. Conversely, immediate access to Cash Collateral will enable the Debtors to preserve estate value while they seek

confirmation and implementation of the Plan, which contemplates full or meaningful recovery for all stakeholders.  In short, the Debtors' access to Cash Collateral is fundamental to the success of these chapter 11 cases.

45.    The Debtors therefore seek immediate authority to use the Cash Collateral as set forth in this motion and in the Interim Order to prevent immediate and irreparable harm to their estates pending the Final Hearing pursuant to Bankruptcy Rule 4001(b) and Local Rule 4001-2(b). The Debtors respectfully submit that they have satisfied the requirements of Bankruptcy Rule 4001 and Local Rule 4001-2 to support an expedited preliminary hearing and immediate Cash Collateral availability on an interim basis.

## IV.    The Automatic Stay Should Be Modified on a Limited Basis.

46.    The relief requested herein contemplates modification of the automatic stay to the extent necessary to allow the Prepetition Secured Parties to provide any notices to the Debtors or take any other action as contemplated by and in accordance with the Cash Collateral Orders. The Cash Collateral Orders further provide that, upon the expiration of the applicable remedies notice period, the automatic stay will be automatically modified to permit the Prepetition Secured Parties to immediately retain and apply payments and otherwise enforce their respective rights and remedies under and in accordance with the Cash Collateral Orders, subject and subordinate to the Carve-Out.

### Reservation of Rights

47.    Notwithstanding anything to the contrary herein, nothing contained in this motion or any actions taken pursuant to any order granting the relief requested in this motion (including any payment made in accordance with any such order), is intended as or shall be construed or deemed to be:  (a) an implication or admission as to the amount, validity, or priority of, or basis for any claim against the Debtors under the Bankruptcy Code or other applicable non-bankruptcy

26

law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this motion or any order granting the relief requested by this motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, lease, program, or policy pursuant to section 365 of the Bankruptcy Code (or otherwise affecting the Debtors' rights pursuant to section 365 of the Bankruptcy Code); (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (g) a waiver or limitation of any claims, causes of action, or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law; or (h) a waiver of the obligation of any party in interest to file a proof of claim.

**Notice**

48. The Debtors will provide notice of this motion to the following parties or their respective counsel, as applicable: (a) the U.S. Trustee (b) counsel to the Ad Hoc TL Group; (c) counsel to the Ad Hoc Revolver Group; (d) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (e) the state attorneys general for states in which the Debtors conduct business; (f) the United States Attorney for the District of Delaware, District of Massachusetts, and District of Columbia; (g) the Internal Revenue Service; and (h) any party that is entitled to notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). As this motion is seeking "first day" relief, within two business days of the hearing on this motion, the Debtors will serve copies of this motion and any order entered in respect to this motion as required

27

by Local Rule 9013-1(m).  In light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

49.     No prior request for the relief sought in this motion has been made to this or any other court.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors request entry of the Interim Order, substantially in the form

attached hereto as **Exhibit A**, (a) granting the relief requested herein and (b) granting such other

relief as the Court deems appropriate under the circumstances.

Dated:  June 7, 2026
Wilmington, Delaware

*/s/ Laura Davis Jones*

| | |
|---|---|
| **PACHULSKI STANG ZIEHL & JONES LLP** | **KIRKLAND & ELLIS LLP** |
| Laura Davis Jones (DE Bar No. 2436) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| James E. O'Neill (DE Bar No. 4042) | Anup Sathy, P.C. (*pro hac vice* pending) |
| Edward A. Corma (DE Bar No. 6718) | Alexandra F. Schwarzman, P.C. (*pro hac vice* pending) |
| 919 North Market Street, 17th Floor | David R. Gremling (*pro hac vice* pending) |
| Wilmington, Delaware 19801 | 333 West Wolf Point Plaza |
| Telephone:     (302) 652-4100 | Chicago, Illinois 60654 |
| Facsimile:      (302) 652-4400 | Telephone:     (312) 862-2000 |
| Email:          ljones@pszjlaw.com | Facsimile:      (312) 862-2200 |
|                joneill@pszjlaw.com | Email:          anup.sathy@kirkland.com |
|                ecorma@pszjlaw.com |                alexandra.schwarzman@kirkland.com |
| |                dave.gremling@kirkland.com |

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

29

<u>**Exhibit A**</u>

**Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| GOHEALTH, INC., *et al.*[1] | ) | Case No. 26-10914 [●] |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) |  |
|  | ) | **Re:  Docket No. _** |

**INTERIM ORDER (I) AUTHORIZING LIMITED USE OF**
**CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION**
**LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS TO**
**PREPETITION SECURED PARTIES, (III) MODIFYING THE AUTOMATIC STAY,**
**(IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "Motion") of the above-captioned debtors and debtors in possession

(each, a "Debtor" and collectively, the "Debtors") pursuant to sections 105, 361, 362, 363, 503,

506, and 507 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001,

and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-

1, 4001-2, and 9013 of the Local Rules of the United States Bankruptcy Court for the District of

Delaware (the "Local Rules"), seeking, among other things: (i) authorization for the Debtors to

use Cash Collateral (as defined below), (ii) provide adequate protection to the Prepetition Secured

Parties on account of any Diminution in Value in the Prepetition Collateral (each as defined

below), (iii) modifying the automatic stay imposed by Bankruptcy Code section 362 to the extent

necessary to implement and effectuate the terms of this Interim Order and the Final Order,

(iv) scheduling a final hearing to consider the relief requested in the Motion on a final basis, and

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are:  GoHealth, Inc. (3805); Blizzard Midco, LLC (3732); Connected Benefits, LLC (2162); e-TeleQuote Insurance, Inc. (2336); ETQ Holdings, LLC (N/A); GoHealth Holdings, LLC (3653); GoHealth, LLC (5175); and Norvax, LLC (3063).  The location of the Debtors' service address for purposes of these chapter 11 cases is:  222 West Merchandise Mart Plaza, Suite 1750, Chicago, Illinois 60654.

(v) granting related relief; and upon consideration of the relief requested in the Motion, the First Day Declaration, and the evidence submitted and arguments of counsel made at the interim hearing on the Motion on June [●], 2026 (the "Interim Hearing"); and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this matter being a core proceeding within the meaning of 28 U.S.C. § 157(b)(2); and the Court being able to issue a final order consistent with Article III of the United States Constitution; and venue of this proceeding and the Motion in this district being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and appropriate notice having been given in accordance with Bankruptcy Rules 2002, 4001(b) and (d), and 9014 and all applicable Local Rules; and the Interim Hearing to consider the relief requested in the Motion having been held and concluded; and it appearing that approval of the relief granted by this Interim Order is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the hearing on the relief granted herein on a final basis (the "Final Hearing"); and the relief granted hereby otherwise being fair and reasonable and in the best interests of the Debtors, their estates, and all parties in interest, and essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' assets; and after due deliberation and consideration, and good and sufficient cause appearing therefor, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[2]

    A.    Petition Date.  On June 7, 2026 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with this Court.

---

[2] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.

B.      <u>Debtors in Possession</u>.   The Debtors continue to administer their business and manage their properties as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108.  As of the date hereof, no trustee, examiner or official committee of unsecured creditors has been appointed in these chapter 11 cases.

C.      <u>Jurisdiction and Venue</u>.   The Court has jurisdiction over the chapter 11 cases and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This Court's consideration of the matters covered by this Interim Order constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  This Court may enter a final order consistent with Article III of the United States Constitution.  Venue for these chapter 11 cases and the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      <u>Notice</u>.   Notice of the Motion and the relief requested thereby and granted in this Interim Order has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and was appropriate under the circumstances.  No other or further notice of the Motion or entry of this Interim Order is required.

E.      <u>Prepetition Secured Debt</u>.   Subject to the limitations thereon contained in paragraphs 14 and 15 of this Interim Order, the Debtors represent, admit, stipulate and agree as follows as to each of (i) through (vi) below:

(i)      *First Lien Credit Facility*.

(a)      <u>First Lien Credit Facility</u>.   Pursuant to that certain Credit Agreement, dated as of September 13, 2019 (as amended by that certain Amendment No. 1 to the Credit Agreement and Incremental Facility Amendment, dated as of March 20, 2020, as further

3

amended by that certain Incremental Facility Agreement and Technical Amendment No. 2, dated as of May 7, 2020, as further amended by that certain Incremental Facility Amendment No. 3, dated as of June 11, 2020, as further amended by that certain Amendment No. 4 and Incremental Facility Agreement, dated as of May 7, 2021, as further amended by that certain Amendment No. 5 to Credit Agreement and Incremental Facility Agreement, dated as of June 11, 2021, as further amended by that certain Amendment No. 6 to Credit Agreement and Incremental Facility Agreement, dated as of November 10, 2021, as further amended by that certain Amendment No. 7 to Credit Agreement, dated as of March 14, 2022, as further amended by that certain Amendment No. 8 to Credit Agreement, dated as of August 12, 2022, as further amended by that certain Amendment No. 9 to Credit Agreement, dated as of November 9, 2022, as further amended by that certain Amendment No. 10 to Credit Agreement, dated as of March 15, 2023, as further amended by that certain Amendment No. 11 to the Credit Agreement, dated as of March 12, 2024, as further amended by that certain Amendment No. 12 to the Credit Agreement, dated as of October 15, 2024, as amended and restated by that certain Amendment and Restatement Agreement, dated as of November 4, 2024, as further amended by that certain Amendment No. 13 to the Credit Agreement, dated as of June 30, 2025, and as further amended by that certain Amendment No. 14 to the Credit Agreement, dated as of August 6, 2025 and as further amended, restated, amended and restated, supplemented or otherwise modified from time to time prior to the Petition Date, the "Prepetition First Lien Credit Agreement"), and together with all related security agreements, collateral agreements, pledge agreements, control agreements, guarantees and other documents, by and among Blizzard Midco, LLC, a Delaware limited liability company, as holdings, Norvax, LLC, a Delaware limited liability company, as borrower, Blue Torch Finance, LLC as the administrative agent and collateral agent party thereto (in such capacities, the "Prepetition First

4

Lien Agent") and the lenders party thereto (the "Prepetition First Lien Lenders" and, together with the Prepetition First Lien Agent, the "Prepetition First Lien Secured Parties"), the Prepetition First Lien Lenders provided term loans (the "Prepetition Term Loans") and revolving loans (the "Prepetition Revolving Loans" and, together with the Prepetition Term Loans, the "Prepetition First Lien Loans").

(b)     Prepetition First Lien Obligations.  As of the Petition Date, certain of the Debtors were jointly and severally indebted and liable, without defense, challenge, objection, counterclaim, or offset of any kind, to the Prepetition First Lien Secured Parties under the Prepetition First Lien Credit Agreement and the Loan Documents (as defined in the Prepetition First Lien Credit Agreement, collectively, the "Prepetition First Lien Credit Documents") in the aggregate principal amount of not less than approximately $575.7 million, *plus* accrued and unpaid interest on such principal amount in an aggregate amount of not less than approximately $22.5 million, *plus* any other fees, costs, interest, or other amounts due and owing pursuant to the Prepetition First Lien Credit Agreement, as of the Petition Date, including Prepetition Term Loans in an aggregate estimated principal and interest amount outstanding of approximately $537.9 million and Prepetition Revolving Loans in an aggregate estimated principal and interest amount outstanding of approximately $60.3 million (collectively, the "Prepetition First Lien Obligations Amount"), *plus* all other fees, costs, expenses, indemnification obligations, reimbursement obligations, charges, premiums, additional interest, any other Secured Obligations (as defined in the Prepetition First Lien Credit Agreement) and all other obligations of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing or chargeable under the Prepetition First Lien Credit Agreement (collectively, including the Prepetition First Lien Obligations Amount, the "Prepetition First Lien Obligations").

The Prepetition First Lien Obligations constitute legal, valid, binding and non-avoidable obligations against each of the applicable Debtors and are not subject to any avoidance, recharacterization, effect, counterclaim, defense, offset, recoupment, subordination (whether equitable or otherwise), other claim (including Claims or avoidance actions under Chapter 5 of the Bankruptcy Code), cause of action, or other challenge of any kind under the Bankruptcy Code, under applicable non-bankruptcy law, or otherwise. No payments or transfers made to or for the benefit of (or obligations incurred to or for the benefit of) the Prepetition First Lien Secured Parties by or on behalf of any of the Debtors prior to the Petition Date under or in connection with the Prepetition First Lien Credit Agreement are subject to avoidance, recharacterization, effect, counterclaim, defense, offset, subordination, other claim, cause of action or other challenge of any kind or nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise.

(c)        Prepetition First Liens.  Prior to the Petition Date, the Debtors granted to the Prepetition First Lien Agent for the benefit of the Prepetition First Lien Secured Parties valid, binding, perfected and enforceable first-priority liens on and security interests in (the "Prepetition First Liens") the Collateral (as defined in the Prepetition First Lien Credit Agreement, the "Prepetition First Lien Collateral").  As of the Petition Date:  (a) the Prepetition First Liens were valid, binding, enforceable, non-avoidable, properly perfected liens and security interests in and continuing on the Prepetition First Lien Collateral and were granted to, for the benefit of, the Prepetition First Lien Secured Parties for fair consideration and reasonably equivalent value; (b) the Prepetition First Liens were senior in priority over any and all other liens on the Prepetition First Lien Collateral, subject only to certain senior liens as permitted by the Prepetition First Lien Credit Agreement and the Prepetition First Lien Credit Documents (solely to the extent any such permitted liens were valid, properly perfected, non-avoidable, and senior in priority to the

6

Prepetition First Liens as of the Petition Date or were in existence immediately prior to the Petition Date and were perfected subsequent to the Petition Date as permitted by Bankruptcy Code section 546(b)) (such liens, excluding the Prepetition First Liens, the "Permitted Prior First Liens"); *provided*, *however*, that pursuant to that certain Superpriority Intercreditor Agreement, dated as of August 6, 2025, by and among Blizzard Midco, LLC, a Delaware limited liability company, as holdings, Norvax, LLC, a Delaware limited liability company, as borrower, the subsidiaries of the borrower party thereto, the Initial Senior Representative (as defined therein), and the Initial Junior Representative (as defined therein) (the "ICA"), the Prepetition First Liens are junior to the Prepetition Super Priority Liens (as defined below) with respect to the Shared Collateral (as defined in the ICA); (c) no offsets, recoupments, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition First Liens or Prepetition First Lien Obligations exist, and no portion of the Prepetition First Liens or Prepetition First Lien Obligations is subject to any challenge or defense, including avoidance, disgorgement, rejection, reduction, disallowance, impairment, offset, recharacterization, or subordination (whether equitable or otherwise) pursuant to the Bankruptcy Code or applicable nonbankruptcy law; (d) the Debtors and their estates have no claims, objections, challenges, causes of action, or choses in action, (including claims and causes of action under Bankruptcy Code sections 502(d), 544, 545, 547, 548, and 550, or any other avoidance actions under the Bankruptcy Code whether pursuant to federal law or applicable state law or applicable state law equivalents or actions for recovery or disgorgement) against any of the Prepetition First Lien Secured Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon, or related to the Prepetition First Lien Credit Agreement; and (e) the Debtors waive, discharge, and release any right to challenge any of the Prepetition First Lien Obligations, the priority of the

7

Debtors' obligations thereunder, and the validity, extent, and priority of the Prepetition First Liens securing the Prepetition First Lien Obligations.

(ii)    *Super Priority Credit Facility.*

(a)    <u>Super Priority Credit Facility</u>.  Pursuant to that certain Superpriority Senior Secured Credit Agreement, dated as of August 6, 2025 (as amended, restated, amended and restated, supplemented or otherwise modified from time to time prior to the Petition Date, the "<u>Prepetition Super Priority Credit Agreement</u>" and together with the Prepetition First Lien Credit Agreement, the "<u>Prepetition Credit Agreements</u>"), and together with all related security agreements, collateral agreements, pledge agreements, control agreements, guarantees and other documents, by and among Blizzard Midco, LLC, a Delaware limited liability company, as holdings, Norvax, LLC, a Delaware limited liability company, as borrower, Blue Torch Finance, LLC, as the administrative agent and collateral agent, (in such capacities, the "<u>Prepetition Super Priority Agent</u>" and, together with the Prepetition First Lien Agent, the "<u>Prepetition Agents</u>") and the lenders party thereto (the "<u>Prepetition Super Priority Lenders</u>" and, together with the Prepetition Super Priority Agent, the "<u>Prepetition Super Priority Secured Parties</u>" and, the Prepetition Super Priority Secured Parties together with the Prepetition First Lien Secured Parties, the "<u>Prepetition Secured Parties</u>"), the Prepetition Super Priority Lenders provided new money term loans (the "<u>Prepetition New Money Term Loans</u>") and rolled term loans (the "<u>Prepetition Rolled Term Loans</u>" and, together with the Prepetition New Money Term Loans, the "<u>Prepetition Super Priority Loans</u>").

(b)    <u>Prepetition Super Priority Obligations</u>.  As of the Petition Date, certain of the Debtors were jointly and severally indebted and liable, without defense, challenge, objection, counterclaim, or offset of any kind, to the Prepetition Super Priority Secured Parties

8

under the Prepetition Super Priority Credit Agreement and the Loan Documents (as defined in the Prepetition Super Priority Credit Agreement, collectively, the "Prepetition Super Priority Credit Documents" and, together with the Prepetition First Lien Credit Documents, the "Prepetition Credit Documents" in the aggregate principal amount of not less than approximately $173.1 million (which amount for the avoidance of doubt is inclusive of the MOIC Premium (as defined in the Prepetition Super Priority Credit Agreement) in an aggregate amount of not less than approximately $55.7 million), *plus* accrued and unpaid interest on the principal amount of the Prepetition Rolled Term Loans in an aggregate amount of not less than approximately $0.8 million, *plus* any other fees, costs, interest, or other amounts due and owing pursuant to the Prepetition Super Priority Credit Agreement, as of the Petition Date, including Prepetition New Money Term Loans in an aggregate estimated principal amount outstanding of approximately $82.4 million and Prepetition Rolled Term Loans in an aggregate estimated principal amount outstanding of approximately $35.0 million (collectively, the "Prepetition Super Priority Obligations Amount"), *plus* all other fees, costs, expenses, indemnification obligations, reimbursement obligations, charges, premiums, additional interest, any other Secured Obligations (as defined in the Prepetition Super Priority Credit Agreement) and all other obligations of whatever nature owing, whether or not contingent, whenever arising, accrued, accruing, due, owing or chargeable under the Prepetition Super Priority Credit Agreement (collectively, including the Prepetition Super Priority Obligations Amount, the "Prepetition Super Priority Obligations" and, together with the Prepetition First Lien Obligations, the "Prepetition Secured Obligations"). The Prepetition Super Priority Obligations constitute legal, valid, binding and non-avoidable obligations against each of the Debtors and are not subject to any avoidance, recharacterization, effect, counterclaim, defense, offset, recoupment, subordination, other claim, cause of action, or other challenge of any kind

9

under the Bankruptcy Code, under applicable non-bankruptcy law, or otherwise. No payments or transfers made to or for the benefit of (or obligations incurred to or for the benefit of) the Prepetition Super Priority Secured Parties by or on behalf of any of the applicable Debtors prior to the Petition Date under or in connection with the Prepetition Super Priority Credit Agreement are subject to avoidance, recharacterization, effect, counterclaim, defense, offset, subordination (whether equitable or otherwise), disgorgement, rejection, reduction, disallowance, impairment, other claim, cause of action or other challenge of any kind or nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise.

(c)    Prepetition Super Priority Liens.  Prior to the Petition Date, the Debtors granted to the Prepetition Super Priority Agent for the benefit of the Prepetition Super Priority Secured Parties valid, binding, perfected and enforceable super priority liens on and security interests in (the "Prepetition Super Priority Liens" and, together with the Prepetition First Liens, the "Prepetition Liens") the Collateral (as defined in the Prepetition Super Priority Credit Agreement, the "Prepetition Super Priority Collateral" and, together with the Prepetition First Lien Collateral, the "Prepetition Collateral").  As of the Petition Date:  (a) the Prepetition Super Priority Liens were valid, binding, enforceable, non-avoidable, and properly perfected and were granted to, or for the benefit of, the Prepetition Super Priority Secured Parties for fair consideration and reasonably equivalent value; (b) the Prepetition Super Priority Liens were senior in priority over any and all other liens on the Prepetition Super Priority Collateral, subject only to certain senior liens as permitted by the Prepetition Super Priority Credit Agreement and the Prepetition Super Priority Credit Documents (solely to the extent any such permitted liens were valid, binding, properly perfected, non-avoidable, enforceable liens and security interests in and continuing on and senior in priority to the Prepetition Super Priority Liens as of the Petition Date or were in

10

existence immediately prior to the Petition Date and were perfected subsequent to the Petition Date as permitted by Bankruptcy Code section 546(b)) (such liens, excluding the Prepetition Super Priority Liens, the "Permitted Prior Super Priority Liens" and, together with the Permitted Prior First Liens, the "Permitted Prior Liens"); (c) no offsets, recoupments, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition Super Priority Liens or Prepetition Super Priority Obligations exist, and no portion of the Prepetition Super Priority Liens or Prepetition Super Priority Obligations is subject to any challenge or defense, including avoidance (including any Claims or avoidance actions under Chapter 5 of the Bankruptcy Code), disallowance, disgorgement, rejection, reduction, impairment, offset, counterclaim, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable nonbankruptcy law; (d) the Debtors and their estates have no claims, objections, challenges, causes of action, or choses in action, (including claims and causes of action under Bankruptcy Code sections 502(d), 544, 545, 547, 548, and 550, or any other avoidance actions under the Bankruptcy Code whether pursuant to federal law or applicable state law or applicable state law equivalents or actions for recovery or disgorgement) against any of the Prepetition Super Priority Secured Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon, or related to the Prepetition Super Priority Credit Agreement; and (e) the Debtors waive, discharge, and release any right to challenge any of the Prepetition Super Priority Obligations, the priority of the Debtors' obligations thereunder, and the validity, extent, and priority of the Prepetition Super Priority Liens securing the Prepetition Super Priority Obligations.

F.  Cash Collateral.  As used herein, the term "Cash Collateral" shall mean all of the cash of the Debtors, including cash on deposit or in any account held by the Debtors as of the

Petition Date, as well as all cash generated by the collection of the Debtors' accounts receivable, and any proceeds of other disposition of any Prepetition Collateral (including cash on deposit in any account with any depositary institution), cash securities or other property, whether subject to control agreements or otherwise, that constitute Prepetition Collateral and, more specifically, "cash collateral" of the applicable Prepetition Secured Parties within the meaning of Bankruptcy Code section 363(a).

G.   Entitlement to Adequate Protection.   The Prepetition Secured Parties are entitled, pursuant to Bankruptcy Code sections 105, 361, 362, and 363(e) and to the fullest extent permitted by applicable law, to adequate protection against any diminution in value, from and after the Petition Date, of their respective interests in the applicable Prepetition Collateral, including Cash Collateral (such diminution after the Petition Date, a "Diminution in Value").

H.   No Control.   None of the Prepetition Secured Parties control the Debtors or their properties or operations, have authority to determine the manner in which any Debtors' operations are conducted, or are control persons or insiders (as defined in section 101(31) of the Bankruptcy Code) of the Debtors or their affiliates in each case by virtue of any of the actions taken with respect to, in connection with, related to or arising from this Interim Order, the Prepetition Credit Agreements, or the Prepetition Credit Documents.

I.   Prepetition Intercreditor Agreements.   Pursuant to Bankruptcy Code section 510, any applicable intercreditor or subordination provisions contained in any of, or entered into as permitted by and in accordance with, the First Lien Credit Facility or Super Priority Credit Facility, including without limitation, the ICA, shall (x) remain in full force and effect and (y) not be deemed to be amended, altered, or modified by the terms of this Interim Order, unless expressly set forth herein.

12

J.       Findings Regarding the Use of Cash Collateral.

(i)       Good and sufficient cause has been shown for the entry of this Interim Order and for authorizing the Debtors to use Cash Collateral of the Prepetition Secured Parties and for granting adequate protection to the Prepetition Secured Parties.

(ii)       The Debtors have an ongoing and immediate need to continue using Cash Collateral to the extent provided in this Interim Order, in order to, among other things:  (a) provide working capital and funding for general corporate purposes; and (b) pay certain costs of administration of these cases, in each case, subject to the terms hereof and solely to the extent provided in the Approved Budget, as subject to Permitted Variances.  The Debtors do not have sufficient sources of working capital and financing to operate their business or maintain their properties in the ordinary course of business during the administration of these chapter 11 cases without the use of Cash Collateral.  Absent relief granted in this Interim Order, the Debtors' estates and their business will be irreparably harmed.

(iii)       The requisite percentage of Prepetition Secured Parties under the Prepetition Credit Documents have consented to the Debtors' limited use of Cash Collateral, on the terms and conditions set forth in this Interim Order, and the terms of the adequate protection provided in this Interim Order are fair and reasonable and provide the Debtors with reasonably equivalent value and fair consideration.

K.       Good Faith.  The terms of the Debtors' use of Cash Collateral pursuant to this Interim Order have been the subject of extensive negotiations conducted in good faith and at arm's length between the Debtors and the Prepetition Secured Parties and, pursuant to Bankruptcy Code sections 105, 361, and 363, the Prepetition Secured Parties are hereby found to have acted in good

13

faith in connection with the negotiation and entry of this Interim Order, and each is entitled to the protection provided under Bankruptcy Code section 363(m).

L.     Continuation of Prepetition Liens; Permitted Prior Liens.  Subject to paragraphs 14 and 15 of this Interim Order, the Prepetition Liens are continuing liens, and the Prepetition Collateral will continue to be encumbered by such liens.  Nothing herein shall constitute a finding or ruling by this Court that any alleged Permitted Prior Lien is valid, senior, enforceable, prior, perfected, or non-avoidable.  Moreover, nothing herein shall prejudice the right of any party in interest, including, but not limited to, any of the Debtors or the Prepetition Secured Parties to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged Permitted Prior Lien.

M.     Immediate Entry.  Good and sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2) and Local Rule 4001(b).  Absent granting the relief set forth in this Interim Order, the Debtors' estates will be immediately and irreparably harmed.  Permitting the use of Cash Collateral, in accordance with this Interim Order is therefore necessary, essential, and appropriate for the management and preservation of the Debtors' estates, is in the best interests of the Debtors' estates, and is consistent with the Debtors' exercise of their fiduciary duties.  Sufficient cause therefore exists for immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2) and Local Rule 4001(b).

Based upon the foregoing findings and conclusions and the record before this Court, and after due consideration and good and sufficient cause appearing thereof:

**IT IS HEREBY ORDERED THAT**:

1.     Disposition.  The Motion is granted on an interim basis as set forth herein.  Any objections to the relief requested in the Motion on an interim basis that have not previously been

withdrawn, waived, settled, or resolved, and all reservations of rights included therein, are hereby denied and overruled on their merits. The rights of all parties in interest to object to entry of a Final Order are fully reserved.

2. Use of Cash Collateral. The Debtors are hereby authorized to use all Cash Collateral solely in accordance with this Interim Order (including the Carve-Out) and the Approved Budget (as defined below), subject to Permitted Variances (as defined below), including, without limitation, to make payments on account of the Adequate Protection Obligations (as defined below) and other obligations provided for in this Interim Order. The Debtors are enjoined and prohibited from using Cash Collateral at any time except on the terms and subject to the conditions of this Interim Order, another order of the Court, or as otherwise agreed to by the Prepetition Agents acting at the direction of the Required Lenders (as defined in the *Joint Prepackaged Chapter 11 Plan of GoHealth Inc. and Its Debtor Affiliates* [Docket No.[●]] (the "Plan")).

3. Approved Budget; Compliance and Reporting.

(a) Attached to this Interim Order as **Exhibit 1** is a six-week cash flow forecast for the six-week period commencing with the calendar week in which the Petition Date occurs, approved by the Required Lenders, which reflects, among other things, the projected cash receipts (including, but not limited to, extraordinary receipts, asset sales, and insurance proceeds) and cash disbursements (including, but not limited to, capital expenditures, and other investments) of the Debtors for the period covered thereby (the "Approved Budget"). The Debtors shall deliver an updated budget to the Prepetition Secured Parties on the Thursday of each fourth calendar week (commencing with the fourth full week after the week in which the Petition Date occurs) (or, in each case, if any Thursday is not a Business Day, the next Business Day thereafter) covering the

15

six-week period for each such week through the end of such six-week period, respectively, in a form consistent with the initial Approved Budget, which shall be for informational purposes only and not for any other purpose (including for any variance or other reporting compliance) (each, the "Proposed Updated Budget" and, together with the Approved Budget, the "Budgets") and shall deliver to the U.S. Trustee and any statutory committee appointed in these chapter 11 cases any Approved Budget.  The Proposed Updated Budget shall constitute an Approved Budget only if such Proposed Updated Budget is acceptable to the Required Lenders in their sole discretion, as set forth in writing by the Required Lenders; *provided* that in the absence of a response from the Required Lenders objecting to such Proposed Updated Budget by the following Thursday, such Proposed Updated Budget shall be deemed to be the Approved Budget, and upon any such objection from the Required Lenders, the then most recent Approved Budget shall remain in full force and effect until delivery of a Proposed Updated Budget that is acceptable to the Required Lenders in their sole discretion.  Each Proposed Updated Budget shall be accompanied by such supporting documentation as reasonably requested by the Prepetition Secured Parties. Each Budget shall be prepared in good faith based upon assumptions believed by the advisors to the Debtors to be reasonable.

(b)    Variance Reports.  On the Wednesday of each calendar week following the second week ending after the Petition Date and for each calendar week thereafter, by no later than 5:00 p.m. New York City time, the Debtors shall deliver to the Prepetition Secured Parties (and the legal and financial advisors to the Prepetition Secured Parties) a variance report in a form satisfactory to the Prepetition Agents and the Required Lenders for the most recently ended calendar week and the Testing Period (as defined below) (each, a "Variance Report") setting forth, in reasonable detail, actual "receipts" and "disbursements" of the Debtors on a weekly and

16

cumulative basis and any variances between the actual amounts and those set forth in the initial Approved Budget and the then in effect Approved Budget (if different), and including detail by line-item as to whether a given variance is permanent or timing-based and commentary in respect thereof, together with a certificate of the chief financial officer, treasurer or other officer with similar financial or accounting responsibility of the Debtors (i) explaining in reasonable detail all material variances from the then in effect Approved Budget for such periods and (ii) certifying compliance with the Variance Covenant and Minimum Liquidity Covenant described below for such Test Period or identifying and explaining in reasonable detail any non-compliance with such requirements.  For the avoidance of doubt, any amounts paid or funded into the Funded Reserve Account shall be treated as "disbursements."  Each Friday of each calendar week, beginning with the calendar week that is two weeks following the date on which the Petition Date occurs, shall be referred to as a "Covenant Testing Date."

(c)  Budget Testing.  The term "Testing Period" shall mean, with respect to any Variance Report required to be delivered, starting with the report to be delivered on June 24, 2026, the period commencing with the week in which the Petition Date occurs and ending on the Friday of each week ending thereafter.  As of any Covenant Testing Date, (i)(A) the aggregate receipts of the Debtors shall not be less than 90% (on a cumulative basis, taking into account the variance for any Prior Testing Period) of the estimated receipts for such items in the then in effect Approved Budget or (B) the aggregate disbursements, including disbursements to the Funded Reserve Account, shall not exceed 110% (on a cumulative basis taking into account the variance for any prior Testing Period) of the budgeted amount (such permitted variances, the "Permitted Variances" and such limitation, the "Variance Covenant") or (ii) the "Ending Cash / Total Liquidity" shall not be less than $5,000,000 (such limitation, the "Minimum Liquidity Covenant").

17

Additional variances, if any, from the Approved Budget, and any proposed changes to the Approved Budget, shall be subject to the written approval (email being sufficient) of the Required Lenders.

(d)    Except as otherwise agreed to by the Prepetition Agents, acting at the direction of the Required Lenders, or as expressly permitted herein, the Debtors' use of the Cash Collateral shall be permitted solely pursuant to the terms of this Interim Order, and in accordance with the Approved Budget, subject to the Permitted Variance. The Prepetition Secured Parties (i) may assume that the Debtors will comply with the Approved Budget, (ii) shall have no duty to monitor such compliance, and (iii) subject to the creation and funding of the Carve-Out, shall not be directly or indirectly obligated to pay any unpaid expenses incurred or authorized to be incurred pursuant to any Approved Budget. Nothing in any Approved Budget shall constitute an amendment or other modification of the Prepetition Credit Documents or the lending limits set forth therein. The consent of the Prepetition Secured Parties to the use of Cash Collateral pursuant to this Interim Order shall not be construed as consent to the use of Cash Collateral after the occurrence of a Termination Event (other than funding the Carve-Out as set forth herein), regardless of whether the aggregate funds shown on the Approved Budget have been expended.

4.    Carve-Out.

(a)    As used in this Interim Order, the "Carve-Out" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the U.S. Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below), (ii) all reasonable fees and expenses up to $75,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below), (iii) to the extent allowed at any time, whether by interim order, procedural

18

order, or otherwise, all unpaid fees and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals") and any official committee of unsecured creditors appointed pursuant to section 328 or 1103 of the Bankruptcy Code (together with the Debtor Professionals, the "Professional Persons") at any time before or on the first business day following delivery by a Prepetition Agent of a Carve-Out Trigger Notice (as defined herein), whether allowed by the Court prior to or after delivery of a Carve-Out Trigger Notice, and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $500,000 incurred after the first business day following delivery by a Prepetition Agent of the Carve-Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "Post-Carve-Out Trigger Notice Cap," of which the foregoing $500,000 shall be funded into the Funded Reserve Account (as defined herein) from proceeds from the Cash Collateral. For purposes of the foregoing, "Carve-Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by a Prepetition Agent, acting at the direction of the Required Lenders, to the Debtors, their lead restructuring counsel, the U.S. Trustee, and counsel to any official committee of unsecured creditors, which notice may be delivered upon the occurrence and during the continuation of a Termination Event (as defined herein) and termination of the Debtors' right to use Cash Collateral, stating that the Post-Carve-Out Trigger Notice Cap has been invoked.

(b)       Delivery of Weekly Fee Statements. Not later than 7:00 p.m. (prevailing Eastern Time) on the third business day of each week starting with the first full calendar week following the Petition Date, each Professional Person shall deliver to the Debtors a statement setting forth a good-faith estimate of the amount of fees and expenses (collectively, "Estimated

19

Fees and Expenses") incurred during the preceding week by such Professional Person (through Saturday of such week, the "Calculation Date"), along with a good-faith estimate of the cumulative total amount of unreimbursed fees and expenses incurred through the applicable Calculation Date and a statement of the amount of such fees and expenses that have been paid to date by the Debtors (each such statement, a "Weekly Statement"); *provided* that, within one business day of the occurrence of the Termination Declaration Date (as defined below), each Professional Person shall deliver one additional statement (the "Final Statement") setting forth a good-faith estimate of the amount of fees and expenses incurred during the period commencing on the calendar day after the most recent Calculation Date for which a Weekly Statement has been delivered and concluding on the Termination Declaration Date (and the Debtors shall cause such Weekly Statement and Final Statement to be delivered promptly to the Prepetition Agents).  If any Professional Person fails to deliver a Weekly Statement within three (3) calendar days after such Weekly Statement is due, such Professional Person's entitlement (if any) to any funds in the Pre-Carve-Out Trigger Notice Reserve (as defined below) with respect to the aggregate unpaid amount of Allowed Professional Fees for the applicable period(s) for which such Professional Person failed to deliver a Weekly Statement covering such period shall be limited to the aggregate unpaid amount of Allowed Professional Fees included in the Approved Budget for such period for such Professional Person.

(c)     Carve-Out Reserves.

(i)     Commencing with the week ended June 12, 2026, and on or before the Thursday of each week thereafter, the Debtors shall utilize all cash on hand as of such date and, to the extent insufficient, any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the sum of (A) the greater of (1) the aggregate unpaid amount of all Estimated Fees and Expenses reflected in the Weekly Statements delivered on the immediately prior

Wednesday to the Debtors and the Prepetition Agents, and (2) the aggregate amount of unpaid Allowed Professional Fees contemplated to be incurred in the Approved Budget during such week, *plus* (B) the Post-Carve-Out Trigger Notice Cap, *plus* (C) an amount equal to the amount of Allowed Professional Fees set forth in the Approved Budget for the two weeks occurring after the most recent Calculation Date.  The Debtors shall deposit and hold such amounts in a segregated account maintained by the Debtors in trust (the "Funded Reserve Account") to pay such Allowed Professional Fees (the "Funded Reserves") prior to any and all other claims, and all payments of Allowed Professional Fees incurred prior to the Termination Declaration Date shall be paid first from such Funded Reserve Account.

(ii)      On the day on which a Carve-Out Trigger Notice is given by the Prepetition Agents to the Debtors with a copy to counsel to any official committee of unsecured creditors (the "Termination Declaration Date"), the Carve-Out Trigger Notice shall constitute a demand to the Debtors to, and the Debtors shall utilize all cash on hand as of such date, including cash in the Funded Reserve Account, and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees.  The Debtors shall deposit and hold such amounts in a segregated account maintained by the Debtors in trust to pay such then unpaid Allowed Professional Fees (the "Pre-Carve-Out Trigger Notice Reserve") prior to any other claims.  On the Termination Declaration Date, the Carve-Out Trigger Notice shall also constitute a demand to the Debtors to utilize all cash on hand as of such date, including cash in the Funded Reserve Account, and any available cash thereafter held by any Debtor, after funding the Pre-Carve-Out Trigger Notice Reserve, to fund a reserve in an amount equal to the Post-Carve-Out Trigger Notice Cap.  The Debtors shall deposit and hold such amounts in a segregated account maintained by the Debtors in trust to pay such Allowed Professional Fees

21

benefiting from the Post-Carve-Out Trigger Notice Cap (the "Post-Carve-Out Trigger Notice Reserve" and, together with the Pre-Carve-Out Trigger Notice Reserve, the "Carve-Out Reserves") prior to any and all other claims.

(d)    Application of Carve-Out Reserves.

(i)    All funds in the Pre-Carve-Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (a)(i) through (a)(iii) of the definition of Carve-Out set forth above (the "Pre-Carve-Out Amounts"), but not, for the avoidance of doubt, the Post-Carve-Out Trigger Notice Cap, until the Pre-Carve-Out Amounts are indefeasibly paid in full. If the Pre-Carve-Out Trigger Notice Reserve has not been reduced to zero, pursuant to paragraph 4(d)(iii) below, all remaining funds shall be distributed to the Debtors' creditors in accordance with their rights and priorities as of the Petition Date and as otherwise set forth in this Interim Order.

(ii)    All funds in the Post-Carve-Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (a)(iv) of the definition of Carve-Out set forth above (the "Post-Carve-Out Amounts"). If the Post-Carve-Out Trigger Notice Reserve has not been reduced to zero, pursuant to paragraph 4(d)(iii) below, all remaining funds shall be distributed to the Debtors' creditors in accordance with their rights and priorities as of the Petition Date.

(iii)    Notwithstanding anything to the contrary in this Interim Order, if either of the Carve-Out Reserves is not funded in full in the amounts set forth in paragraph 4(c), then, any excess funds in one of the Carve-Out Reserves following the payment of the Pre-Carve-Out Amounts and Post-Carve-Out Amounts, respectively (subject to the limits contained in the Post-Carve-Out Trigger Notice Cap), shall be used to fund the other Carve-Out Reserve, up to the

22

applicable amount set forth in paragraph 4(c), prior to making any payments to the Debtors' creditors.

(iv)      Notwithstanding anything to the contrary in the Prepetition Credit Documents or this Interim Order, following delivery of a Carve-Out Trigger Notice, the Prepetition Secured Parties shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve-Out Reserves have been fully funded.

(v)      Further, notwithstanding anything to the contrary in this Interim Order, (A) disbursements by the Debtors from the Carve-Out Reserves shall not constitute an advance or extension of credit under any of the Prepetition Credit Documents or increase or reduce the obligations under any of the Prepetition Credit Documents, (B) the failure of the Carve-Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve-Out with respect to any shortfall (as described below), and (C) in no way shall the Initial Budget, any Approved Budget, Carve-Out, Post-Carve-Out Trigger Notice Cap or Carve-Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors, nor construed as a cap or limitation on either the obligations set forth in clauses (a)(i) and (a)(iii) of the definition of Carve-Out set forth above or the fees and expenses otherwise payable by the Debtors of any trustee under section 726(b) of the Bankruptcy Code.  For the avoidance of doubt and notwithstanding anything to the contrary in this Interim Order or the Prepetition Credit Documents, the Carve-Out shall be senior to all liens and claims securing the Prepetition Collateral, the Adequate Protection Liens, the 507(b) Claims, and any and all other forms of adequate protection, liens, or claims securing the Prepetition Secured Obligations.

23

(e)  Payment of Allowed Professional Fees Prior to the Termination Declaration Date.  Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Carve-Out.

(f)  No Direct Obligation To Pay Allowed Professional Fees.  None of the Prepetition Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the chapter 11 cases or any successor cases under any chapter of the Bankruptcy Code.  Nothing in this Interim Order or otherwise shall be construed to obligate the Prepetition Secured Parties in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(g)  Payment of Allowed Professional Fees on or After the Termination Declaration Date.  Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve-Out on a dollar-for-dollar basis.

5.  Payments Free and Clear.  Pursuant to the provisions of this Interim Order (including the Carve-Out) and subject to paragraph 15 of this Interim Order, any and all payments or proceeds remitted to the Prepetition Agents on behalf of and for the benefit of the Prepetition Super Priority Lenders and Prepetition First Lien Lenders pursuant to the provisions of this Interim Order or any subsequent order of this Court, shall be irrevocable, received free and clear of any claim, interest, charge, assessment, or other liability or encumbrance, including without limitation, subject to entry of the Final Order, any such claim or charge arising out of or based on, directly or

24

indirectly, Bankruptcy Code section 506(c) (whether asserted or assessed by, through or on behalf of the Debtors) or 552(b).

6.     Adequate Protection.   The Prepetition Secured Parties are entitled, pursuant to Bankruptcy Code sections 361, 362, and 363(e), and in consideration of the stipulations and consents set forth herein and subject to paragraph 15 of this Interim Order, to adequate protection of their respective interests in the applicable Prepetition Collateral (including Cash Collateral), solely to the extent of any Diminution in Value of their interests therein.  As adequate protection, the Prepetition Agents, for the benefit of the Prepetition Secured Parties, are hereby granted the following, subject to paragraph 15 of this Interim Order (collectively, the "Adequate Protection Obligations"):

(a)     Super Priority Adequate Protection Liens.   Solely to the extent of any Diminution in Value of their interests in the Prepetition Collateral, and subject in all cases to the Carve-Out and the Permitted Prior Liens, the Prepetition Super Priority Agent, for the benefit of the Prepetition Super Priority Secured Parties, is hereby granted (effective and automatically perfected upon entry of this Interim Order and without the necessity of the execution by the Debtors of security agreements, pledge agreements, mortgages, financing statements, or other similar documents), additional and replacement valid, binding, enforceable, non-avoidable, effective and automatically perfected liens on, and security interests in (the "Super Priority Adequate Protection Liens") any and all tangible and intangible pre- and postpetition property of the Debtors, whether existing before, on or arising after the Petition Date, together with any proceeds thereof, including, without limitation, any and all cash and any investment of such cash, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, fixtures, machinery, equipment, general intangibles, goods,

25

investment property, documents, instruments, securities, chattel paper, interests in leaseholds, real properties, deposit accounts, securities accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, capital stock of subsidiaries, wherever located, and the proceeds, products, rents and profits of the foregoing, whether arising under Bankruptcy Code section 552(b) or otherwise, of all the foregoing (subject to the entry of the Final Order approving the waiver of the Debtors' rights under section 552(b) of the Bankruptcy Code), excluding claims and causes of action under chapter 5 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code ("Avoidance Actions"), but, upon entry of the Final Order, including proceeds of Avoidance Actions (collectively, the "Adequate Protection Collateral"), without the necessity of the execution, recordation, or other filing of any security agreements, control agreements, pledge agreements, financing statements, mortgages, or other similar documents.

(b)     First Lien Adequate Protection Liens.    Solely to the extent of any Diminution in Value of their interests in the Prepetition Collateral, and subject in all cases to the Carve-Out, the Permitted Prior Liens, and the Super Priority Adequate Protection Liens, the Prepetition First Lien Agent, for the benefit of the Prepetition First Lien Secured Parties, is hereby granted (effective and automatically perfected upon entry of this Interim Order and without the necessity of the execution by the Debtors of security agreements, pledge agreements, mortgages, financing statements, or other similar documents), additional and replacement valid, binding, enforceable, non-avoidable, effective and automatically perfected liens on, and security interests in (the "First Lien Adequate Protection Liens" and, together with the Super Priority Adequate Protection Liens, the "Adequate Protection Liens"), the Adequate Protection Collateral, without

26

the necessity of the execution, recordation or other filing of any security agreements, control agreements, pledge agreements, financing statements, mortgages, or other similar documents.

(c)    Ranking of Liens.  The Carve-Out, the Permitted Prior Liens, the Prepetition Liens, and the Adequate Protection Liens granted hereunder shall have the following priority on the Adequate Protection Collateral:

| Adequate Protection Collateral |
| --- |
| *First*, the Carve-Out |
| *Second*, the Permitted Prior Liens |
| *Third*, the Super Priority Adequate Protection Liens |
| *Fourth*, the First Lien Adequate Protection Liens |
| *Fifth*, the Prepetition Super Priority Liens |
| *Sixth*, the Prepetition First Liens |

(d)    Super Priority Section 507(b) Claims.  To the extent of any Diminution in Value of their interests in the Prepetition Collateral, the Prepetition Super Priority Agent, for the benefit of the Prepetition Super Priority Secured Parties, is hereby granted allowed administrative expense claims against each Debtor with the priority set forth in Bankruptcy Code section 507(b) (the "Super Priority Adequate Protection Claims"); *provided* that the Super Priority Adequate Protection Claims shall be subject and subordinate to the Carve-Out.  The Super Priority Adequate Protection Claims shall be payable from and have recourse to all Adequate Protection Collateral, including, subject only to entry of the Final Order, any proceeds or property recovered in connection with the pursuit of the Avoidance Actions.

27

(e)      First Lien Section 507(b) Claims.  To the extent of any Diminution in Value of their respective interests in the Prepetition Collateral, the Prepetition First Lien Agent, for the benefit of the Prepetition First Lien Secured Parties, is hereby granted an allowed administrative expense claim against each Debtor with the priority set forth in Bankruptcy Code section 507(b) (the "First Lien Adequate Protection Claims" and, together with the Super Priority Adequate Protection Claims, the "Adequate Protection Claims"); *provided* that, the First Lien Adequate Protection Claims shall be subject and subordinate to the Super Priority Adequate Protection Claims and the Carve-Out.  The First Lien Adequate Protection Claims shall be payable from and have recourse to all Adequate Protection Collateral, including, subject only to entry of the Final Order, any proceeds or property recovered in connection with the pursuit of the Avoidance Actions.

(f)      Information Rights.  The Debtors shall comply with all reporting requirements set forth in the Prepetition Credit Documents.

(g)      Fees and Expenses.  As further adequate protection, the Debtors are authorized and directed to pay, in accordance with paragraph 13 of this Interim Order, the reasonable and documented fees and out-of-pocket expenses whether incurred before the Petition Date or after the Petition Date through the date on which the Debtors' authority to use Cash Collateral terminates in accordance with this Interim Order of (i) professionals retained by the Ad Hoc TL Group (as defined in the Plan) (the "Ad Hoc TL Group Professionals"), including but not limited to (A) Akin Gump Strauss Hauer & Feld LLP, as counsel, (B) FTI Consulting, Inc., as financial advisor, and (C) Young Conaway Stargatt & Taylor, LLP, as Delaware counsel and (ii) professionals retained by the Ad Hoc Revolver Group (as defined in the Plan), including, but not limited to, (A) Cahill Gordon & Reindel LLP, as counsel, (B) RPA Advisors, LLC, as financial

28

advisor, and, (C) Morris, Nichols, Arsht & Tunnell LLP, as Delaware counsel (the "Ad Hoc Revolver Group Professionals" and, collectively with the Ad Hoc TL Group Professionals, the "Lender Professionals").

7.      Right to Seek Additional Adequate Protection.  This Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of the Prepetition Secured Parties to request additional or different forms of adequate protection at any time or the rights of the Debtors or any other party in interest to object thereto.

8.      Perfection of Adequate Protection Liens.

(a)      The Prepetition Agents are hereby authorized, but not required, to execute in the name of the applicable Debtors, as their true and lawful attorneys, with full power of substitution (to the maximum extent permitted by law) and to file or record any financing statements, intellectual property filings, mortgages, depository account control agreements, notices of lien, or similar instruments in any jurisdiction in order to validate and perfect the Adequate Protection Liens.  Whether or not the Prepetition Agents, in their sole discretion, choose to file or record any such financing instruments, and subject to paragraph 15 herein and the entry of the Final Order, the Adequate Protection Liens shall be deemed valid, automatically perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination, at the time and on the date of entry of this Interim Order.  Upon the request of the Prepetition Agents, the Debtors, without any further consent of any party, are authorized to take, execute, deliver, and file such instruments (in the case of the Prepetition Secured Parties, without representation or warranty of any kind) to enable the Prepetition Agents, to further validate, perfect, preserve and enforce the Adequate Protection Liens.  All such documents will be deemed to have been recorded and filed as of the Petition Date.

29

(b)      A certified copy of this Interim Order may, in the discretion of the applicable Prepetition Agents, be filed with or recorded in the filing or recording offices in addition to or in lieu of any financing statements, mortgages, notices of lien, or similar instruments, and all filing or recording offices are hereby authorized to accept such copy of this Interim Order for filing or recording; *provided*, *however*, that notwithstanding the date of any such filing, the date of such perfection shall be the Petition Date.

(c)      Except as provided in Section 365(c) of the Bankruptcy Code, any provision of any lease, license, contract, or other agreement that requires the consent or approval of one or more third party in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any of the Debtors' interests in any lease, license, or other agreement, or the proceeds thereof, or other collateral related thereto in connection with the granting of the Adequate Protection Liens, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code. Thereupon, except as provided in Section 365(c) of the Bankruptcy Code, any such provision shall have no force or effect with respect to the granting of the Adequate Protection Liens on the Debtors' interests in any lease, license, or other agreement or the proceeds of any assignment, and/or sale thereof by any Debtor in accordance with the terms of this Interim Order.

9.      Section 507(b) Reservation. Nothing herein shall impair or modify the application of Bankruptcy Code section 507(b) in the event that the adequate protection provided to the Prepetition Secured Parties is insufficient to compensate them for any Diminution in Value. Nothing contained herein shall be deemed a finding by the Court, or an acknowledgement by any

30

of the Prepetition Secured Parties with respect to the existence or non-existence of any Diminution in Value.

10.     Termination Events.  Unless a Termination Event is waived by the Prepetition Agents (acting at the direction of the Required Lenders) in writing or the Court rules that a Termination Event has not in fact occurred or has extended the Notice Period (each as defined below), subject to the applicable notice periods and other terms set forth in paragraph 11 below, the Debtors' right to use Cash Collateral shall terminate, without prior order of this Court or any further action by the Prepetition Secured Parties, on the earliest to occur of any of the following (each, a "Termination Event"):

(1)     the Debtors' failure to comply with any provision of this Interim Order and such failure to comply (if curable) shall not have been cured within five (5) business days following provision of notice of such failure from the Prepetition Agents;

(2)     the Debtors shall have breached the Variance Covenant or Minimum Liquidity Covenant for any Testing Period with respect to an Approved Budget and provided notice thereof to the Prepetition Agents;

(3)     the failure of the Debtors to make any payment due under this Interim Order within five (5) business days after such payment becomes due;

(4)     the date of the Debtors' filing of an application, motion, or other pleading seeking to amend, modify, reverse, revoke, stay, rescind, vacate, supplement, or extend this Interim Order without the prior written consent of the Required Lenders;

(5)     this Interim Order ceases, for any reason to be in full force and effect;

31

(6)    the Court shall have entered an order amending, reversing, revoking, staying, rescinding, vacating, supplementing, extending, or otherwise modifying this Interim Order without the consent of the Required Lenders, or allowing the use of Prepetition Collateral or Adequate Protection Collateral on any terms other than as set forth in this Interim Order without the consent of the Required Lenders;

(7)    the date of the Debtors' filing of any application, motion, or other pleading seeking approval of debtor in possession financing without the consent of the Required Lenders, or the entry of an order approving debtor in possession financing for the Debtors without the consent of the Required Lenders;

(8)    the entry of any postpetition judgment against the Debtors in excess of $750,000;

(9)    except with respect to applications for the payment of fees of Professional Persons, the date an application, motion, or other pleading is filed by the Debtors for the approval of any superpriority claim or any lien that is *pari passu* with or senior to the Adequate Protection Claims, the Adequate Protection Liens, the Prepetition Liens, or the Prepetition Secured Obligations without the prior written consent of the Required Lenders;

(10)    the date any of the Debtors or any affiliate of the Debtors files any pleading or commences any action against any Prepetition Secured Party challenging the validity or enforceability of any of the Prepetition Secured Obligations or any of the Prepetition Liens or seeking to avoid, disallow, subordinate, or recharacterize any claim, lien, or interest held by any of the Prepetition Secured Parties arising under or related to any of the Prepetition Secured Obligations;

32

(11)    the date any court enters an order dismissing these chapter 11 cases, converting these chapter 11 cases to cases under chapter 7 of the Bankruptcy Code (each, a "Successor Case"), appointing a chapter 11 trustee in any of these chapter 11 cases, or an examiner with expanded powers relating to the operation of the Debtors or administration of any of these chapter 11 cases, or terminates the Debtors' exclusive periods under Bankruptcy Code section 1121, unless, in each case, consented to in writing by the Required Lenders;

(12)    the Court has entered an order granting relief from the automatic stay in order to permit any party to proceed against any Prepetition Collateral or Adequate Protection Collateral with a fair market value in excess of $750,000;

(13)    The Debtors take any action to, or publicly state that the Debtors will, not seek confirmation of the Plan, including revoking or withdrawing the Plan, without the Required Lenders' consent;

(14)    One or more of the conditions precedent to the Effective Date (as defined in the Plan) of the Plan is or becomes impossible to satisfy at any time and Required Lenders have not waived such condition(s); and

(15)    the following milestones (the "Milestones") are not met, unless extended or waived by the Required Lenders:

(i)    no later than 11:59 p.m. (prevailing Eastern Time) on the date that is one (1) day after the Petition Date, the Debtors shall file the Plan and Disclosure Statement (as defined in the Plan);

(ii)    no later than 11:59 p.m. (prevailing Eastern Time) on the date that is three (3) business days after the Petition Date, subject to Court availability, the Court shall have entered this Interim Order;

33

        (iii)      no later than 11:59 p.m. (prevailing Eastern Time) on the date that is forty (40) calendar days after the Petition Date, subject to Court availability, the Court shall have entered the Final Order;

        (iv)      no later than 11:59 p.m. (prevailing Eastern Time) on the date that is fifty (50) calendar days after the Petition Date, subject to Court availability, the Court shall have entered an order confirming the Plan;

        (v)      no later than 11:59 p.m. (prevailing Eastern Time) on July 31, 2026, the Effective Date (as defined in the Plan) shall have occurred; *provided*, *however*, this milestone may be extended by sixty (60) calendar days at the option of the Required Lenders.

11.      Remedies Upon a Termination Event.  The Debtors shall provide notice to counsel to the Prepetition Agents, the Lender Professionals, counsel to any statutory committee appointed in these chapter 11 cases, and the U.S. Trustee immediately upon knowledge of the occurrence of any Termination Event.  Upon the occurrence of a Termination Event, following the giving of no less than five (5) business days' (the "Notice Period") written notice, which may be given by email, to counsel to the Debtors, the U.S. Trustee, and counsel to any official committee of unsecured creditors, (i) the authorization for the Debtors' use of Cash Collateral shall terminate, and (ii) the Prepetition Secured Parties may seek to exercise any rights and remedies available to them under the Prepetition Credit Documents, this Interim Order, or applicable law, subject to the Carve-Out (and the automatic stay shall be automatically terminated at the end of the Notice Period to allow them to do so, unless the Court orders otherwise); *provided* that, until expiration of the Notice Period, the Debtors may continue to use Cash Collateral to make payments in respect of expenses critical to keep the business of the Debtors operating in accordance with the Approved Budget;

and *provided*, *further*, that the Debtors may continue to use Cash Collateral during or after expiration of the Notice Period solely to the extent necessary to fund the Carve-Out Reserve pursuant to paragraph 4 hereof. For the avoidance of doubt, during the Notice Period, unless otherwise ordered by the Court, the automatic stay under section 362 of the Bankruptcy Code shall remain in effect other than to the extent expressly modified by the terms of this Interim Order. The Debtors shall be entitled to seek an emergency hearing during the Notice Period, or such other time as this Court can schedule the hearing in accordance with the Local Rules. The Debtors and the Prepetition Secured Parties agree not to oppose a request by any party for an emergency hearing filed during such Notice Period.

12. <u>Preservation of Rights Granted Under this Interim Order</u>.

(a) Subject to the Carve-Out, other than as set forth in this Interim Order, the Adequate Protection Liens shall not be made subject to, or *pari passu* with, any lien or security interest granted in any of these chapter 11 cases (other than a lien that is perfected subsequent to the Petition Date in accordance with Bankruptcy Code section 546(b)) or any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under Bankruptcy Code section 551.

(b) In the event this Interim Order or any provision hereof is vacated, reversed, or modified on appeal or otherwise, the validity and priority of any liens or claims granted to the Prepetition Secured Parties hereunder arising prior to the effective date of any such vacatur, reversal, or modification shall be governed in all respects by the original provisions of this Interim Order, including entitlement to all rights, remedies, privileges, and benefits granted herein, and the Prepetition Secured Parties shall be entitled to the protections afforded in Bankruptcy Code section

35

363(m) with respect to all uses of the Prepetition Collateral (including Cash Collateral) and all Adequate Protection Obligations.

(c)    Notwithstanding any order dismissing any of these cases under Bankruptcy Code section 1112 or otherwise, (x) the Adequate Protection Liens, the Adequate Protection Claims, and the other administrative rights and benefits granted pursuant to this Interim Order shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all Adequate Protection Obligations and Prepetition Secured Obligations are indefeasibly paid in full, in cash; (y) all Adequate Protection Liens, Adequate Protection Claims and other rights and benefits granted pursuant to this Interim Order shall remain binding on all parties in interest; and (z) this Court shall retain jurisdiction for the purposes of enforcing the rights, claims, liens, and security interests referred to in this paragraph to the extent allowed by applicable law.

(d)    Except as expressly provided in this Interim Order, the Adequate Protection Liens, the Adequate Protection Claims, and all other rights and remedies of the Prepetition Secured Parties granted by this Interim Order shall survive, shall maintain their priority as provided in this Interim Order, and shall not be modified, impaired, or discharged by (i) the entry of an order converting any of these chapter 11 cases to a Successor Case, dismissing any of the cases, or terminating the joint administration of the cases, or (ii) the entry of an order confirming a plan in any of these cases.  The terms and provisions of this Interim Order shall continue in these chapter 11 cases, in any successor cases, or if these cases are no longer jointly administered.  The Adequate Protection Liens and the Adequate Protection Claims and all other rights and remedies of the Prepetition Secured Parties granted by this Interim Order shall continue in full force and effect until the effective date of the Plan.

36

13.     Professional Fees.

(a)     The Debtors are authorized and directed to pay, without further Court order, the reasonable and documented fees and out-of-pocket expenses whether incurred before or after the Petition Date (through the date on which the Debtors' authority to use Cash Collateral terminates in accordance with this Interim Order) of the Lender Professionals.  The Lender Professionals shall not be required to file motions or applications with respect to the fees and expenses incurred by the Lender Professionals (the "Lender Professionals Fees"); *provided*, *however*, that any time such professionals seek payment of fees and expenses from the Debtors, each professional shall provide summary copies of its fee and expense statements or invoices (which shall not be required to contain time entries but which shall include a general, brief description of the nature of the matters for which services were performed, which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine) to counsel to the Debtors, the U.S. Trustee, and counsel to any Committee (if any) (collectively, the "Fee Notice Parties"); *provided* that at any time a Lender Professional seeks payment of Lender Professional Fees from the Debtors, the Debtors reserve their rights to request additional detail regarding the services rendered and expenses incurred by such Lender Professional.  If no objection to payment of the requested Lender Professional Fees and expenses is made, in writing, by any of the Fee Notice Parties within ten (10) calendar days after delivery of such invoices (the "Fee Objection Period"), then such invoice shall be promptly paid, without further order of, or application to, the Court or notice to any other party, and, in any case, within five (5) calendar days following the expiration

37

of the Fee Objection Period and shall not be subject to any further review, challenge, or disgorgement. For the avoidance of doubt, the provisions of such invoices shall not constitute a waiver of attorney-client privilege or any benefits of the attorney work product doctrine.

(b)     If within the Fee Objection Period, a Fee Notice Party sends to the affected professional and files with the Court a written objection to such invoice, then only the disputed portion of such Lender Professionals Fees shall not be paid until the objection is resolved by the applicable parties in good faith or by order of the Court, and any undisputed portion shall be paid within five (5) calendar days following the expiration of the Fee Objection Period. Subject to the terms hereof, the Debtors are authorized, without further notice or hearing, to pay the Lender Professionals Fees to the extent otherwise payable in accordance with the terms of this Interim Order; *provided, however*, that parties shall not have to comply with the fee review provisions set forth above with respect to any fees or expenses incurred prior to the Petition Date.

(c)     In addition, the Debtors will indemnify the Prepetition Secured Parties and their respective affiliates, and hold them harmless from and against reasonable and documented out-of-pocket costs, expenses, and liabilities arising out of, in connection with, or by reason of the transactions contemplated hereby, including in respect of the granting of Adequate Protection Liens, Adequate Protection Claims, and all documents related to and all transactions contemplated by the foregoing; *provided* that the Debtors shall not indemnify the Prepetition Secured Parties with respect to a successful Challenge.

14.     <u>Limitation on Use of Cash Collateral</u>.  Subject to paragraph 15, none of the Adequate Protection Collateral, Prepetition Collateral, Cash Collateral, or the Carve-Out or proceeds thereof may be used to: (i) investigate, initiate, prosecute, join, or finance the initiation or prosecution of any claim, counterclaim, action, suit, arbitration, proceeding, application,

38

motion, objection, defense, or other litigation of any type (a) against any of the Prepetition Secured Parties (each in their capacities as such), (b) seeking to invalidate, set aside, avoid or subordinate, in whole or in part, any Prepetition Secured Obligations or Prepetition Liens, or (c) for monetary, injunctive, or other affirmative relief against any of the Prepetition Secured Parties (in their capacities as such); (ii) object to or challenge in any way the legality, validity, extent, priority, perfection, or enforceability of the claims, liens, or interests (including the Prepetition Liens) held by or on behalf of each of the Prepetition Secured Parties related to the Prepetition Secured Obligations; (iii) assert, commence, or prosecute any claims, counterclaims, offset, defenses, or causes of action against any Prepetition Secured Party or their respective agents, affiliates, subsidiaries, directors, officers, employees, representatives, attorneys, or advisors, including without limitation for lender liability or claims or causes of actions under section 105, 510, 544, 547, 548, 549, 550, or 552 of the Bankruptcy Code, applicable nonbankruptcy law, or otherwise; (iv) prosecute an objection to, contest in any manner or raise any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the Prepetition Liens or any other rights or interests of any of the Prepetition Secured Parties related to the Prepetition Secured Obligations; or (v) take any action that, if successful, would be reasonably likely to result in a Termination Event; *provided* that up to $50,000 of the Prepetition Collateral, including Cash Collateral (the "Committee Investigation Budget"), may be used by a Committee appointed in the Debtors' chapter 11 cases, or by a chapter 7 or chapter 11 trustee appointed or elected in the Debtors' cases, to investigate the claims and liens of the Prepetition Secured Parties, solely with respect to the Prepetition Secured Obligations and Prepetition Collateral within the Challenge Period (as defined below).

15.     Effect of Stipulations on Third Parties.

(a)     The acknowledgments, stipulations, admissions, waivers, and releases contained herein shall be binding upon the Debtors, their estates, and any successor or assigns thereto upon entry of this Interim Order.  The acknowledgments, stipulations, admissions, waivers, and releases contained in this Interim Order shall also be binding upon all other parties in interest, including any Committee, or any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors (a "Trustee"), unless (i) such party, having obtained the requisite standing, has duly filed an adversary proceeding or contested matter challenging the validity, perfection, priority, extent, or enforceability of the Prepetition Liens or the Prepetition Secured Obligations, or otherwise asserting or prosecuting any other claims, counterclaims or causes of action, objections, contests, or defenses (each, a "Challenge") against the Prepetition Secured Parties in connection with any matter related to the Prepetition Credit Documents, the Prepetition Collateral, the Prepetition Liens, or the Prepetition Secured Obligations by the date that is no later than seventy-five (75) calendar days from the entry of this Interim Order; *provided* that subject to entry of a Final Order, such party shall have filed such Challenge no later than the earlier of (A) confirmation of a chapter 11 plan for the Debtors or (B) seventy-five (75) calendar days from the entry of this Interim Order, subject to further written extension (which writing may be in the form of e-mail by counsel) by the Prepetition Agents (at the direction of the Required Lenders) (the "Challenge Period"); *provided* that in the event that, prior to the expiration of the Challenge Period, (x) any of these cases is converted to a Successor Case or (y) a chapter 11 trustee is appointed, then, in each such case, the Challenge Period shall be extended for a period of forty-five (45) calendar days solely with respect to any Trustee, commencing on the occurrence of either of the events described in the foregoing clauses (x) and (y); and (ii) an order is entered by a court of competent jurisdiction

40

and becomes final and non-appealable in favor of the party asserting any Challenge sustaining any Challenge in such duly filed adversary proceeding or contested matters; *provided*, *however*, that any pleadings filed in connection with any Challenge shall set forth with specificity the basis for such challenge or claim and any challenges or claims not so specified prior to the expiration of the Challenge Period, subject to the Court's granting plaintiff(s) leave to file an amended complaint, shall be deemed forever waived, released and barred.  If no such adversary proceeding or contested matter is filed prior to the expiration of the Challenge Period or the Court does not rule in favor of the plaintiff in any such proceeding, then, without further order of this Court:  (x) the Prepetition Secured Obligations shall constitute allowed claims, not subject to any Challenge (whether characterized as a counterclaim, setoff, subordination, recharacterization, defense, avoidance, contest, attack, objection, recoupment, reclassification, reduction, disallowance, recovery, disgorgement, attachment, "claim" (as defined by Bankruptcy Code section 101(5)), impairment, subordination (whether equitable, contractual, or otherwise), or other challenge of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law), for all purposes in the chapter 11 cases and any successor cases, if any; (y) the Prepetition Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, non-avoidable liens, not subject to setoff, subordination, defense, avoidance, impairment, disallowance, recharacterization, reduction, recoupment, or recovery; and (z) the Prepetition Secured Obligations, the Prepetition Liens, and the Prepetition Secured Parties (in their capacities as such) shall not be subject to any other or further Challenge and all parties in interest (including any estate representative or a Trustee, whether such Trustee is appointed or elected prior to or following the expiration of the Challenge Period) shall be forever enjoined and barred from seeking to exercise the rights of the Debtors' estates or taking any such action.  If any such Challenge is timely filed by a party that has been

41

granted standing prior to the expiration of the Challenge Period, (i) the stipulations and admissions contained in this Interim Order shall nonetheless remain binding and preclusive on all parties in interest, except for the party that has timely filed such adversary proceeding or contested matter and solely as to the stipulations or admissions that are specifically and expressly challenged in such adversary proceeding or contested matter, *provided* that, for the avoidance of doubt, proceeds recovered as a result of or in connection with a successful Challenge shall be distributed in accordance with applicable law; and (ii) any Challenge not brought in such adversary proceeding or contested matter shall be forever waived; *provided* that, if and to the extent any Challenge to a particular stipulation or admission is withdrawn, denied, or overruled by entry of an order by a court of competent jurisdiction, such order shall be binding on the Debtors' estates and all parties in interest.  For the avoidance of doubt, any chapter 7 or chapter 11 trustee appointed or elected in these cases shall, until the expiration of the period provided herein for asserting Challenges, and thereafter for the duration of any adversary proceeding or contested matter commenced pursuant to this paragraph (whether commenced by such trustee or commenced by any other party in interest on behalf of the Debtors' estates), be deemed to be a party other than the Debtors and shall not, for purposes of such adversary proceeding or contested matter, be bound by the acknowledgements, admissions, confirmations, and stipulations of the Debtors in this Interim Order.  For the avoidance of doubt, no professional fees or expenses of any party shall be funded by the Debtors' estates in connection with any Challenge and any fees incurred in respect thereof shall not be required to be paid from Adequate Protection Collateral or Prepetition Collateral (including Cash Collateral) in order for the Debtors to confirm a chapter 11 plan and have such plan go effective.

(b) Nothing in this Interim Order vests or confers on any person (as defined in the Bankruptcy Code), including any Committee, standing or authority to pursue any Challenge or any claims or causes of action belonging to the Debtors or their estates.

16. <u>Insurance</u>. At all times the Debtors shall maintain casualty and loss insurance coverage of the Prepetition Collateral on substantially the same terms as that maintained prior to the Petition Date.

17. <u>Credit Bidding</u>. In the sale or other disposition of any assets of the Debtors, whether it is a sale pursuant to Bankruptcy Code section 363, pursuant to a plan of reorganization or liquidation, or by a chapter 11 or chapter 7 trustee, subject to Bankruptcy Code section 363(k), the Prepetition Agents (on behalf, and at the direction, of the Required Lenders) shall have the unqualified and unconditional right to credit bid (subject only to the limitations in the applicable Prepetition Credit Documents): (x) up to the full amount of the Prepetition Secured Obligations and (y) the Adequate Protection Obligations. Each Prepetition Secured Party shall automatically be deemed a "qualified bidder" with respect to any such disposition of assets of the Debtors. The Prepetition Agents, on behalf, and at the direction of, the Required Lenders, shall have the absolute right to assign, sell, or otherwise dispose of its right to credit bid to any acquisition entity or joint venture formed in connection with such credit bid.

18. <u>No Waiver by Failure to Seek Relief</u>. The failure of the Debtors or the Prepetition Secured Parties to seek relief or otherwise exercise their rights and remedies under this Interim Order, the Prepetition Credit Documents, or applicable law shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise.

19. <u>Limitation on Charging Expenses</u>. Subject to entry of the Final Order, except to the extent of the Carve-Out, no costs or expenses of administration of these chapter 11 cases or

43

any successor cases at any time, including, without limitation, any costs and expenses incurred in connection with the preservation, protection, or enhancement of realization by the Prepetition Agents or the Prepetition Secured Parties, respectively, upon the Prepetition Collateral, shall be charged against or recovered from the Prepetition Collateral, whether pursuant to Bankruptcy Code section 506(c), any other legal or equitable doctrine (including unjust enrichment), or otherwise, without the prior written consent of the Required Lenders, and no such consent shall be implied, directly or indirectly, from anything contained in this Interim Order (including, without limitation, consent to the Carve-Out or the approval of any budget hereunder) or from any other action, inaction, or acquiescence by any of the Prepetition Secured Parties.

20.    No Marshaling; Section 552(b) Waiver.  Subject to entry of the Final Order, in no event shall the Prepetition Agents or the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Adequate Protection Collateral, Adequate Protection Obligations, Prepetition Collateral, or the Prepetition Secured Obligations, and all proceeds shall be received and applied in accordance with the Prepetition Credit Documents and this Interim Order.  Subject to entry of the Final Order, each of the Prepetition Secured Parties shall be entitled to all of the rights and benefits of Bankruptcy Code section 552(b), and in no event shall the "equities of the case" exception in Bankruptcy Code section 552(b) apply to the Prepetition Secured Parties or the Prepetition Collateral.

21.    Binding Effect; Successors and Assigns.  The provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in these cases, including, without limitation, the Prepetition Secured Parties, any Committee, the Debtors, and their respective successors and assigns (including any Trustee, any examiner appointed pursuant to Bankruptcy Code section 1104, or any other fiduciary appointed as a legal representative of any

of the Debtors or with respect to the property of their estates) and shall inure to the benefit of the Prepetition Secured Parties.

22.   Limitation of Liability.  In permitting the use of their Cash Collateral, or exercising any rights or remedies as and when permitted pursuant to this Interim Order, the Prepetition Secured Parties shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors or their business, nor shall they owe any fiduciary duty to any of the Debtors, their creditors or estates, or constitute or be deemed to constitute a joint venture or partnership with any of the Debtors.  Furthermore, nothing in this Interim Order shall in any way be construed or interpreted to impose or allow the imposition upon the Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors and their respective affiliates (as defined in Bankruptcy Code section 101(2)).

23.   Master Proofs of Claim.  None of the Prepetition Secured Parties shall be required to file a proof of claim in any of these chapter 11 cases or successor cases, as applicable, and the Debtors' stipulations and admissions contained in this Interim Order shall be deemed to constitute a timely filed proof of claim (but as to which the Debtors may not object), with respect to the Prepetition Secured Obligations.  However, notwithstanding the foregoing or anything to the contrary in the Motion or this Interim Order, the Prepetition Agents are authorized, but not directed or required, to file one master proof of claim on behalf of the Prepetition Secured Parties on account of any and all claims arising under the Prepetition Credit Documents or hereunder (a "Master Proof of Claim").  For administrative convenience, any such Master Proof of Claim may be filed in the case of Debtor GoHealth, Inc., and such Master Proof of Claim shall be deemed to have been filed and asserted against all Debtors, as applicable.  For the avoidance of doubt, the

45

provisions set forth in this paragraph and any Master Proof of Claim filed pursuant to the terms hereof are intended solely for the purpose of administrative convenience and shall not affect the substantive rights of any party in interest, including, without limitation, the numerosity requirements set forth in Bankruptcy Code section 1126. The Prepetition Agents shall not be required to attach any instruments, agreements, or other documents evidencing the obligations owing by each of the Debtors to the Prepetition Secured Parties, which instruments, agreements, or other documents will be provided upon written request to counsel to the Prepetition Agents.

24.    Automatic Stay Modified. The automatic stay shall be modified to the extent necessary to allow the Prepetition Secured Parties to provide any notices to the Debtors or take any other action as contemplated by and in accordance with this Interim Order.

25.    No Third-Party Rights. Except as explicitly provided for in this Interim Order, any rights and obligations granted in this Interim Order inure solely to the benefit of the Prepetition Secured Parties, and no third party shall have any rights hereunder.

26.    Necessary Action. The Debtors are authorized to take any and all actions and to make, execute, and deliver any and all instruments as may be reasonably necessary to implement the terms of this Interim Order and the transactions contemplated hereby.

27.    Effectiveness. This Interim Order shall constitute findings of fact and conclusions of law and shall be effective as of the Petition Date. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9024 or any other Bankruptcy Rule, this Interim Order shall be immediately effective and enforceable upon its entry, and there shall be no stay of execution or effectiveness of this Interim Order.

28.    Bankruptcy Rules. The requirements of Bankruptcy Rules 4001 and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

46

29.   <u>Final Hearing</u>.  The Final Hearing shall be held on [●], 2026, at [●] [p]/[a].m., prevailing Eastern Time; *provided* that the Final Hearing may be adjourned or otherwise postponed upon the Debtors filing a notice of such adjournment if the Required Lenders so consent.  The Debtors shall provide notice of the Final Hearing and the proposed Final Order in accordance with the Local Rules to all parties having been given notice of the Final Hearing and to any other party entitled to notice pursuant to Local Rule 9013-(m) and Bankruptcy Rule 2002.  Any objections or responses to entry of the Final Order shall be filed on or before [●] [p]/[a].m., prevailing Eastern Time, on [●], 2026, and shall be served upon: (i) the Debtors, 222 West Merchandise Mart Plaza, Suite 1750, Chicago, Illinois 60654, Attn. Bradley Burd, Chief Legal Officer and Corporate Secretary (bburd@gohealth.com); (ii) proposed co-counsel to the Debtors, (a) Kirkland & Ellis LLP, 333 West Wolf Point Plaza, Chicago, Illinois 60654, Attn.  Anup Sathy, P.C. (anup.sathy@kirkland.com), Alexandra F. Schwarzman, P.C. (alexandra.schwarzman@kirkland.com), and David R. Gremling (dave.gremling@kirkland.com) and (b) Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, Delaware 19801, Attn.  Laura Davis Jones (ljones@pszjlaw.com), James E. O'Neill (Joneill@pszjlaw.com), and Edward A. Corma (ecorma@pszjlaw.com); (iii) counsel to the Ad Hoc TL Group, (a) Akin Gump Strauss Hauer & Feld LLP, Robert S. Strauss Tower, 2001 K Street N.W., Washington, DC 20006, Attn.  Scott Alberino (salberino@akingump.com) and Benjamin Taylor (taylorb@akingump.com) and Akin Gump Strauss Hauer & Feld LLP, 2300 N. Field Street, Suite 1800, Dallas, TX 75201, Attn.  Nicholas Houpt (nhoupt@akingump.com) and (b) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attn.  Michael R. Nestor (mnestor@ycst.com) and Robert Poppiti (rpoppiti@ycst.com); (iv) counsel to the Ad Hoc Revolver Group, (a) Cahill Gordon & Reindel LLP, 32 Old Slip, New

York, New York 10005, Attn. Joel Moss (jmoss@cahill.com) and Jordan Wishnew (jwishnew@cahill.com) and (b) Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market ST., 16th Floor, Wilmington, Delaware 19899, Attn. Derek C. Abbott (dabbott@morrisnichols.com); (v) counsel to any official committee of unsecured creditors; and (vi) the Office of the U.S. Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn. Benjamin A. Hackman (benjamin.a.hackman@usdoj.gov).

30.     Retention of Jurisdiction.  The Court shall retain jurisdiction to resolve any and all disputes arising under or related to the provisions of this Interim Order, and to enforce all of the conditions of this Interim Order.

**<u>Exhibit 1</u>**

**Approved Budget**

**GoHealth, Inc.**
**Cash Collateral Budget**

*$ in millions*

| | Week #<br>Week ending | 1<br>Jun-12 | 2<br>Jun-19 | 3<br>Jun-26 | 4<br>Jul-03 | 5<br>Jul-10 | 6<br>Jul-17 | 1- 6<br>Total |
|---|---|---|---|---|---|---|---|---|
| Receipts | | $ 0.6 | $ 6.3 | $ 4.8 | $ 6.2 | $ 3.4 | $ 6.6 | $ 27.8 |
| Operating Disbursements | | (9.2) | (3.7) | (1.4) | (5.7) | (2.6) | (3.6) | (26.2) |
| **Operating Cash Flow** | | **$ (8.6)** | **$ 2.6** | **$ 3.3** | **$ 0.5** | **$ 0.8** | **$ 3.0** | **$ 1.6** |
| Non-Operating Disbursements | | (0.5) | (2.9) | (3.0) | (0.8) | (1.0) | (3.5) | (11.6) |
| **Net Cash Flow** | | **$ (9.1)** | **$ (0.3)** | **$ 0.3** | **$ (0.3)** | **$ (0.2)** | **$ (0.6)** | **$ (10.0)** |
| Cash & Liquidity | | | | | | | | |
| Beginning Cash | | $ 16.2 | $ 7.2 | $ 6.9 | $ 7.2 | $ 7.0 | $ 6.8 | $ 16.2 |
| Change in Cash | | (9.1) | (0.3) | 0.3 | (0.3) | (0.2) | (0.6) | (10.0) |
| **Ending Cash / Total Liquidity** [1] | | **$ 7.2** | **$ 6.9** | **$ 7.2** | **$ 7.0** | **$ 6.8** | **$ 6.2** | **$ 6.2** |
| Cash Collateral Min. Liq. Covenant | | (5.0) | (5.0) | (5.0) | (5.0) | (5.0) | (5.0) | (5.0) |
| **Liq. Above (Below) Min. Req.** | | **$ 2.2** | **$ 1.9** | **$ 2.2** | **$ 2.0** | **$ 1.8** | **$ 1.2** | **$ 1.2** |

**Notes:**
[1] Cash balance includes accounts that have a DACA with the secured lenders and are included in the calculation of the minimum liquidity covenant