**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| GOHEALTH, INC., *et al.*,[1] | ) | Case No. 26-10914 (TMH) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) | **Re:  Docket No. 5** |

**PLAN SUPPLEMENT FOR THE DEBTORS'
JOINT PREPACKAGED CHAPTER 11 PLAN OF
GOHEALTH, INC. AND ITS DEBTOR AFFILIATES**

This Plan Supplement contains current drafts of the following documents, each of which remains subject to ongoing review and negotiations pursuant to the terms of the *Joint Prepackaged Chapter 11 Plan of GoHealth, Inc. and Its Debtor Affiliates* [Docket No. 5] (as modified, amended, or supplemented from time to time, the "Plan").[2]  The Debtors reserve all rights to alter, amend, modify, or supplement the documents contained in the Plan Supplement in accordance with the Plan and subject to the consent of the Required Lenders (not to be unreasonably withheld) on or before the Effective Date of the Plan.

| **Exhibit** | **Description** |
|---|---|
| A | Schedule of Proposed Cure Amounts |
| B | Schedule of Retained Causes of Action |
| C | New Organizational Documents |
| D | Exit Facility Documents |
| E | Restructuring Transactions Memorandum |
| F | Identity of the New Board |
| G | TRA Amendment |

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are:  GoHealth, Inc. (3805); Blizzard Midco, LLC (3732); Connected Benefits, LLC (2162); e-TeleQuote Insurance, Inc. (2336); ETQ Holdings, LLC (8260); GoHealth Holdings, LLC (3653); GoHealth, LLC (5175); and Norvax, LLC (3063).  The location of the Debtors' service address for purposes of these chapter 11 cases is:  222 West Merchandise Mart Plaza, Suite 1750, Chicago, Illinois 60654.

[2]  Capitalized terms used but not defined herein have the same meaning as set forth in the Plan.

## **Exhibit A**

### **Schedule of Proposed Cure Amounts**

Review of proposed Cure amounts, if any, is ongoing.  As of the Effective Date, the Debtors anticipate the majority of Cure amounts will be reconciled post-Effective Date in the ordinary course of business pursuant to the terms of the Plan and any assumed Executory Contract or Unexpired Lease, as applicable.

**Exhibit B**

**Schedule of Retained Causes of Action**

The Debtors reserve all rights to alter, amend, modify, or supplement the documents contained in the Plan Supplement in accordance with the Plan and subject to the consent of the Required Lenders (not to be unreasonably withheld) on or before the Effective Date of the Plan.

Article IV.L of the Plan provides as follows:

In accordance with section 1123(b) of the Bankruptcy Code, but subject to Article VIII of the Plan, the Reorganized Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date or any other provision of the Plan to the contrary, other than the Causes of Action released by the Debtors pursuant to the releases and exculpations contained in the Plan, including in Article VIII of the Plan, which shall be deemed released and waived by the Debtors and the Reorganized Debtors as of the Effective Date.

The Reorganized Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors. **No Person or Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors or Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action against it. The Debtors or Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Person or Entity, except as otherwise expressly provided in the Plan, including Article VIII of the Plan.** Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Reorganized Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

The Reorganized Debtors reserve and shall retain such Causes of Action notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that a Debtor may hold against any Person or Entity shall vest in the Reorganized Debtors, except as otherwise expressly provided in the Plan, including Article VIII of the Plan. The Reorganized Debtors, through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. The Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to

decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

Notwithstanding and without limiting the generality of Article IV.L of the Plan, the Debtors or the Reorganized Debtors, as applicable, expressly reserve all Causes of Action that are not expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan (including pursuant to Article VIII thereof) or a Bankruptcy Court order, including the following:

- any and all Causes of Action related to accounts receivable and accounts payable, against or related to all Entities that owe or that may in the future owe money to the Debtors or Reorganized Debtors, and against or related to all Entities who assert or may assert that the Debtors or Reorganized Debtors owe money to them;

- any and all Causes of Action based in whole or in part upon any and all postings of a security deposit, letter of credit, adequate assurance payment, bonds, or any other type of deposit, prepayment, or collateral, regardless of whether such posting of security deposit, letter of credit, adequate assurance payment, bonds or other type of deposit, prepayment, or collateral is specifically identified herein;

- any and all Causes of Action related to or against any current or former employee who is a party to or may become a party to any workers' compensation claims or actions, litigation, arbitration, or any other type of adversarial proceeding or dispute resolution proceeding, whether formal or informal, judicial or non-judicial, including for violating any non-compete provision, non-solicitation provision, or any similar restrictive covenant in an employment or severance agreement;

- any and all Causes of Action against any party that is not a Released Party;

- any and all Causes of Action based in whole or in part upon any and all liens or funds held in trust;

- any and all Causes of Action based in whole or in part upon any and all contracts, leases, and similar instruments, including any Executory Contract, Unexpired Lease, and proposed Cure amount, to which any Debtor is a party or pursuant to which any Debtor or Reorganized Debtor has any rights whatsoever including, without limitation, Causes of Action against vendors, suppliers of goods or services, lessors, licensors, licensees, or any other parties: (a) for overpayments, back charges, duplicate payments, improper holdbacks, deposits, warranties, guarantees, indemnities, recoupment, or setoff; (b) for wrongful or improper termination, suspension of services or supply of goods, or failure to meet other contractual or regulatory obligations; (c) for failure to fully perform or to condition performance on additional requirements under contracts with any one or more of the Debtors before the assumption or rejection, if applicable, of such contracts; (d) for payments, deposits, holdbacks, reserves, or other amounts owed by any creditor, utility, supplier, vendor, insurer, surety, factor, lender, bondholder, lessor, or other party; (e) for any liens, including mechanic's, artisan's, materialmen's, possessory, or statutory liens held by any one or more of the Debtors; (f) on account

2

of counter-claims and defenses related to any contractual obligations; (g) for any turnover actions arising under section 542 or 543 of the Bankruptcy Code; (h) for unfair competition, interference with contract or potential business advantage, breach of contract, infringement of intellectual property, or any business tort claims; and (i) for any accumulated service credits, both those that may apply to future vendor invoices and those from which the Debtors may be entitled to receive a refund;

- any and all Causes of Action against any auditor of the Debtors or any auditor's affiliate, subsidiary, or other Person or Entity acting on its behalf related to any audit involving any of the Debtors;

- any and all Causes of Action brought by, or that might later be brought by, any local, state, federal, or foreign "governmental unit" (as defined in section 101(27) of the Bankruptcy Code) related to any of the Debtors;

- any and all Causes of Action based in whole or in part upon any and all settlement or other agreements (or similar documents) involving any of the Debtors;

- any and all Causes of Action based in whole or in part upon any and all tax obligations to which any Debtor or Reorganized Debtor is a party or pursuant to which any Debtor or Reorganized Debtor has any rights whatsoever, including against or related to all Entities that owe or that may in the future owe money related to tax credits or refunds to the Debtors or Reorganized Debtors, regardless of whether such Entity is specifically identified herein.  Furthermore, the Debtors expressly reserve all of their rights with respect to any and all Causes of Action against or related to all Entities who assert or may assert that the Debtors or the Reorganized Debtors owe taxes to them;

- any and all Causes of Action based in whole or in part upon any and all insurance contracts and insurance policies, including any D&O Liability Insurance Policies, occurrence policies, and occurrence contracts, to which any Debtor or Reorganized Debtor is a party or pursuant to which any Debtor or Reorganized Debtor has any rights whatsoever, regardless of whether such contract or policy is specifically identified herein, including Causes of Action against insurance carriers, reinsurance carriers, insurance brokers, underwriters, occurrence carriers, or surety bond issuers relating to coverage, indemnity, contribution, reimbursement, or any other matters; and

- any and all Causes of Action against or related to all Entities or Persons that are pursuing or that may pursue litigation, arbitration, mediation, or any other type of adversarial proceeding or dispute resolution proceeding, whether formal or informal or judicial or non-judicial against the Debtors or Reorganized Debtors, regardless of whether such Person or Entity is specifically identified in the Plan, this Plan Supplement, or any amendments thereto.

3

**For the avoidance of doubt, the Causes of Action listed in this <u>Exhibit B</u> to the Plan Supplement are indicative, but are in no way exclusive, of the Causes of Action retained in connection with the Plan.**

## Exhibit C

### New Organizational Documents

[*TO BE FILED AT A LATER DATE*]

## Exhibit D

### Exit Facility Documents

[*TO BE FILED AT A LATER DATE*]

## Exhibit E

### Restructuring Transactions Memorandum

Certain documents, or portions thereof, contained or referred to in this **Exhibit E** remain subject to continuing negotiation among the Debtors and interested parties with respect thereto, including the Required Lenders.  The filing of the documents in this **Exhibit E** shall not be deemed as acceptance of such document by any party or a waiver of any of the rights of any such party under the Plan, the Bankruptcy Code, or otherwise.  The Debtors reserve all rights to alter, amend, modify, or supplement the documents contained in this **Exhibit E** in accordance with the Plan and subject to the consent of the Required Lenders (not to be unreasonably withheld) on or before the Effective Date of the Plan; *provided* that if any document in this Plan Supplement is altered in any material respect prior to the Confirmation Hearing, the Debtors will file a redline of such document with the Bankruptcy Court.

*Restructuring Transactions Memorandum*

In accordance with the Plan,[1] the steps set forth in this Restructuring Transactions Steps Memorandum[2] remain subject to modification in accordance with the Plan until the Effective Date.

Unless otherwise set forth below, the following steps shall occur in the order set forth below.

Prior to the Effective Date

1.    Prior to the Effective Date, GoHealth, Inc. (the "Corporation") forms GoHealth Newco, Inc. ("GoHealth Newco"), a Delaware corporation.

2.    The Corporation contributes common units of GoHealth Holdings, LLC ("Holdings") representing 1% of all outstanding Holdings common units to GoHealth Newco in exchange for stock of GoHealth Newco.

On the Effective Date

3.    Norvax, LLC ("Norvax") borrows under the New Money Exit Facility and distributes an amount of cash equal to the Equity Recovery Pool to Blizzard Midco, LLC ("Blizzard Midco").

4.    Blizzard Midco distributes the Equity Recovery Pool received from Norvax to Holdings.

5.    Holdings distributes the Equity Recovery Pool to (a) Holders of GoHealth Holdings Interests (which, for the avoidance of doubt, do not include the Corporation or GoHealth NewCo for purposes of distribution of the Equity Recovery Pool) in accordance with such Holders' Specified Pro Rata Share and (b) the Corporation and GoHealth NewCo the portion of the Equity Recovery Pool equal to the aggregate Specified Pro Rata Share distributable on account of their Interests.  In connection with the distribution of the Specified Pro Rata Share of the Equity Recovery Pool to Holders of GoHealth Holdings Interests, all of the GoHealth Holdings Interests and their corresponding GoHealth, Inc. Class B Common Stock are cancelled.

6.    GoHealth NewCo distributes all of the Equity Recovery Pool received by it in the prior step to the Corporation.

7.    The Corporation distributes to the Holders of GoHealth Inc. Class A Common Stock their Specified Pro Rata Share of the Equity Recovery Pool in complete redemption of such stock, and all shares of GoHealth Inc. Class A Common Stock are cancelled.

---

[1]    "Plan" means the *Joint Prepackaged Chapter 11 Plan of GoHealth, Inc. and its Debtor Affiliates* [Case No. 26-0914] (as modified, amended, or supplemented from time to time, consistent with the terms thereof).

[2]    Capitalized terms that are not defined herein shall have the meaning ascribed to them in the Plan or the Disclosure Statement (as defined in the Plan), as the case may be.

8. The Corporation converts into a limited liability company under Delaware state law, New GoHealth, LLC ("Reorganized GoHealth") and files an initial election on IRS Form 8832 to be classified as a corporation for U.S. federal income tax purposes effective as of the date of such conversion. GoHealth, Inc. Preferred Stock is Reinstated and converted to GoHealth Preferred Interests.

9. In exchange for the full and final satisfaction, settlement, release, and discharge of the Allowed Priming Loan Claims, Holders of the Priming Loan Claims receive from Norvax their Pro Rata share of the Senior Takeback Debt.

10. Reorganized GoHealth issues 99% of the New Equity Interests to Holdings and 1% of the New Equity Interests to GoHealth Newco.

11. GoHealth Newco contributes its New Equity Interests to Holdings as a contribution to capital.

12. Holdings contributes the New Equity Interests to Blizzard Midco as a contribution to capital.

13. Blizzard Midco contributes the New Equity Interests to Norvax as a contribution to capital.

14. In exchange for the full and final satisfaction, settlement, release, and discharge of the Allowed First Lien Claims, the Holders of the Allowed First Lien Claims receive from Norvax their Pro Rata share of the New Equity Interests and the Junior Takeback Debt.

**<u>Exhibit F</u>**

**Identity of the New Board**

[*TO BE FILED AT A LATER DATE*]

**<u>Exhibit G</u>**

**TRA Amendment**

**AMENDMENT**
**TO THE**
**TAX RECEIVABLE AGREEMENT**

This amendment (this "<u>Amendment</u>") to the Tax Receivable Agreement is made and entered into as of [●], 2026 (the "<u>Amendment Effective Date</u>"), by and among GoHealth, Inc., a Delaware corporation (the "<u>Corporation</u>") and certain of the TRA Holders (as defined in the Tax Receivable Agreement) (collectively, the "<u>Parties</u>"). All capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed thereto in the Tax Receivable Agreement.

**RECITALS**

**WHEREAS**, the Parties are each party to that certain Tax Receivable Agreement, dated as of July 15, 2020 (the "<u>TRA</u>").

**WHEREAS**, the Parties desire to amend the TRA as described herein.

**NOW, THEREFORE**, in consideration of the mutual covenants herein contained, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

**AMENDMENTS TO AGREEMENT**

Section 1.1.　　<u>Amendments to the TRA</u> .  The TRA is hereby amended as follows with effect on and following the Amendment Effective Date:

(a)　　The following definition shall be added to Article I, Section 1.1:

""<u>Chapter 11 Plan</u>" shall mean any plan of reorganization filed in the chapter 11 cases jointly administered under the case caption *In re GoHealth, Inc., et al.*, No. 26-10914 (TMH)."

(b)　　The definition of "Change of Control" in Article I, Section 1.1 is hereby amended as follows, with additional language indicated by a <u>double underline</u>:

""<u>Change of Control</u>" means the occurrence of any of the following events:

(i) any "person" or "group" (within the meaning of Sections 13(d) and 14(d) of the Exchange Act but excluding any (A) employee benefit plan of such person and its subsidiaries, and any person or entity acting in its capacity as trustee, agent or other fiduciary or administrator of any such plan) or (B) "person" or "group" who, on the date of the consummation of the IPO, is the Beneficial Owner of securities of the Corporation representing more than 50% of the combined voting power of the Corporation's then outstanding voting securities) becomes the "beneficial owner" (within the meaning of Rules 13d-3 and 13d-5 under the Exchange Act), directly or indirectly, of shares of Class A Common Stock, Class B Common Stock, preferred stock and/or any other class or classes of capital stock of the Corporation (if any)

representing in the aggregate more than 50% of the voting power of all of the outstanding shares of capital stock of the Corporation entitled to vote, other than pursuant to the Chapter 11 Plan;

(ii) the stockholders of the Corporation approve a plan of complete liquidation or dissolution of the Corporation or there is consummated a transaction or series of related transactions for the sale, lease, exchange or other disposition, directly or indirectly, by the Corporation of all or substantially all of the Corporation's assets (including a sale of all or substantially all of the assets of GoHealth Holdings), other than pursuant to the Chapter 11 Plan; or

(iii) the Corporation ceases to be the sole managing member of GoHealth Holdings, other than pursuant to the Chapter 11 Plan.[1]

Notwithstanding the foregoing, a "Change of Control" shall not be deemed to have occurred by virtue of (i) the consummation of any transaction or series of related transactions immediately following which the beneficial owners of the Class A Common Stock, Class B Common Stock, preferred stock and/or any other class or classes of capital stock of the Corporation immediately prior to such transaction or series of transactions continue to have substantially the same proportionate ownership in and voting control over, and own substantially all of the shares of, an entity which owns all or substantially all of the assets of the Corporation immediately following such transaction or series of transactions, or (ii) the occurrence of transactions contemplated by the Chapter 11 Plan.

(c)     Article III, Section 3.3(b) is hereby amended as follows, with additional language indicated by a double underline:

"Late Payments.  If for any reason, including by virtue of the last sentence of Section 5.1, the Corporation is not able to fully satisfy its payment obligations to make all Tax Benefit Payments due in respect of a particular Taxable Year, then (i) Default Rate Interest will accrue pursuant to Section 5.2, (ii) the Corporation shall pay the available amount of such Tax Benefit Payments (and any applicable Default Rate Interest) in respect of such Taxable Year to each TRA Holder pro rata in line with Section 3.3(a) and (iii) no Tax Benefit Payment shall be made in respect of any Taxable Year until all Tax Benefit Payments (and any applicable Default Rate Interest) to all TRA Holders in respect of all prior Taxable Years have been made in full."

(d)     Article V, Section 5.1 is hereby amended as follows, with additional language indicated by a double underline:

"Subordination.  Notwithstanding any other provision of this Agreement to the contrary, any payment required to be made by the Corporation to the TRA Holders

---

[1] GoHealth Holdings as used in this definition means GoHealth Holdings, LLC, a Delaware limited liability company.

2

under this Agreement shall rank subordinate and junior in right of payment to any principal, interest or other amounts due and payable in respect of any obligations owed in respect of secured indebtedness for borrowed money of the Corporation or its Subsidiaries ("Senior Obligations") and shall rank *pari passu* in right of payment with all current or future obligations of the Corporation or its Subsidiaries that are not Senior Obligations. The Corporation shall not pay, and shall not be required to pay, any Tax Benefit Payment, including any Early Termination Payment, pursuant to this Agreement if such payment is not permitted under, or would result in a breach of, or event of default under, the First Lien Credit Agreement and/or the Super Priority Credit Agreement (collectively, the "Existing Credit Agreement") or any other credit agreement, indenture, or other financing arrangement of the Corporation or its Subsidiaries."

Section 1.2.    Miscellaneous.

(a)    Compliance with the TRA. The Parties acknowledge and agree that the amendments contemplated in this Amendment are made in accordance with the terms of the TRA (including, without limitation, the requirements set forth in Section 7.5(b) therein and satisfaction of the requisite TRA Holder Approval as defined in Article I, Section 1.1 of the TRA).

(b)    No Other Changes. Except as modified by this Amendment, the TRA shall remain and continue in full force and effect. To the extent of any conflict or inconsistency between the terms of this Amendment, on the one hand, and the TRA, on the other hand, the terms of this Amendment shall prevail.

(c)    Reservation of Rights. Except as explicitly contemplated by this Amendment, this Amendment shall not be deemed to be a waiver of any rights or remedies of any parties under the TRA, which are, in each case, expressly reserved.

(d)    Counterparts; Electronic Signatures. This Amendment may be executed in any number of counterparts, each of which will be deemed an original, with the same effect as if the signature on each such counterpart were on the same instrument. This Amendment may be executed by transfer of an originally signed document by facsimile, electronic or e-mail in PDF format, each of which will be as fully binding as an original document.

*[Signature pages follow]*

3