**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GOHEALTH, INC., *et al.*,[1] | ) | Case No. 26-10914 (TMH) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DECLARATION OF MATTHEW FRANK, MANAGING
DIRECTOR OF ALVAREZ & MARSAL NORTH AMERICA, LLC, IN
SUPPORT OF CONFIRMATION OF THE AMENDED JOINT PREPACKAGED
CHAPTER 11 PLAN OF GOHEALTH, INC. AND ITS DEBTOR AFFILIATES**

I, Matthew Frank, hereby declare under penalty of perjury as follows:

1.      I am a Managing Director at Alvarez & Marsal North America LLC ("A&M"), the proposed financial advisor to the above-captioned debtors and debtors in possession (collectively, the "Debtors," and together with their non-Debtor subsidiaries, the "Company"). My team and I have been working closely with the Debtors on their current restructuring initiatives for over a year. I am familiar with the Debtors' day-to-day operations, business affairs, financial performance, and restructuring efforts.

2.      I submit this declaration (this "Declaration") in support of approval of confirmation of the *Amended Joint Prepackaged Chapter 11 Plan of GoHealth, Inc. and Its Debtor Affiliates* [Docket No. 141] (as may be modified, amended, or supplemented from time to time in accordance with its terms, the "Plan").[2]

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of the Debtors' federal tax identification numbers, are:  GoHealth, Inc. (3805); Blizzard Midco, LLC (3732); Connected Benefits, LLC (2162); e-TeleQuote Insurance, Inc. (2336); ETQ Holdings, LLC (8260); GoHealth Holdings, LLC (3653); GoHealth, LLC (5175); and Norvax, LLC (3063). The location of the Debtors' service address for purposes of these chapter 11 cases is:  222 West Merchandise Mart Plaza, Suite 1750, Chicago, Illinois 60654.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the *Debtors' Memorandum of Law in Support of an Order (I) Approving the Debtors' Disclosure Statement and*

3.      All statements set forth in this Declaration, except where specifically noted, are based on my experience, my personal knowledge of the Debtors' operations, finances, and restructuring initiatives, information I have learned from my review of relevant documents, information supplied to me by members of the Debtors' management and/or their advisors, and/or information that I have received from employees of A&M working directly with me or under my supervision or direction.  I am not being compensated for this testimony other than pursuant to A&M's engagement letter with the Debtors, subject to approval by this Court.  I am authorized to submit this Declaration on behalf of the Debtors and, if called to testify as a witness, I could and would testify competently to the facts set forth therein.

**Background and Qualifications**

4.      A&M is a preeminent restructuring consulting firm with extensive experience providing high quality, specialized management and restructuring advisory services to debtors and distressed companies.  Specifically, A&M's core services include turnaround advisory services, interim and crisis management, revenue enhancement, claims management, and creditor and risk management advisory services.  A&M provides a wide range of debtor advisory services targeted at stabilizing and improving a company's financial position, including:  (a) developing or validating forecasts, business plans, and related assessments of strategic positions; (b) monitoring and managing cash, cash flow, and supplier relationships; (c) assessing and recommending cost reduction strategies;  and  (d) designing  and  negotiating  financial  restructuring  packages. In addition, A&M provides advice on specific aspects of the turnaround process and helps manage complex constituency relations and communications.  A&M is known for its ability to work and

---

*(II) Confirming the Joint Prepackaged Chapter 11 Plan of Reorganization of GoHealth, Inc. and Its Debtor Affiliates* [Docket No. 140] or the Plan, as applicable.

collaborate alongside company management and key constituents during chapter 11 restructurings to develop a feasible and executable plan of reorganization.

5.    I joined A&M 20 years ago as an associate in the Transaction Advisory Group, before transitioning to the Turnaround and Restructuring division roughly two years later.  I have held numerous positions at A&M over the years, including as a Managing Director, Senior Director, Director, Senior Associate, and Associate in the Turnaround and Restructuring Group. Prior to joining A&M, I was an associate at Deloitte in the audit and assurance department.  I received a Bachelor of Science in Management with a concentration in Accounting, Finance, and Economics from Tulane University, A.B. Freeman School of Business.  I passed the Certified Public Accountant exam and am a Certified Insolvency and Restructuring Advisor.

6.    I have over 15 years of financial restructuring and management consulting experience, specializing in bankruptcies, reorganizations, and business restructurings for underperforming companies.  During my time at A&M, I have worked almost exclusively on company-side engagements.  I provide a wide range of services to the companies I advise, and my expertise includes developing business plans, forecasting cash flows, improving liquidity through working capital management, restructurings, and successful bankruptcy reorganizations.  I have extensive experience advising companies and their stakeholders in chapter 11 restructurings spanning multiple industries, including consumer products, automotive, manufacturing and distribution, utility and power generation, sports and entertainment, media, technology, and professional services.  Some of my notable public advisory assignments have included Omnicare, Blackbox Corporation, Southcross Energy, Global A&T Electronics, Energy Future Holdings, UCI Automotive, Tribune Company, and Heartland Automotive (d.b.a. Jiffy Lube).  I have performed or overseen the preparation of numerous liquidation analyses and financial projections

for companies in a wide range of industries, including, but not limited to, oil and gas, media and entertainment, manufacturing, and automotive parts suppliers.

7. In May 2025, the Debtors retained A&M in connection with their efforts to improve the Company's financial and operating performance in response to various headwinds. A&M continued to advise the Debtors as they began contemplating effectuating a change of control transaction through chapter 11. From the outset of A&M's retention, our team, led by me, has worked closely with the Debtors' management team and other advisors to evaluate and understand the Debtors' cashflows and liquidity position, financial reporting, and general operations, and we have become well-acquainted with the Debtors' capital structure, liquidity needs, and business operations and forecasts. In addition, we have assisted the Debtors in preparing "first day" motions for these chapter 11 cases, developing a budget for the use of cash collateral, stabilizing the business after the Petition Date, and preparing the financial projections and liquidation analysis attached to the Disclosure Statement.

### Financial Projections

8. It is my understanding that section 1129(a)(11) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") provides that a plan may only be confirmed if confirmation of the plan is not likely to be followed by the liquidation, or need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan. This is commonly referred to as the "feasibility" requirement.

9. In connection with proposing and presenting the Plan to the Bankruptcy Court for confirmation, A&M, at the Debtors' request and working alongside the Debtors' management and other advisors, thoroughly analyzed the Reorganized Debtors' ability to meet their post-

confirmation obligations under the Plan and to continue as a going concern throughout the Projection Period (as defined below).  Specifically, the Debtors and their advisors, including A&M, closely examined the Reorganized Debtors' projected cash flows to reasonably ensure that they will be able to make all required Plan payments on the Effective Date and beyond.  I was personally involved in the preparation of the financial projections attached to the Disclosure Statement as Exhibit B (the "Financial Projections"), and I specifically advised the Debtors with respect to the formulation of the material assumptions included in the Financial Projections, how the Financial Projections were prepared, and the underlying methodology.  I agree with the approach and analysis used in preparing the Financial Projections, which were prepared in good faith and based upon assumptions that I believe to be reasonable.

10.     The Financial Projections provide a forecast of the financial performance of the Reorganized Debtors for the period from July 17, 2026, through December 31, 2029 (the "Projection Period").  The Financial Projections were prepared assuming an emergence date on or around July 17, 2026[3] and implementation of the Plan in accordance with its stated terms.

11.     The Financial Projections establish that the Reorganized Debtors will have and maintain sufficient liquidity and capital resources to pay amounts due under the Plan and fund their operations during the Projection Period, as demonstrated below.

---

[3]     Given a change in the Court's availability delaying the Confirmation Hearing from July 16, 2026 to July 20, 2026, the Debtors now expect to emerge from these chapter 11 cases on July 21, 2026.  This delay does not materially affect the Financial Projections.

| Period | Jul - Dec 2026[1] | 2027 | 2028 | 2029 | Total |
|---|---|---|---|---|---|
| **Operating Cash Flow** | | | | | |
| | | | | | |
| Total Net Receipts | $ 90 | $ 134 | $ 77 | $ 62 | $ 363 |
| Operating Disbursements | (46) | (73) | (47) | (39) | (205) |
| **Operating Cash Flow** | **44** | **61** | **30** | **23** | **158** |
| | | | | | |
| **Non-Operating Disbursements** | | | | | |
| Interest | (8) | (14) | (12) | (10) | (44) |
| Cash Sweep | (30) | (48) | (20) | (14) | (112) |
| **Total Non-Operating Disbursements** | **(38)** | **(62)** | **(31)** | **(24)** | **(157)** |
| | | | | | |
| **Net Cash Flow** | **6** | **(1)** | **(2)** | **(1)** | **2** |
| | | | | | |
| Beginning Cash | 13 | 18 | 17 | 15 | 13 |
| Net Cash Flow | 6 | (1) | (2) | (1) | 2 |
| **Ending Cash Balance** | **$ 18** | **$ 17** | **$ 15** | **$ 14** | **$ 14** |

| Additional Detail | Eff. Date[1] | 2026 | 2027 | 2028 | 2029 |
|---|---|---|---|---|---|
| **Operating Assets:** | | | | | |
| Existing Net Contract Asset | $ 575 | $ 496 | $ 369 | $ 292 | $ 230 |
| **Debt:** | | | | | |
| New Money Term Loan | 21 | - | - | - | - |
| Second Out Term Loan | 174 | 174 | 136 | 117 | 102 |
| Third Out Term Loan | 588 | 614 | 673 | 738 | 809 |

1) The assumed Effective Date is July 17, 2026.  July – December 2026 represents post-emergence cash flows only.

12.    The combination of additional liquidity from the New Money Exit Facility, the Reorganized Debtors' projected cash flows, and the success of prepetition initiatives to reduce operational costs, on which A&M worked with the Debtors to implement, situate the Debtors well as they look to emerge from these chapter 11 cases and satisfy their obligations upon the Effective Date and during the Projection Period.  In sum, the Financial Projections demonstrate the Reorganized Debtors' ability to meet their obligations under the Plan and as they come due in the ordinary course of business during the Projection Period.

**Liquidation Analysis**

13.     It is my understanding that section 1129(a)(7) of the Bankruptcy Code requires that each holder of an impaired claim or interest either (a) accepts the plan or (b) receives or retains under the plan property of a value that is not less than the value such holder would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.  This is commonly referred to as the "best interests" test.

14.     At the Debtors' request, I have reviewed the classification of Claims and Interests under the Plan and the proposed distributions to each class of Claims or Interests and, as discussed below, compared them to the recoveries in a hypothetical chapter 7 scenario.  I personally oversaw the preparation of the Debtors' liquidation analysis, which is attached to the Disclosure Statement as Exhibit C (the "Liquidation Analysis"), and worked closely with a team of the Debtors' management, A&M professionals, and the Debtors' other advisors on its development.  The Liquidation Analysis assumes a hypothetical conversion to chapter 7 of the Bankruptcy Code on or about July 17, 2026 (the "Conversion Date").

15.     The Liquidation Analysis was completed following due diligence performed by the A&M team, including a review of the Debtors' books and records and discussions with the Debtors' management and other advisors, and was based on a variety of assumptions that I believe are reasonable, as set forth in the Liquidation Analysis, including its notes.  The Liquidation Analysis is based on the estimated value of the Debtors' assets and liabilities as of the Conversion Date and incorporates various estimates and assumptions that are customarily used in chapter 11 cases similar to this one, including the projected costs associated with the administration of the estates and the support required to wind down the Debtors' operations in a hypothetical conversion to a chapter 7 liquidation.

16.     As summarized below and laid out in further detail in the Liquidation Analysis, a comparison of the range of estimated liquidation recoveries to the estimated Plan recoveries indicates that each Holder of an impaired Claim or Interest will receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such Holder would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code:

| Class | Claims and Interests | Estimated Plan Recovery | Estimated Liquidation Recovery[4] |
|:---:|:---:|:---:|:---:|
| 1 | Other Secured Claims | 100% | 0% |
| 2 | Other Priority Claims | 100% | 0% |
| 3 | Super-Priority Lien Claims | 100% | 55% |
| 4 | First Lien Claims | Greater than 0% and up to 19% | 0% |
| 5 | General Unsecured Claims | 100% | 0% |
| 6 | GoHealth Holdings Interests | Pro Rata Distribution of $10M | 0% |
| 7 | GoHealth, Inc. Preferred Stock | Reinstated | 0% |
| 8 | GoHealth, Inc. Class A Common Stock | Pro Rata Distribution of $10M | 0% |
| 9 | GoHealth, Inc. Class B Common Stock | 0% | 0% |
| 10 | Intercompany Claims | 0% | 0% |
| 11 | Intercompany Interests | 0–100% | 0% |

[*Remainder of page intentionally left blank*]

---

[4]     The percentages reflect the mid-point of the projected recoveries under the Liquidation Analysis.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct.

Executed on:  July 16, 2026                    /s/  *Matthew Frank*
                                               Matthew Frank
                                               Managing Director
                                               Alvarez & Marsal North America LLC